## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INDIAN PEAK PROPERTIES LLC | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 23- 1223 |
| | ) | |
| THE FEDERAL COMMUNICATIONS | ) | |
| COMMISSION | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents | ) | |
| _____ | ) | |

## PETITION FOR REVIEW

Indian Peak Properties LLC ("Indian") hereby petitions for review of

agency action by the Federal Communications Commission ("FCC" or

"Commission").

### 1.    Final Agency Action

In the proceeding below, FCC staff dismissed Indian's Petitions for

Declaratory Ruling, that had been submitted pursuant to the Commission's

Over-the-Air Reception Device Rule, 47 CFR 1.4000.  Indian sought

reconsideration of the dismissal, which FCC staff denied.  Indian then

submitted its Application for Review by the full Commission (attached

hereto).  The Commission evidently is ignoring the Application for Review.
As discussed below, the FCC's failure to take action constitutes final agency
action that is reviewable by this Court.

Indian submitted the Application for Review on January 12, 2023.
After receiving no response for four months, on May 8, 2023, Indian
emailed an inquiry to the office of the Chairwoman of the FCC seeking
information on the status of the Application for Review.  Email from Julian
Gehman, counsel to Indian, to Narda Jones and Deena Shetler, FCC, dated
May 8, 2023.  The addressees, Narda Jones and Deena Shetler, are Chief of
Staff and Deputy Chief of Staff, respectively, in the FCC Chairwoman's
office.   Indian received no response to this email.  On June 1, 2023, Indian
emailed a second inquiry of the status of the Application for Review.  Email
from Julian Gehman to Narda Jones, Deena Shetler and Marlene Dortch,
FCC, dated June 1, 2023.  The second inquiry was addressed to the
Chairwoman's Chief of Staff and Deputy Chief of Staff, as before, and also
to the Secretary of the FCC.  Other than an out-of-office message from Ms.
Jones, Indian received no response to this email, either.  Indian has waited
sufficient time for Ms. Jones to return to the office and respond if she were
so inclined.  The Commission presumably would have responded to Indian's
status inquiries had the agency intended to take action on the Application for

Review.  In view of the agency's failure to respond to the Application for Review and the two status inquiries, Indian concludes that the FCC refuses to take action.

Agency inaction constitutes final agency action that is reviewable, where the inaction "has precisely the same impact on the rights of the parties as denial of relief." *Sierra Club v. Thomas,* 828 F.2d 783, 793 (D.C.Cir.1987) quoting Environmental Defense Fund, Inc. v. Hardin, 428 F2d 1093, 1099 (D.C.Cir.1970).  *See also Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir.1984); *Friedman v. FAA*, 841 F.3d 537, 543 (D.C. Cir. 2016).

That is the posture here.  The Application for Review seeks reversal, by the full Commission, of the letter ruling of the FCC's Wireless Telecommunications Bureau and Media Bureau, dated December 13, 2022 ("Final Letter Ruling").  With no action by the full Commission on the Application for Review, the Final Letter Ruling remains in full force and effect.  Therefore, the Commission's refusal to adjudicate the Application for Review has precisely the same effect on Indian as if the Commission had denied the Application for Review.  As such, the Commission's refusal to act constitutes final agency action that is reviewable by this Court.

### 2. Jurisdiction and Venue

As discussed above, the Commission's failure to take action is administratively final.  It is subject to review pursuant to 5 U.S.C. 702, 47 U.S.C. 402(a), and 28 U.S.C.  2342(1) and 2344.  Venue is proper in this court pursuant to 28 U.S.C. 2343.

### 3. Address

The mailing address of Indian Peak Properties LLC is:

Indian Peak Properties LLC
1350 E. Flamingo Road #13B34
Las Vegas, Nevada 89119-5263

Indian owns the property (hereinafter, the "Property") located at:

26708 Indian Peak Road
Rancho Palos Verdes, California

The Property is the subject of the Application for Review.

### 4. Standing

Indian has direct standing because it was the petitioner in the proceedings below and was harmed by the Commission's unlawful denial of Indian's petitions under 47 CFR 1.4000.

### 5. Related Proceedings

On June 3, 2022, Indian filed its Petition for Writ of Mandamus in this Court, Case Number 22-1098.  On September 2, 2022, this Court dismissed, as moot, Indian's Petition for Mandamus.

**6.    Basis of Appeal and Redress**

FCC staff rulings promulgate at least two new substantive rules that are inconsistent with relevant FCC orders and, under the Administrative Procedure Act, 5 USC 701 *et seq.*, require notice-and-comment rulemakings to be effective.  The FCC staff rulings, which set new policy without the benefit of requisite rulemakings, violated the Administrative Procedure Act. With this appeal, Indian seeks reversal of these arbitrary and capricious agency actions that are contrary to law, and remand to the FCC for treatment not inconsistent with this Court's opinion.  Upon remand and the Commission's grant of Indian's petitions under 47 CFR 1.4000, the local zoning ordinance would be preempted and Indian would be able to re-place the disputed antennas on the rooftop of the Property.

**7.    Relief Requested.**

Indian seeks review and reversal of FCC staff rulings under federal law, including but not limited to the Communications Act of 1934, as amended, 47 USC 151 *et seq.*, the Administrative Procedure Act, 5 USC 701 *et seq.*, and the FCC's regulations promulgated thereunder.  Indian seeks a determination by this Court that these FCC staff rulings (i) violate the above-referenced statutes and regulations, (ii) are arbitrary and capricious, an abuse of discretion and otherwise are not in accordance with the law, (iii)

are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (iv) were adopted without observance of procedure required by law, and (v) are otherwise contrary to law.

Accordingly, Indian respectfully requests that this Court hold unlawful, vacate, enjoin, and set aside the FCC staff rulings, remand the case to the FCC for treatment not inconsistent with this Court's opinion and order, and grant such other relief as the Court may deem appropriate. Indian requests that, upon remand, this Court retain jurisdiction of the case.

Respectfully submitted,

/s/ Julian Gehman

_____

Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:      P.O. Box 13514,
              Arlington, VA 22219
Office:       1050 Connecticut Ave NW
              Suite 500
              Washington, DC 20036
Attorney for Indian Peak Properties LLC

Dated: August 18, 2023

Attachment: Application for Review of Indian Peak Properties LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, Indian Peak Properties LLC hereby submits this Corporate Disclosure Statement.  Indian Peak Properties LLC is a limited liability company formed under the laws of the State of Nevada. Other than its membership interest, which is indirectly wholly owned by James A. Kay, Jr., an individual, Indian Peak Properties LLC issues no stock and is not owned in whole or in part by any publicly held corporation.

Respectfully submitted,

/s/ Julian Gehman

_____

Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:      P.O. Box 13514,
              Arlington, VA 22219
Office:       1050 Connecticut Ave NW
              Suite 500
              Washington, DC 20036
Attorney for Indian Peak Properties LLC

Dated August 18, 2023

## CERTIFICATE OF SERVICE

I, Julian Gehman, hereby certify that on this 18th day of August, 2023, I caused copies of the foregoing Petition for Review, without the Attachment, to be served by USPS registered first class mail, postage prepaid, return receipt requested, on the following:

Ms. June S. Ailin
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Ranchos Palos Verdes
3940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275

/s/ Julian Gehman
Julian Gehman

# Filing Details

|  | |  | |
|---:|:---|---:|:---|
| **ID:** | 10112222302023 | **PROCEEDING:** | INBOX-1.2 |
| **NAME OF FILERS:** | Indian Peak Properties LLC | **FILING STATUS:** | DISSEMINATED |
| **TYPE OF FILING:** | APPLICATION FOR REVIEW | **DATE SUBMITTED:** | Jan 12, 2023 |
| **VIEWING STATUS:** | Unrestricted | **DATE POSTED:** | Jan 12, 2023 |
| **DATE RECEIVED:** | Jan 12, 2023 | | |

**BRIEF COMMENT:**
**DOCUMENT DOWNLOAD:**   📕 Indian App Rev Final w attach.pdf

For assistance with using ECFS, please contact the ECFS Help Desk at 202-418-0193 or via email at ECFSHelp@fcc.gov.

Federal Communications Commission
45 L Street NE
Washington, DC 20554

Phone: 1-888-225-5322
ASL Video Call: 1-844-432-2275
Fax: 1-866-418-0232

Contact US

Website Policies & Notices

Privacy Policy

FOIA

No Fear Act Data

FCC Digital Strategy

**CATEGORIES**

About the FCC

Proceedings & Actions

Licensing & Databases

Reports & Research

News & Events

**BUREAUS & OFFICES**

Consumer

Enforcement

Inspector General

International

Media

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Indian Peak Properties, LLC | ) |
| Petitions for Declaratory Ruling | ) |
| Under 47 C.F.R. § 1.4000 | ) |
| | ) |
| To: | ) |
| The Commission | ) |

### <u>APPLICATION FOR REVIEW</u><br><u>OF INDIAN PEAK PROPERTIES, LLC</u>

Indian Peak Properties, LLC

Julian Gehman
Gehman Law PLLC
PO Box 13514
Arlington, VA 22219-3514

Counsel to Indian Peak Properties

Dated: January12, 2023

# Table of Contents

**SUMMARY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

**APPLICATION FOR REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**RULE 1.115 STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

**A.**  **THE BUREAUS DELAYED RULING ON INDIAN'S OTARD PETITION FOR TWO YEARS AND ACTED PROMPTLY ONLY AFTER INDIAN SOUGHT A WRIT OF MANDAMUS FROM THE DC CIRCUIT** . . . . . . . . . .   3

**B.**  **INDIAN VOLUNTARILY REMOVED THE DISPUTED ANTENNAS AFTER THE INITIAL LETTER RULING SAID THERE WAS NO "PROCEEDING"** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

**A.**  **THE LETTER RULINGS TOOK THE FCC ORDER OUT OF CONTEXT TO SET NEW SUBSTANTIVE POLICY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

1.  *Continental Airlines* is precedent for this case.  Indian provided Wi-Fi to its business invitees, as did Continental . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
2.  The *OTARD Fixed Wireless R&O* contradicts the Letter Rulings . . . . . . . . . . . . . . .   7
3.  The Letter Rulings took the *OTARD Fixed Wireless R&O* out of context . . . . . . . . .   8
4.  The Letter Rulings misconstrue the purpose of the Commission's ruling . . . . . . . . . .   10
5.  The Letter Rulings would disenfranchise the entire communications industry from filing an OTARD petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
6.  The Letter Rulings' artificial distinction should be rejected . . . . . . . . . . . . . . . . . . . .   12

**B.**  **THE LETTER RULINGS VIOLATED FCC RULES OF PROCEDURE** . . . . .   12

1.  The Commission gave clear guidance as to OTARD procedure . . . . . . . . . . . . . . . . .   13
2.  The Letter Rulings distort OTARD procedure to give unwarranted latitude . . . . . . . .   14
3.  The *Garziglia* letter should be reversed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
4.  The Bureaus breached the OTARD reliance interest. . . . . . . . . . . . . . . . . . . . . . . . .   18
5   The Letter Rulings adjudicated the merits of Indian's Petitions, abrogating OTARD procedure for impartial adjudication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

**C.**  **THE LETTER RULINGS VIOLATED INDIAN'S DUE PROCESS RIGHTS** .   22

1.  The Commission created a property interest giving rise to due process rights . . . . . .   22
2.  The Bureaus failed to give notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

**Attachments:**

Exhibit A – Final Letter Ruling of Wireless Bureau and Media Bureau
       (Dec. 13, 2022)


Exhibit B – Petition for Reconsideration of Indian Peak Properties LLC
       (Aug. 3, 2022)


Exhibit C – Initial Letter Ruling of Wireless Bureau and Media Bureau
       (Jul. 18, 2022)


Exhibit D – Petition for Declaratory Ruling of Indian Peak Properties (Antenna 2)
       (May 1, 2022)


Exhibit E – Petition for Declaratory Ruling of Indian Peak Properties (Antenna 3)
       (May 1, 2022)


Exhibit F – Petition for Declaratory Ruling of Indian Peak Properties (Antenna 4)
       (May 1, 2022)

# SUMMARY

Indian Peak Properties, LLC ("Indian") hereby seeks review of the letter ruling attached as <u>Exhibit A</u>.[1]  The Wireless Telecommunications Bureau and the Media Bureau (the "Bureaus") dismissed Indian's over-the-air reception device (OTARD) petitions twice, after delaying action on the first petition for two years.  The letter ruling misconstrues the term "service provider" in the Commission's *OTARD Fixed Wireless R&O*,[2] mistakenly claiming that Indian's tenants (mobile service licensees) are not cognizable OTARD users.  However, this is contradicted by the very paragraph in the *OTARD Fixed Wireless R&O* that is relied on by the letter ruling.

Indian is the only OTARD petitioner facing litigation that did not get shielded from the litigation as required by the OTARD Rule.  The letter rulings disregarded procedure prescribed in the *OTARD First Report and Order*,[3] and the OTARD Rule, 47 C.F.R. § 1.4000.  The Letter Rulings cite the *Garziglia* letter[4] as authority for mishandling Indian's OTARD petitions.  This division-level ruling misconstrued the Commission's 2011 amendment of rules of practice, and self-appropriated discretion not found in the FCC record.  The *Garziglia* letter should be reversed.  The Bureaus deprived Indian of due process, including: delay of two years, failure to provide notice of the procedure, failure to provide unbiased adjudication, and refusal to acknowledge that an OTARD proceeding had commenced to shield Indian from zoning enforcement litigation.  These violations of FCC rules and due process cost Indian hundreds of thousands of dollars in attorney fees and loss of use of the antennas.

---

[1] Letter from Garnet Hanley, Chief, Competition and Infrastructure Policy Division, Wireless Telecommunications Bureau, and Maria Mullarky, Chief, Policy Division, Media Bureau to Julian Gehman, counsel to Indian Peak Properties LLC (Dec. 13, 2022).
[2] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Report and Order 36 FCC Rcd. 537, 544 ¶ 20 (2021) (*OTARD Fixed Wireless R&O*).
[3] *Restrictions on Over-the-Air Reception Devices*, Report and Order, Memorandum Opinion and Order and Further Notice of Rulemaking, IB Dkt No. 95-59, CS Dkt No. 96-93, 11 FCC Rcd 19276 ¶¶ 53-58 (1996) (*OTARD First Report and Order*).
[4] *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013)

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Indian Peak Properties, LLC | ) |
| Petitions for Declaratory Ruling | ) |
| Under 47 C.F.R. § 1.4000 | ) |
| | ) |
| To: | ) |
| The Commission | ) |

## APPLICATION FOR REVIEW

Indian Peak Properties, LLC ("Indian") through counsel respectfully applies for review of

the letter ruling dated December 13, 2022 (the "Final Letter Ruling", attached as Exhibit A).[5]

The Final Letter Ruling denies Indian's Petition for Reconsideration, dated August 3, 2022

(attached as Exhibit B). Indian's Petition sought reconsideration – with respect to Antennas 2, 3

and 4 – of the Bureaus' dismissal, dated July 18, 2022 (the "Initial Letter Ruling," attached as

Exhibit C). The Initial Letter Ruling dismissed without prejudice Indian's Petitions for

Declaratory Ruling under the OTARD Rule, 47 C.F.R. § 1.4000. Antennas 2, 3 and 4 had been

installed by wireless Internet service providers (WISPs) on the roof of the house located at 26708

Indian Peak Road, Rancho Palos Verdes, California (the "Property"). The Final Letter Ruling

(Exhibit A) and the Initial Letter Ruling (Exhibit C) are referred to collectively as the "Letter

Rulings."

---

[5] Letter from Garnet Hanley, Chief, Competition and Infrastructure Policy Division, Wireless Telecommunications Bureau, and Maria Mullarky, Chief, Policy Division, Media Bureau to Julian Gehman, counsel to Indian Peak Properties LLC (Dec. 13, 2022). The Wireless Telecommunications Bureau and the Media Bureau are collectively referred to herein as the "Bureaus."

## RULE 1.115 STATEMENT

Rule 1.115(a) Statement: Indian Peak Properties LLC participated in the proceeding below.

Rule 1.115(b)(1) Questions presented for review:

1.      Whether mobile wireless licensees are "service providers" within the meaning of paragraph 20 of the *OTARD Fixed Wireless R&O*,[6] as tenants in the Property, using the Wi-Fi and hard-wired Internet access for their own internal operational purposes and, if so, whether this disqualifies Indian's Antennas 2, 3 and 4 from OTARD protection.

2.      Whether the Commission's 2011 amendment of rules of practice[7] applied 47 C.F.R. § 1.401(e) (authorizing denial or dismissal of petitions for specified reasons) to petitions for declaratory ruling under 47 C.F.R. § 1.2.

3.      Whether the word "should," in 47 C.F.R. § 1.2(b), gives a Bureau discretion to refrain from docketing a petition or placing it on public notice, as required by that rule section.

4.      If either of the above question 2 or 3 is answered in the affirmative, whether that gives Bureau staff discretion to disregard 47 C.F.R. § 1.4000(e), which requires that an OTARD petition "will be placed on public notice."

Rule 1.115(b)(2)(i)-(iii), (v) Commission consideration is warranted because: (i) Bureau handling of Indian's OTARD petitions conflicts with Commission orders; (ii) the Commission has not considered the legality of the *Garziglia* letter;[8] (iii) the *Garziglia* letter should be overturned; and (v) disregarding OTARD Rule procedure was prejudicial error.

Rule 1.115(b)(2) Form of relief sought: Indian's Petitions for Antennas 2-4, should be granted.

---

[6] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Report and Order 36 FCC Rcd. 537, 544 ¶ 20 (2021) ("*OTARD Fixed Wireless R&O*").
[7] *Amendment of Certain of the Commission's Part 1 Rules of Practice and Procedure and Part 0 Rules of Commission Organization*, Report and Order, 26 FCC Rcd 1594, 1597, ¶¶ 11-12 (2011).
[8] *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013).

## STATEMENT OF FACTS

**A. THE BUREAUS DELAYED RULING ON INDIAN'S OTARD PETITION FOR TWO YEARS AND ACTED PROMPTLY ONLY AFTER INDIAN SOUGHT A WRIT OF MANDAMUS FROM THE D.C. CIRCUIT**

On April 18, 2020, Indian filed a Petition for Declaratory Ruling seeking preemption, under the OTARD Rule, 47 C.F.R. § 1.4000 ("OTARD Rule"), of a decision by the City of Rancho Palos Verdes, California (the "City"), to revoke a conditional use permit for antennas on the Property pursuant to the City's zoning ordinance.[9]  Over a year and a half went by with no response or even acknowledgement from the FCC.  On December 10, 2021, Indian requested expedited action.[10]  Then, on January 21, 2022, Indian submitted a further request for expedited action.[11]  Indian submitted yet another letter on April 19, 2022, in which it again requested expedited action on the Petition.[12]  These letters, which were increasingly urgent, explained that the City was enforcing its zoning ordinance via litigation, and requested that the FCC shield Indian from the litigation pursuant to the OTARD Rule.  Finally, two years after the Petition had been filed, the Bureaus dismissed Indian's Petition without prejudice on April 22, 2022, stating that the Petition had provided insufficient information.[13]  In an effort to provide further information, and urgently needing a ruling in the face of aggressive zoning enforcement, Indian promptly filed five OTARD Petitions, covering Antennas 1, 2, 3, 4 and 5, respectively.  Indian filed these Petitions on or about May 1, 2022, or just over one week after the Bureaus' denial without prejudice of April 22, 2022.[14]

---

[9] Indian Peak Properties LLC Petition for Declaratory Ruling (Apr.18, 2020).
[10] Indian Peak Properties LLC, Supplement & Request for Expedited Action on Petition for Declaratory Ruling (Dec. 10, 2021).
[11] Letter from Robert J. Keller, Counsel to Indian, to Marlene H. Dortch, Secretary, FCC (Jan. 21, 2022).
[12] Letter from Toneata Martocchio, Counsel to Petitioner, to Marlene H. Dortch, Secretary, FCC (Jan. 21, 2022).
[13] Letter from Garnet Hanly, Chief, Competition & Infrastructure Policy Division, Wireless Telecommunications Bureau, to Toneata Martocchio, counsel to Indian (Apr. 22, 2022).
[14] Indian's Petitions for Antennas 2, 3, and 4 are attached hereto as Exhibit D, Exhibit E and Exhibit F, respectively. Of the five antennas covered by Indian's May 1, 2022, Petitions, Antenna 1 remains on the rooftop after the parties

Concerned that the Bureaus might take another two years to consider the newly filed Petitions, on June 3, 2022, Indian petitioned the United States Court of Appeals for the District of Columbia Circuit. Indian explained that the City was enforcing its zoning ordinance through litigation and asked the D.C. Circuit to issue a Writ of Mandamus to the FCC to (a) take action on Indian's Petitions, or (b) acknowledge receipt of Indian's Petitions and declare that a "proceeding" was initiated under the OTARD Rule.[15] The Court required the FCC to respond to Indian's Petition for Mandamus by July 22, 2022.[16] On July 18, 2022, the Bureaus issued the Initial Letter Ruling (Exhibit C) again dismissing the Petitions without prejudice, and stating that there was insufficient information to determine whether Antennas 2-4 are serving end users at the premises. The Initial Letter Ruling said, for the first time, that there was no OTARD "proceeding." On July 22, 2022, the Commission filed its Response at the D.C. Circuit, urging dismissal because the Commission had "disposed" of the Petitions.[17] On August 3, 2022, Indian submitted its Petition for Reconsideration that is attached hereto at Exhibit B. On September 2, 2022, the D.C. Circuit dismissed as moot Indian's Petition for Mandamus.[18]

**B.    INDIAN VOLUNTARILY REMOVED THE DISPUTED ANTENNAS AFTER THE INITIAL LETTER RULING SAID THERE WAS NO "PROCEEDING"**

Indian's defense against the City's litigation was that Indian's Petition started an OTARD "proceeding," which suspended the City's ability to enforce its zoning ordinance. 47 C.F.R. § 1.4000(a)(4). Indian relied on FCC guidance that if the antenna user has requested a determination, the restriction may not be enforced until the Commission issues a ruling that the

---

agreed that it is covered by the OTARD Rule; Antennas 2, 3 and 4 were taken down and are subject of this Application for Review; and Antenna 5 is not in dispute because Indian took it down and is not pursuing it.
[15] *In re Indian Peak Properties LLC*, Petition for Writ of Mandamus, No. 22-1098, D.C. Cir. (Jun. 3, 2022).
[16] Order, *In re Indian Peak Properties LLC*, No. 22-1098, D.C. Cir. (Jul. 1, 2022).
[17] Response of Federal Communications Commission, *In re Indian Peak Properties LLC*, No. 22-1098, D.C. Cir. (Jul. 22, 2022).
[18] Order, *In re Indian Peak Properties LLC*, No. 22-1098, D.C. Cir. (Sep. 2, 2022).

restriction is not preempted.[19]  However, the Initial Letter Ruling said that Indian's Petitions did not initiate a proceeding.[20]  Upon review of the Initial Letter Ruling, Indian determined that it could no longer in good faith raise the "proceeding" defense in state court litigation and voluntarily removed the disputed antennas from the Property rooftop.  With a favorable ruling from the Commission, Antennas 2, 3, and 4 can be reinstalled and WISP broadband service restored.

Indian incurred several hundred thousand dollars in legal fees, in opposing the City's zoning enforcement in reliance on the FCC's published guidance, and liability for a judgment to pay the City's attorneys fees.  And, Indian lost the use of Antennas 2-4.

## ARGUMENT

### A.    THE LETTER RULINGS TAKE THE FCC'S ORDER OUT OF CONTEXT TO SET NEW SUBSTANTIVE POLICY

#### 1.    *Continental Airlines* is precedent for this case.  Indian provided Wi-Fi to its business invitees, as did Continental.

Indian owns the Property and had been the customer to WISP service providers LT-WR, LLC (Antenna 2), GeoLinks (Antenna 3) and One Internet America (Antenna 4).  The customer agreements and payment records with these WISPS are included in Indian's Petitions.[21]

Antennas 2, 3 and 4 provided Wi-Fi and hard-wired Internet access to the Property. Three antennas were needed for redundancy because of WISP service outages.  The Property is located close to the beach and subject to a nearly constant marine layer, as well as temperature inversion on hot days and strong winds from storms.  Consequently, radio reception in this area is difficult, and there are outages in WISP and other radio services.  Antennas 2, 3 and 4 were

---

[19] *Infra* 12-13.
[20] Initial Letter Ruling 8-9.
[21] Exh. D at 36-58 (LT-WR), Exh. E at 37-69 (GeoLinks), Exh. F at 36-76 (One Internet).

tied together by a Cisco ethernet switch that failed over to the next service provider when the

first service went down.  This comprised a single broadband service to the Property with

redundant sources.   The three antennas were installed by three different WISPs operating on

different frequencies and transmitting over different paths.  This configuration provided

redundancy and helped to assure uninterrupted broadband service during difficult weather. Even

with three different WISPs, the cost was less expensive than wireline broadband available at this

address.  The replacement wireline broadband recently had a 48-hour outage which would not

have happened with the WISPs.  Upon a favorable ruling from the FCC, the WISP configuration

could be replicated.  Antenna 2 is not a hub or relay antenna, while Antennas 3 and 4 are hub

antennas.[22]

     Indian, its employees, and its owner James Kay, use the Property and use the Wi-Fi and

hard-wired Internet access service.  Indian also rents discrete portions of the Property to two

tenants, Fisher Wireless Services, Inc. and Comm Enterprises, LLC, both of which are mobile

wireless licensees (James Kay, the owner of Indian, is also the owner of Comm Enterprises and

LT-WR).  The tenants have used the Wi-Fi and hard-wired Internet access service.  Fisher

Wireless and Comm Enterprises each have employees who access the Property and, of course,

used the Wi-Fi and hard-wired Internet access service.  This is similar to *Continental Airlines*,

where Continental provided Wi-Fi (Internet access) service to its business invitees.[23]  Here,

Indian provided Wi-Fi and hard-wired Internet access to its business invitees.

     Indian's Petition for Reconsideration noted that:

Indian and its tenants, Fisher Wireless and Comm Enterprises, have been customers, as
well as end users.  They have been customers because Indian pays the broadband service
providers, and the tenants pay for the service with their rent payments.  They have been
end users because they do not re-sell or re-transmit the broadband access, nor do they

---

[22] Exh. D at 7 (Antenna 2), Exh. E at 8 (Antenna 3), Exh. F at 8 (Antenna 4).
[23] *Continental Airlines*, 21 FCC Rcd 13201 (2006).

combine it with another service to provide a value-added service to end users.  Instead they have used it in their own internal operations such as to check the status of sensors and alarms that are connected to the Internet.[24]

Indian's configuration was very different from that of a hub or relay antenna that forwards signals onward from the rooftop antenna.  As noted, cables from Antennas 2, 3 and 4 entered the house and met at a Cisco ethernet router that selected signals from one of the three antennas to provide Wi-Fi and hard-wired Internet access within and around the Property.  This served as a single broadband service to the Property with redundant sources.  From there, the tenants used the Internet access for their own internal purposes.  This is different from a hub or router antenna that forwards broadband signals onward from one rooftop antenna to the next.

## 2.    The *OTARD Fixed Wireless R&O* contradicts the Letter Rulings.

Notwithstanding the similarity to *Continental Airlines*, the Letter Rulings dismissed the Petitions for Antennas 2, 3 and 4.  The Letter Rulings object to Indian's tenants, Fisher Wireless Services, Inc. and Comm Enterprises, LLC.  The Initial Letter Ruling said:

> When the Commission expanded the scope of the OTARD Rule in 2021, it determined that "the rule will not treat service providers as antenna users."  In this case, the record indicates that users of Antennas 2-4 each appear to be communications service providers.[25]

The Final Letter Ruling, at 3, further claims that "the record does not identify any non-communications-service-provider who regularly resides at or uses the premises."  Taking the Bureaus' claim at face value, Indian's tenants are "service providers" within the meaning of this order, and the very sentence that the Initial Letter Ruling relies on contradicts the Bureaus' claim.  Following is the full sentence that the Letter Rulings reference:

---

[24] Exh. B at 11.
[25] Initial Letter Ruling at 5, quoting *OTARD Fixed Wireless R&O* ¶ 20 (internal citation omitted).

The revised rule will not treat service providers as antenna users, and **their agreements with building owners therefore would be subject to OTARD protection only if the building owner is itself a customer.**[26]

Indian is the building owner and is itself the customer.[27]  Following the Bureaus' logic that the tenants are "service providers," this sentence says that the tenants' agreements with Indian are subject to OTARD protection.  Thus, OTARD protection applies to Antennas 2, 3 and 4.  An earlier sentence in this same paragraph 20 says the same thing: "the new rule would not apply to the placement of hub and relay antennas on a building rooftop **unless the building owner is a customer of the provider**."[28]  Indian is the building owner and is itself a customer of the providers; therefore, the new rule applies.  The very sentence and paragraph on which the Letter Rulings rely contradict their reason to dismiss Indian's petitions.

### 3.    The Letter Rulings took the *OTARD Fixed Wireless R&O* out of context.

In fact, Indian's tenants are *not* "service providers" within the meaning of this order.  The Letter Rulings took the term "service provider" out of context and turned it into "communications service provider."  According to the Bureaus, mobile wireless licensees Fisher Wireless and Comm Enterprises are "communications service providers" that must be "service providers," and excluded from OTARD protections.

It is well established that, "[w]ords that can have more than one meaning are given content [] by their surroundings."[29]  A vague or ambiguous provision acquires a plain meaning when read in light of the entire order.[30]  "Service provider" is such an ambiguous provision; it

---

[26] *OTARD Fixed Wireless R&O* ¶ 20.
[27] The WISP/Indian customer agreements and Indian's payment records appear in the Petitions. Exhibit D at 36-58 (LT-WR), Exhibit E at 37-69 (GeoLinks), Exhibit F at 36-76 (One Internet).
[28] *OTARD Fixed Wireless R&O* ¶ 20 (emphasis added).
[29] *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 466 (2001) (construing statutory term "public health").
[30] *Bruce v. Samuels*, 577 U.S. 82 (2016); *Arizona v. Inter Tribal Coun. of Arizona*, 570 U.S. 1 (2013).

has many meanings.[31]  Therefore, the context of the FCC's "service provider" statement must be examined.  The Commission's *2019 NPRM* sought comment on:

> Should the Commission clarify that it will interpret "antenna user" to include fixed wireless service providers?  For example, if a fixed wireless service provider leases space for a hub antenna on private property, should the Commission clarify that the service provider becomes the antenna user with respect to that property?[32]

The *OTARD Fixed Wireless R&O* ¶ 20 resolves this question in the negative:

> The revised rule will not treat service providers as antenna users, and their agreements with building owners therefore would be subject to OTARD protection only if the building owner is itself a customer.

The Commission used "service provider" to mean the company that leases rooftop space for the antenna, installs the antenna and provides the broadband service via the antenna.  This is shown by the very sentence that the Initial Letter Order quotes ("The revised rule will not treat **service providers** as "antenna users," and **their agreements** with building owners therefore would be subject to OTARD protection only if the building owner is itself a customer").[33]  The phrase "their agreements" refers back to "service providers," demonstrating that service providers negotiate agreements with building owners.  The entire paragraph 20 deals with the relationship between "fixed wireless service providers" and landlords and the need for the service providers to "negotiate agreements with appropriate parties for the placement of their antennas in areas where the property owner or lessee has exclusive use of control."  *Id.*

Finally, the purpose of this Order is to "place fixed wireless broadband-only service providers on similar competitive footing with other service providers."[34]  This contradicts the

---

[31] *See, e.g.,* Wikipedia: "A **service provider (SP)** is an organization that provides services such as consulting, legal, real estate, communications, storage, and processing services, to other organizations." https://en.wikipedia.org/wiki/Service_provider (emphasis in original) (viewed Jan. 4, 2023).

[32] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Notice of Proposed Rulemaking, 34 FCC Rcd 2695 ¶ 10 (2019) (*2019 NPRM*).

[33] *OTARD Fixed Wireless R&O* ¶ 20 (emphasis added).

[34] *OTARD Fixed Wireless R&O* ¶ 1.

Final Letter Ruling's claim that "the Commission intended to differentiate between service providers and customers receiving service."[35]  In fact, the Commission differentiated between "fixed wireless broadband-only service providers" and "other service providers."[36]  The Initial Letter Ruling took "service provider" out of context, and the Final Letter Ruling attempted to justify it with a rationale that misstates the *OTARD Fixed Wireless R&O*.

Applying the Order's usage of "service provider" to the present situation, LT-WR LLC is the service provider for Antenna 2, GeoLinks is the service provider for Antenna 3, and OneInternet America is the service provider for Antennas 4.  Indian's tenants, Fisher Wireless and Comm Enterprises, are users, not service providers for Antennas 2-4.

**4.      The Letter Rulings misconstrue the purpose of the *OTARD Fixed Wireless R&O*.**

The Final Letter Ruling at 4 opines that "we see no reason the Commission would disqualify antenna "use" by the antenna owner to serve offsite customers but apply OTARD protection to the antenna based on another service provider's use of the antenna to support the provision of service to its own offsite customers."  The purpose of the disqualification of antenna owners' "use" was so that "fixed wireless service providers will still need to negotiate agreements with" property owners or lessees.[37]  The Commission responded to property owners' concerns about loss of control over property by continuing to require the antenna owner to negotiate with the owner or lessee.  The Commission's purpose was to respect property rights, not regulate how communications companies get their Internet access.  Denial of Indian's Petitions does not further the Commission's purpose.  Indian is the property owner and Indian's property rights are not harmed by having its tenants use the broadband service from the antennas

---

[35] Final Letter Ruling 4.
[36] *Supra* n34.
[37] *OTARD Fixed Wireless R&O* ¶ 20.

to help serve offsite customers.  In fact, it's the opposite: the Letter Rulings' refusal to follow the OTARD Rule infringes Indian's property rights (more on this below).  The Letter Rulings' interpretation cuts against the Commission's purpose of respecting property rights, and the FCC's mission to make available nationwide radio communication service.[38]

### 5. The Letter Rulings would disenfranchise the entire communications industry from filing an OTARD petition.

The far-fetched Letter Rulings have unintended consequences. They disenfranchise an entire class of potential OTARD users.  T-Mobile, AT&T, Verizon, Comcast, and other communications service providers are "intermediate service providers" (*see* Final Letter Ruling 4) that are precluded from filing an OTARD petition for themselves.  For example, if a T-Mobile office takes commercial broadband service from a rooftop hub antenna, the company could not file an OTARD petition to protect that antenna.  Broadband service from that antenna would help to provide service to offsite customers, which purportedly is removed from OTARD protection under the far-fetched Letter Rulings.

Moreover, Antenna 2 is not a hub or relay antenna,[39] and the *OTARD Fixed Wireless R&O* has no impact on Antenna 2.  Nevertheless, the Letter Rulings denied that Petition, apparently, on the "service provider" rationale.  This precedent disqualifies *any* communications provider, even where a hub antenna is not involved.  The Letter Rulings are setting new policy reaching far beyond the plain wording of the Commission's *OTARD Fixed Wireless R&O.*  A notice-and-comment rulemaking is required to disqualify the entire communications industry.

---

[38] 47 U.S.C. § 151.
[39] Exhibit D at 7.

### 6.    The Letter Rulings' artificial distinction should be rejected

Finally, the Commission ruled that "the revised rule applies equally to all fixed wireless antennas . . . There is no longer any reason to maintain the definitional distinction in our rule between these types of antennas and, accordingly, we eliminate it."[40]  The Letter Rulings' attempt to layer on a new definitional distinction of "communication service provider" or "intermediate service provider" should similarly be rejected.  Antennas 2, 3 and 4 satisfy the requirements of the OTARD Rule, and the petitions should be granted.

In summary, the Letter Rulings should be reversed because:

1.    Paragraph 20 of the *OTARD Fixed Wireless R&O* protects service providers where the building owner is itself a customer, which Indian is;

2.    "Service provider" in this R&O refers to fixed wireless broadband providers that install and operate rooftop antennas, not to Indian's tenants, which are using the broadband service for internal purposes;

3.    The Letter Rulings' actions do not further the R&O's purpose of respecting property rights but instead cut against that goal by infringing Indian's property rights, and also cut against the Commission's core mission of promoting nationwide radio communication; and

4.    The Letter Rulings have unintended consequences negatively impacting the communications industry.

### B.    THE LETTER RULINGS VIOLATED FCC RULES OF PROCEDURE

The Bureaus delayed acting on Indian's OTARD Petition for two years.  They did not follow the OTARD Rule, 47 C.F.R. § 1.4000, or the Declaratory Ruling Rule, 47 C.F.R. § 1.2.

---

[40] *OTARD Fixed Wireless R&O* at ¶ 11.

These rules mandate stay of zoning enforcement, and placement of the OTARD petition on public notice, with the burden of proof on opponents.

### 1.    The Commission gave clear guidance as to OTARD procedure

Three sources of FCC guidance require this procedure.  *First*, in implementing Congress' mandate, the Commission said that once a petition is filed, that does not involve a safety or historical preservation issue, "the restriction may not be enforced until the Commission or a court of competent jurisdiction issues a ruling that the restriction is not preempted."[41]  The Property presents no safety or historical preservation issues.

*Second*, the Commission website provides the following guidance:

**Q: Can I continue to use my antenna while the petition of waiver request is pending?**

A: Yes, unless a restriction being challenged or for which a waiver is sought is necessary for reasons of safety or historic preservation.  Otherwise, the restriction cannot be enforced while the petition is pending. [42]

*Third*, upon submission of a petition, the OTARD Rule provides that: (a) there is a stay on zoning enforcement until a determination on the merits is made,[43] (b) the petition "**will be put on public notice**,"[44] (c) the burden of proof falls on the municipality or homeowner association to persuasively oppose,[45] and (d) implicitly, the Commission is neutral arbiter in adjudicating. The OTARD Rule's shield from litigation is not conditioned on the Bureaus deciding that a petition will "identify a dispute that implicates the OTARD rule."  Rather, the OTARD Rule is

---

[41] *Preemption of Local Zoning Regulation of Satellite Earth Stations*, Report and Order, IB Docket No. 95-59, and Further Notice of Proposed Rulemaking in CS Docket No. 96-83, 11 FCC Rcd 19276 ¶ 53 (1996) (*OTARD First Report and Order*).
[42] https://www.fcc.gov/media/over-air-reception-devices-rule (last viewed Dec. 19, 2022).
[43] 47 C.F.R. § 1.4000(a)(4).
[44] 47 C.F.R. § 1.4000(e) (emphasis added).
[45] 47 C.F.R. § 1.4000(g).

explicit: "[p]etitions to the Commission must comply with the procedures of paragraphs (f) and (h) of this section **and will be put on public notice**."[46]

### 2.  The Letter Rulings distort OTARD procedure to give unwarranted latitude

Nevertheless, the Letter Rulings erect an edifice purporting give the Bureaus discretion to avoid following the Commission's clear guidance.  The Initial Letter Ruling (at 8-10) offers a byzantine rationale for not declaring that a "proceeding" was initiated: *First,* "the Commission intended to make the process for petitions for declaratory ruling 'similar' to that for rulemaking," and rulemaking petitions may be denied or dismissed under certain circumstances, 47 C.F.R. § 1.401(e); *Second,* Rule 1.2(b) utilizes the word "should" thereby giving staff discretion to ignore the docketing requirement; and *Third,* the relevant FCC Order recognized circumstances where the docketing procedure "should *not* be used."[47]  However, none of this is supported by FCC orders.  This is bureau-made policy that exceeds delegated authority.

*First*, the purpose for processing petitions for declaratory ruling similar to rulemaking petitions was to eliminate the impractical ten-day window for filing oppositions to a petition for declaratory ruling, not to give bureau staff wide ranging discretion.  In the 2011 update of Commission rules of practice (the "*Rules of Practice R&O*"), Verizon proposed that the Commission revise its rules so that the time to file oppositions to petitions for declaratory ruling is not governed by the default ten-day rule found in Rule 1.45(b) but instead treated like rulemakings which are docketed with a comment deadline appearing in the public notice.[48]  This previous practice often gave interested parties insufficient time to understand and respond to

---

[46] 47 C.F.R. § 1.4000(e) (emphasis added).  Paragraphs (f) and (h) require that interested parties be served and factual assertions be backed by an affidavit of a person with knowledge.  Indian's Petitions satisfied these requirements.
[47] Initial Letter Ruling 8.
[48] *Amendment of Certain of the Commission's Part 1 Rules of Practice and Procedure and Part 0 Rules of Commission Organization*, Report and Order, 26 FCC Rcd 1594, 1597, ¶¶ 11-12 (2011) (*Rules of Practice R&O*).

complex issues presented by petitions for declaratory ruling.  The Commission agreed and added

47 C.F.R. § 1.2(b) to require that petitions for declaratory ruling be docketed with a default

deadline for oppositions of 30 days from the public notice.  *Id.*

> The Initial Letter Ruling refers to the following from the *Rules of Practice R&O*:
>
> We therefore determine that petitions for declaratory ruling should be
> handled in a similar manner to petitions for rulemaking under Section 1.106, rather than
> in accordance with Section 1.45(b).  **That is, each petition should be docketed**. . .. We
> will amend the existing rule involving declaratory rulings, Section 1.2, to reflect these
> requirements.  *Id.* at ¶ 11 (emphasis added).

The purpose was to give interested parties time to understand the complex issues that are

sometimes presented by a petition for declaratory ruling.  *Id.*  The phrase "[t]hat is" tells the

reader what the similarity to rulemaking will be, namely, that there will be a docketing and

public notice requirement. Moreover, in stating that Section 1.2 would be amended "to reflect

these requirements," the Commission indicated that the full scope of the change to FCC policy is

embodied in Rule 1.2(b), which was added in that action.  Rhetorical devices ("That is" and "We

will amend . . . Section 1.2, to reflect these requirements") circumscribe the limits of similarity to

rulemaking.  The *Rules of Practice R&O* incorporated only a select part of rulemaking procedure

(docketing and public notice).  The *Rules of Practice R&O* did <u>not</u> incorporate rulemaking

procedure wholesale, as suggested by the Bureaus.  In particular, there was no discussion of

applying 47 C.F.R. § 1.401(e) (authorizing denial or dismissal of rulemaking petition) to

petitions for declaratory ruling.  *Id.*  The *Rules of Practice R&O* makes no reference whatsoever

to Rule 1.401.  As noted, the Commission's purpose was to give interested parties time to

understand the issues, which would not be furthered by Rule 1.401(e).  In short, the *Rules of*

*Practice R&O* did not authorize application of Rule 1.401(e) to petitions for declaratory ruling.

*Second*, turning to the text of Rule 1.2(b), 47 C.F.R. § 1.2(b), the Initial Letter Ruling sees significance in the word "should," claiming that it gives staff discretion to refrain from the docketing requirement of that rule.[49]  This is misplaced for several reasons.  Dictionary definitions of "should" reference obligation or duty, not discretion.[50]  Where the rule says staff "should" do something, it means that staff are obligated to do it.  In delegations of authority, discretion traditionally is granted by the word "may," not the word "should."  Moreover, when the FCC grants discretion to bureaus, it does so explicitly, not with a subtle hint like "should."  For example, in paragraph 10 of the *Rules of Practice R&O*, the FCC used explicit language: "[d]uring this transition to a comprehensive docketing regime, we will permit bureaus and offices not to assign a formal docket number to certain proceedings if, in the considered judgment of staff, docketing would raise special technical difficulties . . .."[51] The Commission made this and other grants of discretion explicitly, not indirectly.  If "should" were intended to have the discretionary meaning claimed by the Bureaus, the Commission would have said so in paragraphs 11-12 of the *Rules of Practice R&O*.[52]

*Third*, the Initial Letter Ruling cites to the above quoted paragraph 10 to claim that the *Rules of Practice R&O* recognized that sometimes docketing and public notice procedures "should *not* be used."[53]  However, that's not what paragraph 10 says.  Moreover, by its terms, the

---

[49] Initial Letter Ruling 8 (citing *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013)).  Rule 1.2(b) provides in part, "[t]he bureau or office to which a petition for declaratory ruling has been submitted or assigned by the Commission *should* docket such a petition . . .."  47 C.F.R. § 1.2(b) (emphasis added).
[50] Dictionary.com ("must; ought (used to indicate duty, propriety or expediency)").
https://www.dictionary.com/browse/should.  *See also* The Free Dictionary
https://www.thefreedictionary.com/should; Cambridge English Dictionary
https://dictionary.cambridge.org/dictionary/english/should; Merriam-Webster https://www.merriam-webster.com/dictionary/should; Collins English Dictionary
https://www.collinsdictionary.com/dictionary/english/should (viewed Jan. 4, 2023).
[51] *Rules of Practice R&O* at ¶ 10.
[52] *Supra* n48.
[53] Letter Ruling 8 (emphasis in original).

grant of discretion appearing in paragraph 10 lapsed when the new docketing system came online.  The bureaus have been using the docketing system for some time, including for the OTARD petition filed against the City of Chicago.[54]

### 3.    The *Garziglia* letter should be reversed

Indian's Petition for Reconsideration set out the foregoing.[55]  Instead of responding to Indian's showings, the Final Letter Ruling summarily ruled that Indian's arguments had been "fully considered and rejected," and that Rule 1.2 "has been interpreted as according discretion to the Commission to avoid seeking comments on" selected petitions.[56]  As support for this, the Final Letter Ruling cited the *Garziglia* letter again.  *Id.*  That the Final Letter Ruling utilized an authoritarian response ("fully considered and rejected"), rather than providing a reasoned reply to Indian's arguments, suggests that there is no good reasoned response.   If the Bureaus are unwilling or unable to give a reasoned explanation of how Indian's showings are incorrect, then the *Garziglia* letter should be dropped as precedent.

The *Garziglia* letter self-appropriates discretion that the *Rules of Practice R&O* does not grant. The *Garziglia* letter says, "[i]n adopting Rule 1.2(b), the Commission intended to make petitions for declaratory ruling 'similar' to rulemaking" by incorporating Rule 1.401(e).  26 FCC Rcd at 4146.  As shown above, *supra* 13-16, the *Rules of Practice R&O* says absolutely nothing about Rule 1.401 and employs rhetorical devices to delimit the part of rulemaking procedure that is being incorporated (public notice and comment).  Because it is not included, Rule 1.401(e) is excluded from the items incorporated into declaratory ruling procedure.

---

[54] *In the Matter of Satellite Broadcasting & Communications Association, DIRECTV, LLC, and DISH Network L.L.C., Petition for Declaratory Ruling Under 47 CFR §1.4000*, Declaratory Ruling, MB Docket No. 20-284 (MB 2021).
[55] Recon. Petition, Exh. B, at 5-9.
[56] Final Letter Ruling at 4-5.

The *Garziglia* letter also says the word "should" in Rule 1.2(b) gives discretion to disregard docketing and public notice requirements.  26 FCC Rcd at 4146.  Again, the *Rules of Practice R&O* says nothing about this.  As shown above, *supra* 13-16, dictionary definitions of "should" indicate that staff are obligated to do so.  Moreover, the Commission does not casually grant discretion and would have said so explicitly if it were granting discretion.

The *Garziglia* letter exceeds delegated authority.  Notice-and-comment rulemaking by the Commission would be required to incorporate Rule 1.401(e) into declaratory ruling procedure, and to turn "should" into "may" in Rule 1.2(b).  The Bureaus lack authority to do this. Mechanically citing to the *Garziglia* letter does not rescue it from having improperly appropriated discretion in the first place, nor does it serve as precedent for the present action. The Letter Rulings cite to no Commission endorsement of the *Garziglia* letter.  The *Garziglia* letter survived because it apparently has not been challenged.  It is bad precedent and should be reversed.

### 4.    The Bureaus breached the OTARD reliance interest.

The OTARD Rule says that "[p]arties may petition the Commission for a declaratory ruling" under Rule 1.2.[57]  OTARD petitions are a special breed of petition for declaratory ruling because they have a strong reliance interest.  The Commission invites this type of petition.  In 1996, the FCC said that if an antenna user has requested a determination from the Commission, the zoning restriction may *not* be enforced where there is no safety or historical preservation issue.[58]  The Commission essentially said, "Go ahead, put up your OTARD-compliant antennas, and you will be protected from zoning enforcement until the petitions are adjudicated."  An

---

[57] 47 C.F.R. § 1.4000(e).
[58] *OTARD First Report and Order* at ¶ 53.

antenna user is invited to disobey inconsistent zoning ordinances, and then rely on the FCC when local authorities seek to enforce the ordinance.  The FCC says to the disobedient antenna user:

**Q: Can I continue to use my antenna while the petition of waiver request is pending?**

A: Yes, unless a restriction being challenged or for which a waiver is sought is necessary for reasons of safety or historic preservation.  Otherwise, the restriction cannot be enforced while the petition is pending.[59]

This creates a reliance interest among antenna users: if an antenna user puts herself at risk of litigation by erecting an OTARD-compliant antenna, she will be shielded from zoning enforcement.  The *quid pro quo* of reliance is that the Commission has to actually follow through and shield the petitioner.  There is a huge disconnect between the reliance interest established by the Commission and the Bureaus' mishandling of Indian's Petitions.  The Bureaus' two-year delay; refusal to invoke a "proceeding" to shield from litigation; assertion of unbounded discretion to delay consideration indefinitely; and declaration that a petition does not "implicate the OTARD Rule" – none of this comports with the OTARD reliance interest.  Reliance interests are enforceable against the FCC.[60]  The Commission is held to its guidance.  This Application for Review asks the Commission to make good on its OTARD guidance.

> 5.    **The Letter Rulings adjudicated the merits of Indian's petitions, abrogating OTARD procedure for impartial adjudication**

The Commission's procedure (set out in the above recited *OTARD First Report and Order*, website Q&A guidance and OTARD Rule) would help to assure an impartial adjudication.  As noted, the Bureaus are supposed to initiate an adversarial process of public notice and comment on the OTARD petition, with the burden of proof on opponents.  However, the Letter Rulings did not follow the OTARD Rule, claiming that Indian's Petitions "failed to

---

[59] https://www.fcc.gov/media/over-air-reception-devices-rule (last viewed Dec. 19, 2022).
[60] *See, e.g., RKO General Inc. v. FCC,* 670 F.2d 215, 223 (D.C. Cir. 1981), *cert. denied,* 452 U.S. 927 (1982) (remanding where licensee detrimentally relied on previous FCC guidance).

include allegations with sufficient detail, clarity and accuracy to identify a dispute that implicates the OTARD rule."[61]  With this statement, the Letter Rulings admit that the Bureaus adjudicated the merits of Indian's Petitions.  By definition, if the petition implicates the OTARD Rule, the zoning restriction is preempted.  Determination of whether the OTARD Rule is implicated constitutes adjudication.

This is borne out by the OTARD "adjudications."[62]  The petitioner won every single formal adjudication of an OTARD petition.[63]  Of these, three petitions were granted in part and denied in part,[64] while the rest were granted in full.  Every petitioner was able to place his or her antennas, including the ones that were denied in part.  These were not real adjudications.  The outcome was pre-determined.  There was no actual controversy as to whether preemption applied.  That had been ascertained in the screening phase.  The real adjudication occurred in the screening before the petition was put on public notice.  That's where it was decided whether the petition implicates the OTARD Rule.  The screening phase is the only place where petitions have

---

[61] Final Letter Ruling 5.

[62] *See* https://www.fcc.gov/media/over-air-reception-devices-rule (listing adjudicated OTARD petitions) (viewed Jan. 4, 2023).

[63] Satellite B'casting and Comm. Ass'n., Decl.Rul., MB Docket No. 20-284 (Jan. 11, 2021); Satellite B'casting and Comm. Ass'n., Decl.Rul., DA 18-393 (Apr. 18, 2018); Brent Beumel, Jr., Decl.Rul., DA 16-190 (Feb. 23, 2016); Corey & Juanita Walker, Decl.Rul., DA 11-1271 (Jul. 27, 2011); Policarpo & Lourdes Medios, MO&O, DA 10-2153 (Nov. 8, 2010); Craig Wirth, Decl.Rul., DA 10-2150 (Nov. 5, 2010); Constance M. Lane and Daniel F. Lane, Decl.Rul., DA 09-2272 (Oct. 30, 2009); Richard Rhoad, Decl.Rul., DA 09-1675 (Jul. 29, 2009); William Culver, Decl.Rul., DA 09-1674 (Jul. 29, 2009); James S. Bannister, Decl.Rul., DA 09-1673 (Jul. 29, 2009); Philip Wojcikewicz MO&O, FCC 07-98 (May 25, 2007), MO&O, DA 03-2971 (Sep. 29, 2003); Continental Airlines, MO&O, FCC 06-157 (Nov. 1, 2006); Michael and Alexandra Pinter, Decl.Rul., DA 04-2839 (Sep. 1, 2004); Victor Frankfurt, MO&O, FCC 03-210 (Aug. 27, 2003), Decl.Rul., DA 01-0153 (Feb. 7, 2001), Decl.Rul., DA 97-2305 (Dec 31, 1997); Corey Roberts, Decl.Rul., DA 01-0153 (May 24, 2001); Bell Atlantic Video, Decl.Rul., DA 00-927 (Apr. 26, 2000); Stanley and Vera Holliday, Decl.Rul., DA 99-2132 (Oct. 8, 1999); Jay Lubliner, MO&O, FCC 98-201 (Aug. 21, 1998), Decl.Rul., DA 97-2188 (Oct. 14, 1997); James Sadler, Decl.Rul., DA 98-1284 (Jul. 1, 1998); Jordan Lourie, Decl.Rul., DA 98-1170 (Jun. 17, 1998); Jason Peterson, Decl.Rul., DA 98-0199 (Feb. 4, 1998); Wireless Broadcasting Systems, Decl.Rul., DA 97-2506 (Nov. 28, 1997); Omnivision, Decl.Rul., DA 97-2187 (Oct. 14, 1997); Star Lambert, Decl.Rul., DA 97-1554 (Jul. 27, 1997).

[64] Richard Rhoad, Decl.Rul., DA 09-1675 (Jul. 29, 2009); Michael and Alexandra Pinter, Decl.Rul., DA 04-2839 (Sep. 1, 2004); Victor Frankfurt, MO&O, FCC 03-210 (Aug. 27, 2003).

been denied outright (*Multifamily Broadband Council*[65] and, now, *Indian Peak Properties, LLC*). The Bureaus call it a dismissal but these petitions effectively were denied because the Bureaus found they did not implicate the OTARD Rule.  In screening/adjudicating Indian's OTARD petitions, the Bureaus acted as prosecutor, judge and jury.  This contravened the procedure set out in the *OTARD First Report and Order* and the OTARD Rule, which help assure an impartial adjudication.  It short-circuited the adversarial public notice and burden of proof on opponents.

The Final Letter Ruling attempts to justify its refusal to follow the OTARD Rule because initiating a proceeding "immediately alters the parties' legal rights by staying the local government action."  Final Letter Ruling 5.  However, this is exactly what the OTARD rule contemplates – the same could be said about every OTARD petition.  The Commission's discretion to "conduct its proceedings as will best conduce to the proper dispatch of business and the ends of justice," quoted in the Final Letter Ruling 5, does not authorize the Bureaus to ignore the procedure set out by the Commission's *OTARD First Report and Order* and OTARD Rule.

In further attempt to justify their refusal to follow procedure, the Letter Rulings assert that the OTARD Rule "includes procedural and substantive requirements."[66]  However, in fact, the OTARD Rule includes minimal procedural requirements: petitions and pleadings must be served on interested parties and supported by an affidavit of a person with actual knowledge.[67] The Letter Rulings do not claim that Indian failed these requirements.  The OTARD Rule imposes <u>no</u> substantive requirements for a petition.  The OTARD Rule is explicit: "[p]etitions to

---

[65] *Petition for Declaratory Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017) (dismissing OTARD petition).
[66] Final Letter Ruling 2.
[67] 47 C.F.R. §§ 1.4000(f), (h).

the Commission must comply with the procedures of paragraphs (f) and (h) of this section **and will be put on public notice**."[68]

Indian's Petitions clearly addressed the subject matter of the OTARD Rule – rooftop antennas of the right size and height, with clear evidence of Indian's customer relationships with WISPs, and statement of the City's zoning ordinance and abatement orders.  However, the Letter Rulings "screened" Indian's Petitions based on the bureau-made "service provider" rationale. This was an adjudication.  Under the OTARD Rule and the *OTARD First Report and Order*, Indian's petitions should have gone on public notice.  At a minimum, the petitions should have been docketed and the zoning litigation stayed while the Bureaus issued their Letter Rulings and Indian pursued reconsideration and review until "the Commission . . . issues a ruling that the restriction is not preempted."[69]  Indian was the only petitioner to face zoning enforcement litigation that did not receive the OTARD shield from litigation.  The Bureaus acted in an arbitrary and discriminatory manner.

## C.    THE LETTER RULINGS VIOLATED INDIAN'S DUE PROCESS RIGHTS

### 1.    The Commission created a property interest, giving rise to due process rights

The Supreme Court has ruled that a legitimate claim of entitlement to a benefit forms a property interest for due process purposes.[70]  The OTARD Rule establishes such a legitimate claim: "[p]etitions to the Commission must comply with the procedures of paragraphs (f) and (h) of this section **and will be put on public notice**."[71]  Indian was entitled to have its Petitions placed on public notice and, concomitantly, shielded from litigation.  The Letter Rulings deprived Indian of this property by refusing to open a "proceeding."  This cost Indian hundreds

---

[68] 47 C.F.R. § 1.4000(e) (emphasis added).
[69] *OTARD First Report and Order* ¶ 53.
[70] *Board of Regents of State Colleges Et. al. v. Roth*, 408 U.S. 564, 577 (1972).
[71] 47 C.F.R. § 1.4000(e) (emphasis added).

of thousands of dollars and loss of use of the antennas.  Indian explained the hardship of defending against zoning litigation and requested relief.  In response, the Bureaus deliberately refused to invoke a "proceeding" to shield from litigation.

Indian owns the Property and has a property interest in the use of Antennas 2, 3 and 4. The *OTARD Fixed Wireless R&O*, at ¶ 33, recognizes that property interests are at stake in the placement of OTARD antennas on rooftops.  The Bureaus' mishandling of Indian's OTARD petitions deprived Indian of this property.  The Letter Rulings applied the improper "service provider" standard, putting the thumb on the scale in an adjudication lacking impartiality.

"No clause in our nation's Constitution has as ancient a pedigree as the guarantee that "[n]o person shall . . . be deprived of life, liberty or property without due process of law."[72]  Due process depends on unbiased tribunal and notice of the proceeding.[73]  The Bureaus violated both. As shown above, in "screening" Indian's Petitions, the Bureaus adjudicated the merits, violating Indian's due process right to an impartial adjudication.

## 2.    The Bureaus failed to give notice

The Initial Letter Ruling cites to two bureau publications to notice the procedure.  First, the two-page *Garziglia* letter (*supra* n49, 16-18), about a broadcast matter, somehow noticed how they would treat OTARD Petitions.[74]  One would have to be clairvoyant to divine this. There was also a previous dismissal of an OTARD petition.[75]  However, it does not cite the *Garziglia* letter, does not discuss procedure used to handle OTARD petitions and is in a different posture because there was no litigation.  This fleeting bureau-level "notice" is inadequate.

---

[72] *Ass'n of Am. R.R. v. Dep't of Transp.*, 821 F.3d 19, 27 (D.C. Cir. 2016) (quoting U.S. CONST. AMEND. V.).

[73] Friendly, H. J. (1975). Some Kind of Hearing. *University of Pennsylvania Law Review, 123*(6), 1267–1317 at 1279-81.

[74] Initial Letter Ruling 8, citing *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013).

[75] Initial Letter Ruling 8, citing *Petition for Declaratory Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017).

The Bureaus did not inform Indian that there was no proceeding until the Initial Letter Ruling, or two and a quarter years after Indian filed its initial OTARD Petition, and in response to Indian's Petition for Writ of Mandamus before the D.C. Circuit.  The Bureaus didn't follow the Commission's procedure and didn't tell Indian that they weren't following the Commission's procedure – like "double secret probation" in the movie Animal House.  That is unconstitutional.

## CONCLUSION

The Supreme Court requires that "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."[76]  The Bureaus substituted their own procedure for the Commission's guidance and acted in an arbitrary and discriminatory way.  This Application for Review asks the Commission to correct the situation and make good on its OTARD guidance.  The City has taken full advantage of this proceeding to inform the Commission of its views.  Placing Indian's OTARD petitions on public notice at this late date would add nothing new.  Indian's Petitions for Antennas 2, 3, and 4 are ripe for grant.

WHEREFORE, it is respectfully requested that the Bureaus' dismissals be reversed with respect to Antennas 2, 3 and 4, and the Petitions for these antennas be granted.

Respectfully submitted,

/s/ Julian Gehman

Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
P.O. Box 13514
Arlington, VA 22219

Counsel for INDIAN PEAK
PROPERTIES LLC

---

[76] *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012).

**AFFIDAVIT**

I, James A. Kay, Jr., hereby declare under penalty of perjury that, except for those facts of which administrative notice may be taken and those facts already attested to by a separate affidavit, the facts set forth in the following documents are true and correct to the best of my information, knowledge and belief:

➤ Application for Review of Indian Peak Properties, LLC, dated January 12, 2023.

_____
James A. Kay, Jr.

_____
1/10/2023
Date

## CERTIFICATE OF SERVICE

I, Julian Gehman, hereby certify that on this 12th day of January, 2023, I caused copies of the foregoing Application for Review to be served by USPS first class mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Rancho Palos Verdes
3940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275

   /s/ Julian Gehman
Julian Gehman

# Exhibit A

To Indian Peak Properties LLC
Application for Review
January 12, 2023

# Final Letter Ruling
Of Wireless Bureau and Media Bureau
December 13, 2022



Federal Communications Commission
Washington, D.C. 20554

December 13, 2022

*Via Electronic Mail*

Julian Gehman
Counsel to Indian Peak Properties
80 M Street, SE, Ste 100
Washington, DC 20003

**Re: Petition for Reconsideration**

Dear Mr. Gehman:

This letter responds to a petition for reconsideration filed by Indian Peak Properties, LLC (Indian Peak Properties or Petitioner)[1] of our decision to dismiss five petitions for declaratory ruling submitted by Indian Peak Properties seeking preemption under the rule governing over-the-air reception devices (OTARD).[2]  The underlying petitions for declaratory ruling concern the order by the City of Rancho Palos Verdes, California (City) to remove several unauthorized antennas from a single-family home owned by Indian Peak Properties.  For the reasons discussed below, we deny the Second Reconsideration Petition.

*Background*.  On April 17, 2020, Indian Peak Properties filed an initial OTARD Petition for Declaratory Ruling, supplemented on December 10, 2021, seeking preemption of the decision by the City to revoke the conditional use permit for antennas on the roof of a single-family home located at 26708 Indian Peak Road in Rancho Palos Verdes, California.[3]  The Competition and Infrastructure Policy Division of the Wireless Telecommunications Bureau (CIPD) dismissed that 2020 OTARD Petition without prejudice because it failed "to provide sufficient information to support a showing that each antenna meets all of the criteria required for protection under the OTARD rule."[4]  CIPD determined that the 2020 OTARD Petition failed to provide sufficient information to identify whether the antennas are located "on property within the exclusive use or control of the antenna user where the antenna user has a direct or indirect ownership or leasehold interest in the property,"[5] whether the antennas provide service to a customer located on the premises,[6] and whether the antennas are used to provide a service covered by the OTARD rule.[7]

---

[1] Indian Peak Properties, LLC, Petitions for Declaratory Ruling Under 47 C.F.R. § 1.4000, Petition for Reconsideration, filed by Indian Peak Properties (filed Aug. 3, 2022) (Second Reconsideration Petition).
[2] *See* Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau and Maria Mullarkey, Chief, Policy Division, FCC Media Bureau, to Toneata Martocchio, Counsel to Indian Peak Properties (July 18, 2022) (Letter Ruling).
[3] Indian Peak Properties LLC, Petition for Declaratory Ruling (filed Apr. 18, 2020) (2020 OTARD Petition); Indian Peak Properties LLC, Supplement & Request for Expedited Action on Petition for Declaratory Ruling (filed Dec. 10, 2021).
[4] Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau, to Toneata Martocchio, Counsel to Indian Peak Properties, at 2, 4 (Apr. 22, 2022).
[5] *Id.* at 1.
[6] *Id.* at 3.
[7] *Id.* at 2-3.

Mr. Julian Gehman
December 13, 2022
Page 2

On May 1, 2022, Indian Peak Properties submitted five petitions for declaratory ruling (Petitions),[8] again seeking preemption under the OTARD rule for six antennas at 26708 Indian Peak Road in Rancho Palos Verdes, California.  Indian Peak Properties sought to supplement the Petitions by submitting five letters between May 8 and July 5, 2022.[9]

On July 18, 2022, the Bureaus issued a Letter Ruling dismissing the OTARD Petitions.  The Letter Ruling dismissed Petition 1 because it "fail[ed] to identify any actual controversy under the [rule]" for the Commission to resolve.[10]  The Letter Ruling dismissed Petitions 2-4 because they failed to make any showing that the antennas served a user on the premises as required for a hub or relay antenna,[11] or that there was a "user [who] has a direct or indirect ownership or leasehold interest in the property."[12]  Finally, the Letter Ruling dismissed Petition 5 for failure "to make any showing that each antenna support[ed] the offering of a *fixed* wireless service . . . as required for a dispute to implicate the OTARD rule."[13]

The Letter Ruling also stated that "[t]he OTARD rule does not provide that the mere filing of a petition for declaratory ruling seeking preemption of an antenna restriction is sufficient to warrant the extraordinary relief of suspending local enforcement efforts."[14]  Rather, "the rule includes procedural and substantive requirements," and "the Commission may reasonably wait to open a proceeding . . . until after it has determined that the petition is not procedurally defective and that the information provided is sufficient to identify a dispute that implicates the OTARD rule."[15]

On July 19, 2022, Indian Peak Properties filed a Petition for Reconsideration of the Letter Ruling (First Reconsideration Petition).  On August 3, 2022, Indian Peak Properties withdrew the First Reconsideration Petition and substituted the Second Reconsideration Petition.  The Second Reconsideration Petition contends that the decision to dismiss Petitions 2-4 was in error because the Letter Ruling misconstrued the phrase "service provider" when it found that Petitioner had not demonstrated that there are users of Antennas 2-4 on the premises eligible for OTARD protection.[16]  The Second Reconsideration Petition

---

[8] *See* Indian Peak Properties, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 1); Indian Peak Properties and LT-WR LLC, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 2); Indian Peak Properties and California Internet dba Geo-Links, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 3); Indian Peak Properties and One Internet America, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 4); Indian Peak Properties and Fisher Wireless, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 5).  We refer to these filings collectively as the "Petitions."

[9] *See* Letter from Carl E. Kandutsch, Counsel to Indian Peak Properties, LLC, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 5, 2022); Letter from Carl E. Kandutsch, Counsel to Indian Peak Properties, LLC, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 8, 2022); Letter from Carl E. Kandutsch, Counsel to Indian Peak Properties, LLC, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 16, 2022); Letter from Julian Gehman, Counsel to Indian Peak Properties LLC and James A. Kay, Jr., to Marlene H. Dortch, Secretary, Federal Communications Commission (May 26, 2022); Letter from Julian Gehman, Counsel to Indian Peak Properties, LLC and James A. Kay, Jr., to Marlene H. Dortch, Secretary, Federal Communications Commission (July 5, 2022).  In all, three different counsel filed separately on behalf of Indian Peak Properties between May and July 2022.

[10] Letter Ruling at 3.

[11] *Id.* at 5-6.

[12] *Id.* at 5-6, n.33.

[13] *Id.* at 6-8.

[14] *Id.* at 8.

[15] *Id.* at 9.

[16] Second Reconsideration Petition at 9-11.

Mr. Julian Gehman
December 13, 2022
Page 3

also argues that the Letter Ruling should have created a proceeding to consider Petitions 2-4 by putting them on Public Notice.[17]  Lastly, the Second Reconsideration Petition argues that staff acted improperly in making a determination in the Letter Ruling.  The Second Reconsideration Petition does not challenge the dismissal of Petitions 1 and 5.

Later on August 3, 2022, Indian Peak Properties submitted by e-mail a copy of a "Notice" it filed in a federal court proceeding notifying the court that it had removed the antennas that are the subject of Petitions 2-5.[18]  The Notice does not disclose when the antennas were removed, but filings in a separate state-court proceeding indicate that the antennas were removed on or before July 27, 2022.[19]  The Notice states that Indian Peak Properties removed the antennas to comply with an "abatement action" in state court and that it wishes to reinstall and reactivate the antennas if the Commission grants its requested relief from state enforcement action.[20]

*Discussion*.  We deny the Second Reconsideration Petition pursuant to section 1.106 of the Commission's rules.[21]  Here, the Second Reconsideration Petition contends that, contrary to the Letter Ruling's determination, Indian Peak Properties identified customers that fall within the OTARD rule's scope[22] and that the Commission should initiate a proceeding by putting the petitions on public notice.[23]  For the reasons explained below, we conclude that Indian Peak Properties has not shown that the Bureau erred as a matter of fact or law.

First, the Letter Ruling fully considered and rejected Indian Peak Properties' argument that it identified customers that fall within the OTARD rule's scope.  The Letter Ruling determined that each of the Petitions failed "to include allegations with sufficient detail, clarity, and accuracy . . . to identify . . . a dispute [that] implicates" the OTARD rule.[24]  The Letter Ruling further explained that the "record does not identify any non-communications-service-provider user who regularly resides at or uses the premises."[25]  The Second Reconsideration Petition does not point to any such user.  Instead, it reiterates

---

[17] *Id.* at 5-9.

[18] E-mail from Julian Gehman, Counsel to Indian Peak Properties, to OTARD@fcc.gov (Aug. 3, 2022, 5:15 pm), attaching Notice filed in *In re Indian Peak Props. LLC*, No. 22-1098 (D.C. Cir. filed Aug. 3, 2022) (Notice).  The cover e-mail states only to "[p]lease see the attached Notice regarding Indian Peak Properties, LLC."  *Id.*

[19] *See* Decl. of Toneata Martocchio ¶¶ 2-3 (July 27, 2022), filed in *City of Rancho Palos Verdes v. Indian Peak Properties, LLC*, No. 18STCV03781 (Cal. Super. Ct. filed July 28, 2022) (Martocchio Decl.).

[20] Notice at 1-2.  We note that Indian Peak Properties apparently failed to timely notify the Commission of the removal of these antennas.  According to court records, Indian Peak Properties removed the antennas on or before July 27, 2022, while the First Reconsideration Petition was pending. *See* E-mail from Julian Gehman, Counsel to Indian Peak Properties, to OTARD@fcc.gov (Aug. 3, 2022, 5:15 pm), attaching Notice filed in *In re Indian Peak Props. LLC*, No. 22-1098 (D.C. Cir. filed Aug. 3, 2022) (Notice) (stating  "[p]lease see the attached Notice regarding Indian Peak Properties, LLC.").  Indian Peak Properties failed, however, to notify the Commission of this potentially relevant development at that time, and omitted this change in underlying facts from its Second Reconsideration Petition, which was filed on the morning of August 3, 2022—at least a week after the antennas had been removed.  Not until the afternoon of August 3, 2022, did Indian Peak Properties submit a copy of a separate court filing (without any accompanying explanation as to its reasons for transmitting that filing to the agency or its potential significance), which disclosed that the antennas had been removed at some unspecified time.  *See* Martocchio Decl. ¶¶ 2-3.  We caution Indian Peak Properties that the Commission depends on licensees to fully, timely, and conspicuously provide relevant information in pending matters.

[21] 47 CFR § 1.106.

[22] Second Reconsideration Petition at 9-12.

[23] *Id.* at 5-9.

[24] Letter Ruling at 9.

[25] *Id.* at 6.

Mr. Julian Gehman
December 13, 2022
Page 4

that the two tenants of Indian Peak Properties—Fisher Wireless and Comm Enterprises—are "customers, as well as end users."[26]  As we previously explained, however, the OTARD rule does not protect antennas where the user is a service provider that merely provides communications service to others not located at the premises.[27]  Further, in all cases, the rule requires that there be an antenna user on the premises.[28]  As the Letter Ruling concluded, Indian Peak Properties has not identified a qualifying user within the meaning of the rule who receives and uses fixed wireless services at the property.

We disagree with the Second Reconsideration Petition's allegation that the Letter Ruling sets "new policy."[29]  The Letter Ruling stated that the "record does not identify any non-communications-service-provider user who regularly resides at or uses the premises . . . ."[30]  The Second Reconsideration Petition specifically disputes the dichotomy between service providers and customers.[31]  But that dichotomy is supported by the 2021 Order that expanded the scope of the OTARD rule, in which the Commission stated that the "rule will not treat service providers as 'antenna users.'"[32]  For example, the Order's references to service providers illustrate that the Commission intended to differentiate between service providers and customers receiving service.[33]  We are not persuaded by the Second Reconsideration Petition's argument that the OTARD rule's requirement that the antenna must serve a user or customer at the premises should apply only to "the company that leases space for the antenna, installs the antenna and provides the broadband service."[34]  Nowhere in the Order does the Commission suggest that intermediate service providers qualify as antenna users for purposes of the OTARD rule, and we see no reason the Commission would disqualify antenna "use" by the antenna owner to serve offsite customers but apply OTARD protection to the same antenna based on another service provider's use of the antenna to support the provision of service to its own offsite customers.  Interpreting the rule to protect such antenna placements would expand the scope of the rule well beyond the "modest" change the Commission intended.[35]  The Letter Ruling therefore reiterated the Commission's determinations in the 2021 Order, and did not set new policy.

Second, the Letter Ruling fully considered and rejected Indian Peak Properties' argument that, upon

---

[26] Second Reconsideration Petition at 11.

[27] Letter Ruling at 6.  While the Letter Ruling stated that "it is not clear whether Antennas 2-4 are serving end users at the premises, as required for a dispute to implicate the OTARD rule," *id.* at 5, we clarify that our concern is the apparent lack of any "users" on the premises other than communications services providers that rely on the antennas only to support their own provision of service to off-premises customers.  For the reasons stated, we believe the Commission excluded this type of use from the scope of the rule.

[28] 47 CFR § 1.4000(a)(1)(i)-(ii) (rule applies to antennas "on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property," including "hub or relay" antennas).

[29] Second Reconsideration Petition at 12.

[30] Letter Ruling at 6.

[31] Second Reconsideration Petition at 9-11.

[32] Updating the Commission's Rule for Over-the-Air Reception Devices, WT Docket No. 19-71, *Report and Order*, 36 FCC Rcd 537, 544 para. 20 (2021) (*OTARD R&O*).

[33] *See, e.g.*, *id.* at 541, para. 11 (finding that the Order will "benefit consumers by offering faster access to advanced communications services and greater competition among service providers."); *id.* at 544-45, para. 17 ("[o]ur revised rule also enhances the ability of fixed wireless service providers to deliver reliable high speed Internet access to a greater number of unserved or underserved customers.").

[34] Second Reconsideration Petition at 10; *see also* 47 CFR § 1.4000(a)(1) (requiring a "user [who] has a direct or indirect ownership or leasehold interest in the property"); *id.* § 1.4000(a)(5) (requiring that hub or relay antennas "serve[] a customer on [the] premises").

[35] *OTARD R&O*, 36 FCC Rcd at 537, para. 1; *id.* at 546-47, para. 19 (noting that the revisions are "narrow in scope" and "will minimize any potential visual impact on properties").

Mr. Julian Gehman
December 13, 2022
Page 5

receipt of a petition for declaratory ruling under the OTARD rule, Commission staff are required to automatically initiate a proceeding and put the petition on a public notice without first reviewing the petition for compliance with applicable procedural and substantive requirements.[36]  The Letter Ruling explained that, "[c]onsistent with section 1.2" of the Commission's rules, "the practice of the Commission's Bureaus has been to deny or dismiss . . . OTARD petitions, without first putting them on public notice, in appropriate circumstances."[37]  The Letter Ruling determined that the Petitions here were defective because they failed "to include allegations with sufficient detail, clarity, and accuracy . . . to identify . . . a dispute [that] implicates the OTARD rule."[38]  We reject Indian Peak Properties' position that the Commission must automatically initiate a proceeding and seek comment without first ascertaining that the petition is not procedurally defective and that the information provided is sufficient to identify a dispute that implicates the OTARD rule.  As we previously noted, section 1.2(b) of our rules has been interpreted as according discretion to the Commission to avoid seeking comment on petitions that are "moot, premature, repetitive, frivolous, or which do not warrant consideration by the Commission," including OTARD petitions that fail to implicate the rule.[39]  Particularly where, as here, the initiation of a proceeding immediately alters the parties' legal rights by staying local government action concerning land use, the decision not to initiate a proceeding to solicit responsive pleadings on a defective petition is well within the Commission's discretion to "conduct its proceedings as will best conduce to the proper dispatch of business and the ends of justice."[40]

We are also unpersuaded by Indian Peak Properties' argument that staff improperly shifted the burden of proof.[41]  When a dispute implicating the OTARD rule arises, the burden of "demonstrating that a particular . . . restriction complies with [the rule] and does not impair the installation, maintenance, or use of" covered devices is on the entity seeking to enforce the restriction.[42]  Here, however, the Bureaus determined that the Petitions did not provide sufficient information to identify a dispute covered by the rule.  Further, it was appropriate for the Bureaus to look to Indian Peak Properties to provide information uniquely in its possession, including information on the characteristics of the antennas and their uses, to inform the threshold determination of whether there was a controversy subject to the rule.

Lastly, we disagree with Indian Peak Properties' allegation that staff acted with improper motive in ruling on its Petitions.[43]  Bureau staff have considered the multiple petitions filed by Indian Peak Properties, which include piecemeal submission of the facts, multiple supplements, potentially inconsistent information, and failure to include all relevant facts.[44]  Bureau staff have acted consistent with the rules in disposing the underlying petitions.

---

[36] Second Reconsideration Petition at 12-14.

[37] Letter Ruling at 8.

[38] *Id.* at 9; *see id.* at 3-8.

[39] *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013); *Petition for Declaratory Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017).

[40] 47 U.S.C. § 154(j); *see FCC v. Schreiber*, 381 U.S. 279, 289-90 (1965).

[41] Second Reconsideration Petition at 12-15.

[42] 47 CFR § 1.4000(g).

[43] Second Reconsideration Petition at 12-15.

[44] *See* Letter Ruling at 2.

Mr. Julian Gehman
December 13, 2022
Page 6

*Conclusion.* Accordingly, we deny the Petition for Reconsideration filed by Indian Peak Properties on August 3, 2022. This action is taken pursuant to sections 4(i)-(j) and 405 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i)-(j), 405, and sections 0.131, 0.331, 0.61(f), 0.283, 1.2, 1.106, 1.4000 of the Commission's Rules, 47 CFR §§ 0.131, 0.331, 0.61(f), 0.283, 1.2, 1.106, 1.4000.

Sincerely,

  /s/ Garnet Hanly
Garnet Hanly, Chief
Competition and Infrastructure Policy Division
Wireless Telecommunications Bureau

  /s/ Maria Mullarkey
Maria Mullarkey, Chief
Policy Division
Media Bureau

cc:    Angela M. Rossi, Bradley, Gmelick & Wellestein, LLP
       William W. Wynder, Aleshire & Wynder, LLP
       Alison S. Flowers, Aleshire & Wynder, LLP
       Christy M. Lopez, Aleshire & Wynder, LLP

# Exhibit B

To Indian Peak Properties LLC
Application for Review
January 12, 2023

## Petition for Reconsideration

Of Indian Peak Properties LLC
August 3, 2022

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Indian Peak Properties, LLC | ) |
| Petitions for Declaratory Ruling | ) |
| Under 47 C.F.R. § 1.4000 | ) |
| | ) |
| To: | ) |
| Chief, Wireless Telecommunications Bureau | ) |
| Chief, Media Bureau | ) |

## <u>PETITION FOR RECONSIDERATION</u>
## <u>OF INDIAN PEAK PROPERTIES, LLC</u>

Indian Peak Properties, LLC

Julian Gehman
Gehman Law PLLC

Physical address:
80 M Street, SE, Ste 100
Washington, DC 20003
(202) 341-0198
julian@gehmanlaw.com
counsel to Indian Peak Properties

Mailing address:
Julian Gehman
Gehman Law PLLC
PO Box 13514
Arlington, VA 22219-3514

Dated: August 3, 2022

**Table of Contents**

**Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

**PETITION FOR RECONSIDERATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**47 C.F.R. § 1.106(d) STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**A.**  **OTARD Rule and declaratory ruling rule** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
**1.**  **OTARD Rule substantive requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
**2.**  **OTARD Rule procedure** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
**3.**  **Declaratory ruling rule** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**B.**  **Indian is a commercial landlord** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**A.**  **The Letter Ruling misstates the OTARD docketing requirement** . . . . . . . . . . . .  5

**B.**  **The Letter Ruling sets up a false dichotomy between communication service
providers and customers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
**1.**  **The Letter Ruling takes "service provider" out of context** . . . . . . . . . . . . . . . .  9
**2.**  **The Letter Ruling moves the goalposts by requiring stricter "end user" instead
of the more general "customer" as stated in the OTARD Rule** . . . . . . . . . . . . .  11
**3.**  **The Letter Ruling exceeds delegated authority by setting new policy** . . . . . . . .  12

**C.**  **Staff's review procedure impermissibly shifts the burden of proof** . . . . . . . . . .  12

**D.**  **FCC staff give the appearance of settling a score** . . . . . . . . . . . . . . . . . . . . . .  13

**E.**  **Staff's treatment of the Indian Petitions lost the presumption of regularity** . . . .  14

# SUMMARY

Indian Peak Properties, LLC ("Indian") petitions for reconsideration of the letter order in this proceeding dated July 18, 2022 (hereinafter the "Letter Ruling").

The Letter Ruling dismisses without prejudice Indian's Petitions for Declaratory Ruling under 47 C.F.R. § 1.4000 ("OTARD Rule"). This is the second dismissal without prejudice in this case before the FCC that has been going on for more than two years. Once again, the Letter Ruling declines to give Indian the procedural protection from litigation required by the OTARD Rule. The Letter Ruling asserts bureau discretion as to whether to open a docket and place the Petitions on public notice. However, this is in flagrant violation of the OTARD Rule and the declaratory ruling rule, 47 C.F.R. § 1.2. Both of these rules require that Indian's Petitions be docketed and placed on public notice. The Letter Ruling claims that three authorities give bureaus discretion as to whether to open a docket. Upon examination, the claimed authorities prove to be non-existent. FCC staff violated the OTARD and declaratory ruling rules.

The Letter Ruling misconstrues the term "service provider" so as to disqualify Indian's tenants as antenna users under the OTARD Rule. The Letter Ruling also requires demonstration of an "end user" rather than a "customer" as provided by the OTARD Rule. Both of these go beyond the FCC rule or order and unnecessarily erect barriers to recognizing that Indian has complied with the OTARD Rule.

Finally, FCC staff give the impression of settling a score with James Kay, Indian's owner. In view of the inordinate amount of time taken, repeated dismissals, staff's rule violations and unnecessarily unfavorable interpretations of the OTARD Rule, combined with apparent motivation to conduct a vendetta, FCC staff have lost the presumption of regularity of agency action.

iii

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Indian Peak Properties, LLC | ) |
| Petitions for Declaratory Ruling | ) |
| Under 47 C.F.R. § 1.4000 | ) |
| | ) |
| To: | ) |
| Chief, Wireless Telecommunications Bureau | ) |
| Chief, Media Bureau | ) |

## PETITION FOR RECONSIDERATION

Indian Peak Properties, LLC ("Indian") through counsel respectfully petitions for reconsideration of the letter of Garnet Hanley, Chief, Competition and Infrastructure Policy Division, Wireless Telecommunications Bureau, and Maria Mullarky, Chief Policy Division, Media Bureau, to Toneata Martocchio, Attorney for Indian, dated July 18, 2022 (hereinafter the "Letter Ruling").  This Petition is submitted pursuant to 47 C.F.R. §§ 1.106 and 1.49.  The Letter Ruling dismisses without prejudice Indian's five Petitions for Declaratory Ruling under 47 C.F.R. § 1.4000 ("OTARD Rule").

### 47 C.F.R. § 1.106(d) STATEMENT

With respect to Rule 1.106(d)(1), the action taken by delegated authority dismissing without prejudice Indian's Petitions for Declaratory Ruling should be changed to either (a) grant the Petitions for Antennas 2-4, or (b) docket the Petitions for Antennas 2-4 and place them on public notice as provided by 47 C.F.R. §§ 1.2 and 1.4000(e), with the burden of proof on opponents as provided by 47 C.F.R. 1.4000(g).

With respect to Rule 1.106(d)(2), the following findings of fact and conclusions of law are erroneous.

1.    That "end users" must be served, instead of "customers" as provided by the OTARD Rule.  Letter Ruling 5.  Included in this is the apparent claim that an "intermediate service provider" cannot qualify as a "customer" under the OTARD Rule.

2.    That any communication service provider is considered to be a "service provider" for purpose of paragraph 20 of the Commission's OTARD Fixed Wireless R&O,[1] even where the communication service provider does not install or own the rooftop antenna, or provide broadband service to the rooftop antenna.  Letter Ruling 5-6.

3.    That "the Commission may [] wait to open a proceeding and seek public comment until after it has determined that the petition is not procedurally defective and that the information provided is sufficient to identify a dispute that implicates the OTARD rule."  Letter Ruling 9.

4.    That the Commission included 47 C.F.R. § 1.401(e) as part of the procedure required by 47 C.F.R. § 1.2(b).  Letter Ruling 8.

5.    That the word "should" gives FCC bureaus discretion to disregard the docketing and public notice requirement of Rule 1.2(b).  Letter Ruling 8.

6.    That "the Commission expressly recognized that there sometimes would be circumstances where [the procedures set out in Rule 1.2(b)] should *not* be followed."  Letter Ruling 8.

---

[1] Updating the Commission's Rule for Over-the-Air Reception Devices, WT Docket No. 19-71, Report and Order 36 FCC Rcd. 537, 544 para. 20 (2021).

## BACKGROUND

**A.    OTARD Rule and declaratory ruling rule**

### 1.    OTARD Rule substantive requirements

The OTARD Rule, 47 C.F.R. § 1.4000, protects antennas "on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership interest or leasehold interest in the property." 47 C.F.R. 1.4000(a)(1). Protected antennas must be one meter or less in diameter and may be used for a variety of uses, including to receive direct broadcast satellite service, to receive or transmit fixed wireless services, and to receive video programming or television broadcast signals. 47 C.F.R. § 1.4000(a)(1). Hub or relay antennas may transmit to other locations "as long as the antenna serves a customer on whose premises it is located." 47 C.F.R. § 1.4000(a)(5).

### 2.    OTARD Rule procedure

Parties may petition the Commission under § 1.2 of the Commission's rules to determine whether a particular zoning restriction is permissible; such petitions must comply with the procedures in paragraphs (f) and (h) of the OTARD Rule; the petition will be put on public notice; any responsive pleadings must be submitted within 30 days of public notice, and reply pleadings within 15 thereafter. 47 C.F.R. § 1.4000(e). "In any [such proceeding], the burden of demonstrating that a particular governmental . . . restriction complies with this section . . . shall be on the party that seeks to impose or maintain the restriction." 47 C.F.R. § 1.4000(g). Where a proceeding is initiated pursuant to Rule 1.4000(e), "the entity seeking to enforce the antenna restrictions in question must suspend all enforcement pending the completion of review." 47 C.F.R. § 1.4000(a)(4). Paragraphs (f) and (h) require that petitions and pleadings be served on

interested parties and be supported by an affidavit of a person with actual knowledge. 47 C.F.R. §§ 1.4000(f), (h).

### 3. Declaratory ruling rule

The OTARD Rule says that parties may petition the Commission under § 1.2 of the Commission's rules. Rule 1.2(b) requires that the bureau docket a petition for declaratory ruling and seek public comment on the petition, with the default comment period being 30 days, and reply pleadings 15 days thereafter. 47 C.F.R. § 1.2(b).

### B. Indian is a commercial landlord

Indian owns the property in question and has rented out space in the building to two FCC licensees, Fisher Wireless and Comm Enterprises. Indian has had an ownership interest in the property and Fisher Wireless and Comm Enterprises have had leasehold interests. Like many commercial landlords, Indian has purchased broadband Internet access and has offered the broadband service, as a building amenity, to its tenants. The broadband service is provided to tenants along with use of space in the building in exchange for the lease payments. Indian also has used the broadband service for its own purposes. Indian has gotten the broadband service from three wireless Internet service providers, LT-WR LLC, GeoLinks and OneInternet America. Each of these service providers had installed its own antenna on the rooftop of the building.

Indian's Petitions for Declaratory Ruling explain all this and provide the three service agreements and evidence of payment. The service agreements show that Indian has been the customer, and payment records show that Indian has paid the bills. Indian and Indian's tenants have been end users of the broadband service. Neither Indian nor the tenants have resold or re-transmitted the broadband service or combined the broadband service to produce a value-added

service.  Instead, they have used the broadband service for their own operational purposes.  One example of such operational use, mentioned previously, has been to monitor alarms and other sensors that are connected to the Internet.  These alarms and other sensors indicate the operational status of licensed radio stations and facilitate repair where radio stations go down in severe weather or for other reasons.

## ARGUMENT

### A.    The Letter Ruling misstates the OTARD docketing requirement

In order to justify not docketing Indian's Petitions, the Letter Ruling misconstrues the applicable requirements appearing in FCC rules and orders.  According to the Letter Ruling, "[t]he Rule sets forth various procedural and substantive requirements that any petition must comply with, and the agency may reasonably decline to open a proceeding and seek public comment until after it has ascertained that the petition is not procedurally defective" Letter Ruling at 9-10.  However, the OTARD Rule imposes minimal requirements for a petition: service on interested persons and affidavit attesting to facts alleged in the petition. 47 C.F.R. §§ 1.4(f) and (h).  The Letter Ruling does not claim that Indian's Petitions failed these duties.  FCC staff's primary issue with respect to Antennas 2-4 appears to be with misconstruing "service provider."  This is discussed in the next section.

Even if this were a valid concern, it does not justify refusing to docket and put the Petitions on public notice.  The OTARD Rule is very clear: "[p]etitions to the Commission . . . will be put on public notice."  47 C.F.R. § 1.4000(e).  Similarly, the declaratory ruling rule says "[e]ach petition should be docketed" and placed on public notice.  47 C.F.R. § 1.2(b).  These rules leave no room for staff to conduct a quasi-adjudication prior to public notice.  The procedure set out in the OTARD Rule is simple: staff must place a petition for declaratory ruling

on public notice, opposing parties have the burden of proof to demonstrate why the OTARD Rule should not apply, and then staff will adjudicate based on the petition and opposing and reply pleadings.  The Letter Ruling's claim of bureau discretion to screen petitions has no basis in the rules.

The Letter Ruling (at 8-10) articulates byzantine rationale for not following the rules: (1) "the Commission intended to make the process for petitions for declaratory ruling 'similar' to that for rulemaking," and rulemaking petitions may be denied or dismissed under certain circumstances, 47 C.F.R. § 1.401(e); (2) Rule 1.2(b) utilizes the word "should" thereby giving staff discretion to ignore the docketing requirement; and (3) the relevant FCC Order recognized circumstances where the docketing procedure "should *not* be used."  Letter Ruling 8.  These are reviewed in turn.

*First*, the purpose for processing petitions for declaratory ruling similar to rulemaking petitions was to eliminate the impractical ten-day window for filing oppositions to a petition for declaratory ruling, not to give bureau staff wide ranging discretion.  In the 2011 update of Commission rules of practice, Verizon proposed that the Commission revise its rules so that the time to file oppositions to petitions for declaratory ruling is not governed by the default ten-day rule found in Rule 1.45(b) but instead treated like rulemakings which are docketed with a comment deadline appearing in the public notice.[2]  The Commission agreed and amended 47 C.F.R. § 1.2(b) to require that petitions for declaratory ruling be docketed with a default deadline for oppositions of 30 days from the public notice.  *Id.*

The Letter Ruling refers to the following from the FCC Order:

---

[2] *Amendment of Certain of the Commission's Part 1 Rules of Practice and Procedure and Part 0 Rules of Commission Organization*, Report and Order, 26 FCC Rcd 1594, 1597, ¶¶ 11-12 (2011), Exh. 14.

6

> We therefore determine that petitions for declaratory ruling should be handled in a similar manner to petitions for rulemaking under Section 1.106, rather than in accordance with Section 1.45(b). **That is, each petition should be docketed**. . .. We will amend the existing rule involving declaratory rulings, Section 1.2, to reflect these requirements. *Id.* at ¶ 11 (emphasis added).

The phrase "[t]hat is" tells the reader what the similarity to rulemaking will be, namely, that there will be a docketing and public notice requirement for petitions for declaratory ruling. Moreover, in stating that Section 1.2 would be amended "to reflect these requirements," the Commission indicated that the full scope of the change to FCC policy is embodied in Rule 1.2(b), which was added in that action. There was no discussion whatsoever of applying 47 C.F.R. § 1.401(e) (authorizing denial or dismissal of rulemaking petition) to petitions for declaratory ruling, as claimed by the Letter Ruling.

*Second*, turning to the text of Rule 1.2(b), 47 C.F.R. § 1.2(b), the Letter Ruling sees significance in the word "should," claiming that it gives staff discretion to refrain from the docketing requirement of that rule.[3] This is misplaced for several reasons. Dictionary definitions of "should" reference obligation or duty, not discretion.[4] Where the rule says staff "should" do something, it means that staff is obligated to do it. In delegations of authority, discretion traditionally is granted by using the word "may," not by using the word "should." Moreover, when the FCC grants discretion to bureaus, it does so explicitly, not with a subtle hint

---

[3] Letter Ruling 8 (citing *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013)). Rule 1.2(b) provides in part, "The bureau or office to which a petition for declaratory ruling has been submitted or assigned by the Commission *should* docket such a petition . . .." 47 C.F.R. § 1.2(b) (emphasis added).

[4] Dictionary.com ("must; ought (used to indicate duty, propriety or expediency)"). https://www.dictionary.com/browse/should. *See also* The Free Dictionary https://www.thefreedictionary.com/should; Cambridge English Dictionary https://dictionary.cambridge.org/dictionary/english/should; Merriam-Webster https://www.merriam-webster.com/dictionary/should; Collins English Dictionary https://www.collinsdictionary.com/dictionary/english/should.

like the word "should."  For example, in paragraph 10 of this same Report and Order, the FCC

used explicit language: "[d]uring this transition to a comprehensive docketing regime, we will

permit bureaus and offices not to assign a formal docket number to certain proceedings if, in the

considered judgment of staff, docketing would raise special technical difficulties . . .."

*Amendment of the Commission's Rules of Practice*, *supra* n1, at ¶ 10.  This and other grants of

discretion are explicit.

   *Third*, the Letter Ruling cites to the above quoted paragraph 10 to claim that the Report

and Order recognized that sometimes docketing and public notice procedures "should *not* be

used."  Letter Ruling 8 (emphasis in original).  However, that's not what paragraph 10 says.

Moreover, by its terms, the grant of discretion appearing in paragraph 10 lapsed when the new

docketing system came online.  The bureaus have been using the docketing system for some

time.  For example, the Media Bureau docketed the OTARD petition for declaratory ruling filed

against the City of Chicago.[5]  Otherwise, there is no discussion in the Report and Order of

circumstances where docketing and public notice would not be used.  The three authorities

claimed by the Letter Ruling simply do not exist.

   Finally, the Letter Ruling's assertions are contradicted by the FCC's 1996 OTARD order,

as well as guidance to the public appearing on the FCC's website.  The FCC Order provides that,

upon the filing of a petition for declaratory ruling that does not involve safety or historic

preservation issues (as is the case here), "the restriction may not be enforced until the

Commission or a court of competent jurisdiction issues a ruling that the restriction is not

---

[5] *In the Matter of Satellite Broadcasting & Communications Association, DIRECTV, LLC, and DISH Network L.L.C., Petition for Declaratory Ruling Under 47 CFR §1.4000*, Declaratory Ruling, MB Docket No. 20-284, 26 FCC Rcd. 144(1) (MB 2021).

preempted."[6]  Similarly, the FCC website has a frequently-asked-questions section that includes the following:

**Q:  Can I continue to use my antenna while the petition or waiver request is pending?**

**A:**  Yes, unless the restriction being challenged or for which a waiver is sought is necessary for reasons of safety or historic preservation.  Otherwise, the restriction cannot be enforced while the petition is pending.[7]

In both of these, there is no indication that these protections apply only to qualifying petitions.  Rather, the protection of the OTARD Rule kicks in when the petition is filed.  In summary, the Letter Ruling's assertion of bureau discretion is not supported by FCC rules or orders.  In refusing to docket Indian's Petitions, FCC staff violated the OTARD Rule, 47 C.F.R. § 1.4000, and the declaratory ruling rule, 47 C.F.R. § 1.2.

 **B.** **The Letter Ruling sets up a false dichotomy between communication service providers and customers.**

  **1.** **The Letter Ruling takes "service provider" out of context.**

The Letter Ruling says:

When the Commission expanded the scope of the OTARD Rule in 2021, it determined that "the rule will not treat service providers as antenna users."  In this case, the record indicates that users of Antennas 2-4 each appear to be communications service providers.  Letter Ruling at 5, internal citation omitted.

It is well established that, "[w]ords that can have more than one meaning are given content [] by their surroundings."[8]  A vague or ambiguous provision acquires a plain meaning

---

[6] *Over-the-Air Reception Devices*, Report and Order, Memorandum Opinion and Order, and Further Notice of Proposed Rulemaking, CS Dkt No. 96-83, 11 FCC Rcd 19276 ¶ 53 (1996).
[7] https://www.fcc.gov/media/over-air-reception-devices-rule (last viewed July 28, 2022).
[8] *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 466 (2001).

when read in light of the entire order.[9]  It is important, therefore, the examine the context of the "service provider" statement.  The Commission's 2019 Notice of Proposed Rulemaking sought comment on the following:

> Should the Commission clarify that it will interpret "antenna user" to include fixed wireless service providers?  For example, if a fixed wireless service provider leases space for a hub antenna on private property, should the Commission clarify that the service provider becomes the antenna user with respect to that property?[10]

The OTARD Fixed Wireless R&O resolves this question in the negative:

> The revised rule will not treat service providers as antenna users, and their agreements with building owners therefore would be subject to OTARD protection only if the building owner is itself a customer."[11]

The Commission used "service provider" to mean the company that leases space for the antenna, installs the antenna and provides the broadband service.  This is reinforced by the very sentence that the Letter Order quotes ("The revised rule will not treat **service providers** as "antenna users," and **their agreements** with building owners therefore would be subject to OTARD protection only if the building owner is itself a customer" OTARD Fixed Wireless R&O, para. 20 (emphasis added)).  The phrase "their agreements" refers back to "service providers," thereby demonstrating that service providers negotiate agreements with building owners.

The Letter Ruling quoted this to disqualify Indian's Petitions because Indian's tenants are FCC licensees.  However, LT-WR LLC, GeoLinks and OneInternet America are the service

---

[9] *Bruce v. Samuels*, 577 U.S. 82 (2016); *Arizona v. Inter Tribal Coun. of Arizona*, 570 U.S. 1 (2013).

[10] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Notice of Proposed Rulemaking, 34 FCC Rcd 2695 ¶ 10 (2019) (NPRM).

[11] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Report and Order 36 FCC Rcd 537 (2021) ¶ 20 (OTARD Fixed Wireless R&O).

providers for Antennas 2-4.  Indian's tenants, Fisher Wireless and Comm Enterprises, are customers, not service providers for Antennas 2-4.

      **2.**      **The Letter Ruling moves the goal posts by requiring the stricter "end user" instead of the more general "customer," as stated in the OTARD Rule**

The Letter Ruling requires end users.  Letter Ruling 5.  However, the term "end user" does not appear in the OTARD Rule.  The OTARD Rule requires that hub or relay antennas "serve[] a customer on whose premises it is located."  47 C.F.R. § 1.4000(a)(5).  The rule requires a "customer."  There is a difference between a customer and an end user, although the two can overlap in practice.  "Customer" is "one that purchases a commodity or service."[12] "End user" is "the ultimate consumer of a finished product."[13]  As discussed above, Indian and its tenants, Fisher Wireless and Comm Enterprises have been customers, as well as end users.  They have been customers because Indian pays the broadband service providers, and the tenants pay for the service with their rent payments.  They have been end users because they do not re-sell or re-transmit the broadband access, nor do they combine it with another service to provide a value-added service to end users.  Instead they have used it in their own internal operations such as to check the status of sensors and alarms that are connected to the Internet.  Note that even if one of these parties were to produce a value-added service for end users, this party still would fall within the plain meaning of the OTARD Rule as a customer.

Once it is documented that the hub or relay antenna serves a customer on whose premises it is located, that is the end of the inquiry according to the plain language of the OTARD Rule.

---

[12] Merriam-Webster, https://www.merriam-webster.com/dictionary/customer.  *See also,* Investopedia, https://www.investopedia.com/terms/c/customer.asp (same); Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/customer (same).
[13] Merriam-Webster, https://www.merriam-webster.com/dictionary/end%20user.  *See also* Investopedia, https://www.investopedia.com/terms/e/end-user.asp (same).

The Letter Ruling's detailed inquiry into end users, and whether the end users are communication service providers, goes beyond what is necessary to show compliance with the OTARD Rule.

### 3.     The Letter Ruling exceeds delegated authority by setting new policy.

In summary, the Letter Ruling transmogrifies "service provider" to mean anyone in the communications business.  This FCC staff ruling would eliminate an entire class of customers – any communications company that receives broadband service from a wireless Internet service provider or satellite company would not be deemed an antenna user.  The Letter Ruling reaches well beyond what the Commission said in the OTARD Fixed Wireless R&O and falls outside authority delegated to the bureaus.  This is more than an interpretive ruling.  Rather, it represents new policy that should be promulgated in a notice-and-comment rulemaking.

### C.     Staff's review procedure impermissibly shifts the burden of proof.

The OTARD Rule provides that in any proceeding involving a petition for declaratory ruling, the burden is on the party opposing the petition to demonstrate that a particular governmental restriction complies with the OTARD Rule.  47 C.F.R. § 1.4000(g).  As noted above, the OTARD Rule, 47 C.F.R. § 1.4000, combined with the declaratory ruling rule, 47 C.F.R. § 1.2, anticipates that a petition would be placed on public notice, opponents would have 30 days to submit their opposition and the petitioner would have 15 days to reply.  Inherent in this process is that if a less-than-perfect perfect petition were submitted, it would be up to the opponents to prove that the petition is defective, and the petitioner would have opportunity to reply.

Here, however, the Letter Ruling requires Indian to prove to staff's satisfaction that the Petitions fulfill – not only the OTARD Rule – but staff's overly aggressive interpretation of the

OTARD Rule.  This includes the distortion of "service provider" to cover any and all communication service providers and the requirement that an "end user" be demonstrated instead of the "customer" mentioned in the OTARD Rule.  A couple of examples will suffice – statements like the following impermissibly shift the burden of proof against Indian:

> It is not evident from the Petitions whether James A. Kay qualifies as a user, since he does not claim to reside at the property or regularly use the service there, and the other identified "primary" users are communications service providers.  Letter Ruling 6.

> The Petitions do not state whether Antennas 2-4 serve the Fisher Wireless antennas at issue in Petition 5.  The reference to Comm Enterprises and Fisher Wireless' operation of "transmitters" and "other stations" raises additional questions, including whether they are operating stations at the residence, and if so whether those stations are being operated with any of the antennas subject to any of the Petitions.  Letter Ruling 6 n35.

As discussed above, staff's claimed authority to conduct this examination, instead of placing the petitions on public notice, turns out to be non-existent, and staff is violating the rules.

### D. FCC staff give the appearance of settling a score.

FCC staff spent more time and energy on the Letter Ruling and associated matters than if they had simply followed the OTARD Rule by placing Indian's Petitions on public notice and letting Indian's opponents make their arguments.  The question arises, Why are FCC staff doing this?  There may be an obvious, possible explanation.

James Kay, owner of Indian, has a history of asserting his rights at the FCC and in court.[14]  This history stretches back 30 plus years, to when Kay's actions as an FCC licensee

---

[14] For example, PACER records for the D.C. Circuit reveal the following: *James A. Kay v. FCC*, 97-5296 (D.C.D.C.) (last docket entry Jun. 25, 2013); *James A. Kay v. FCC*, 02-1175 (D.C. Cir.) (last docket entry Jul. 24, 2012); *James A. Kay v. FCC*, 03-1072 (D.C. Cir.) (last docket entry Oct. 18, 2017); *James A. Kay v. FCC*, 04-1014 (D.C. Cir.) (last docket entry Jul. 10, 2012); *James A. Kay v. FCC*, 04-1313 (D.C. Cir.) (last docket entry Jul. 28, 2011); *James A. Kay v. FCC*, 05-1290 (D.C. Cir.) (last docket entry Oct. 18, 2017); *James A. Kay v. FCC*, 06-1076 (D.C. Cir.) (last docket entry Feb. 6, 2020); *James A. Kay v. FCC*, 06-1284 (D.C. Cir.) (last docket entry Oct. 23, 2017); *James A. Kay v. FCC*, 10-1155 (D.C. Cir.) (last docket entry Oct. 17, 2017).

were regulated by the Private Radio Bureau, a predecessor to the Wireless Telecommunications

Bureau.  This history, which staff could perceive as adversarial, provides a possible motivation

for staff's apparent efforts to deny Indian the procedural protections of the OTARD Rule.

###    E.    Staff's treatment of the Indian Petitions lost the presumption of regularity.

The presumption of regularity provides that, in the absence of clear evidence to the

contrary, the court will presume that public officers have properly discharged their official

duties.  *See United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926).

Here, there is clear evidence to the contrary.  Indian's initial Petition for Declaratory

Ruling sat at the FCC for two years before staff took any action.[15]  Most recently, the Letter

Ruling went beyond FCC rules and orders in two areas to deprive Indian of procedural

protections.  First, the Letter Ruling mischaracterized FCC orders and rules as authorizing staff

to refrain from docketing the Indian Petitions.  FCC staff violated 47 C.F.R. §§ 1.2 and 1.4000,

which require that petitions for declaratory ruling be docketed and placed on public notice.

Second, the Letter Ruling distorted the term "service provider" in purporting to disqualify

Indian's tenants as antenna users for the OTARD Rule.  Staff impermissibly shifted the burden

of proof by requiring Indian to prove that it satisfies the OTARD Rule.  Staff refuses to dispose

of the Petitions, locking Indian into an endless loop of submitting yet more petitions, all while

defending expensive litigation with the City.  All this occurred against the backdrop of a possible

---

[15] On April 18, 2020, Indian submitted its Petition for Declaratory Ruling, which staff dismissed without prejudice on April 20, 2022.  On May 1, 2022, Indian re-submitted its petition in the form of five Petitions for Declaratory Ruling, which staff dismissed without prejudice on July 18, 2022.  Scorecard: left to its own devices, FCC took two years; with DC Circuit watching, FCC took two and one half months.

motivation to engage in a vendetta against Indian's owner.  Taken together, these items rebut the presumption of regularity.

WHEREFORE, it is respectfully requested that the dismissal be reconsidered with respect to Antennas 2 through 4 and the Petitions granted or placed on public notice.

Respectfully submitted,

/s/ Julian Gehman
_____

Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
P.O. Box 13514
Arlington, VA 22219

Counsel for INDIAN PEAK
PROPERTIES LLC

Dated: August 3, 2022

**AFFIDAVIT**

I, James A. Kay, Jr., hereby declare under penalty of perjury that, except for those facts of which administrative notice may be taken and those facts already attested to by a separate affidavit, the facts set forth in the following documents are true and correct to the best of my information, knowledge and belief:

&#10148; Petition for Reconsideration of Indian Peak Properties, LLC, dated August 3, 2022.


James A. Kay, Jr.


8/2/2022
Date

16

**CERTIFICATE OF SERVICE**

I, Julian Gehman, hereby certify that on this 3rd day of August, 2022, I caused copies of the foregoing letter and affidavit to be served by USPS first class mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Rancho Palos Verdes
3940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275

/s/ Julian Gehman
Julian Gehman

17

# Exhibit C

To Indian Peak Properties LLC
Application for Review
January 12, 2023

## Initial Letter Ruling

Of Wireless Bureau and Media Bureau
July 18, 2022



Federal Communications Commission
Washington, D.C. 20554

July 18, 2022

Toneata Martocchio
Attorney at Law
15525 Cabrito Road
Van Nuys, CA 91406

**Re:  Petitions for Declaratory Ruling**

Dear Ms. Martocchio:

This letter responds to five petitions for declaratory ruling (Petitions) submitted by Indian Peak Properties, LLC (Petitioner or Indian Peak Properties) on May 1, 2022,[1] seeking preemption under the rule governing over-the-air reception devices (OTARD) of a decision by the city of Rancho Palos Verdes, California (City) to revoke a conditional use permit for antennas on a building pursuant to the City's zoning ordinance.[2]  Upon review of the Petitions, and for the reasons discussed below, we dismiss the Petitions without prejudice.

*Background.*  The Petitions concern six antennas[3] on the roof of a single-family home located at 26708 Indian Peak Road, Rancho Palos Verdes, California.  Petitioner filed these Petitions following a decision by the Competition and Infrastructure Policy Division of the Wireless Telecommunications Bureau (CIPD) on April 22, 2022, to dismiss a similar petition submitted by Petitioner concerning ten antennas at

---

[1] *See* Indian Peak Properties, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 1); Indian Peak Properties and LT-WR LLC, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 2); Indian Peak Properties and California Internet dba Geo-Links, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 3); Indian Peak Properties and One Internet America, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 4); Indian Peak Properties and Fisher Wireless, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 5).  We refer to all of these filings collectively as "Petitions."  If a citation refers to "Petitions" with a page number, the page number for the citation is the same in all Petitions.

[2] *See* Petitions at 3.  According to Petitioner, the Rancho Palos Verdes City Council adopted a resolution in December 2004 approving a conditional use permit for the placement of five UHF antennas on the roof of the house.  Petitioner asserts that "[i]n subsequent years, some antennas were removed and other antennas were installed on the rooftop of the Property on the good faith assumption that the additional antennas did not require prior zoning approvals because they did not involve the erection of additional support structure and were mounted on the same Building as the UHF antennas that had been approved under . . . [the conditional use permit] and were smaller and lower in profile than the UHF antennas."  *Id.* at 2.  After the City was alerted to the unpermitted antennas in August 2014, and extended negotiations to revise the conditional use permit were unsuccessful, the City revoked the permit in August 2018.  Rancho Palos Verdes, Cal., Res. No. 2018, attached to Letter from William W. Wynder, counsel to City of Rancho Palos Verdes, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 6, 2022), Ex. A (May 6 City Letter).

[3] Petitions 1-4 cover one antenna each (Antennas 1-4); Petition 5 covers two antennas that Petitioner refers to as a "pair" constituting "Antenna 5."  *See, e.g.,* Petition 5 at 2, 4, 6-7.  Each antenna must satisfy the OTARD rule's requirements, so we refer to this pair of antennas as Antennas 5 and 6 and examine them individually.

Ms. Toneata Martocchio
July 18, 2022
Page 2

the same location.[4]  CIPD dismissed that petition because it failed "to provide sufficient information to support a showing that each antenna meets all of the criteria required for protection under the OTARD rule."[5]

As is evident from the summary below, our review has been complicated by Petitioner's piecemeal submission of the facts, including two filings characterized as "supplements."  In several respects, the information provided in the various filings is inconsistent, and even with two supplements, the purposes and uses of the majority of the antennas, which are critical to the applicability of the rule, remains unclear.  Further, Petitioner's failure to include all relevant facts in its initial petitions and its subsequent, serial supplementation have delayed and complicated our review.[6]  We expect any petition and accompanying affidavit to set forth all facts necessary to identify whether a dispute implicates the OTARD rule.  The Petitioner submitted multiple supplements presenting new facts and arguments, without any justification for failing to provide this information from the outset, despite our having previously dismissed a similarly deficient filing.  It is within our discretion to decline to consider such material; we need not decide this issue for the instant Petitions because, as we explain below, even though we consider the material in the additional filings in this instance, Petitioner has failed to provide the information required by the Commission's rule.

*Summary of OTARD rule.*  The OTARD rule prohibits state and local regulators and private entities from imposing any restriction on the placement of certain types of antennas "on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of" antennas.[7]  The rule applies to antennas that are used to: (1) "receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services[;]" (2) "receive video programming via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, or to receive or transmit fixed wireless signals other than via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services[;]" or (3) "receive TV broadcast signals."[8]  The rule also applies to a "mast supporting an antenna" in one of the foregoing categories.[9]  A restriction "impairs" if it "[u]nreasonably delays or prevents installation, maintenance, or use;" "[u]nreasonably increases the cost of installation, maintenance, or use;" or "[p]recludes reception or transmission of an acceptable quality signal."[10]  "Fixed wireless signals" are

---

[4] Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau, to Toneata Martocchio, Counsel to Indian Peak Properties (Apr. 22, 2022) (April 22 Letter).

[5] *Id.* at 2, 4.

[6] *Cf. Colorado Radio Corp. v. FCC*, 118 F.2d 24, 26 (D.C. Cir. 1941) ("We cannot allow the appellant to set [sic] back and hope that a decision will be in its favor and then, when it isn't, to parry with an offer of more evidence.  No judging process in any branch of government could operate efficiently or accurately if such a procedure were allowed.").

[7] 47 CFR § 1.4000(a).

[8] 47 CFR § 1.4000(a).  Antennas in categories (1) and (2) must also meet size restrictions (with an exception for certain equipment located in Alaska, which is not relevant here).  *See id.* § 1.4000(a)(1)(i)(B), (a)(1)(ii)(B).

[9] 47 CFR § 1.4000(a)(1)(iv).

[10] 47 CFR § 1.4000(a)(3).

Ms. Toneata Martocchio
July 18, 2022
Page 3

defined to mean any "commercial, non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location."[11]  The term "hub or relay antenna" means "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services."[12]  The rule permits those seeking protection under the rule to file petitions for declaratory ruling with the Commission under section 1.2 of its rules, and requires that "[a]ll allegations of fact . . . must be supported by affidavit of a person or persons with actual knowledge" of the facts alleged.[13]

*Dismissal of Petition 1.*  We dismiss Petition 1 without prejudice because Indian Peak Properties has not made any showing that the City is seeking to enforce a restriction as to Antenna 1.  The Petition includes a letter from the City stating that it is not seeking to remove Petitioner's "television satellite dish" antenna,[14] and Petitioner has not provided any information to the contrary.  The petition thus fails to identify any actual controversy under the OTARD rule.

*Dismissal of Petitions 2-4.*  For the reasons set forth below, we dismiss Petitions 2 through 4 without prejudice because they fail to provide sufficient information regarding whether each antenna implicates the OTARD rule.

Specifically, Petitions 2-4 state that each subject antenna provides broadband Internet service, including "back-up redundancy for performance of an array of vital functions . . . including, but not limited to providing television and telephone service, security alarm and camera operations, temperature control, and other monitoring functions."[15]  The Petitions further state that the antennas are being "used to receive or transmit broadband-only fixed wireless signals providing high-speed Internet access to compatible devices throughout the Property"[16] and that James A. Kay and his companies, including Indian Peak Properties, "are the customers and primary users of the broadband service provided by" Antennas 2-4.[17]  According to Petitioner, Antennas 3 and 4 are designed as hub or relay antennas and are used by Kay and Indian Peak Properties "for the distribution of broadband-only fixed wireless services."[18]  Petitioner

---

[11] 47 CFR § 1.4000(a)(2).  "Fixed wireless signals do not include, among other things, AM radio, FM radio, amateur ('HAM') radio, CB radio, and Digital Audio Radio Service (DARS) signals."  *Id.*

[12] 47 CFR § 1.4000(a)(5).

[13] 47 CFR § 1.4000(h); *see also id.* §§ 1.2, 1.4000(e).

[14] Petition 1 at Exh. 5 (letter dated Nov. 19, 2021) (demanding removal of all antennas "except for the television satellite dish").  The record reflects that Antenna 1 is the only television satellite dish antenna that Petitioner has on the property.  *See id.* at 3 (chart).  Indian Peak Properties may file a new petition if the City seeks to impose or enforce a restriction on the placement of this antenna.

[15] Petition 2 at 9, Petition 3 at 10, Petition 4 at 9-10.

[16] Petitions 2-4 at 7.

[17] *See* Petitions 2-4 at 6.  The Petitions refer variously to Indian Peak Properties alone, James A. Kay and Indian Peak Properties, and to James A. Kay's "businesses" as customers of the antenna services without specifying which businesses are using the services or for what purpose.  *See, e.g.*, Petitions at 3 (chart), 6, 8, Exh. 1, Expert Witness Statement/Affidavit of Daniel W. Redmond, at 1 (Redmond Statement).

[18] Petition 3 at 8; Petition 4 at 8.

Ms. Toneata Martocchio
July 18, 2022
Page 4

asserts that Antenna 2 is "used exclusively to bring Internet service to the property" and does not provide a hub or relay service.[19]

By letter dated May 26, 2022, Petitioner filed a "supplement" to the Petitions containing additional facts.[20] The May 26 Supplement states that "currently, no one lives there [at the property]," but that the "house has been rented to a succession of residential tenants" (although no details on the length, frequency, or recency of any such occupancy are provided).[21] The Supplement states that the property "serves as a communications site and offices."[22] The letter explains that "James Kay operates FCC licensee Comm Enterprises LLC from this location as well as others" and that "[s]pace is also leased inside the house to Fisher Wireless."[23] In a letter submitted on July 5, 2022, characterized as its "second supplement" to the petition, Petitioner states that Comm Enterprises LLC (Comm Enterprises) and Fisher Wireless are the users of Antennas 2-4.[24] The Petitions also state that Antennas 2-4 provide "connectivity for a number of vendors and contractors" when they are visiting the property, and to "any residential tenants who lease rooms in the house from time to time."[25]

The Petitions further state that Indian Peak Properties is in the "rental" business and that Indian Peak Properties leases space on its roof "to others."[26] But the May 26 Supplement also states, contrary to the Petitions, that "[t]here are no roof leases."[27] Although the Petitions provide agreements and supporting documentation that Indian Peak Properties is paying LT-WR, Geo-Links, and One Internet America for what appears to be provision of Internet service,[28] Petitioner's July 5 Supplement states that Comm

---

[19] Petition 2 at 7.

[20] Letter from Julian Gehman, Counsel to Indian Peak Properties LLC and James A. Kay, Jr., to Marlene H. Dortch, Secretary, Federal Communications Commission (May 26, 2022) (May 26 Supplement).

[21] *Id.* at 3. The letter states that, "[a]fter the City revoked the use permit" in 2018, "Petitioner[] moved four UHF antennas indoors to the second floor of the house." *Id.* It is unclear how the property could both serve as a residence and simultaneously host four rooftop antennas inside the dwelling.

[22] *Id.* It is similarly unclear how the single-family property could service simultaneously as a rental dwelling and as the offices for several companies.

[23] *Id.* Petitioner notes that "the house is highly desirable as a communications site" because it has a "direct line of sight to downtown Los Angeles and Mount Wilson," "[t]here is a paucity of commercial communications tower facilities in the Rancho Palos Verdes area," and "WISP and other radio services are difficult in this area due to fading caused by marine layer and inversion layer." *Id.*

[24] Letter from Julian Gehman, counsel to Indian Peak Properties, LLC and James A. Kay, Jr., to Marlene H. Dortch, Secretary, Federal Communications Commission at 3 (July 5, 2022) (July 5 Supplement).

[25] Petitions 2-4 at 6.

[26] Petitions 2-4, Exh.7 at 1 (Apr. 18, 2022 Rancho Palos Verdes Business License Application for Home Occupancy Businesses); Petitions 3-4 at 7 ("Mr. Kay and Indian Peak Properties have the exclusive right to access and use the entirety of the building's rooftop, *except where rooftop space is leased to others*.") (emphasis added).

[27] May 26 Supplement at 3 (stating that "Petitioners have unfettered access to and control of the entire roof").

[28] Petition 2 includes exhibits with copies of an Agreement for Internet services between James A. Kay, owner and manager of LT-WR and James A. Kay, owner of Indian Peak, as well as invoices from LT-WR to Indian Peak Properties for the provision of "internet connection from private VLAN of 10MB." *See* Petition 2 at Exh. 6. Petition 3 includes exhibits with invoices from Geo-Links to Indian Peak Properties, and checks from Indian Peak Properties to Geo-Links for the provision of "ClearFiber DIA 5/5Mbps." *See* Petition 3 at Exh. 6. And Petition 4 includes exhibits with an agreement for Internet services between One Internet America and Indian Peak Properties,

Ms. Toneata Martocchio
July 18, 2022
Page 5

Enterprises and Fisher Wireless are the users of the antennas owned by LT-WR, GeoLinks, and One Internet America.[29]

The July 5 supplement explains that, "[w]hen Fisher Wireless or Comm Enterprises staff are working from the house, uninterrupted Internet access allows them to monitor and check the status of their other stations that are similarly equipped with Internet access, and remotely control those stations."[30]  The supplement further asserts that Comm Enterprises and Fisher Wireless need "uninterrupted Internet access" because it allows for "remote monitoring of power supply, HVAC and operational status of the transmitters and other communications equipment" so that they can "remotely troubleshoot and mitigate network service problems."[31]  Finally, the supplement states that uninterrupted Internet access "allows remote monitoring and control of the equipment in the house," and "[r]edundancy of broadband access facilitates continued monitoring of the house in the event of vandalism to one or more of Antennas 2, 3 or 4" by hostile neighbors.[32]

Based on all of the information provided by Petitioner, it is not clear whether Antennas 2-4 are serving end users at the premises, as required for a dispute to implicate the OTARD rule.[33]  When the Commission expanded the scope of the OTARD rule in 2021, it determined that the "rule will not treat service providers as 'antenna users.'"[34]  In this case, the record indicates that users of Antennas 2-4 each appear to be communications service providers.  Specifically, Petitioner indicates in its July 5 Supplement that Antennas 2-4 are used by two communications providers who hold FCC licenses, Comm Enterprises

---

invoices from One Internet America to Indian Peak Properties, and checks from Indian Peak Properties to One Internet America for the provision of "internet connection services of 50 Mb download / 50 Mb Upload capabilities."  *See* Petition 4 at Exh. 6.

[29] *See* July 5 Supplement at 3.

[30] July 5 Supplement at 4.

[31] *Id.*  The supplement includes a list of equipment used inside the residence to support communications operations. *Id.* at 2.

[32] *Id.* at 4.  We note that Petitioner claims that Antennas 2-4 provide "backup/redundancy" and that Antennas 5 and 6 each provide the same service.  Petition 2 at 9, Petition 3 at 10, Petition 4 at 10; July 5 Supplement at 3; Petition 5 at 7-8.  For the reasons stated below, we need not address whether such use is protected by the OTARD rule.  However, the rule applies by its terms only where the restriction "impairs . . . use," including as relevant here "[p]recluding reception of transmission of an acceptable quality signal."  47 CFR 1.4000(a)(3).  *See also Stanley and Vera Holliday, Petition for Declaratory Ruling Under 47 CFR § 1.4000*, Memorandum Opinion and Order, 14 FCC Rcd 17167, 17171, para. 12 (CSB 1999) (stating that "the record in this proceeding does not contain sufficient information to enable us to determine whether it is necessary for Petitioners to maintain five television antennas and three satellite dish antennas in order to receive the video programming available in their viewing area") (internal citations omitted); *cf. Philip Wojckewiz, Petition for Declaratory Ruling Under 47 CFR § 1.4000*, Memorandum Opinion and Order, 18 FCC Rcd 19523, 19529, para. 17 (MB 2003) ("[A] restricting entity may not impose an arbitrary limit on the number of antennas a viewer may install, provided that they are necessary to receive the video programming available for reception in the viewer's viewing area.").

[33] 47 CFR § 1.4000(a)(5) (hub or relay antennas must "serve[] a customer on [the] premises"); *id.* § 1.4000(a)(1) (other antennas must serve "user[s] ha[ving] a direct or indirect ownership or leasehold interest in the property").

[34] *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Report and Order, 36 FCC Rcd. 537, 544 para. 20 (2021) (*OTARD Fixed Wireless R&O*).

Ms. Toneata Martocchio
July 18, 2022
Page 6

and Fisher Wireless.  Fisher Wireless leases space in the building and owns Antennas 5 and 6.[35]  Further, Commission records indicate that James A. Kay has a 100% ownership interest in Comm Enterprises.[36]  James A. Kay also owns Indian Peak Properties (the owner of the building) and LT-WR (the owner of Antenna 2).  In addition, the Petitions state that James A. Kay and his "businesses," which include communications providers LT-WR and Comm Enterprises, use Antennas 2-4, and the Petition further characterizes Kay and his businesses as the "primary" users without indicating whether there are other, unidentified users, such as off-site customers of any of the "primary" users.[37]

It is not evident from the Petitions whether James A. Kay qualifies as a user, since he does not claim to reside at the property or regularly use the service there, and the other identified "primary" users are communications service providers.  And insofar as Petitioner claims that Antennas 3-4 are "hub or relay" antennas, the only "customer" is Indian Peak Properties, which apparently makes the antenna services available exclusively to communications service providers (at least one of which appears to be under common ownership with Indian Peak Properties) and to devices that support the needs of communications service providers.  The record does not identify any non-communications-service-provider user who regularly resides at or uses the premises, other than unspecified vendors or contractors whose activities presumably are associated with the communications businesses operating there.

Because the OTARD rule does not protect antennas where the user is a service provider, and the identified users of Antennas 2-4 are FCC licensees who appear to be service providers, we dismiss Petitions 2-4 without prejudice.

*Dismissal of Petition 5.*  For the reasons set forth below, we dismiss Petition 5 without prejudice because it fails to make any showing that each antenna supports the offering of a *fixed* wireless service (as opposed to a mobile service, such as a commercial mobile service[38] or a personal wireless service[39]), as required for a dispute to implicate the OTARD rule.

---

[35] The Petitions do not state whether Antennas 2-4 serve the Fisher Wireless antennas at issue in Petition 5. The reference to Comm Enterprises and Fisher Wireless' operation of "transmitters" and "other stations" raises additional questions, including whether they are operating stations at the residence, and if so whether those stations are being operated with any of the antennas subject to any of the Petitions.

[36] *See, e.g.,* FCC, Universal Licensing System, File No. 0003484147, Ownership Disclosure Filing, https://wireless2.fcc.gov/ownerQryDetail/ownership-search-results-detail.htm?applId=4514200&viewAll=FRBDIH&reqPage=1&DIHROW=1&backpage=ownership-search-results-detail.htm&CFID=14982922&CFTOKEN=26884547&jsessionid=Qc2JvHXNfBDvzr34qhNkhGl2vnDvsXSNYDWnVnTLqLXRs2Bfn6hD!1289473429!1657231181337.

[37] *See, e.g.*, Petitions at 3 (chart), 6, 8, Exh. 1.

[38] 47 CFR § 20.3 (defining "commercial mobile radio service" in part as a "mobile service that is: (a) (1) provided for profit, *i.e.*, with the intent of receiving compensation or monetary gain; (2) [a]n interconnected service; and (3) [a]vailable to the public, or to such classes of eligible users as to be effectively available to a substantial portion of the public; or (b) [t]he functional equivalent of such a mobile service described in paragraph (a) of this definition.").

[39] 47 U.S.C. § 332(c)(7)(C)(i) (defining "personal wireless services" as "commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services.").  Section 332(c)(7) preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."  *See Promotion of Competitive Networks in Local Telecommunications Markets*, WT Docket No. 99-217, Order on Reconsideration, 19 FCC Rcd 5637, 5643, para. 14 (2004).  We note that Petitioner claimed in federal District Court in 2020 that at least one of the antennas subject to the City's removal action provided "personal wireless service" subject to preemption protection pursuant

Ms. Toneata Martocchio
July 18, 2022
Page 7

The Petition alleges that Antennas 5 and 6 are "used to receive or transmit broadband-only fixed wireless signals," are "used exclusively to distribute the Cellular service to customers located at the Property," and that neither is "an Internet hub or relay antenna."[40]  Petitioner also claims that these antennas "provide[] voice over Internet protocol and other Internet based service to the house to supplement the weak cellular service."[41]  But the Petition does not allow us to determine whether Antennas 5 and 6 are "fixed wireless antennas" that are being used "to receive or transmit fixed wireless signals."[42]

Petitioner's references to "cellular service" raise questions regarding whether the antennas are being used to extend mobile service rather than for fixed service.  The affidavit accompanying the Petition states only that the antennas are "Cellular Rooftop Antennas for cellular phone connectivity" and that they "will be used to transmit and/or receive voice and data services."[43]  An affidavit attached to the First Supplement includes an attestation that "all facts" in the underlying Petitions are "true and correct," except, in pertinent part, "those facts already attested to by a separate affidavit,"[44] and does not cover this level of detail about the service provided, leaving it ambiguous which affidavit the Commission should rely on in determining whether Antennas 5 and 6 are within the scope of the OTARD rule.  The Petition's allegations that the antennas receive or transmit broadband-only fixed wireless signals and are not hub or relay antennas "used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations"[45] are likewise unsupported in the expert affidavit.[46]  If Antennas 5 or 6 are hub and relay antennas and they are providing telecommunications services or a service that is provided on a commingled basis with telecommunications services, then they would fall outside the

---

to 47 U.S.C. § 332(c)(7) because the city "unreasonably discriminated amongst providers, and effectively prohibited the provision of personal wireless services."  First Amended Complaint for a Temporary Restraining Order, Injunctive, Declaratory Relief and Damages (42 U.S.C. § 1983); Request for Expedited Review; Demand for Jury Trial, at paras. 85-94, *Indian Peak Properties, LLC v. City of Rancho Palos Verdes*, Case No. 2:20-cv-00457 DSF (RZx) (C.D. Cal. Mar. 5, 2020), appended to May 6 City Letter from William W. Wynder, counsel to City of Rancho Palos Verdes, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 6, 2022), Ex. H at 148-50.  We note that to the extent any hub or relay antennas on the building provide service covered by section 332(c)(7) of the Act, 47 U.S.C. § 332(c), they are not covered by the OTARD rule.  *See OTARD Fixed Wireless R&O,* 36 FCC Rcd at 547-48, paras. 29-31.

[40] Petition 5 at 7-8 (while the Petition includes the article "the" in the sentence, it does not specify to which cellular service it is referring).  The Petition also states that Antennas 5 and 6 are "not used to—and cannot—distribute fixed wireless Internet signals to multiple end-user locations."  *Id.*

[41] July 5 Supplement at 4.

[42] 47 CFR § 1.4000(a)(1)(ii); *see also id.* at 1.4000(a)(2) (defining "fixed wireless signals" as "any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location.").

[43] *See* Petition 5, Exh. 1.

[44] May 26 Supplement at Affidavit of James A. Kay, Jr.

[45] 47 CFR § 1.4000(a)(5) (defining "hub and relay antenna" for purposes of OTARD protection as "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services.").

[46] *See* Petition 5, Exh. 1.  All facts alleged in a petition for declaratory ruling must be supported by a person with actual knowledge of the facts.  47 CFR § 1.4000(h).

Ms. Toneata Martocchio
July 18, 2022
Page 8

OTARD rule's scope, and Petition 5 is deficient because it lacks information necessary to this determination.[47]

*Initiation of a Proceeding.* Petitioner requests that the Commission issue a declaration that "any action taken by the City to enforce" its decision to revoke a conditional use permit for antennas on the building while the Petitions are pending is suspended.[48] Petitioner argues that the filing of its petitions triggered section 1.4000(a)(4), which provides that, "if a proceeding is initiated," the "entity seeking to enforce the antenna restriction must suspend all enforcement efforts pending completion of review."[49]

Section 1.4000(e) characterizes OTARD petitions as petitions for declaratory ruling filed pursuant to section 1.2.[50] In adopting section 1.2, the Commission stated that it "intended to make the process for petitions for declaratory rulings 'similar' to that for petitions for rulemaking."[51] The rules applicable to petitions for rulemaking allow for dismissal without prejudice of petitions that are "moot, premature, repetitive, frivolous, or which do not warrant consideration by the Commission . . . ."[52] Consistent with section 1.2, the practice of the Commission's Bureaus has been to deny or dismiss other types of petitions for declaratory ruling, as well as OTARD petitions, without first putting them on public notice, in appropriate circumstances.[53] To be sure, section 1.2(b) of the Commission's rules states generally that the Commission's staff "should" docket and invite public comment on petitions for declaratory rulings, 47 CFR § 1.2(b). In enacting section 1.2(b), however, the Commission expressly recognized that there sometimes would be circumstances where those procedures should *not* be followed.[54] The instant Petitions and supplements thereto do not provide sufficient information for the Commission to determine whether the OTARD rule might apply to them and in fact raise questions about whether this is the case.

The OTARD rule does not provide that the mere filing of a petition for declaratory ruling seeking preemption of an antenna restriction is sufficient to warrant the extraordinary relief of suspending local enforcement efforts. That occurs only at such time as "as a proceeding is initiated" by the Commission.[55]

---

[47] 47 CFR § 1.4000(a)(5); 47 U.S.C. § 153(53) (defining telecommunications service as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used").

[48] *See* Petitions at 8-9.

[49] 47 CFR § 1.4000(a)(4).

[50] 47 CFR § 1.4000(e).

[51] *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013) (citation omitted).

[52] 47 CFR § 1.401(e).

[53] For example, the Media Bureau dismissed an OTARD petition for declaratory ruling filed by the Multifamily Broadband Council seeking preemption of Article 52 of the San Francisco Police Code prior to establishing a proceeding. The Media Bureau determined that the petitioner "ha[d] not established that it [was] entitled to relief under the OTARD rule." *Petition for Declaratory Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017); *see John F. Garziglia*, 28 FCC Rcd at 4146 ("In stipulating that petitions for declaratory rulings 'should' rather than 'must' seek comment, the Commission has afforded bureaus and offices discretion to act without public notice in unusual circumstances.").

[54] *Amendment of Certain of the Commission's Part 1 Rules of Practice and Procedure and Part 0 Rules of Commission Organization*, Report and Order, 26 FCC Rcd 1594, 1597, para. 10 (2011).

[55] Petitioner seems to acknowledge this in its May 26 Supplement. *See* May 26 Supplement at 2 ("Petitioners request a very prompt review of whether each of the five Petitions is acceptable for filing . . . .").

Ms. Toneata Martocchio
July 18, 2022
Page 9

Nothing in the OTARD rule supports Petitioner's suggestion that the agency must initiate a proceeding immediately whenever a petition for declaratory ruling is filed.[56]  On the contrary, the rule includes procedural and substantive requirements that any petition must comply with, and the Commission may reasonably wait to open a proceeding and seek public comment until after it has determined that the petition is not procedurally defective and that the information provided is sufficient to identify a dispute that implicates the OTARD rule.  A proceeding is initiated, and enforcement of an antenna restriction is suspended, when the appropriate Bureau issues notice in writing.

Specifically as to these parties, Petitioner has now filed two sets of petitions that fail to allege facts sufficient to demonstrate whether the antennas meet the requirements of the OTARD rule.[57]  We dismissed the initial petition submitted by Indian Peak Properties on April 22, 2022, because it failed "to provide sufficient information to support a showing that each antenna meets all of the criteria required for protection under the OTARD rule."[58]  And with the subsequent filing of five new petitions on May 1, 2022, Petitioner again failed to provide sufficient information that would warrant initiating a proceeding "to determine whether a particular restriction is permissible or prohibited" under the OTARD rule—*i.e.*, "allegations of fact" that provide sufficient detail necessary to support a claim that each antenna is entitled to protection from an "impairment" under the OTARD rule.[59]

We expect petitions seeking protection under the OTARD rule to include allegations with sufficient detail, clarity, and accuracy for the Commission to identify whether a dispute implicates the OTARD rule as discussed above.  To the extent Petitions fail to do so, we will decline to initiate the proceeding contemplated by the Commission's rules.

*Conclusion.*  Accordingly, we dismiss Petition 1 without prejudice due to the failure to make any showing that there is a present attempt to enforce a restriction, and we dismiss without prejudice Petitions 2, 3, 4, and 5 due to the Petitions' failure to identify facts that provide sufficient detail to demonstrate, as to each

---

[56] Petitions at 8-9.

[57] We note that counsel for the City Rancho Palos Verdes alleges that the filing of these petitions by Indian Peak Properties "are merely part of an ongoing effort to forestall and delay the enforcement of two California Court of Appeals decisions" and that the Petitioner is attempting to use the Commission "to prevent the lawful enforcement of no fewer than five (5) different court rulings."  Email from William W. Wynder, Counsel to City of Rancho Palos Verde to Jacob Lewis, Acting Deputy General Counsel, FCC Office of General Counsel, at 1 (June 30, 2022).

[58] *See* April 22 Letter at 2-3.

[59] 47 CFR §§ 1.4000(e), (h).

Ms. Toneata Martocchio
July 18, 2022
Page 10

antenna associated with the Petitions, a dispute that implicates the OTARD rule. This action is taken pursuant to authority delegated by the Federal Communications Commission, 47 U.S.C. § 155; 47 CFR §§ 0.61(f)(4), 0.131(a).

Sincerely,

/s/ Garnet Hanly

Garnet Hanly
Chief
Competition & Infrastructure Policy Division
Wireless Telecommunications Bureau

/s/ Maria Mullarkey

Maria Mullarkey
Chief
Policy Division
Media Bureau

cc:     Julian Gehman, Gehman Law PLLC
        Angela M. Rossi, Bradley, Gmelick & Wellestein, LLP
        William W. Wynder, Aleshire & Wynder, LLP
        Alison S. Flowers, Aleshire & Wynder, LLP
        Christy M. Lopez, Aleshire & Wynder, LLP

# Exhibit D

To Indian Peak Properties LLC
Application for Review
January 12, 2023

## Petition for Declaratory Ruling Antenna 2

Of Indian Peak Properties LLC
May 1, 2022

**Before the**

**FEDERAL COMMUNICATIONS COMMISSION**

**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| Indian Peak Properties and LT-WR, LLC, | ) | CSR _____-0 |
| Petition for Declaratory Ruling Under 47 C.F.R. §1.4000 | ) | |
| To:    Office of the Secretary | ) | |
| Attn:  Chief, Media Bureau | ) | |

**PETITION FOR DECLARATORY RULING**

Indian Peak Properties, LLC ("Petitioner"), by its attorney and pursuant to Sections 1.2 and 1.4000 (e) if the Commission's Rules,[1] respectfully requests a declaratory ruling that: (a) certain antennas described more fully herein are within the scope of protection from state and local restrictions provided by the OTARD rule;[2] (b) restrictions asserted by the City of Rancho Palos Verdes, California (the "City") impair the installation, maintenance or use of such antennas; and (c) the City's actions are unlawful, preempted by federal authority under the OTARD rule, and therefore unenforceable.

**I.  BACKGROUND**

1.  The subject of this petition is property (the "Property") located at 26708 Indian Peak Road, Rancho Palos Verdes, CA 90275, which is owned by Petitioner.[3] The Property is a single-family home, which is used by the owner, James Kay, and from time to time by individuals or

---

[1] 47 C.F.R. §§ 1.2 and 1.4000 (e).

[2] 47 C.F.R. § 1.4000.

[3] The property was previously owned by James A. Kay, Jr., an individual who owns and controls Petitioner. The term "Petitioner" includes Mr. Kay, Petitioner, except where the context requires otherwise.

business entities that rent the Property from the owner for a fixed term. There are a total of five (5) antenna structures, each of them installed on the rooftop of the Property and described in Section 2 of this Petition. All factual assertions in this Petition are supported by the following Exhibits, which are attached to this Petition:

Exhibit 1 – Declaration of Daniel W. Redmond, Senior Wireless Network Design Engineer;

Exhibit 2 – Property Detail Report and Deed to 26708 Indian Peak Road, Rancho Palos Verdes, CA 90275;

Exhibit 3 – Two photographs of Antenna 2;

Exhibit 4 – Specifications for Antenna 2;

Exhibit 5 – City Resolution 2018-61 and City attorney letter demanding removal of antennas;

Exhibit 6 – Standard Terms and Conditions for LT-WR, LLC for Internet Access Service to Indian Peak Properties, LLC, check register, and invoices showing monthly service payments to LT-WR;

Exhibit 7 – Business Licenses of Indian Peak Properties, LLC, Business Tax Registration of LT-WR, LLC, and Business License Application for LT-WR, LLC; and

Exhibit 8 – Indian Peak Properties, LLC's Articles and Information.

2.    The antenna structures installed on the rooftop of the Property are the subject of past and present ongoing regulatory disputes and civil litigation between Petitioner and the City. On December 21, 2004, the Rancho Palos Verdes City Council adopted Resolution No. 2004-109, approving Conditional Use Permit No. 230 ("CUP 230") approving the placement of five UHF antennas, each a Sinclair model SD314-HF2PSNM measuring 9.5 feet (3.9 meters) in height with four co-linear radiating elements. In subsequent years, some antennas were removed and other antennas were installed on the rooftop of the Property on the good faith assumption that the additional antennas did not require prior zoning approvals because they did not involve the erection of additional support structure and were mounted on the same Building as the UHF antennas that had been approved under CUP 230 and were smaller and lower in profile than the

UHF antennas. Petitioner also believes that most if not all of the additional antennas were within the scope of the OTARD rule and therefore would not have required prior zoning approval even in the absence of CUP 230.

3.   On August 21, 2018, the City Council adopted Resolution No. 2018-61, purporting to revoke in its entirety CUP 230. Without conceding the validity of that Resolution, the revocation affects only installations that legitimately require zoning approval. Nonetheless, the City insists that Petitioner remove virtually all antennas from the Building, even those that are protected under the OTARD rule. The Petitioner has removed the UHF antennas from the roof and made other related modifications.

4.   On April 17, 2020, the Petitioner filed a Petition for Declaratory Ruling under 47 C.F.R. § 1.4000. By letter dated April 22, 2022, the Commission dismissed the Petition without prejudice on the ground that it did not provide sufficient information to show that each of the antennas meet all of the criteria for protection under the OTARD rule. In particular, the Commission found that Petitioner had failed to provide sufficient information to demonstrate that each antenna meets all of the criteria required for preemption under the OTARD rule.

5.   There are currently five antennas placed on the rooftop of the Property, as follows:

| Antenna # | Owner | Type | Service | Customer Location | Antenna Users On-Site | Located on Property Within Exclusive Control of User |
|---|---|---|---|---|---|---|
| Antenna 1 | Indian Peak Properties, LLC (Petitioner) | DIRECTV | DIRECTV | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Yes, for tenants when Building is rented | User James Kay owns rooftop antenna site |
| Antenna 2 | LT-WR, LLC | Parabolic Dish Commscope VHLP3-11WH/A | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 3 | GeoLinks | Ubiquiti AirFiber 24, Unlicensed | Fixed Wireless Broadband | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

| | | 2x2 MIMO 24 GHz | Internet Access | | | |
|---|---|---|---|---|---|---|
| Antenna 4 | One Internet America | Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 5 | Fisher Wireless | Two (2) Wilson Electronics Model 314411 | Cellular Telephone | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

This Petition concerns only Antenna 2, the Parabolic Dish antenna owned by LT/WR, LLC and used to distribute fixed wireless signals at the Property. Antenna 2 meets all of the criteria required for protection under the OTARD rule as described in Section III below.

## II. THE OTARD RULE

The rules promulgated by the FCC pursuant to Section 207 of the 1996 Telecommunications Act, known as the over-the-air-reception device or OTARD rule, are found at 47 C.F.R. § 1.4000. The OTARD rule prohibits any state or local law or regulation or any private contract or other restriction of any kind that impairs the ability of an antenna user to install, operate and maintain certain antenna devices (one meter or less in diameter) on property over which the antenna user has exclusive control and a direct or indirect ownership or leasehold interest.

The phrases "exclusive control" and "direct or indirect ownership or leasehold interest" are explained as follows: "For purposes of our Section 207 rules, a renter, tenant or any other person residing on a property owner´s property with the property owner´s permission (´tenant viewer´), who has the property owner´s permission to install, maintain and use a Section 207 reception device on the property, shall be treated as a covered viewer with regard to third party restrictions under our Section 207 rules. In this connection, the tenant viewer shall have the same

4

rights under Section 207 as would the owner vis-à-vis restrictions enacted by a … government and/or any other third party. Thus, if an owner residing on the property were entitled to install a Section 207 device on the property under our rules, then a tenant occupying the property is also entitled to a Section 207 device on the property provided the property owner consents."[4]

As originally issued, the OTARD rule was intended to facilitate the use of dish antennas used to receive direct broadcast satellite television signals. The rule did not apply to antennas carrying telecommunications traffic. In year 2000, however, in response to concerns expressed by CLECs and Commercial Mobile Wireless Radio (CMRS) operators, the FCC revised the OTARD rule to include "all customer-end antennas and supporting structures of the physical type currently covered by the rule, regardless of the nature of the services provided through the antenna."[5] Then in 2021, the Commission in effect deleted the requirement that OTARD applies only to "customer-end" antennas and concluded that the OTARD rule encompasses all hub and relay antennas[6] that are used for the distribution of fixed wireless signals[7] to multiple customer locations, regardless of whether they are "primarily" used for this purpose, as long as (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only.[8] The OTARD rule also generally prohibits any governmental or private restrictions on any mast or support for an antenna covered by the rule, other than

---

[4] *Implementation of Section 207 of the Telecommunications Act of 1996,* Order on Reconsideration, 13 FCC Rcd 18962, 18995 ¶ 77 (1998).

[5] *Promotion of Competitive Networks in Local Telecommunications Markets*, First Report and Order and Further Notice of Proposed Rulemaking, 15 F.C.C. Rcd 22983 ¶ 99 (2000).

[6] The Rule defines a "hub or relay antenna" as "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations — as long as the antenna serves a customer on whose premises it is located. The rule excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services." Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

[7] The OTARD Rule defines "fixed wireless signal" as "any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location." 47 C.F.R. § 1.4000 (a) (2).

[8] *In the Matter of: Updating the Commission′s Rule for Over-the-Air Reception Devices*, Report and Order, WT Docket 19-71, rel. Jan. 1, 2021, ¶ 9.

restrictions based on legitimate safety considerations, as long as the height of the support does not exceed 12 feet above the roofline.[9]

### III. ARGUMENT

This Petition concerns only Antenna 2, the Parabolic Dish Commscope VHLP-11W-6WH/A antenna owned by LT-WR. Like the other antennas at the Property, Antenna 2 is connected by Ethernet cable to routers and switches inside the house that comprises the Property. Antenna 2 is designed to and does provide fixed wireless high-speed Internet access anywhere within the house and the surrounding yards. The Property owner, James A. Kay, together with his several companies including Indian Peak Properties, LLC, are the customers and primary users of the broadband service provided by Antenna 2. In addition, Antenna 2 provides connectivity for a number of vendors and contractors who visit the Property on a regular basis, and for any residential tenants who lease rooms in the house from time to time.   As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), Antenna 2 meets each of the requirements that entitle the antenna to protection from regulation by the City as follows:

**a. Antenna 2 is placed on the Property within the exclusive use or control of the antenna user.**

Antenna 2 is placed on the rooftop of the Property – which is a single-family home owned by James A. Kay's company, Petitioner Indian Peak Properties, LLC. As the owner of the Property, Mr. Kay and Indian Peak Properties, LLC have the exclusive right to access and use the entirety of the building´s rooftop, except where rooftop space is leased to others. Further, Mr. Kay and his company Indian Peak Properties, LLC, are the primary users and customers of the service provided by means of Antenna 2. The service is not used by any remote customer not located at

---

[9] Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

the Property. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 2 meets the requirements stated in 47 C.F.R. § 1.4000 (a) (1).

**b. Antenna 2 is used to receive or transmit fixed wireless signals**.

As indicated above, Antenna 2 is used to receive or transmit broadband-only fixed wireless signals providing high-speed Internet access to compatible devices throughout the Property. The service provided by means of Antenna is within the parameters of OTARD protection as required under 47 C.F.R. § 1.4000 (a) (1) (i) (A). *See* Declaration of Daniel W. Redmond (Exhibit 1).

**c. Antenna 2 is less than one meter in diameter or diagonal measurement and is installed on a mast less then twelve (12) feet above the roofline of the building.**

Antenna 2 is round in shape ("drum shaped") and is less than one meter in diagonal measurement. Therefore, Antenna 2 meets the requirements of 47 C.F.R. 1.4000 (a) (1) (i) (B). In addition, the mast on which Antenna 2 is installed does not exceed twelve (12) feet in height above the building´s roofline. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 2 meets the height criteria stated in 47 C.F.R. § 1.4000 (a) (1) (iv).

**d. No safety or historic preservation concerns have been raised with respect to Antenna 2.**

As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), no safety or historic preservation concerns have been raised by the City with respect to Antenna 2 and no General Exposure limitations are exceeded.

**e. Antenna 2 is not a hub or relay antenna.**

Although the OTARD rule has recently been amended to encompass certain hub or relay antennas, it is worth noting that Antenna 2 is not used to – and cannot - distribute fixed wireless signals to multiple end-user locations. Rather, it is used exclusively to bring Internet service to the property. The Internet service will then be available to customers located at the Property.

Antenna 2 is not a hub or relay antenna and does not raise any questions associated with that issue.

For the reasons stated in paragraphs (a) through (d) above, Antenna 2 meets each of the criteria stated in the OTARD Rule and is entitled to protection from local regulation by the City.

## IV. RELIEF SOUGHT

The Petitioner seeks a declaratory ruling from the Commission that Antenna 2 constitutes a protected Section 207 device under the OTARD rule such that enforcement of Resolution 2018-61, revoking CUP 230 and every other action taken or contemplated by the City to force Petitioner to remove Antenna 2 from the Property, is preempted.

Furthermore, Petitioner seeks an immediate declaration from the Commission that any action taken by the City to enforce Resolution 2018-61 during the pendency of this Petition is suspended. Except in circumstances not relevant here, "if a proceeding is initiated" challenging a restriction under the OTARD rule, "the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review," and "[n]o attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction."[10] Thus, Resolution 2018-61 "may not be enforced until the Commission … issues a ruling that [Resolution 2018-61] is not preempted," and "a viewer may install, use and maintain an antenna

---

[10] 47 C.F.R. § 1.4000 (a) (4). The only exceptions are for restrictions "pertaining to safety and historic preservation." *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration, 19 FCC Rcd 5637, 5643-44 ¶¶ 13-18 (2004), ¶ 16.

while [this] proceeding is pending."[11] The only exceptions are for restrictions "pertaining to safety and historic preservation."[12]

The Commission has consistently taken an expansive view of the automatic suspension of restrictions and penalties during the pendency of an OTARD challenge.[13] An immediate suspension is especially justified in this case given the severe consequences of enforcement of Resolution 2018-61. For one thing, the City is threatening the forcibly remove Antenna 2, along with the other four antennas, from the rooftop of the building. It is likely that such forcible removal would damage the equipment and perhaps the rooftop as well, potentially costing the Petitioner a significant amount of money to repair or replace. More importantly, however, is the fact that the antennas – apart from allowing Petitioner's business operations to function – are necessary to individually and collectively provide back-up redundancy for performance of an array of vital functions at the Property, including but not limited to providing television and telephone service, security alarm and camera operations, temperature control, and other monitoring functions. Loss of the antennas, including Antenna 2, would put at risk not only the competitive viability of Petitioner's various businesses, but also the safety of Petitioner and its employees, contractors and guests.

Respectfully submitted,

By: _____

Toneata Martocchio, J.D., Attorney at Law
15525 Cabrito Road, Van Nuys, CA 91406
Tel: 818-540-8031 Toni@BuddyCorp.com

---

[11] 47 C.F.R. § 1.4000 (a) (4).

[12] *Id.*

[13] See, for example, *Petition for Declaratory Ruling Regarding the Application of the Over-the-Air Reception Devices Rule to Certain Provisions of the Philadelphia, Pennsylvania Code*, CSR-8541-O (filed Nov. 8, 2011); James Sadler; *Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 13 FCC Rcd 12559, 12572 ¶ 41 (CSB 1998); *Michael and Alexandra Pinter; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000, Memorandum Opinion and Order, 19 FCC Rcd 17385, 17386 ¶ 4 (MB 2004); Otto and Ida M. Trabue; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 14 FCC Rcd 8602, 8603 ¶ 2 (CSB 1999).

## CERTIFICATE OF SERVICE

I, Toneata Martocchio, counsel for Petitioners in this matter, hereby certify that on this 1st day of May, 2022, I have caused copies of the foregoing pleading to be served, via first class USPS, certified mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder, LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Rancho Palos Verdes
30940 Hawthorne Boulevard
Rancho Palos Verdes, CA 90275

Toneata Martocchio, J.D.
Attorney at Law
15525 Cabrito Road
Van Nuys, CA 91406
Tel: 818-540-8031
Email: Toni@BuddyCorp.com

**EXHIBIT 1**

**Expert Witness Statement/Affidavit**

**In support of: Indian Peak Properties, LLC – Single Family Home**

**26708 Indian Peak Road, Rancho Palos Verdes, CA**

Author:

Daniel W. Redmond, Senior Wireless Network Design Engineer

Ph: 916.296.0282, Email: dredmo77@att.net

Qualifications:

A.S. Aviation, CCAF; B.S. Information Systems, UoP

FCC Licensed, PG-GB-062835

23 Years of Licensed and Unlicensed Microwave Operations, Management, and Engineering Experience.  30 Years' experience in general electronics. 10+ of these years as the lead Microwave Engineer for over 900 Licensed and 50 Unlicensed Point to Point Commercial Microwave Paths.

Statement of facts for the modified/renewed Petition for Declaratory Ruling to the FCC Commission.

1. Mr. James A Kay Jr. owns Indian Peak Properties, LLC, which owns the Single-Family home located at 26708 Indian Peak Road in Rancho Palos Verdes, CA.
2. Indian Peak Properties, LLC is both the customer and exclusive rights holder to the property.
3. Concerning Antenna #2: VHLP3-11W-6WH/A "Primary" Fixed Wireless Broadband Internet Antenna which we identify as Antenna #2.
   a. Antenna # 2 is as follows:
      i. Callsign: WQKR204
      ii. Internet Service Provider: LT-WR, LLC
      iii. Less than one meter in diameter.
      iv. Designed as an antenna that is used for the distribution of broadband-only fixed wireless services to Indian Peak Properties, LLC.
      v. Is in service being used by customer: Indian Peak Properties, LLC
      vi. Is located on the property belonging to Indian Peak Properties, LLC.

Considerations:

First, Indian Peak Properties, LLC is owned by Mr. Kay.  Indian Peak Properties is the customer of this single-family home. While Indian Peak Properties, LLC may contract out for assistance during routine maintenance of his radio network as well as home maintenance, they maintain exclusive use of the home and property.

Second, the use of this antenna deemed Antenna #2 is compliant with OTARD due to the following facts.

Antenna #2 is the primary fixed wireless service for broadband internet service.

Third, Indian Peak Properties, LLC is the customer to which this service is being provided.

OTARD Rules apply to this Antenna #2 under the Rules that state:

"Antennas designed to receive and/or transmit data services, including Internet access, are included in the rule."

Fourth, having read the history of this case with the city and the FCC Commission, I believe some simple clarifications are necessary to resolve this matter.  In Summary and as stated above.

1. Antenna #2 is used to provide OTARD covered services: Broadband Internet Services over Fixed Wireless.
2. Indian Peak Properties, LLC is the customer and is located on the Property at 26708 Indian Peak Road, Rancho Palos Verdes, CA
3. Indian Peak Properties, LLC has exclusive usage rights to the installations located on the single-family home.
4. No safety concerns have been brought into question and no General Exposure limitations have been exceeded.
5. Antenna #2 does not exceed 12' above the roofline height to tip.
6. No historical preservation concerns have been raised.

Sources:

- Network Design and Topology Discussion with Mr. Kay, owner of Indian Peak Properties, LLC.
- 2022 04 22_FCC Dismissal OTARD Petition Document
- Indian Peak OTARD Petition (2020-04-17) Document
- Indian Peak Urgent Request (OTARD 19-Apr-2022) Document
- Indian Peak OTARD Supplement (10-Dec-2021) Document
- (17) Pictures and Notes Supplied by Mr. Kay
- https://www.fcc.gov/media/over-air-reception-devices-rule

Notes:

I can confirm that, Indian Peak Properties, LLC's Antenna #2 is in fact in compliance with OTARD Rules.

Daniel W. Redmond, Senior Wireless Network Design Engineer, 916.296.0282

Date: 04/24/2022  _____

**EXHIBIT 2**


NETR online

**PROPERTY DETAIL REPORT**   created **2022-04-26**   Prepared exclusively for **TONEATA MARTOCCHIO**

## TARGET PROPERTY

### 26708 INDIAN PEAK RD RANCHO PALOS VERDES, CA 90275-2333 C031

#### Owner Information

| | |
|---|---|
| **Owner Name:** | INDIAN PEAK PROPERTIES LLC |
| **Mailing Address:** | 1350 E FLAMINGO RD #13B34 LAS VEGAS NV 89119-5263 C037 |
| **Phone Number:** | **Vesting Codes:** |
| **Owner Occupied Indicator:** N | **Pending Record Indicator:** |
| **Corporate Owner:** | |

#### Location Information

| | | | |
|---|---|---|---|
| **Legal Description:** | TR=21350 LOT 80 | | |
| **County:** | LOS ANGELES | **APN:** | 7577-013-030 |
| **Census Tract / Block:** | 6704.18 | **Alternate APN:** | |
| **Township-Range-Sect:** | | **Subdivision:** | 21350 |
| **Legal Book - Page:** | 599-90 | **Map Reference:** | 72-E4 / |
| **Legal Lot:** | 80 | **Tract #:** | 21350 |
| **Legal Block:** | | **School District:** | PALOS VERDES PENINSU |
| **Market Area:** | 176 | **Munic / Township:** | |
| **Neighbor Code:** | | | |

#### Owner Transfer Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 11/29/2005 | **Sale Price:** | |
| **Document #:** | | **Deed Type:** | GRANT DEED |
| **Instrument #:** | 000002980048 | **1st Mtg Document #:** | |
| **Book - Page:** | | | |

#### Last Market Sale Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 04/28/1994 / | **1st Mtg Amount / Type:** | $292,000.00 / CONV |
| **Sale Price:** | $365,000.00 | **1st Mtg Int. Rate / Type:** | / ADJUSTABLE INT RATE LOAN |
| **Sale Type:** | FULL | **1st Mtg Term:** | |
| **Document #:** | 821070 | **1st Mtg Document #:** | |
| **Instrument #:** | 000000821070 | **1st Mtg Instrument #:** | |
| **Book - Page:** | | **1st Mtg Book - Page:** | |
| **Deed Type:** | GRANT DEED | **2nd Mtg Amount / Type:** | / |
| **Transfer Document #:** | | **2nd Mtg Int. Rate / Type:** | / |
| **New Construction:** | | **2nd Mtg Term:** | |
| **Multi / Split Sale:** | | **Price per SqFt:** | $141.14 |
| **Cash Down Payment:** | | **Stamps Amount:** | $401.50 |
| **Title Company:** | SOUTH COAST TITLE | | |
| **Lender:** | WELLS FARGO BK | | |
| **Seller Name:** | UGAS ARMINDA | | |

#### Prior Sale Information

| | | | |
|---|---|---|---|
| **Prior Rec / Sale Date:** | 06/09/1987 / 06/00/1987 | **Prior Deed Type:** | GRANT DEED |
| **Prior Sale Price:** | $350,000.00 | **Prior Lender:** | |
| **Prior Sale Type:** | FULL | **Prior 1stMtg Amount/Type:** | $255,000.00 / PRIVATE PARTY |
| **Prior Doc #:** | 909071 | **Prior 1stMtg Int. Rate/Type:** | / ADJUSTABLE INT RATE LOAN |
| **Prior Instrument #:** | 000000909071 | **Prior Stamps Amount:** | $385.00 |
| **Prior Book - Page:** | | | |

#### Site Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Land Use: | SFR | Acres: | .1727 | County Use: | | SINGLE FAMILY RESID |
| Flood Zone: | | Lot Area: | 7521 | State Use: | | |
| Flood Zone Map: | | Lot Width / Depth: | / | Site Influence: | | |
| Flood Panel Date: | | Usable Lot: | | Sewer Type: | | |
| Res / Comm Units: | | Lot Shape: | | Topography: | | |
| # of Buildings: | 1 | Bldg Width / Depth: | / | Water Type: | | |
| Zoning: | RPRS8000* | Building Class: | | Water District: | | CENTRAL AND W BASIN |

## Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Total Value: | $573,122.00 | Assessed Year: | 2021 | Property Tax: | $7,217.68 |
| Land Value: | $354,867.00 | Improve %: | | Tax Area: | 7097 |
| Improvement Value: | $218,255.00 | Dist: | | Tax Year: | 2021 |
| Total Taxable Value: | $573,122.00 | Fire Dist: | CONSOLIDATED CO | Tax Exemption: | |
| Market Value: | | Garbage Dist: | | Equal Rate: | |
| | | Delinquent Date: | | Equal Year: | |

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | | Parking Type: | | Construction: | |
| Living Area: | 2586 | Garage Area: | | Heat Type: | CENTRAL |
| Tot Adj Area: | | Garage 2 Area: | | Heat Fuel: | |
| Above Grade: | | Garage Capacity: | | Parcel Fuel: | |
| Ground Floor Area: | | Parking Spaces: | | Exterior Wall: | |
| Base / Main Area: | / | Carport: | | Interior Wall: | |
| Upper Area: | | Basement Area: | | Foundation: | |
| 2nd Floor Area: | | Finish Bsmnt Area: | | Air Cond: | |
| 3rd Floor Area: | | Basement Type: | | Roof Type: | |
| Rentable Area: | | Attic Type: | | Roof Shape: | |
| Additional Area: | | Porch Type: | | Roof Frame: | |
| Total Rooms: | | Porch 1 Area: | | Roof Material: | |
| Bedrooms: | 4 | Porch 2 Area: | | Floor Type: | |
| Bath (F/H): | 3 / | Patio Type: | | Floor Cover: | |
| Total Baths / Fixtures: | 3 / | Patio 1 Area: | | Style: | |
| Year Built / Eff: | 1958 / 1966 | Pool: | | Quality: | |
| Fireplace: | | Pool Area: | | Condition: | |
| Fireplace Description: | | | | # of Stories: | |
| Basement Description: | | | | Other Rooms: | |
| Other Improvements: | | | | | |
| Bldg Comments: | | | | | |
| Parcel Comments: | | | | | |

## Extra Features

| Description: | Unit: | Size / Qty: | Width: | Depth: | Year Built: | Improvement Value: |
|---|---|---|---|---|---|---|
| | | | | | | |

NETRonline and its data supplier(s) do not guarantee nor include any warranty of any kind
whether expressed or implied, about the validity of all information in this report since this information
is retrieved as it is recorded from the various agencies that make it available.

Copyright 2007 Nationwide Environmental Title Research, LLC

## This page is part of your document - DO NOT DISCARD

05 2980048

```
RECORDED/FILED IN OFFICIAL RECORDS
        RECORDER'S OFFICE
       LOS ANGELES COUNTY
           CALIFORNIA

8:21 AM    DEC 06 2005
```

**TITLE(S) :**

## DEED



L E A D    S H E E T

**FEE**

FEE $10    TT
        2

**D.T.T.**

**CODE
20**

**CODE
19**

**CODE
9**____

**NOTIFICATION SENT $4**

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    **Number of AIN's Shown**

7577 · 013 · 030.           001

**THIS FORM IS NOT TO BE DUPLICATED**

**RECORDING REQUESTED BY**
RICHARD K. SEMETA, ESQ.

**AND WHEN RECORDED MAIL TO**

RICHARD K. SEMETA,
A PROFESSIONAL LAW CORPORATION
4695 MACARTHUR COURT, SUITE 310
P.O. BOX 10367
NEWPORT BEACH, CA 92658-0367

**05  2980048**

---

APN: 7577-13-030

| Space above line for Recorder's Use
| NO TAX DUE.

---

### GRANT DEED

Documentary transfer tax is **NONE. \*\***

___ Unincorporated area  _X_ Rancho Palos Verdes

Mail tax statements to: Lucky's Two-Way Radios, Inc., 1350 E. Flamingo Road, Suite 13B/346, Las Vegas, Nevada 89119

     **FOR NO CONSIDERATION, GRANTOR** Idyll Properties, LLC, a Nevada limited liability company, hereby **GRANTS TO** Indian Peak Properties, LLC, a Nevada limited liability company that real property in the City of Rancho Palos Verdes, County of Los Angeles, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Dated: **11/29/** , 2005

    **Idyll Properties, LLC**
    By: Lucky's Two Way Radios, Inc.,
    its manager

    By: _____
        James Allan Kay Jr., President

**\*\*** The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11923(d).

State of Nevada     )
                 ) ss
County of Clark     )

On _11-29-05_, 2005, before me, _C. Noriega_, a notary public in and for the State of California, personally appeared James Allan Kay Jr., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (SEAL)

> CLAUDIA NORIEGA
> Notary Public, State of Nevada
> Appointment No. 05-95366-1
> My Appt. Expires Feb 2, 2009

05 2980048

3

EXHIBIT A

Lot 80 of Tract No. 21350, in the City of Rancho Palos Verdes, County of Los Angeles, State of California, as per map recorded in Book 599, Page(s) 90 to 95 of Maps, in the office of the County Recorder of said County.

**EXHIBIT 3**



LT-WR LLC
antenna
Antenna #2



Antenna #2

**EXHIBIT 4**

# VHLP3-11W-6WH/A



0.9m | 3 ft ValuLine® High Performance Low Profile Antenna, single-polarized, 10.125–11.700 GHz, CPR90G flange, white antenna, composite broadband gray radome without flash, standard pack— one-piece reflector

## Product Classification

| | |
|---|---|
| **Product Type** | Microwave antenna |
| **Product Brand** | ValuLine® |

## General Specifications

| | |
|---|---|
| **Antenna Color** | White |
| **Antenna Input** | CPR90G |
| **Antenna Type** | VHLP - ValuLine® High Performance Low Profile Antenna, single-polarized |
| **Flash Included** | No |
| **Radome Color** | Gray |
| **Reflector Construction** | One-piece reflector |

## Dimensions

| | |
|---|---|
| **Diameter, nominal** | 0.9 m | 3 ft |

## Electrical Specifications

| | |
|---|---|
| **Operating Frequency Band** | 10.125 – 11.700 GHz |

## Material Specifications

| | |
|---|---|
| **Radome Material** | Composite Broadband |

## Packaging and Weights

| | |
|---|---|
| **Height, packed** | 1110 mm  |  43.701 in |
| **Width, packed** | 400 mm  |  15.748 in |
| **Length, packed** | 1200 mm  |  47.244 in |
| **Packaging Type** | Standard pack |

Page 1 of 2

©2020 CommScope, Inc. All rights reserved. All trademarks identified by ® or ™ are registered trademarks, respectively, of CommScope. All specifications are subject to change without notice. See www.commscope.com for the most current information. Revised: January 17, 2020

COMMSCOPE®

# VHLP3-11W-6WH/A

| | | |
|---|---|---|
| **Volume** | 0.5 m³  |  17.657 ft³ | |
| **Weight, gross** | 29 kg  |  63.934 lb | |

## Regulatory Compliance/Certifications

| Agency | Classification |
|---|---|
| CHINA-ROHS | Below maximum concentration value |
| ISO 9001:2015 | Designed, manufactured and/or distributed under this quality management system |
| REACH-SVHC | Compliant as per SVHC revision on www.commscope.com/ProductCompliance |
| ROHS | Compliant |



## * Footnotes

| | |
|---|---|
| **Operating Frequency Band** | Bands correspond with CCIR recommendations or common allocations used throughout the world. Other ranges can be accommodated on special order. |
| **Packaging Type** | Andrew standard packing is suitable for export. Antennas are shipped as standard in totally recyclable cardboard or wire-bound crates (dependent on product). For your convenience, Andrew offers heavy duty export packing options. |

Page 2 of 2

©2020 CommScope, Inc. All rights reserved. All trademarks identified by ® or ™ are registered trademarks, respectively, of CommScope. All specifications are subject to change without notice. See www.commscope.com for the most current information. Revised: January 17, 2020



**EXHIBIT 5**

**RESOLUTION NO. 2018-61**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES REVOKING IN ITS ENTIRETY AND EFFECTIVE IMMEDIATELY CONDITIONAL USE PERMIT NO. 230 FOR THE INSTALLATION OF COMMERCIAL ANTENNAS AND RELATED SUPPORT STRUCTURES AT 26708 INDIAN PEAK ROAD.**

WHEREAS, on June 21, 2001, the Applicant/Appellant, Mr. James A. Kay, Jr., submitted applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 for after-the-fact approval to establish the then-existing 5-masted, roof-mounted antennae and related support structures and equipment on the site for commercial use; and,

WHEREAS, on September 19, 2001, the applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 were deemed complete by Staff; and,

WHEREAS, pursuant to the provisions of the California Environmental Quality Act, Public Resources Code Sections 21000 *et seq.* ("CEQA"), the State's CEQA Guidelines, California Code of Regulations, Title 14, Section 15000 *et. seq.*, the City's Local CEQA Guidelines, and Government Code Section 65962.5(f) (Hazardous Waste and Substances Statement), Staff found no evidence that Conditional Use Permit No. 230 and Environmental Assessment No. 744 would not have a significant effect on the environment and, therefore, the proposed project was determined by Staff to be categorically exempt (Class 1, Section 15301); and,

WHEREAS, after the submittal of these applications on June 21, 2001, and while the Planning Commission was conducting the public hearings on this application, the Applicant installed at least twelve (12) additional vertical antenna masts with attached antennae onto the previously existing roof-mounted antenna support structure and array, including additional cables and conduits for the additional antennae; and on November 8, 2001, the Applicant submitted revised plans to the City depicting a total of twenty (20) vertical antenna masts with attached antennae on the roof-mounted antenna support structure and array; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the Planning Commission held a duly noticed public hearing on October 23, 2001, November 13, 2001, and November 15, 2001, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the Planning Commission, on November 15, 2001, adopted P.C. Resolution No. 2001-43 conditionally approving the project; and,

AR000001

WHEREAS, Mr. Kay timely appealed conditional approval by letter dated November 28, 2001, based on disagreement with "all conditions regulating the location, number and placement of antennas on the project site...."; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the City Council held a duly noticed public hearing on February 19, 2002, March 19, 2002, March 25, 2002 and April 16, 2002, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the City Council, on April 16, 2002, adopted Resolution No. 2002-27, thereby denying the appeal, modifying certain conditions of approval and conditionally approving the project; and,

WHEREAS, on May 15, 2002, Mr. Kay filed suit against the City in Federal District Court in order to overturn the City's decision on the grounds, among other things, that it violated the Telecommunications Act of 1996; and,

WHEREAS, on July 14, 2004, the United States District Court for the Central District of California ruled in the case of *Kay v. Rancho Palos Verdes* and ordered the "City Council of the City of Rancho Palos Verdes to issue a new resolution allowing James A. Kay, Jr. to use his five (5) mast antenna structure for commercial purposes, subject to reasonable conditions"; and,

WHEREAS, the City revised the conditions of approval for Conditional Use Permit No. 230 to allow the commercial use of Mr. Kay's 5-mast, roof-mounted, antenna array, which existed at the time and was depicted on plans provided to the City of Rancho Palos Verdes with the original submittal of the application for Conditional Use Permit No. 230 on June 21, 2001; and,

WHEREAS, this matter was agendized for the City Council's review and consideration on October 5, 2004, and November 16, 2004, but on both occasions the matter was continued to a subsequent City Council meeting at Mr. Kay's request in order to allow his legal counsel to discuss additional proposed revisions to the conditions of approval for Conditional Use Permit No. 230 with the City Attorney; and,

WHEREAS, the City Council, on December 21, 2004, adopted Resolution No. 2004-109, thereby revising eight (8) conditions of approval for Conditional Use Permit No. 230 pursuant to the July 14, 2004, order of the United States District Court; and,

WHEREAS, Mr. Kay subsequently petitioned the United States District Court to vacate the conditions of approval imposed by Resolution No. 2004-109; and,

WHEREAS, on April 4, 2005, the United States District Court issued an order in response to Mr. Kay's petition, finding that the provisions of Condition No. 19 of Conditional Use Permit No. 230 requiring "that Mr. Kay maintain the property as his

AR000002

primary residence [were] not reasonable," but also finding that all other conditions of approval imposed by Resolution No. 2004-109 were reasonable; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, on July 5, 2005, the City Council adopted Resolution No. 2005-75 revising the language for Condition No. 19 of Conditional Use Permit No. 230 thereby requiring that Mr. Kay complete necessary improvements to make the house habitable, including but not limited to, a functional kitchen and bathroom, and connections to utilities, along with weekly landscape and maintenance services; and,

WHEREAS, on November 28, 2014, the City issued Mr. Kay a Notice of Violation for the installation of unpermitted roof-mounted antennas resulting in a total of thirteen (13) roof-mounted antennae and support pole masts, well in excess of the five (5) City Council-approved, roof-mounted antennae and support pole masts. The City ordered the removal of all but the five (5) City Council-approved roof-mounted antennae and support pole masts from the roof, and requiring that the remaining five (5) City Council-approved, roof-mounted antennae and support pole masts comply with the City Council-adopted Conditions of Approval for Conditional Use Permit No. 230; and,

WHEREAS, on July 26, 2016, the City set a thirty (30) day period for compliance with the November 28, 2014, Notice of Violation. At the request of Mr. Kay, the City, in good faith, granted a time extension to this compliance deadline to October 28, 2016; and,

WHEREAS, on October 28, 2016, a Conditional Use Permit revision application (Planning Case No. ZON2016-00517) was submitted to the City requesting to legalize the unpermitted roof-mounted antennas; and,

WHEREAS, on November 23, 2016, the application was deemed incomplete for processing, and because the application originated from code enforcement action, the Applicant was given thirty (30) days, or until December 21, 2016, to submit the requested additional information in order continue processing the application; and,

WHEREAS, on March 21, 2017, the City received a letter from Mr. Kay's legal counsel, Mr. Nakasu, asserting that the application to revise Conditional Use Permit No. 230 with an after-the-fact amendment should be granted pursuant to RPVMC §17.76.020(A)(12)(b); and,

WHEREAS, on April 14, 2017, the City Attorney responded by outlining the City's position that, pursuant to Resolutions 2002-27, 2004-109, and 2005-75, the five (5) City Council-approved, roof-mounted antennae and support pole masts "refer only to the antennae and antenna array depicted in the plans submitted to the City on June 21, 2001, in photographs accompanying the application to revise CUP No. 230, and Environmental Assessment No. 744." Further, the City Attorney stated that any suggestion that additional antennae, support pole masts, and other structures were mere modifications not requiring City Council approval directly contravened the binding resolutions; and,

WHEREAS, on June 28, 2017, City Staff, the City Prosecutor, Mr. Nakasu, and Mr. Kay met to discuss this matter, at which time, Mr. Nakasu indicated that the antennae and support structures were "outdated" and "obsolete" and that they could be replaced with an alternative structure that would both address the telecommunications capacity needs, as well as the City's safety and aesthetic concerns with the current structures. Four months elapsed from the June 28, 2017, meeting, during this time, Mr. Kay did not make any further attempts to cure the application deficiencies in order to proceed with processing a revision to CUP No. 230, or to rectify the technological obsolescence of the existing structures; and,

WHEREAS, on October 19, 2017, Staff granted, in good faith, Mr. Kay additional time to submit the requested information in order for Mr. Kay to acquire a new permit expediter company; and,

WHEREAS, on October 23, 2017, the City Prosecutor sent a letter to Mr. Kay and Mr. Nakasu, the purpose of which was to summarize events subsequent to the June 28, 2017, meeting, to reiterate the deficiencies in the CUP No. 230 revision application, to discuss potential replacement of current, "obsolete," structures, and to discuss the potential for reinstating the Code Enforcement case, should the City's demands not be met; and,

WHEREAS, on December 13, 2017, City Staff, City Prosecutor, Mr. Nakasu, and Mr. Kay met, and at this meeting, Mr. Kay proposed alternative designs to replace the existing antennae, such as a faux monopole tree or new roof antennae on the rear yard-facing roof pitch, that would address the City's concerns and meet the needs of the commercial antennas. As a result, it was agreed that Mr. Kay would submit, by mid-January 2018, a concept drawing regarding a proposed alternative design for the City's initial review, followed by an application for the CUP on or before February 28, 2018. To date, the City has not received any information from Mr. Kay or his legal counsel; and,

WHEREAS, in accordance to RPVMC §17.60.080, if any of the conditions to the use or development are not maintained, then the Conditional Use Permit shall be null and void. Furthermore, the continued operation of a use requiring a Conditional Use Permit which is found to be noncompliant with any condition of a Conditional Use Permit shall constitute a violation of the Municipal Code; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Municipal Code, the City Council held a duly-noticed public hearing on August 21, 2018 to consider revoking Conditional Use Permit No. 230, at which time all interested parties were given an opportunity to be heard and present evidence.

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES DOES HEREBY FIND, DETERMINE, AND RESOLVE AS FOLLOWS:

AR000004

**Section 1:**   Having heard and considered the oral, written, and documentary evidence presented at the duly-noticed public hearing conducted by the City Council on August 21, 2018, the City Council makes the following findings:

A.      The property located at 26708 Indian Peak Road, Rancho Palos Verdes, California, (the "Subject Property") is the subject of Conditional Use Permit No. 230 ("CUP No. 230"), as granted by the City Council in Resolution No. 2004-109, and as amended by Resolution No. 2005-75. The Applicant, Mr. James A. Kay, Jr., did not successfully challenge, within the time provided by law, Resolution No. 2005-75, and has from and after the adoption of Resolution No. 2005-75 (the "CUP Date") accepted the benefits of CUP No. 230.

B.      CUP No. 230 required removal of all but five (5) of the existing eight-and-on-half-foot long masts and two of the television antennae from the roof, authorized a maximum of five (5) vertical masts, each with a height of eight and one-half (8 ½) feet, and not more than four (4) radiating per each mast.

C.      Condition of Approval No. 2.d states in part, "Any additional exterior antennae, masts or other antenna and support structure(s) shall require further approval or modification of this conditional use permit."

D.      Further, Condition of Approval No. 2 goes on to state that the Director is authorized to make only minor modifications to the approved plans and conditions of approval.  "Otherwise, any substantive change, such as the enlargement, expansion or addition to, the exterior masts and antennae that this approval allows outside of the exiting residential structure shall require approval of a revision to Conditional Use Permit No. 230 by the City Council and shall require a new and separate environmental review."

E.      The Subject Property has at various times from after the CUP Date had installed antennae and/or vertical masts on the roof as testified to by staff and depicted in photographic evidenced submitted into the Administrative Record.  Such evidence discloses installation of as many as twelve (12) additional vertical masts (the "Additional Masts") over and above the five (5) permitted by CUP No. 230.

F.      Mr. Kay has failed to provide any evidence that any permits of any kind (zoning, building, etc.) were obtained by him, directly or by an agent acting on his behalf, authorizing the construction of the Additional Masts. Written correspondence from his attorney admits such construction has occurred, does not contest to permits were obtained in advance, and has confirmed such by submitting an incomplete application for an "after-the-fact" permit for the Additional Masts.

G.    City records fail to show any action by the City Council subsequent to Resolution No. 2005-75 modifying, amending, or otherwise affecting CUP No. 230 to allow installation of more than five (5) vertical masts on the Subject Property. Further, although the City Council finds it would not properly be the subject of a minor modification, staff has indicated that no application for a minor modification was approved by the Director to that effect.

H.    The City staff has made various efforts to resolve these issues short of a revocation beginning in 2014. Despite numerous meetings, exchanges of correspondence, and opportunities to come into compliance with CUP No. 230 or, in the alternative, apply for a modification to CUP No. 230 to retroactively permit the Additional Masts, Mr. Kay has not diligently pursued any remedial opportunity and has continued to operate the unpermitted facilities while essentially "stringing along" the City.

I.    Based upon all the evidence presented, and after hearing the arguments and testimony on behalf of Mr. Kay, the public, and City staff, the City Council finds the evidence of construction of the unpermitted Additional Masts to be essentially uncontested in that Mr. Kay has admitted they exist. The City Council finds that no permits of any kind (zoning or building) were obtained by Mr. Kay and therefore the construction of the Additional Masts was in violation of the Rancho Palos Verdes Municipal Code and the specific provisions of the Conditions of Approval relating to modification or expansion of the use of the antennae structure by the increase in the number of masts above the five (5) permitted by CUP No. 230.

J.    The City Council further finds that the violation directly impacts surrounding properties due to the increased visual impact of commercial antennae which the limitation on the number of vertical masts was narrowly tailored to address, and that the Subject Property owner has repeatedly and knowingly violated the Conditions of Approval by the installation of the Additional Masts without any permits or other legally-required approvals, and subsequently has availed himself of numerous opportunities to come into compliance with the terms of CUP No. 230 such that revocation is the appropriate action and is necessary to protect the legitimate interests of the community.

**Section 2:**    Based on the information included in the Staff Report, the testimony and evidence presented at the public hearings in the past before the Planning Commission and the City Council, the administrative records related to those prior proceedings, the Minutes and the other records of this proceeding on file with the City, the City Council of the City of Rancho Palos Verdes hereby revokes Conditional Use Permit No. 230, as amended, in its entirety.

PASSED, APPROVED, AND ADOPTED this 21st day of August 2018.

_____
Mayor

Attest:

_____
City Clerk

State of California            )
County of Los Angeles          ) ss
City of Rancho Palos Verdes     )

I, Emily Colborn, City Clerk of the City of Rancho Palos Verdes, hereby certify that the above Resolution No. 2018-61 was duly and regularly passed and adopted by the said City Council at a regular meeting thereof held on August 21, 2018.

_____
City Clerk

Resolution No. 2018-61
Page 7 of 7

AR000007



**ALESHIRE & WYNDER**LLP
ATTORNEYS AT LAW

**June S. Ailin**
jailin@awattorneys.com
(310) 527-6665

2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245
P (310) 527-6660
F (310) 532-7395

ORANGE COUNTY | LOS ANGELES | RIVERSIDE | CENTRAL VALLEY

AWATTORNEYS.COM

November 19, 2021

**VIA ELECTRONIC MAIL ONLY**

Dawn Cushman
Angela M. Rossi
Bradley, Gmelich & Wellerstein, LLP
700 N. Brand Boulevard, 10th Floor
Glendale, CA 91203

Re:   26708 Indian Peak Road/Removal of Antennas

Dear Ms. Cushman and Ms. Rossi:

By now, I am sure you have had an opportunity to review the court of appeal's opinions affirming the judgment in the writ of mandate case and all but affirming the judgment in the nuisance abatement case. While there remains some work for a court to do on the nuisance abatement case, the ultimate outcome is clear. The City has prevailed on the first and second causes of action, making whatever happens to the third cause of action irrelevant.

In light of this outcome, the City hereby again demands, and expects, that all of the antennas at 26708 Indian Peak Road (except for the television satellite dish) and all related support structures, equipment and equipment housing will be removed expeditiously. If the removal have not been completed by December 22, 2021, we will proceed with obtaining a court order allowing the City to enter the property, remove the antennas and all related support structures, equipment and equipment housing, and recover the costs from Indian Peak Properties, LLC.

Very truly yours,

ALESHIRE & WYNDER, LLP

June Ailin

June S. Ailin
Partner

cc:   Honorable Mayor & Councilmembers,
       City of Rancho Palos Verdes
      Ara Mihranian, AICP,
       City Manager
      William W. Wynder, Esq.

01203.0033/752507.1

**EXHIBIT 6**

**Standard Terms and Conditions For LT-WR, LLC Internet Services**

The following terms and conditions, shall apply to the Internet Services of LT-WR, LLC.  By signing this agreement, Indian Peak Properties, LLC (customer) acknowledges having reviewed and accepted the Terms and Conditions contained herein.  This Agreement shall supersede any prior representations, understanding, or agreements, whether verbal or written.

1.    Service Date and Term.  This agreement will commence on January 01, 2021 for 12 month period. This agreement will automatically be extended and renewed on the same terms and conditions, unless Customer provides at least sixty (60) days written notice to LT-WR, LLC prior to the end of the applicable term, of its intent to terminate, whereupon the terms shall terminate.      LT-WR, LLC shall make reasonable efforts to make Services available to Customer by the requested service date.  LT-WR, LLC shall not be responsible for any damages whatsoever resulting in delays from meeting any service dates.

2.    Payment. Unless stated otherwise herein, billing shall commence immediately upon activation of Customer's Services.  Customer hereby agrees to pay $50 per month for 10MB Service by the invoice due date.  This amount is subject to an annual increase of three (3) percent. (Any amount not received by the due date will be subject to interest or a late charge. Late interest capped at 10% per annum or maximum allowable by Law, whichever is less and does not accrue until an invoice has been overdue for 30 days. Additional bandwidth may be leased at an additional one hundred ($100) per 20MB increment if available upon request, under the same terms and conditions.

3.    Billing.  All Services provided to Customer are provided on a pre-paid basis.  As such, payment for all Services shall be due no later than the first day of the service period.  (For example, if service period is June 1st thru June 30th, payment in full for Services shall be due no later than June 1st.)  All set-up or installation charges shall be due and payable immediately upon receipt of invoice.

4.    Suspension.  If Customer, for any reason, has not paid any outstanding invoices within fifteen (15) days of the invoice due date, LT-WR, LLC shall have the sole right to suspend, in whole or in part, the Services provided to Customer, with or without notice.  All suspended Services shall incur a one-time charge when reactivated.  Such service reactivation charge shall be due and payable immediately upon receipt of invoice.  If Customer fails to reactivate suspended services within fifteen (15) days of the suspension date, LT-WR, LLC shall terminate Services, which includes removal of any LT-WR, LLC owned equipment to provide services, and charge Customer for any applicable Termination liability as outlined below.

5.    Service and Installation.  LT-WR, LLC shall provide Customer with internet connection from private VLAN of 10MB to be delivered via copper or fiber optic cable to customer equipment location on 26708 Indian Peak Rd, Rancho Palos Verdes, CA.  Customer may use the Services for any lawful purpose, provided that such purpose does not interfere or impair the LT-WR, LLC network, equipment, or facilities.  Customer shall use the Equipment solely for the purposes of receiving the Services.  Customer shall not make any connections to the equipment which are not expressly authorized in writing by LT-WR, LLC or permit tampering, altering, or repair of the Equipment by any person other than LT-WR, LLC's authorized personnel.  Unless provided otherwise herein, LT-WR, LLC shall use reasonable efforts to

maintain the Services in accordance with applicable performance standards, however, LT-WR, LLC shall have no responsibility for the maintenance or repair of equipment which it does not furnish.  LT-WR, LLC is not responsible for the networks or facilities of third parties which may be necessary to provide the Services.

6.    Customer Responsibilities.  Customer is responsible for arranging all necessary rights of access for LT-WR, LLC within Customer's premises, including space for cables, conduits, equipment, and roof rights as necessary for LT-WR, LLC authorized personnel to install, repair, inspect, maintain, replace, or remove any and all facilities and equipment provided by LT-WR, LLC.  Customer shall use the Services in compliance with all applicable laws and ordinances, as well as applicable leases between Customer and third parties.  Customer is responsible for ensuring that Customer's equipment is compatible for the Services selected and with the LT-WR, LLC network.  Customer shall be solely responsible for any third party charges incurred from use of the Services, including but not limited to, any telephone or long distance charges.

7.    Equipment.  Unless provided herein, Customer agrees that LT-WR, LLC shall retain all rights, title and interest to facilities and Equipment installed by LT-WR, LLC, and that Customer shall not create or permit to be created any liens or encumbrances on such equipment.  Internal wiring shall not be considered Equipment, and shall become property of Customer upon initiation of Services.  Customer shall not modify or relocate Equipment installed by LT-WR, LLC or any other equipment, including servers in connection with data/internet without the prior written consent of LT-WR, LLC.  Upon expiration or termination of this Agreement, Customer shall return all Equipment in good condition, ordinary wear and tear from proper use excepted.  In the even Equipment is lost, stolen or damaged, Customer shall be responsible for the full replacement value of such Equipment.  LT-WR, LLC shall repair or replace Equipment at no charge to Customer provided that damage is not due to misuse, abuse, or other disaster, including acts of God.  If additional equipment, including but not limited to, monitors, computers, circuits, software or other devices, are required by Customer to use Services, Customer shall be responsible for such equipment.

8.    Spam Filtering.  Customer acknowledges that LT-WR, LLC is not responsible for any spam filtering.

9.    Default. If Customer fails to comply with any material provision of this Agreement, including but not limited to, failure to make payment as specified, then LT-WR, LLC, in its sole discretion, may elect to pursue one or more of the following courses of action upon proper notice to Customer as required by law: (i) terminate service whereupon all sums then due and payable shall become immediately due and payable; (ii) suspend all or any part of Services; and/or (iii) pursue any other remedies, including reasonable attorney's fees , as may be provided at law or in equity, including the applicable termination fees.  LT-WR, LLC shall give Customer a 60-day cure period prior to terminating Services for Customer default. In the event of a material breach of the Agreement by LT-WR, LLC, Customer may terminate this Agreement except for any invoices for Services utilized up to the termination date.

10.    IP Address.  LT-WR, LLC will allocate IP addresses to Customer according to ARIN guidelines.  All IP addresses assigned by LT-WR, LLC must be relinquished by Customer upon expiration, termination or cancellation of this Agreement.

11.    Termination.  Customer may terminate this agreement at any time by providing a sixty (60) day notice in writing. After the initial term, this Agreement shall automatically renew and shall be subject to the same terms of this Agreement.  Termination by Customer must be received in writing and shall require sixty (60) days notice.

12.    LIMITATION OF LIABILITY.  NEITHER LT-WR, LLC NOR CUSTOMER SHALL BE LIABLE FOR DAMAGES FOR FAILURE TO FURNISH OR INTERRUPTION OF ANY SERVICES, NOR SHALL LT-WR, LLC OR CUSTOMER BE RESPONSIBLE FOR FAILURE OR ERRORS IN SIGNAL TRANSMISSION, LOST DATA, FILES OR SOFTWARE DAMAGE REGARDLESS OF THE CAUSE.  NEITHER LT-WR, LLC NOR CUSTOMER SHALL BE LIABLE FOR DAMAGE TO PROPERTY OR FOR INJURY TO ANY PERSON ARISING FROM THE INSTALLATION OR REMOVAL OF EQUIPMENT UNLESS CAUSED BY GROSS NEGLIGENCE OF THE OTHER PARTY.  UNDER NO CIRCUMSTANCES SHALL LT-WR, LLC OR CUSTOMER BE RESPONSIBLE FOR ANY SPECIAL OR CONSEQUENTIAL DAMAGES INCLUDING LOST PROFITS ARISING FROM THIS AGREEMENT.

13.    Assignment.  Neither party may assign, in whole or in part, this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld.

14.    WARRANTIES.  EXCEPT AS PROVIDED HEREIN, THERE ARE NOT AGREEMENTS, WARRANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW, STATURORY OR OTHERWISE, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, RELATING TO THE SERVICES.  SERVICES PROVIDED ARE A BEST EFFORTS SERVICE AND LT-WR, LLC DOES NOT WARRANT THAT SERVICES, EQUIPMENT OR SOFTWARE SHALL BE ERROR-FREE OR WITHOUT INTERRUPTION.

15.    Indemnity.  Customer and LT-WR, LLC shall mutually indemnify and hold one another and their respective affiliates, subcontractors, employees or agents harmless (including payment of reasonable attorney's fees) from and against any claim, actions or demands relating to or arising out of  use of the Service including, without limitation (i) any content or software displayed, distributed or otherwise disseminated by the Customer, its employees, or users of the Services; (ii) any claim that use of the Service, infringes on the patent, copyright, trademark or other intellectual property right of any third party; (iii) any malicious act or act in violation of any laws committed by LT-WR, LLC or Customer and their respective  employees or users of the Services.

16.    Viruses, Content and Customer Information.  Software or content obtained from the use of the Services may contain viruses or other harmful features and Customer is solely responsible for protecting its equipment and software from such matters.  Through the use of the Services, Customer may obtain or discover content that is offensive or illegal and Customer assumes the risk and is solely responsible for its access to such content.

17.    Miscellaneous.  This constitutes the entire agreement between LT-WR, LLC and Customer for the Services.  The invalidity or unenforceability of any term or condition of this Agreement shall not affect the validity or enforceability of any other provision herein.  This Agreement may be modified, waived or amended only by a written instrument signed by the parties. The rights and obligations of the parties under this Agreement shall be governed by the laws of the state of California.  The failure of either party to exercise one or more rights provided in this Agreement shall not be deemed a waiver of the right to exercise such right in the future.  Notices required by this Agreement shall be in writing and shall be delivered either by personal delivery or by mail.  If delivered by mail, notices should be sent by any express mail service; or by certified or registered mail, return receipt requested; with all postage and charges prepaid.  All notices and other written communications under this Agreement shall be addressed to the parties at the address as identified on the Service Order Form, or as specified by subsequent written notice delivered by the party whose address has changed.

18.    Regulatory Authority – Force Majeure.  This Agreement and the obligations of the parties shall be subject to modification to comply with all applicable laws, regulations, court rulings, and administrative orders, as amended.  In no event shall either party have any claim against the other for failure of performance if such failure is caused by acts of God, natural disasters, including fire, flood, or winds, civil or military action, including riots, civil insurrection or acts of terrorists or the taking of property by condemnation.

**Legal Notices and Twenty-Four Hour Emergency Telephone Numbers.**

                                      "CUSTOMER"

LT-WR, LLC.                              Indian Peak Properties, LLC

Lucky's Two-Way Radios, Manager           26708 Indian Peak Rd

Post Office Box 7890                     Rancho Palos Verdes, CA 92075

Van Nuys, CA 91409-7835

Phone: (818) 997-7700          Phone:  818-997-7700

**IN WITNESS WHEREOF THE PARTIES HERETO HAVE EXECUTED THIS LICENSE AGREEMENT THE DAY AND YEAR FIRST ABOVE WRITTEN.**

LT-WR, LLC.

By: _____

LUCKY'S TWO WAY RADIOS, INC., Manager

James A. Kay, Jr., President


"CUSTOMER"

_Indian Peak Properties, LLC._____

By: _____

Name: __James A. Kay, Jr._____

Title: __President of Manager, Lucky's Two-Way Radios_____

Case #23-1223     Document #2013313     Filed: 08/18/2023     Page 120 of 336

**Indian Peak Properties, LLC**
**Computer & Manual Check Register**
**Current and History Files, After 12/01/21**
**All Accounts, Sessions 000000 to 001666**
**Vendor = LTW1**

| Vendor | Vendor Name | Check # | Ck Date | Prity | Invoices | Reference | Amount |
|--------|-------------|---------|---------|-------|----------|-----------|--------|
| **Checking Account:** | 10200-000 | | **Session:** | 001615 | | | |
| LTW1 | LT-WR, LLC | 1364 | 12/13/21 | 2 | 2022001 | JANUARY | 50.00 |
| | | 1371 | 01/17/22 | 2 | 2022002 | FEBRUARY | 50.00 |
| | | 1377 | 02/11/22 | 2 | 2022003 | MARCH | 50.00 |
| | | 1385 | 03/11/22 | 2 | 2022004 | APRIL | 50.00 |
| | | 1391 | 04/11/22 | 2 | 2022005 | MAY | 50.00 |
| | | | | | | **LTW1 Subtotal :** | 250.00 |
| | | | | | | **Check Register Total :** | 250.00 |

**Invoice 3409**

Invoice Date **01/01/21**

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| | Purchase Order Number | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | | Unit of Measure | Unit Price | Tax | Extended Price |
|---|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | | Discount % | | |
| 1 | 1 | INTERNET | | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

# Invoice 3415

**Invoice Date** 02/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | F.O.B. | Terms |
|---|---|---|---|
| IND1 | | | 1st of month |

| Purchase Order Number | | Salesperson | Order Date | Our Order Number |
|---|---|---|---|---|
| | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

|  |  |
|---|---|
| Nontaxable Subtotal | 50.00 |
| Taxable Subtotal | 0.00 |
| Tax | 0.00 |
| Total Invoice | 50.00 |

Customer Original (Reprinted)

Page    1

**Invoice 3428**

**Invoice Date** 03/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

Bill To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

Ship To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B | | | Terms | |
|---|---|---|---|---|---|---|---|
| IND1 | | | | | | 1st of month | |

| Purchase Order Number | | Salesperson | Order Date | Our Order Number | |
|---|---|---|---|---|---|
| | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page     1

# Invoice 23440

**Invoice Date** 04/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | Salesperson | Order Date | Our Order Number | |
| | | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

# Invoice **3453**

**Invoice Date** 05/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| | Nontaxable Subtotal | 50.00 |
| | Taxable Subtotal | 0.00 |
| | Tax | 0.00 |
| | Total Invoice | 50.00 |

Customer Original (Reprinted)

# Invoice 23466

**Invoice Date** 06/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

# Invoice 3478

**Invoice Date** 07/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys. CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties. LLC
P.O. Box 7835
Van Nuys  CA 91406
USA

**Ship To:**

indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

**Invoice 3492**

Invoice Date **08/01/21**

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

Bill To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

Ship To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| | Purchase Order Number | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |
| Quantity Ordered | Quantity Shipped | Item Number | | Unit of Measure | Unit Price | Extended Price |
| | Back Ordered | Item Description | | | Discount % | Tax | |
| 1 | 1 | INTERNET | | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | | N | |

| | | |
|---|---|---|
| | Nontaxable Subtotal | 50.00 |
| | Taxable Subtotal | 0.00 |
| | Tax | 0.00 |
| | Total Invoice | 50.00 |

# Invoice 3503

**Invoice Date** 09/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

Bill To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

Ship To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

**Invoice 3519**

**Invoice Date 10/01/21**

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | | Terms | |
|---|---|---|---|---|---|---|---|
| IND1 | | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number | |
| | | | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

**Invoice 3526**

**Invoice Date 11/01/21**

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone. 818/997-7700

Bill To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

Ship To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | | Salesperson | Order Date | Our Order Number | |
|---|---|---|---|---|---|---|
| | | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page   1

# Invoice 3543

**Invoice Date** 12/01/21

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties. LLC
P.O. Box 7835
Van Nuys. CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | Salesperson | Order Date | Our Order Number |
|---|---|---|---|---|
| | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | Tax | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page   1

# Invoice 3557

**Invoice Date** 01/01/22

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|----------|----------|--|--------|--|-------|--|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | Salesperson | Order Date | Our Order Number |
|-----------------------|--|-------------|------------|------------------|
| | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | Tax | Extended Price |
|------------------|------------------|-------------|-----------------|------------|-----|----------------|
| | Back Ordered | Item Description | | Discount % | | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|--|--|--|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

# Invoice 3569

**Invoice Date** 02/01/22

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

Bill To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

Ship To:

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|----------|----------|--|--------|--|-------|--|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | Salesperson | Order Date | Our Order Number |
|-----------------------|--|-------------|------------|------------------|
| | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|------------------|------------------|-------------|-----------------|------------|---|----------------|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|--|--|--|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

# Invoice **3581**

**Invoice Date** 03/01/22

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | | Salesperson | Order Date | Our Order Number | |
|---|---|---|---|---|---|---|
| | | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | | Unit of Measure | Unit Price | Tax | Extended Price |
|---|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | | Discount % | | |
| 1 | 1 | INTERNET | | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page     1

# Invoice 3595

**Invoice Date** 04/01/22

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |
| Purchase Order Number | | | | Salesperson | Order Date | Our Order Number |
| | | | | XX | 01/19/21 | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

# Invoice 3609

**Invoice Date** 05/01/22

**LT-WR, LLC**
P.O. Box 7835
Van Nuys, CA 91409-7835

Telephone: 818/997-7700

**Bill To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

**Ship To:**

Indian Peak Properties, LLC
P.O. Box 7835
Van Nuys, CA 91406
USA

| Customer | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| IND1 | | | | | 1st of month | |

| Purchase Order Number | | | Salesperson | Order Date | Our Order Number | |
|---|---|---|---|---|---|---|
| | | | XX | 01/19/21 | | |

| Quantity Ordered | Quantity Shipped | Item Number | Unit of Measure | Unit Price | | Extended Price |
|---|---|---|---|---|---|---|
| | Back Ordered | Item Description | | Discount % | Tax | |
| 1 | 1 | INTERNET | | 50.00 | | 50.00 |
| | 0 | Internet Access Service - RPV | | | N | |

| | | |
|---|---|---|
| Nontaxable Subtotal | | 50.00 |
| Taxable Subtotal | | 0.00 |
| Tax | | 0.00 |
| Total Invoice | | 50.00 |

Customer Original (Reprinted)

Page    1

**EXHIBIT 7**

# RANCHO PALOS VERDES

## Business License Application
## For Home Occupancy Businesses
Expires December 31, 2022

**COMPLETE ALL APPLICABLE INFORMATION ON THE FRONT AND BACK OF THIS FORM.**

(Check One):  ☐ Renewal

☒ **New License & Date** (Business Began Operating In the    04/18/2022

**Business Name**    City): INDIAN PEAK PROPERTIES, LLC

**Home Address**    26708 INDIAN PEAK RD

RANCHO PALOS VERDES, CA 90275
City                                    Zip

**Mailing Address**
(If Different From Above)

City                                    Zip

**Business Phone**   818-997-7700    **Email**   Maxi.Silver@buddycorp.com

**Business Classification** (Check One):   ☐ Sole Proprietor   ☐ Corporation   ☐ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**    20-3813254

**Business Owner Name**   KAY,  JAMES
                          Last                        First

**Description of Business**    RENTAL
(Indicate if visitors will be
coming to the residence)

**Regulated Businesses**   Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐    Escort Service ☐    Peddling Service ☐    Massage Service ☐

*I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.*

Signature    James Kay, Jr    PRESIDENT OF MANAGER    04/18/2022
             Print Name          Title                      Date

**Please Note:**   Business license applications are due prior to commencing operations and expire each December 31st.  Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for  violation of the Business Tax Ordinance.  Penalties will be assessed @ 5% for each month delinquent up to 50%  of the total license fee.  No extensions or waivers of the penalty amount will be granted.

| Tax | Penalty | State Fee | Total Amount Due | Initials | Check # |
|-----|---------|-----------|------------------|----------|---------|
|     |         | $4.00     |                  |          |         |

*Planning, Building & Safety, & Code Enforcement Use Only*

| Zone | | Moratorium | | Approved | |
|------|--|-----------|--|----------|--|
| Type | | Planner | | Date | |
| Comments | | | | | |

**30940 Hawthorne Boulevard, Rancho Palos Verdes, CA  90275**
**Business License Office (310) 544-5301   www.rpvca.gov**



# *City of Rancho Palos Verdes*
# *Home Occupation Standards*
### (effective May 15, 1997)

<u>17.08.030  Review of applications</u>.  Home Occupations shall be permitted only if they comply with the following standards, and such other conditions, which are imposed by the director:

A.  All structures must comply with general appearance, setbacks, and landscaping standards and regulations applicable to all zoning districts of the area in which they are located.

B.  No displays, signs, and/or advertisements associated with the Home Occupation shall be permitted.

C.  The permitted activity shall not be injurious to the use of neighboring property by reason of noise, vibration, odor, fumes, smoke, dust or similar adverse impacts on adjacent properties.

D.  There shall be no radio or television interference created by said Home Occupation.

E.  A Home Occupation shall not create vehicular or pedestrian traffic which changes the residential character of the neighborhood and dwelling unit where the business is being conducted, or create a greater demand for parking than can be accommodated on site or on the street frontage abutting the property where the Home Occupation is being conducted.

F.  There shall be no deliveries to and from the residence of bulk materials which are used in conjunction with the Home Occupation and no deliveries of materials, goods or retail merchandise associated with a Home Occupation, if such deliveries change the residential character of the neighborhood and dwelling unit where the business is being conducted.

G.  The person conducting the profession or business must reside within the dwelling unit in which the activity is located.

H.  With the exception of one "home occupation employee," as defined in chapter 17.96, there shall be no employment of help other than individuals residing at the subject residence.  An on site parking area of no less than nine (9) feet in width by twenty (20) feet in length shall be provided for the one home occupation employee.

I.  There shall be no use or storage of dangerous chemicals, acids, caustics, explosives, or other such hazardous equipment or materials, other than those materials that are used in typical household activities as classified in the county household hazardous materials list.

J.  There shall be no storage of materials and/or supplies, associated with the Home Occupation, outside of the residence, which may be visible from adjoining properties and/or the public right-of-way.  If the garage is used to store Home Occupation associated materials, the minimum interior parking dimensions specified in Section 17.02.030 (Single Family Residential Districts) shall be maintained.

K.  There shall be no use of utilities or community facilities, which change the residential character of the neighborhood and dwelling unit where the business is being conducted beyond the level, which is normal for the use of the property for residential purposes.

L.  The establishment and conduct of a Home Occupation shall not change the principal residential character of the use of the dwelling unit, nor shall there be any exterior evidence of the Home Occupation being conducted.  The home occupation use shall be clearly incidental to the residential use.

**I HAVE READ AND I UNDERSTAND THE STANDARDS REGULATING HOME OCCUPATIONS IN THE CITY OF RANCHO PALOS VERDES.**

**INDIAN PEAK PROPERTIES, LLC**
Business Name

**26708 INDIAN PEAK RD.**

**RANCHO PALOS VERDES CA**
<u>90275</u>  Street Address

 <u>04/18/2022</u>
Date

Business Owner Signature

JAMES A. KAY, JR

Business Owner Name (printed)



# NEVADA STATE BUSINESS LICENSE

### INDIAN PEAK PROPERTIES, LLC

### Nevada Business Identification # NV20051707408
### Expiration Date: 11/30/2022

In  accordance with Title 7 of Nevada Revised Statutes, pursuant to proper  application duly filed and payment of appropriate prescribed  fees, the above named is hereby granted a Nevada State Business License  for business activities conducted within the State of Nevada.

Valid until the expiration date listed unless suspended, revoked or cancelled in accordance with the provisions in Nevada Revised Statutes.  License is not transferable and is not in lieu of any local business license, permit or registration.

**License must be cancelled on or before its expiration date if business activity ceases. Failure to do so will result in late fees or penalties which, by law, cannot be waived**.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on 12/06/2021.

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

Certificate Number: B202112062207212
You may verify this certificate
online at http://www.nvsos.gov



CITY OF  RANCHO PALOS VERDES

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBUS-4921** |
| **Issue Date:** | **4/18/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:  INDIAN PEAK PROPERTIES LLC**
**Business Address:  26708 INDIAN PEAK RD**
                  **RANCHO PALOS VERDES   CA  90275-0000**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409



# City of Rancho Palos Verdes
# Home Occupation Standards
### (effective May 15, 1997)

17.08.030  Review of applications.  Home Occupations shall be permitted only if they comply with the following standards, and such other conditions, which are imposed by the director:

A. All structures must comply with general appearance, setbacks, and landscaping standards and regulations applicable to all zoning districts of the area in which they are located.

B. No displays, signs, and/or advertisements associated with the Home Occupation shall be permitted.

C. The permitted activity shall not be injurious to the use of neighboring property by reason of noise, vibration, odor, fumes, smoke, dust or similar adverse impacts on adjacent properties.

D. There shall be no radio or television interference created by said Home Occupation.

E. A Home Occupation shall not create vehicular or pedestrian traffic which changes the residential character of the neighborhood and dwelling unit where the business is being conducted, or create a greater demand for parking than can be accommodated on site or on the street frontage abutting the property where the Home Occupation is being conducted.

F. There shall be no deliveries to and from the residence of bulk materials which are used in conjunction with the Home Occupation and no deliveries of materials, goods or retail merchandise associated with a Home Occupation, if such deliveries change the residential character of the neighborhood and dwelling unit where the business is being conducted.

G. The person conducting the profession or business must reside within the dwelling unit in which the activity is located.

H. With the exception of one "home occupation employee," as defined in chapter 17.96, there shall be no employment of help other than individuals residing at the subject residence.  An on site parking area of no less than nine (9) feet in width by twenty (20) feet in length shall be provided for the one home occupation employee.

I. There shall be no use or storage of dangerous chemicals, acids, caustics, explosives, or other such hazardous equipment or materials, other than those materials that are used in typical household activities as classified in the county household hazardous materials list.

J. There shall be no storage of materials and/or supplies, associated with the Home Occupation, outside of the residence, which may be visible from adjoining properties and/or the public right-of-way.  If the garage is used to store Home Occupation associated materials, the minimum interior parking dimensions specified in Section 17.02.030 (Single Family Residential Districts) shall be maintained.

K. There shall be no use of utilities or community facilities, which change the residential character of the neighborhood and dwelling unit where the business is being conducted beyond the level, which is normal for the use of the property for residential purposes.

L. The establishment and conduct of a Home Occupation shall not change the principal residential character of the use of the dwelling unit, nor shall there be any exterior evidence of the Home Occupation being conducted.  The home occupation use shall be clearly incidental to the residential use.

**I HAVE READ AND I UNDERSTAND THE STANDARDS REGULATING HOME OCCUPATIONS IN THE CITY OF RANCHO PALOS VERDES.**

**COMM ENTERPRISES, LLC DBA
SOUTHLAND COMMUNICAITONS**

Business Name

**26708 INDIAN PEAK RD.**

**RANCHO PALOS VERDES CA  90275**
Street Address
**04/20/2022**

Date

Business Owner Signature

JAMES A. KAY, JR
Business Owner Name (printed)

W:\FORMS\BUSINESS LICENSE\2008\BL FORMS\HOME OC STANDARDS FORM.DOC



**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

CITYOF    RANCHO PALOS VERDES

# BUSINESS TAX REGISTRATION CERTIFICATE

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0601** |
| **Issue Date:** | **4/20/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:   COMMUNICATIONS RELAY, LLC**
**Business Address:   26708 Indian Peak Rd**
              **Rancho Palos Verdes   CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

**MUST BE DISPLAYED IN PLACE OF BUSINESS – NON TRANSFERABLE**



CITY OF **RANCHO PALOS VERDES**

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

# BUSINESS TAX REGISTRATION CERTIFICATE

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0563** |
| **Issue Date:** | **1/19/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:   LT-WR, LLC**
**Business Address:  26708 Indian Peak Rd**
                    **Rancho Palos Verdes   CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

**EXHIBIT 8**



**DEAN HELLER**
Secretary of State
206 North Carson Street
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

Entity #
**E0766652005-1**
Document Number:
**20050547765-41**

Date Filed:
**11/14/2005 2:17:36 PM**
**In the office of**

*Dean Heller*

**Dean Heller**
**Secretary of State**

## Articles of Organization
## Limited-Liability Company
### (PURSUANT TO NRS 86)

**Important: Read attached instructions before completing form.**    ABOVE SPACE IS FOR OFFICE USE ONLY

| | | |
|---|---|---|
| 1. **Name of Limited-Liability Company:** | INDIAN PEAK PROPERTIES, LLC | |

2. **Resident Agent Name and Street Address:** (must be a Nevada address where process may be served)

GKL RESIDENT AGENTS/FILINGS, INC.
Name

| 1000 EAST WILLIAM ST., STE 204 | CARSON CITY | , NEVADA | 89701 |
|---|---|---|---|
| Physical Street Address | City | | Zip Code |
| Additional Mailing Address | City | State | Zip Code |

3. **Dissolution Date:** (OPTIONAL-see instructions)

Latest date upon which the company is to dissolve (if existence is not perpetual): _____

4. **Management:** (check one)

Company shall be managed by ____X____ Manager(s) OR _____ Members

5. **Names Addresses of Manager(s) or Members:** (attach additional pages as necessary)

LUCKY'S TWO-WAY RADIOS, INC
Name

| 1350 E. FLAMINGO RD, STE 13B #348 | LAS VEGAS | NEVADA | 89119 |
|---|---|---|---|
| Address | City | State | Zip Code |
| Name | | | |
| Address | City | State | Zip Code |
| Name | | | |
| Address | City | State | Zip Code |

6. **Names, Addresses and Signatures of Organizers:** (if more than one organizer, please attach additional page)

LUCKY'S TWO-WAY RADIOS, INC
BY: JAMES A. KAY, JR., PRESIDENT
Name    Signature

| 1350 E. FLAMINGO RD, STE 13B #348 | LAS VEGAS | NEVADA | 89119 |
|---|---|---|---|
| Address | City | State | Zip Code |

7. **Certificate of Acceptance of Appointment of Resident Agent:**

I hereby accept appointment as Resident Agent for the above named limited-liability company.

Authorized Signature of R.A. or On Behalf of R.A. Company    Date: **NOVEMBER 10, 2005**

This form must be accompanied by appropriate fees.

Nevada Secretary of State LLC Arts 2003
Revised on: 10/03/05

# STATE OF NEVADA

**BARBARA K. CEGAVSKE**
*Secretary of State*

**KIMBERLEY PERONDI**
*Deputy Secretary for*
*Commercial Recordings*



**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings & Notary Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA

**Work Order #:** W2021120602375
December 6, 2021
Receipt Version: 1

**Special Handling Instructions:**

**Submitter ID:** 12452

**Charges**

| Description | Fee Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|---|
| Annual List | Fees | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $150.00 | $150.00 |
| Annual List | Business License Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $200.00 | $200.00 |
| Annual List | Business License Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $100.00 | $100.00 |
| Annual List | Annual List Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $75.00 | $75.00 |
| Total | | | | | | | $525.00 |

**Payments**

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 6388355341036878903086 | Success | $525.00 |
| Total | | | $525.00 |

**Credit Balance:**     $0.00

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA

# STATE OF NEVADA

**BARBARA K. CEGAVSKE**
*Secretary of State*



**KIMBERLEY PERONDI**
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

## Business Entity - Filing Acknowledgement

12/06/2021

| | |
|---|---|
| **Work Order Item Number:** | W2021120602375 - 1761038 |
| **Filing Number:** | 20211938896 |
| **Filing Type:** | Annual List |
| **Filing Date/Time:** | 12/06/2021 16:05:48 PM |
| **Filing Page(s):** | 2 |

**Indexed Entity Information:**

**Entity ID:** E0766652005-1

**Entity Name:** INDIAN PEAK PROPERTIES, LLC

**Entity Status:** Active

**Expiration Date:** None

Commercial Registered Agent

CORPORATION SERVICE COMPANY

112 NORTH CURRY STREET, Carson City, NV 89703, USA

The attached document(s) were filed with the Nevada Secretary of State, Commercial Recording Division. The filing date and time have been affixed to each document, indicating the date and time of filing. A filing number is also affixed and can be used to reference this document in the future.

Respectfully,

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

Page 1 of 1

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website: www.nvsos.gov**
**www.nvsilverflume.gov**

# Annual or Amended List and State Business License Application

☑ **ANNUAL**   ☐ **AMENDED** (check one)

## List of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:

| | |
|---|---|
| **INDIAN PEAK PROPERTIES, LLC** | **NV20051707408** |
| NAME OF ENTITY | Entity or Nevada Business Identification Number (NVID) |

## TYPE OR PRINT ONLY - USE DARK INK ONLY - DO NOT HIGHLIGHT

_**IMPORTANT:**_ _Read instructions before completing and returning this form._

Please indicate the entity type (check only one):

☐ Corporation
   ☐ This corporation is publicly traded, the Central Index Key number is: _____

☐ Nonprofit Corporation (see nonprofit sections below)

☑ Limited-Liability Company

☐ Limited Partnership

☐ Limited-Liability Partnership

☐ Limited-Liability Limited Partnership

☐ Business Trust

☐ Corporation Sole

| Filed in the Office of | Business Number E0766652005-1 |
|---|---|
| _Barbara K. Cegavske_ | Filing Number 20211938896 |
| Secretary of State State Of Nevada | Filed On 12/06/2021 16:05:48 PM |
| | Number of Pages 2 |

Additional Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers, may be listed on a supplemental page.

---

**CHECK ONLY IF APPLICABLE**
Pursuant to NRS Chapter 76, this entity is exempt from the business license fee.
☐ 001 - Governmental Entity
☐ 006 - NRS 680B.020 Insurance Co, provide license or certificate of authority number _____

**For nonprofit entities formed under NRS chapter 80:** entities without 501(c) nonprofit designation are required to maintain a state business license, the fee is $200.00. Those claiming an exemption under 501(c) designation must indicate by checking box below.

☐ Pursuant to NRS Chapter 76, this entity is a 501(c) nonprofit entity and is exempt from the business license fee. Exemption Code 002

**For nonprofit entities formed under NRS Chapter 81:** entities which are Unit-owners' association or Religious, Charitable, fraternal or other organization that qualifies as a tax-exempt organization pursuant to 26 U.S.C $ 501(c) are excluded from the requirement to obtain a state business license. Please indicate below if this entity falls under one of these categories by marking the appropriate box. If the entity does not fall under either of these categories please submit $200.00 for the state business license.

☐ Unit-owners' Association   ☐ Religious, charitable, fraternal or other organization that qualifies as a tax-exempt organization pursuant to 26 U.S.C. $501(c)

---

**For nonprofit entities formed under NRS Chapter 82 and 80:** Charitable Solicitation Information - check applicable box
Does the Organization intend to solicit charitable or tax deductible contributions?
☐ No - no additional form is required
☐ Yes - the "Charitable Solicitation Registration Statement" is required.
☐ The Organization claims exemption pursuant to NRS 82A 210 - the "Exemption From Charitable Solicitation Registration Statement" is required

**\*\*Failure to include the required statement form will result in rejection of the filing and could result in late fees.\*\***



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov
www.nvsilverflume.gov

## Annual or Amended List and State Business License Application - Continued

**Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:**

CORPORATION, INDICATE THE <u>MANAGER</u>:

| **LUCKY'S TWO-WAY RADIOS INC** | | **USA** | |
|---|---|---|---|
| Name | | Country | |
| **1350 E FLAMINGO RD STE 13B BOX 346** | **LAS VEGAS** | **NV** | **89119** |
| Address | City | State | Zip/Postal Code |

None of the officers and directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** ___James A Kay Jr___

**Signature of Officer, Manager, Managing Member,
General Partner, Managing Partner, Trustee,
Subscriber, Member, Owner of Business,
Partner or Authorized Signer** *FORM WILL BE RETURNED IF
UNSIGNED*

| **President of the Manager** | **12/06/2021** |
|---|---|
| Title | Date |

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

LLC-12

20-C95464

# FILED

In the office of the Secretary of State
of the State of California

**JUL 27, 2020**

**This Space For Office Use Only**

**IMPORTANT —** Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC.  If you registered in California using an alternate name, see instructions.)

INDIAN PEAK PROPERTIES, LLC

| 2.  12-Digit Secretary of State File Number | 3.   State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 200532310077 | NEVADA |

**4.  Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1350 E Flamingo Rd. STE 13B Box 346 | Las Vegas | NV | 89119 |
| b. Mailing Address of LLC, **if different than item 4a** | City (no abbreviations) | State | Zip Code |
| PO BOX 7890 | Van Nuys | CA | 91409 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State CA | Zip Code |

**5.  Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank).  If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank).  Note:  The LLC cannot serve as its own manager or member.  If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Entity Name - Do not complete Item 5a |
|---|
| Lucky's Two-Way Radios, INC |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1350 E. Flamingo RD. STE 13B Box 346 | Las Vegas | NV | 89119 |

**6.  Service of Process** (Must provide either Individual **OR** Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State CA | Zip Code |
|---|---|---|---|
| | | | |

**CORPORATION** – Complete Item 6c only.  Only include the name of the registered agent.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| BUSINESS FILINGS INCORPORATED (C2113485) |

**7.  Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Real Estate Holdings |

**8.  Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9.  The Information contained herein, including any attachments, is true and correct.**

| 07/27/2020 | James A Kay JR | President of the Manager | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed.  SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:        ⌐                              ⌐

Company:

Address:

City/State/Zip:   ⌐                          ⌐

# Exhibit E

To Indian Peak Properties LLC
Application for Review
January 12, 2023

# Petition for Declaratory Ruling Antenna 3

Of Indian Peak Properties LLC
May 1, 2022

**Before the**

**FEDERAL COMMUNICATIONS COMMISSION**

**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| Indian Peak Properties and California Internet | ) |
| dba GeoLinks, | )    CSR _____-0 |
| Petition for Declaratory Ruling Under 47 C.F.R. §1.4000 | ) |
| To:    Office of the Secretary | ) |
| Attn:   Chief, Media Bureau | ) |

**PETITION FOR DECLARATORY RULING**

Indian Peak Properties, LLC ("Petitioner"), by its attorney and pursuant to Sections 1.2 and 1.4000 (e) if the Commission´s Rules,[1] respectfully requests a declaratory ruling that: (a) certain antennas described more fully herein are within the scope of protection from state and local restrictions provided by the OTARD rule;[2] (b) restrictions asserted by the City of Rancho Palos Verdes, California (the "City") impair the installation, maintenance or use of such antennas; and (c) the City´s actions are unlawful, preempted by federal authority under the OTARD rule, and therefore unenforceable.

## I.    BACKGROUND

1.    The subject of this petition is property (the "Property") located at 26708 Indian Peak Road, Rancho Palos Verdes, California 90275, which is owned by Petitioner.[3] The Property is a single-

---

[1] 47 C.F.R. §§ 1.2 and 1.4000 (e).

[2] 47 C.F.R. § 1.4000.

[3] The property was previously owned by James A. Kay, Jr., an individual who owns and controls Petitioner. The term "Petitioner" includes Mr. Kay and Indian Peak Properties, LLC, except where the context requires otherwise.

1

family home, which is used by the owner, James Kay and his company Indian Peak Properties, LLC, and from time to time by individuals or business entities that rent the Property from the owner for a fixed term. There are a total of five (5) antenna structures, each of them installed on the rooftop of the Property and described in Section 2 of this Petition. All factual assertions in this Petition are supported by the following Exhibits, which are attached to this Petition:

Exhibit 1 – Declaration of Daniel W. Redmond, Senior Wireless Network Design Engineer;

Exhibit 2 – Property Detail Report and Deed to 26708 Indian Peak Road, Rancho Palos Verdes, CA 90275;

Exhibit 3 – Photographs of Antenna 3;

Exhibit 4 – Specifications for Antenna 3;

Exhibit 5 – City Resolution 2018-61 and City attorney letter demanding removal of antennas;

Exhibit 6 – California Internet dba GeoLinks Internet Service Contract for Internet Access Service to Indian Peak Properties, LLC and monthly invoices to Indian Peak Properties, LLC;

Exhibit 7 – Business Licenses for California Internet dba GeoLinks and Indian Peak Properties, LLC; and

Exhibit 8 – Indian Peak Properties, LLC's Articles and Information.

2.   The antenna structures installed on the rooftop of the Property are the subject of past and present ongoing regulatory disputes and civil litigation between Petitioner and the City. On December 21, 2004, the Rancho Palos Verdes City Council adopted Resolution No. 2004-109, approving Conditional Use Permit No. 230 ("CUP 230") approving the placement of five UHF antennas, each a Sinclair model SD314-HF2PSNM measuring 9.5 feet (3.9 meters) in height with four co-linear radiating elements. In subsequent years, some antennas were removed and other antennas were installed on the rooftop of the Property on the good faith assumption that the additional antennas did not require prior zoning approvals because they did not involve the erection

of additional support structure and were mounted on the same Building as the UHF antennas that had been approved under CUP 230 and were smaller and lower in profile than the UHF antennas. Petitioner also believes that most if not all of the additional antennas were within the scope of the OTARD rule and therefore would not have required prior zoning approval even in the absence of CUP 230.

3. On August 21, 2018, the City Council adopted Resolution No. 2018-61, purporting to revoke in its entirety CUP 230. Without conceding the validity of that Resolution, the revocation affects only installations that legitimately require zoning approval. Nonetheless, the City insists that Petitioner remove virtually all antennas from the Building, even those that are protected under the OTARD rule. The Petitioner has removed the UHF antennas from the roof and made other related modifications.

4. On April 17, 2020, the Petitioner filed a Petition for Declaratory Ruling under 47 C.F.R. § 1.4000. By letter dated April 22, 2022, the Commission dismissed the Petition without prejudice on the ground that it did not provide sufficient information to show that each of the antennas meet all of the criteria for protection under the OTARD rule. In particular, the Commission found that Petitioner had failed to provide sufficient information to demonstrate that each antenna meets all of the criteria required for preemption under the OTARD rule.

5. There are currently five antennas placed on the rooftop of the Property, as follows:

| Antenna # | Owner | Type | Service | Customer Location | Antenna Users On-Site | Located on Property Within Exclusive Control of User |
|---|---|---|---|---|---|---|
| Antenna 1 | Indian Peak Properties, LLC (Petitioner) | DIRECTV | DIRECTV | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Yes, for tenants when Building is rented | User James Kay owns rooftop antenna site |
| Antenna 2 | LT-WR, LLC | Parabolic Dish Commscope | Fixed Wireless Broadband | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

| | | VHLP3-11WH/A | Internet Access | | | |
|---|---|---|---|---|---|---|
| Antenna 3 | GeoLinks | Ubiquiti AirFiber 24, Unlicensed 2x2 MIMO 24 GHz | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 4 | One Internet America | Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 5 | Fisher Wireless | Two (2) Wilson Electronics Model 314411 | Cellular Telephone | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

This Petition concerns only Antenna 3, the Ubiquiti AirFiber 24 Unlicensed 2x2 MIMO 24 GHz "Secondary Geographical Diversity" Fixed Wireless Broadband Internet Antenna owned by California Internet dba GeoLinks and used to distribute fixed wireless signals at the Property. Antenna 3 meets all of the criteria required for protection under the OTARD rule as described in Section III below.

## II.    THE OTARD RULE

The rules promulgated by the FCC pursuant to Section 207 of the 1996 Telecommunications Act, known as the over-the-air-reception device or OTARD rule, are found at 47 C.F.R. § 1.4000. The OTARD rule prohibits any state or local law or regulation or any private contract or other restriction of any kind that impairs the ability of an antenna user to install, operate and maintain certain antenna devices (one meter or less in diameter) on property over which the antenna user has exclusive control and a direct or indirect ownership or leasehold interest.

The phrases "exclusive control" and "direct or indirect ownership or leasehold interest" are explained as follows: "For purposes of our Section 207 rules, a renter, tenant or any other person

4

residing on a property owner´s property with the property owner´s permission (´tenant viewer´), who has the property owner´s permission to install, maintain and use a Section 207 reception device on the property, shall be treated as a covered viewer with regard to third party restrictions under our Section 207 rules. In this connection, the tenant viewer shall have the same rights under Section 207 as would the owner vis-à-vis restrictions enacted by a … government and/or any other third party. Thus, if an owner residing on the property were entitled to install a Section 207 device on the property under our rules, then a tenant occupying the property is also entitled to a Section 207 device on the property provided the property owner consents."[4]

As originally issued, the OTARD rule was intended to facilitate the use of dish antennas used to receive direct broadcast satellite television signals. The rule did not apply to antennas carrying telecommunications traffic. In year 2000, however, in response to concerns expressed by CLECs and Commercial Mobile Wireless Radio (CMRS) operators, the FCC revised the OTARD rule to include "all customer-end antennas and supporting structures of the physical type currently covered by the rule, regardless of the nature of the services provided through the antenna."[5] Then in 2021, the Commission in effect deleted the requirement that OTARD applies only to "customer-end" antennas and concluded that the OTARD rule encompasses all hub and relay antennas[6] that are used for the distribution of fixed wireless signals[7] to multiple customer locations, regardless of

---

[4] *Implementation of Section 207 of the Telecommunications Act of 1996,* Order on Reconsideration, 13 FCC Rcd 18962, 18995 ¶ 77 (1998).

[5] *Promotion of Competitive Networks in Local Telecommunications Markets*, First Report and Order and Further Notice of Proposed Rulemaking, 15 F.C.C. Rcd 22983 ¶ 99 (2000).

[6] The Rule defines a "hub or relay antenna" as "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations — as long as the antenna serves a customer on whose premises it is located.  The rule excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services." Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

[7] The OTARD Rule defines "fixed wireless signal" as "any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location." 47 C.F.R. § 1.4000 (a) (2).

whether they are "primarily" used for this purpose, as long as (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only.[8] The OTARD rule also generally prohibits any governmental or private restrictions on any mast or support for an antenna covered by the rule, other than restrictions based on legitimate safety considerations, as long as the height of the support does not exceed 12 feet above the roofline.[9]

### III.    ARGUMENT

This Petition concerns only Antenna 3, the Ubiquiti AirFiber 24, Unlicensed 2x2 MIMO 24 GHz antenna owned by California Internet dba GeoLinks. Like the other antennas at the Property, Antenna 3 is connected by Ethernet cable to routers and switches inside the house that comprises the Property. Antenna 3 is designed to and does provide fixed wireless high-speed Internet access anywhere within the house and the surrounding yards. The Property owner, James A. Kay, together with his several companies, including Indian Peak Properties, LLC, are the customers and primary users of the broadband service provided by Antenna 3. In addition, Antenna 3 provides connectivity for a number of vendors and contractors who visit the Property on a regular basis, and for any residential tenants who lease rooms in the house from time to time.  As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), Antenna 3 meets each of the requirements that entitle the antenna to protection from regulation by the City as follows:

---

[8] *In the Matter of: Updating the Commission's Rule for Over-the-Air Reception Devices*, Report and Order, WT Docket 19-71, rel. Jan. 1, 2021, ¶ 9.
[9] Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

**a. Antenna 3 is placed on property within the exclusive use or control of the antenna user.**

Antenna 3 is placed on the rooftop of the Property – which is a single-family home owned by James A. Kay's company, Petitioner Indian Peak Properties, LLC. As the owner of the Property, Mr. Kay and Indian Peak Properties, LLC have the exclusive right to access and use the entirety of the building´s rooftop, except where rooftop space is leased to others. Antenna 3 is placed entirely on rooftop space under the exclusive control of Mr. Kay and Indian Peak Properties, LLC. Further, Mr. Kay and his company Indian Peak Properties, LLC, are the primary users and customers of the service provided by means of Antenna 3. The service is currently not used by any remote customer not located at the Property. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 3 meets the requirements stated in 47 C.F.R. § 1.4000 (a) (1).

**b. Antenna 3 is used to receive or transmit fixed wireless signals.**

As indicated above, Antenna 3 is used to receive or transmit broadband-only fixed wireless signals providing high-speed Internet access to compatible devices throughout the Property. The service provided by means of Antenna is within the parameters of OTARD protection as required under 47 C.F.R. § 1.4000 (a) (1) (i) (A). *See* Declaration of Daniel W. Redmond (Exhibit 1).

**c. Antenna 3 is less than one meter in diameter or diagonal measurement and is installed on a mast less than twelve (12) feet above the roofline of the building.**

Antenna 3 is less than one meter in diameter, i.e., diagonal measurement. Therefore, Antenna 3 meets the requirements of 47 C.F.R. 1.4000 (a) (1) (i) (B). In addition, the mast on which Antenna 3 is installed does not exceed twelve (12) feet in height above the building´s roofline. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 3 meets the height criteria stated in 47 C.F.R. § 1.4000 (a) (1) (iv).

**d.  No safety or historic preservation concerns have been raised with respect to Antenna 3.**

As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), no safety or historic preservation concerns have been raised by the City with respect to Antenna 3 and no General Exposure limitations are exceeded.

**e.  Antenna 3 is a hub or relay antenna used for the distribution of broadband-only fixed wireless services to Indian Peak Properties, LLC.**

The revised OTARD rule, effective March 29, 2021,  applies to all hub and relay antennas that are used for the distribution of fixed wireless services to multiple customer locations, regardless of whether they are "primarily" used for this purpose, as long as: (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only. 47 CFR § 1.4000 (a)(1) and (a)(5). Antenna 3 meets these criteria: 1) it is designed as a hub and relay antenna that serves a customer (Mr. Kay and Indian Peak Properties, LLC) on the premises where it is located (the Property); and 2) Antenna 3 is used for the distribution of broadband-only fixed wireless services to Mr. Kay and Indian Peak Properties, LLC.  Declaration of Daniel W. Redmond (Exhibit 1). The use of Antenna #3 is compliant with OTARD because Antenna #3 is the geographically diverse, fixed wireless service for broadband internet service. Declaration of Daniel W. Redmond (Exhibit 1).

For the reasons stated in paragraphs (a) through (e) above,  Antenna 3 meets each of the criteria stated in the OTARD Rule and is entitled to protection from local regulation by the City.

## IV.    RELIEF SOUGHT

The Petitioner seeks a declaratory ruling from the Commission that Antenna 3 constitutes a protected Section 207 device under the OTARD rule such that enforcement of Resolution 2018-61,

revoking CUP 230 and every other action taken or contemplated by the City to force Petitioner to remove Antenna 3 from the Property, is preempted.

Furthermore, Petitioner seeks an immediate declaration from the Commission that any action taken by the City to enforce Resolution 2018-61 during the pendency of this Petition is suspended. Except in circumstances not relevant here, "if a proceeding is initiated" challenging a restriction under the OTARD rule, "the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review," and "[n]o attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction."[10] Thus, Resolution 2018-61 "may not be enforced until the Commission … issues a ruling that [Resolution 2018-61] is not preempted," and "a viewer may install, use and maintain an antenna while [this] proceeding is pending."[11]The only exceptions are for restrictions "pertaining to safety and historic preservation."[12]

The Commission has consistently taken an expansive view of the automatic suspension of restrictions and penalties during the pendency of an OTARD challenge.[13] An immediate suspension is especially justified in this case given the severe consequences of enforcement of Resolution 2018-61. For one thing, the City is threatening the forcibly remove Antenna 3, along with the other four

---

[10] 47 C.F.R. § 1.4000 (a) (4). The only exceptions are for restrictions "pertaining to safety and historic preservation." *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration, 19 FCC Rcd 5637, 5643-44 ¶¶ 13-18 (2004), ¶ 16.

[11]47 C.F.R. § 1.4000 (a) (4).

[12] *Id.*

[13] See, for example, *Petition for Declaratory Ruling Regarding the Application of the Over-the-Air Reception Devices Rule to Certain Provisions of the Philadelphia, Pennsylvania Code*, CSR-8541-O (filed Nov. 8, 2011); James Sadler; *Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 13 FCC Rcd 12559, 12572 ¶ 41 (CSB 1998); *Michael and Alexandra Pinter; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000, Memorandum Opinion and Order*, 19 FCC Rcd 17385, 17386 ¶ 4 (MB 2004); *Otto and Ida M. Trabue; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 14 FCC Rcd 8602, 8603 ¶ 2 (CSB 1999).

antennas, from the rooftop of the building. It is likely that such forcible removal would damage the equipment and perhaps the rooftop as well, potentially costing the Petitioner a significant amount of money to repair or replace.

More importantly, however, is the fact that the five antennas – apart from allowing Petitioner's business operations to function – are necessary to individually and collectively provide back-up redundancy for performance of an array of vital functions at the Property, including, but not limited to providing television and telephone service, security alarm and camera operations, temperature control, and other monitoring functions. Loss of the antennas, including Antenna 3, would put at risk not only the competitive viability of Petitioner's various businesses, but also the safety of Petitioner and its employees, contractors and guests.

Respectfully submitted,

By: _____

Toncata Martocchio, J.D., Attorney at Law
15525 Cabrito Road, Van Nuys, CA 91406
Tel: 818-540-8031
Email: Toni@BuddyCorp.com

10

## CERTIFICATE OF SERVICE

I, Toneata Martocchio, counsel for Petitioners in this matter, hereby certify that on this 1st day of May, 2022, I have caused copies of the foregoing pleading to be served, via first class USPS, certified mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder, LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Rancho Palos Verdes
30940 Hawthorne Boulevard
Rancho Palos Verdes, CA 90275

Toneata Martocchio, J.D.
Attorney at Law
15525 Cabrito Road
Van Nuys, CA 91406
Tel: 818-540-8031
Email: Toni@BuddyCorp.com

**EXHIBIT 1**

**Expert Witness Statement/Affidavit**

**In support of: Indian Peak Properties, LLC – Single Family Home**

**26708 Indian Peak Road, Rancho Palos Verdes, CA**

Author:

Daniel W. Redmond, Senior Wireless Network Design Engineer

Ph: 916.296.0282, Email: dredmo77@att.net

Qualifications:

A.S. Aviation, CCAF; B.S. Information Systems, UoP

FCC Licensed, PG-GB-062835

23 Years of Licensed and Unlicensed Microwave Operations, Management, and Engineering Experience. 30 Years' experience in general electronics. 10+ of these years as the lead Microwave Engineer for over 900 Licensed and 50 Unlicensed Point to Point Commercial Microwave Paths.

Statement of facts for the modified/renewed Petition for Declaratory Ruling to the FCC Commission.

1. Mr. James A Kay Jr. owns Indian Peak Properties, LLC, which owns the Single-Family home located at 26708 Indian Peak Road in Rancho Palos Verdes, CA.
2. Indian Peak Properties, LLC is both the customer and exclusive rights holder to the property.
3. Concerning Antenna #3: Ubiquiti AirFiber 24 Unlicensed 2x2 MIMO 24 GHz "Secondary Geographical Diversity" Fixed Wireless Broadband Internet Antenna which we identify as Antenna #3.
   a. Antenna #3 is as follows:
      i. Internet Service Provider: Geolinks
      ii. Less than one meter in diameter.
      iii. Designed as a hub and relay antenna that is used for the distribution of broadband-only fixed wireless services to Indian Peak Properties, LLC.
      iv. Is in service being used by customer: Indian Peak Properties, LLC
      v. Is located on the property belonging to Indian Peak Properties, LLC.

Considerations:

First, Indian Peak Properties, LLC is owned by Mr. Kay. Indian Peak Properties is the customer of this single-family home. While Indian Peak Properties, LLC may contract out for assistance during routine maintenance of his radio network as well as home maintenance, they maintain exclusive use of the home and property.

Second, the use of this antenna deemed Antenna #3 is compliant with OTARD due to the following facts.

Antenna #3 is the geographically diverse, fixed wireless service for broadband internet service.

Third, Indian Peak Properties, LLC is the customer to which this service is being provided.

OTARD Rules apply to this antenna under the Rules that state:

"hub and relay antennas that are used for the distribution of broadband-only fixed wireless services to multiple customer locations, regardless of whether they are primarily used for this purpose, as long as:  (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only."

"Antennas designed to receive and/or transmit data services, including Internet access, are included in the rule.  Additionally, the most recent amendment clarifies that hub or relay antennas used to access the Internet must provide broadband-only service to qualify under the rule."

"The Commission's rule covers the antennas necessary to receive or transmit service.  Therefore, a local rule may not, for example, allow only one antenna if more than one antenna is necessary to receive or transmit the desired service."

Fourth, having read the history of this case with the city and the FCC Commission, I believe some simple clarifications are necessary to resolve this matter.  In Summary and as stated above.

1. Antenna #3 is used to provide OTARD covered services: Broadband Internet Services over Fixed Wireless.
2. Indian Peak Properties, LLC is the customer and is located on the Property at 26708 Indian Peak Road, Rancho Palos Verdes, CA
3. Indian Peak Properties, LLC has exclusive usage rights to the installations located on the single-family home.
4. No safety concerns have been brought into question and no General Exposure limitations have been exceeded.
5. Antenna #3 does not exceed 12' above the roofline height to tip.
6. No historical preservation concerns have been raised.

Sources:

- Network Design and Topology Discussion with Mr. Kay, owner of Indian Peak Properties, LLC.
- 2022 04 22_FCC Dismissal OTARD Petition Document
- Indian Peak OTARD Petition (2020-04-17) Document
- Indian Peak Urgent Request (OTARD 19-Apr-2022) Document
- Indian Peak OTARD Supplement (10-Dec-2021) Document
- (17) Pictures and Notes Supplied by Mr. Kay
- https://www.fcc.gov/media/over-air-reception-devices-rule

Notes:

I can confirm that, Indian Peak Properties, LLC's Antenna #3 is in fact in compliance with OTARD Rules.

Daniel W. Redmond, Senior Wireless Network Design Engineer, 916.296.0282

Date: 04/24/2022  _____

**EXHIBIT 2**

**NETR**online

**PROPERTY DETAIL REPORT**   created **2022-04-26**   Prepared exclusively for **TONEATA MARTOCCHIO**

## TARGET PROPERTY

### 26708 INDIAN PEAK RD RANCHO PALOS VERDES, CA 90275-2333 C031

#### Owner Information

| | |
|---|---|
| **Owner Name:** | INDIAN PEAK PROPERTIES LLC |
| **Mailing Address:** | 1350 E FLAMINGO RD #13B34 LAS VEGAS NV 89119-5263 C037 |
| **Phone Number:** | |

| | | | |
|---|---|---|---|
| **Phone Number:** | | **Vesting Codes:** | |
| **Owner Occupied Indicator:** | N | **Pending Record Indicator:** | |
| **Corporate Owner:** | | | |

#### Location Information

| | | | |
|---|---|---|---|
| **Legal Description:** | TR=21350 LOT 80 | | |
| **County:** | LOS ANGELES | **APN:** | 7577-013-030 |
| **Census Tract / Block:** | 6704.18 | **Alternate APN:** | |
| **Township-Range-Sect:** | | **Subdivision:** | 21350 |
| **Legal Book - Page:** | 599-90 | **Map Reference:** | 72-E4 / |
| **Legal Lot:** | 80 | **Tract #:** | 21350 |
| **Legal Block:** | | **School District:** | PALOS VERDES PENINSU |
| **Market Area:** | 176 | **Munic / Township:** | |
| **Neighbor Code:** | | | |

#### Owner Transfer Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 11/29/2005 | **Sale Price:** | |
| **Document #:** | | **Deed Type:** | GRANT DEED |
| **Instrument #:** | 000002980048 | **1st Mtg Document #:** | |
| **Book - Page:** | | | |

#### Last Market Sale Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 04/28/1994 / | **1st Mtg Amount / Type:** | $292,000.00 / CONV |
| **Sale Price:** | $365,000.00 | **1st Mtg Int. Rate / Type:** | / ADJUSTABLE INT RATE LOAN |
| **Sale Type:** | FULL | **1st Mtg Term:** | |
| **Document #:** | 821070 | **1st Mtg Document #:** | |
| **Instrument #:** | 000000821070 | **1st Mtg Instrument #:** | |
| **Book - Page:** | | **1st Mtg Book - Page:** | |
| **Deed Type:** | GRANT DEED | **2nd Mtg Amount / Type:** | / |
| **Transfer Document #:** | | **2nd Mtg Int. Rate / Type:** | / |
| **New Construction:** | | **2nd Mtg Term:** | |
| **Multi / Split Sale:** | | **Price per SqFt:** | $141.14 |
| **Cash Down Payment:** | | **Stamps Amount:** | $401.50 |
| **Title Company:** | SOUTH COAST TITLE | | |
| **Lender:** | WELLS FARGO BK | | |
| **Seller Name:** | UGAS ARMINDA | | |

#### Prior Sale Information

| | | | |
|---|---|---|---|
| **Prior Rec / Sale Date:** | 06/09/1987 / 06/00/1987 | **Prior Deed Type:** | GRANT DEED |
| **Prior Sale Price:** | $350,000.00 | **Prior Lender:** | |
| **Prior Sale Type:** | FULL | **Prior 1stMtg Amount/Type:** | $255,000.00 / PRIVATE PARTY |
| **Prior Doc #:** | 909071 | **Prior 1stMtg Int. Rate/Type:** | / ADJUSTABLE INT RATE LOAN |
| **Prior Instrument #:** | 000000909071 | **Prior Stamps Amount:** | $385.00 |
| **Prior Book - Page:** | | | |

#### Site Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Land Use: | SFR | Acres: | .1727 | County Use: | | SINGLE FAMILY RESID |
| Flood Zone: | | Lot Area: | 7521 | State Use: | | |
| Flood Zone Map: | | Lot Width / Depth: | / | Site Influence: | | |
| Flood Panel Date: | | Usable Lot: | | Sewer Type: | | |
| Res / Comm Units: | | Lot Shape: | | Topography: | | |
| # of Buildings: | 1 | Bldg Width / Depth: | / | Water Type: | | |
| Zoning: | RPRS8000* | Building Class: | | Water District: | | CENTRAL AND W BASIN |

## Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Total Value: | $573,122.00 | Assessed Year: | 2021 | Property Tax: | $7,217.68 |
| Land Value: | $354,867.00 | Improve %: | | Tax Area: | 7097 |
| Improvement Value: | $218,255.00 | Dist: | | Tax Year: | 2021 |
| Total Taxable Value: | $573,122.00 | Fire Dist: | CONSOLIDATED CO | Tax Exemption: | |
| Market Value: | | Garbage Dist: | | Equal Rate: | |
| | | Delinquent Date: | | Equal Year: | |

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | | Parking Type: | | Construction: | |
| Living Area: | 2586 | Garage Area: | | Heat Type: | CENTRAL |
| Tot Adj Area: | | Garage 2 Area: | | Heat Fuel: | |
| Above Grade: | | Garage Capacity: | | Parcel Fuel: | |
| Ground Floor Area: | | Parking Spaces: | | Exterior Wall: | |
| Base / Main Area: | / | Carport: | | Interior Wall: | |
| Upper Area: | | Basement Area: | | Foundation: | |
| 2nd Floor Area: | | Finish Bsmnt Area: | | Air Cond: | |
| 3rd Floor Area: | | Basement Type: | | Roof Type: | |
| Rentable Area: | | Attic Type: | | Roof Shape: | |
| Additional Area: | | Porch Type: | | Roof Frame: | |
| Total Rooms: | | Porch 1 Area: | | Roof Material: | |
| Bedrooms: | 4 | Porch 2 Area: | | Floor Type: | |
| Bath (F/H): | 3 / | Patio Type: | | Floor Cover: | |
| Total Baths / Fixtures: | 3 / | Patio 1 Area: | | Style: | |
| Year Built / Eff: | 1958 / 1966 | Pool: | | Quality: | |
| Fireplace: | | Pool Area: | | Condition: | |
| Fireplace Description: | | | | # of Stories: | |
| Basement Description: | | | | Other Rooms: | |
| Other Improvements: | | | | | |
| Bldg Comments: | | | | | |
| Parcel Comments: | | | | | |

## Extra Features

| Description: | Unit: | Size / Qty: | Width: | Depth: | Year Built: | Improvement Value: |
|---|---|---|---|---|---|---|
| | | | | | | |

NETRonline and its data supplier(s) do not guarantee nor include any warranty of any kind
whether expressed or implied, about the validity of all information in this report since this information
is retrieved as it is recorded from the various agencies that make it available.

Copyright 2007 Nationwide Environmental Title Research, LLC



**This page is part of your document - DO NOT DISCARD**



05 2980048

```
RECORDED/FILED IN OFFICIAL RECORDS
        RECORDER'S OFFICE
      LOS ANGELES COUNTY
           CALIFORNIA

  8:21 AM   DEC  06  2005
```

## TITLE(S) :

### DEED



L E A D    S H E E T

**FEE**

FEE $10      TT
                2

**D.T.T:**

**CODE
20**

**CODE
19**

**CODE
9____**

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**

7577 · 013 · 030.                              001



**THIS FORM IS NOT TO BE DUPLICATED**

**RECORDING REQUESTED BY**
RICHARD K. SEMETA, ESQ.

**AND WHEN RECORDED MAIL TO**

RICHARD K. SEMETA,
A PROFESSIONAL LAW CORPORATION
4695 MACARTHUR COURT, SUITE 310
P.O. BOX 10367
NEWPORT BEACH, CA 92658-0367

**05 2980048**

---

APN: 7577-13-030

| Space above line for Recorder's Use
| NO TAX DUE.

---

### GRANT DEED

Documentary transfer tax is **NONE. \*\***

___ Unincorporated area  _X_ Rancho Palos Verdes

Mail tax statements to: Lucky's Two-Way Radios, Inc., 1350 E. Flamingo Road, Suite 13B/346, Las Vegas, Nevada 89119

      **FOR NO CONSIDERATION, GRANTOR** Idyll Properties, LLC, a Nevada limited liability company, hereby **GRANTS TO** Indian Peak Properties, LLC, a Nevada limited liability company that real property in the City of Rancho Palos Verdes, County of Los Angeles, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Dated: **11/29/**_____, 2005

                **Idyll Properties, LLC**
                By: Lucky's Two Way Radios, Inc.,
                its manager

                By: _____
                     James Allan Kay Jr., President

**\*\*** The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11923(d).

State of Nevada     )
                 ) ss
County of Clark    )

On __11-29-05__, 2005, before me, _C. Noriega_, a notary public in and for the State of California, personally appeared James Allan Kay Jr., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____  (SEAL)



05 2980048

3

EXHIBIT A

Lot 80 of Tract No. 21350, in the City of Rancho Palos Verdes, County of Los Angeles, State of California, as per map recorded in Book 599, Page(s) 90 to 95 of Maps, in the office of the County Recorder of said County.

**EXHIBIT 3**



Geolinks antenna
Antenna #3

**EXHIBIT 4**



DATASHEET

airFiber®

## Best-in-Class Performance and Range

Our INVICTUS custom silicon dramatically improves wireless performance. The AF-24HD model supports the dense modulation rates, up to 256QAM, that are required for high data rates, up to 2 Gbps.

The airFiber AF-24/AF-24HD features the most powerful automatic compensation for path loss degradation due to rain fade, so it provides the best range among 24 GHz products and allows for constellation threshold extension.

## Robust Mechanical Assembly

An independent lab has tested the airFiber mechanical assembly to meet MIL-STD-810G, a rigorous United States MIL-STD (Military Standard) that defines a variety of challenging environmental conditions.

The mechanical assembly has also undergone vibration testing using an extended version of IEC 60068-2-6, an environmental standard of the IEC (International Electrotechnical Commission).

*Side*

*Back*





**2 Gbps**
*Real Data Throughput*

**24 GHz**
*License-Free*

**20+ km**
*Extreme Range*

**HDD**
TDD FDD

# Specifications

DATASHEET

*air*Fiber ®

| airFiber AF-24HD | |
|---|---|
| Operating Frequency | 24.05 – 24.25 GHz |
| Dimensions<br>  Radio<br>  Box | <br>593 x 768 x 370 mm (23.35 x 30.24 x 14.57")<br>796 x 696 x 49.5 mm (31.34 x 27.40 x 1.95") |
| Weight<br>  Radio (Mount Included)<br>  Box | <br>17.3 kg (38.14 lb)<br>25.5 kg (56.22 lb) |
| Max. Power Consumption | 50W |
| Power Supply | 50V, 1.2A PoE GigE Adapter (Included) |
| Power Method | Passive Power over Ethernet |
| Supported Voltage Range | +42 to +58VDC, -48VDC |
| Certifications | CE, FCC, IC |
| Wind Loading | 770 N @ 200 km/hr (170 lbf @ 125 mph) |
| Wind Survivability | 200 km/hr (125 mph) |
| Mounting | Pole Mount Kit (Included) |
| Operating Temperature | -40 to 55° C (-40 to 131° F) |
| LEDs | (8) Status LEDs:<br>Data Port Speed<br>Data Port Link/Activity<br>Configuration Port Speed<br>Configuration Port Link/Activity<br>GPS Synchronization<br>Modulation Mode<br>Master/Slave<br>RF Status<br>(1) Two-Digit LED Display Calibrated in dBm |
| Interface | |
| Data Port | (1) 10/100/1000 Ethernet Port |
| Configuration Port | (1) 10/100 Ethernet Port |
| Auxiliary Port | (1) RJ-12, Alignment Tone Port |
| System | |
| Maximum Throughput | 2 Gbps |
| Maximum Range | 20+ km |
| Packets per Second | 1+ Million |
| Packets per Second | > 1 Million |
| Encryption | 128-Bit AES |
| Uplink/Downlink Ratio | 50% Fixed |
| Latency<br>  Full Duplex Mode<br>  Half Duplex Mode | <br>< 200 µs at Full Throughput<br>< 2 ms at Full Throughput |
| MTU (Maximum Transmission Unit) | Up to 9600 |

| airFiber AF-24HD Receive Sensitivity | | | |
|---|---|---|---|
| Modulation | Sensitivity | FDD Capacity* | TDD Capacity* |
| 256QAM | -60 dBm | 2000 Mbps | 1024 Mbps |
| 64QAM | -66 dBm | 1500 Mbps | 760 Mbps |
| 16QAM | -72 dBm | 1000 Mbps | 507 Mbps |
| QPSK MIMO | -78 dBm | 500 Mbps | 253 Mbps |
| QPSK SISO | -80 dBm | 250 Mbps | 127 Mbps |
| ¼x QPSK SISO | -87 dBm | 62.5 Mbps | 31.7 Mbps |

* FDD = (2) 100 MHz channels and TDD = (1) 100 MHz channel

DATASHEET

*airFiber*®

| airFiber AF-24HD Radio Frequency | |
|---|---|
| GPS | GPS Clock Synchronization |
| Transceiver | |
| EIRP | ~33 dBm (FCC/IC), ~20 dBm (CE), ~40 dBm (Other Regions) |
| Frequency Accuracy | ±2.5 ppm without GPS Synchronization<br>±0.2 ppm with GPS Synchronization |
| Channel Bandwidth | 100 MHz |
| Operating Channels | 24.1 GHz, 24.2 GHz |
| Modulation | 256QAM MIMO<br>64QAM MIMO<br>16QAM MIMO<br>QPSK MIMO<br>QPSK SISO<br>¼x QPSK SISO |
| Integrated Split Antenna | |
| TX Gain | 33 dBi |
| RX Gain | 40 dBi |
| Beamwidth | < 3.5° |
| Front-to-Back Ratio | 70 dB |
| Polarity | Dual-Slant Polarization |
| Cross-Polarity Isolation | > 28 dB |

| airFiber AF-24HD Capacity (Mbps) | | |
|---|---|---|
| Rate | Modulation | 100 MHz Channel Width* |
| 8x | 256 QAM MIMO | 2000.0 |
| 6x | 64 QAM MIMO | 1500.0 |
| 4x | 16 QAM MIMO | 1000.0 |
| 2x | QPSK MIMO | 500.0 |
| 1x | QPSK SISO | 250.0 |
| ¼ x | ¼ QPSK SISO | 62.5 |

\* Aggregated capacity in Full-Duplex mode



Specifications are subject to change. Ubiquiti products are sold with a limited warranty described at: www.ubnt.com/support/warranty
©2012-2017 Ubiquiti Networks, Inc. All rights reserved. Ubiquiti, Ubiquiti Networks, the Ubiquiti U logo, the Ubiquiti beam logo, airFiber, airOS, INVICTUS, and xRT are trademarks or registered trademarks of Ubiquiti Networks, Inc. in the United States and in other countries. All other trademarks are the property of their respective owners..



www.ubnt.com

**EXHIBIT 5**

**RESOLUTION NO. 2018-61**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES REVOKING IN ITS ENTIRETY AND EFFECTIVE IMMEDIATELY CONDITIONAL USE PERMIT NO. 230 FOR THE INSTALLATION OF COMMERCIAL ANTENNAS AND RELATED SUPPORT STRUCTURES AT 26708 INDIAN PEAK ROAD.**

WHEREAS, on June 21, 2001, the Applicant/Appellant, Mr. James A. Kay, Jr., submitted applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 for after-the-fact approval to establish the then-existing 5-masted, roof-mounted antennae and related support structures and equipment on the site for commercial use; and,

WHEREAS, on September 19, 2001, the applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 were deemed complete by Staff; and,

WHEREAS, pursuant to the provisions of the California Environmental Quality Act, Public Resources Code Sections 21000 *et seq.* ("CEQA"), the State's CEQA Guidelines, California Code of Regulations, Title 14, Section 15000 *et. seq.*, the City's Local CEQA Guidelines, and Government Code Section 65962.5(f) (Hazardous Waste and Substances Statement), Staff found no evidence that Conditional Use Permit No. 230 and Environmental Assessment No. 744 would not have a significant effect on the environment and, therefore, the proposed project was determined by Staff to be categorically exempt (Class 1, Section 15301); and,

WHEREAS, after the submittal of these applications on June 21, 2001, and while the Planning Commission was conducting the public hearings on this application, the Applicant installed at least twelve (12) additional vertical antenna masts with attached antennae onto the previously existing roof-mounted antenna support structure and array, including additional cables and conduits for the additional antennae; and on November 8, 2001, the Applicant submitted revised plans to the City depicting a total of twenty (20) vertical antenna masts with attached antennae on the roof-mounted antenna support structure and array; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the Planning Commission held a duly noticed public hearing on October 23, 2001, November 13, 2001, and November 15, 2001, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the Planning Commission, on November 15, 2001, adopted P.C. Resolution No. 2001-43 conditionally approving the project; and,

AR000001

WHEREAS, Mr. Kay timely appealed conditional approval by letter dated November 28, 2001, based on disagreement with "all conditions regulating the location, number and placement of antennas on the project site...."; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the City Council held a duly noticed public hearing on February 19, 2002, March 19, 2002, March 25, 2002 and April 16, 2002, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the City Council, on April 16, 2002, adopted Resolution No. 2002-27, thereby denying the appeal, modifying certain conditions of approval and conditionally approving the project; and,

WHEREAS, on May 15, 2002, Mr. Kay filed suit against the City in Federal District Court in order to overturn the City's decision on the grounds, among other things, that it violated the Telecommunications Act of 1996; and,

WHEREAS, on July 14, 2004, the United States District Court for the Central District of California ruled in the case of *Kay v. Rancho Palos Verdes* and ordered the "City Council of the City of Rancho Palos Verdes to issue a new resolution allowing James A. Kay, Jr. to use his five (5) mast antenna structure for commercial purposes, subject to reasonable conditions"; and,

WHEREAS, the City revised the conditions of approval for Conditional Use Permit No. 230 to allow the commercial use of Mr. Kay's 5-mast, roof-mounted, antenna array, which existed at the time and was depicted on plans provided to the City of Rancho Palos Verdes with the original submittal of the application for Conditional Use Permit No. 230 on June 21, 2001; and,

WHEREAS, this matter was agendized for the City Council's review and consideration on October 5, 2004, and November 16, 2004, but on both occasions the matter was continued to a subsequent City Council meeting at Mr. Kay's request in order to allow his legal counsel to discuss additional proposed revisions to the conditions of approval for Conditional Use Permit No. 230 with the City Attorney; and,

WHEREAS, the City Council, on December 21, 2004, adopted Resolution No. 2004-109, thereby revising eight (8) conditions of approval for Conditional Use Permit No. 230 pursuant to the July 14, 2004, order of the United States District Court; and,

WHEREAS, Mr. Kay subsequently petitioned the United States District Court to vacate the conditions of approval imposed by Resolution No. 2004-109; and,

WHEREAS, on April 4, 2005, the United States District Court issued an order in response to Mr. Kay's petition, finding that the provisions of Condition No. 19 of Conditional Use Permit No. 230 requiring "that Mr. Kay maintain the property as his

AR000002

primary residence [were] not reasonable," but also finding that all other conditions of approval imposed by Resolution No. 2004-109 were reasonable; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, on July 5, 2005, the City Council adopted Resolution No. 2005-75 revising the language for Condition No. 19 of Conditional Use Permit No. 230 thereby requiring that Mr. Kay complete necessary improvements to make the house habitable, including but not limited to, a functional kitchen and bathroom, and connections to utilities, along with weekly landscape and maintenance services; and,

WHEREAS, on November 28, 2014, the City issued Mr. Kay a Notice of Violation for the installation of unpermitted roof-mounted antennas resulting in a total of thirteen (13) roof-mounted antennae and support pole masts, well in excess of the five (5) City Council-approved, roof-mounted antennae and support pole masts. The City ordered the removal of all but the five (5) City Council-approved roof-mounted antennae and support pole masts from the roof, and requiring that the remaining five (5) City Council-approved, roof-mounted antennae and support pole masts comply with the City Council-adopted Conditions of Approval for Conditional Use Permit No. 230; and,

WHEREAS, on July 26, 2016, the City set a thirty (30) day period for compliance with the November 28, 2014, Notice of Violation. At the request of Mr. Kay, the City, in good faith, granted a time extension to this compliance deadline to October 28, 2016; and,

WHEREAS, on October 28, 2016, a Conditional Use Permit revision application (Planning Case No. ZON2016-00517) was submitted to the City requesting to legalize the unpermitted roof-mounted antennas; and,

WHEREAS, on November 23, 2016, the application was deemed incomplete for processing, and because the application originated from code enforcement action, the Applicant was given thirty (30) days, or until December 21, 2016, to submit the requested additional information in order continue processing the application; and,

WHEREAS, on March 21, 2017, the City received a letter from Mr. Kay's legal counsel, Mr. Nakasu, asserting that the application to revise Conditional Use Permit No. 230 with an after-the-fact amendment should be granted pursuant to RPVMC §17.76.020(A)(12)(b); and,

WHEREAS, on April 14, 2017, the City Attorney responded by outlining the City's position that, pursuant to Resolutions 2002-27, 2004-109, and 2005-75, the five (5) City Council-approved, roof-mounted antennae and support pole masts "refer only to the antennae and antenna array depicted in the plans submitted to the City on June 21, 2001, in photographs accompanying the application to revise CUP No. 230, and Environmental Assessment No. 744." Further, the City Attorney stated that any suggestion that additional antennae, support pole masts, and other structures were mere modifications not requiring City Council approval directly contravened the binding resolutions; and,

AR000003

WHEREAS, on June 28, 2017, City Staff, the City Prosecutor, Mr. Nakasu, and Mr. Kay met to discuss this matter, at which time, Mr. Nakasu indicated that the antennae and support structures were "outdated" and "obsolete" and that they could be replaced with an alternative structure that would both address the telecommunications capacity needs, as well as the City's safety and aesthetic concerns with the current structures. Four months elapsed from the June 28, 2017, meeting, during this time, Mr. Kay did not make any further attempts to cure the application deficiencies in order to proceed with processing a revision to CUP No. 230, or to rectify the technological obsolescence of the existing structures; and,

WHEREAS, on October 19, 2017, Staff granted, in good faith, Mr. Kay additional time to submit the requested information in order for Mr. Kay to acquire a new permit expediter company; and,

WHEREAS, on October 23, 2017, the City Prosecutor sent a letter to Mr. Kay and Mr. Nakasu, the purpose of which was to summarize events subsequent to the June 28, 2017, meeting, to reiterate the deficiencies in the CUP No. 230 revision application, to discuss potential replacement of current, "obsolete," structures, and to discuss the potential for reinstating the Code Enforcement case, should the City's demands not be met; and,

WHEREAS, on December 13, 2017, City Staff, City Prosecutor, Mr. Nakasu, and Mr. Kay met, and at this meeting, Mr. Kay proposed alternative designs to replace the existing antennae, such as a faux monopole tree or new roof antennae on the rear yard-facing roof pitch, that would address the City's concerns and meet the needs of the commercial antennas. As a result, it was agreed that Mr. Kay would submit, by mid-January 2018, a concept drawing regarding a proposed alternative design for the City's initial review, followed by an application for the CUP on or before February 28, 2018. To date, the City has not received any information from Mr. Kay or his legal counsel; and,

WHEREAS, in accordance to RPVMC §17.60.080, if any of the conditions to the use or development are not maintained, then the Conditional Use Permit shall be null and void. Furthermore, the continued operation of a use requiring a Conditional Use Permit which is found to be noncompliant with any condition of a Conditional Use Permit shall constitute a violation of the Municipal Code; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Municipal Code, the City Council held a duly-noticed public hearing on August 21, 2018 to consider revoking Conditional Use Permit No. 230, at which time all interested parties were given an opportunity to be heard and present evidence.

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES DOES HEREBY FIND, DETERMINE, AND RESOLVE AS FOLLOWS:

AR000004

**Section 1:**     Having heard and considered the oral, written, and documentary evidence presented at the duly-noticed public hearing conducted by the City Council on August 21, 2018, the City Council makes the following findings:

A.     The property located at 26708 Indian Peak Road, Rancho Palos Verdes, California, (the "Subject Property") is the subject of Conditional Use Permit No. 230 ("CUP No. 230"), as granted by the City Council in Resolution No. 2004-109, and as amended by Resolution No. 2005-75. The Applicant, Mr. James A. Kay, Jr., did not successfully challenge, within the time provided by law, Resolution No. 2005-75, and has from and after the adoption of Resolution No. 2005-75 (the "CUP Date") accepted the benefits of CUP No. 230.

B.     CUP No. 230 required removal of all but five (5) of the existing eight-and-on-half-foot long masts and two of the television antennae from the roof, authorized a maximum of five (5) vertical masts, each with a height of eight and one-half (8 ½) feet, and not more than four (4) radiating per each mast.

C.     Condition of Approval No. 2.d states in part, "Any additional exterior antennae, masts or other antenna and support structure(s) shall require further approval or modification of this conditional use permit."

D.     Further, Condition of Approval No. 2 goes on to state that the Director is authorized to make only minor modifications to the approved plans and conditions of approval.  "Otherwise, any substantive change, such as the enlargement, expansion or addition to, the exterior masts and antennae that this approval allows outside of the exiting residential structure shall require approval of a revision to Conditional Use Permit No. 230 by the City Council and shall require a new and separate environmental review."

E.     The Subject Property has at various times from after the CUP Date had installed antennae and/or vertical masts on the roof as testified to by staff and depicted in photographic evidenced submitted into the Administrative Record.  Such evidence discloses installation of as many as twelve (12) additional vertical masts (the "Additional Masts") over and above the five (5) permitted by CUP No. 230.

F.     Mr. Kay has failed to provide any evidence that any permits of any kind (zoning, building, etc.) were obtained by him, directly or by an agent acting on his behalf, authorizing the construction of the Additional Masts. Written correspondence from his attorney admits such construction has occurred, does not contest to permits were obtained in advance, and has confirmed such by submitting an incomplete application for an "after-the-fact" permit for the Additional Masts.

G.  City records fail to show any action by the City Council subsequent to Resolution No. 2005-75 modifying, amending, or otherwise affecting CUP No. 230 to allow installation of more than five (5) vertical masts on the Subject Property. Further, although the City Council finds it would not properly be the subject of a minor modification, staff has indicated that no application for a minor modification was approved by the Director to that effect.

H.  The City staff has made various efforts to resolve these issues short of a revocation beginning in 2014. Despite numerous meetings, exchanges of correspondence, and opportunities to come into compliance with CUP 230 or, in the alternative, apply for a modification to CUP No. 230 to retroactively permit the Additional Masts, Mr. Kay has not diligently pursued any remedial opportunity and has continued to operate the unpermitted facilities while essentially "stringing along" the City.

I.  Based upon all the evidence presented, and after hearing the arguments and testimony on behalf of Mr. Kay, the public, and City staff, the City Council finds the evidence of construction of the unpermitted Additional Masts to be essentially uncontested in that Mr. Kay has admitted they exist. The City Council finds that no permits of any kind (zoning or building) were obtained by Mr. Kay and therefore the construction of the Additional Masts was in violation of the Rancho Palos Verdes Municipal Code and the specific provisions of the Conditions of Approval relating to modification or expansion of the use of the antennae structure by the increase in the number of masts above the five (5) permitted by CUP No. 230.

J.  The City Council further finds that the violation directly impacts surrounding properties due to the increased visual impact of commercial antennae which the limitation on the number of vertical masts was narrowly tailored to address, and that the Subject Property owner has repeatedly and knowingly violated the Conditions of Approval by the installation of the Additional Masts without any permits or other legally-required approvals, and subsequently has availed himself of numerous opportunities to come into compliance with the terms of CUP No. 230 such that revocation is the appropriate action and is necessary to protect the legitimate interests of the community.

**Section 2:**  Based on the information included in the Staff Report, the testimony and evidence presented at the public hearings in the past before the Planning Commission and the City Council, the administrative records related to those prior proceedings, the Minutes and the other records of this proceeding on file with the City, the City Council of the City of Rancho Palos Verdes hereby revokes Conditional Use Permit No. 230, as amended, in its entirety.

PASSED, APPROVED, AND ADOPTED this 21st day of August 2018.

_____
Mayor

Attest:

_____
City Clerk

State of California            )
County of Los Angeles          ) ss
City of Rancho Palos Verdes     )

I, Emily Colborn, City Clerk of the City of Rancho Palos Verdes, hereby certify that the above Resolution No. 2018-61 was duly and regularly passed and adopted by the said City Council at a regular meeting thereof held on August 21, 2018.

_____
City Clerk

Resolution No. 2018-61
Page 7 of 7

AR000007



ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

ORANGE COUNTY | LOS ANGELES | RIVERSIDE | CENTRAL VALLEY

**June S. Ailin**
jailin@awattorneys.com
(310) 527-6665

2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245
P (310) 527-6660
F (310) 532-7395

AWATTORNEYS.COM

November 19, 2021

**VIA ELECTRONIC MAIL ONLY**

Dawn Cushman
Angela M. Rossi
Bradley, Gmelich & Wellerstein, LLP
700 N. Brand Boulevard, 10th Floor
Glendale, CA 91203

Re:    26708 Indian Peak Road/Removal of Antennas

Dear Ms. Cushman and Ms. Rossi:

By now, I am sure you have had an opportunity to review the court of appeal's opinions affirming the judgment in the writ of mandate case and all but affirming the judgment in the nuisance abatement case. While there remains some work for a court to do on the nuisance abatement case, the ultimate outcome is clear. The City has prevailed on the first and second causes of action, making whatever happens to the third cause of action irrelevant.

In light of this outcome, the City hereby again demands, and expects, that all of the antennas at 26708 Indian Peak Road (except for the television satellite dish) and all related support structures, equipment and equipment housing will be removed expeditiously. If the removal have not been completed by December 22, 2021, we will proceed with obtaining a court order allowing the City to enter the property, remove the antennas and all related support structures, equipment and equipment housing, and recover the costs from Indian Peak Properties, LLC.

Very truly yours,

ALESHIRE & WYNDER, LLP

June Ailin

June S. Ailin
Partner

cc:    Honorable Mayor & Councilmembers,
          City of Rancho Palos Verdes
        Ara Mihranian, AICP,
          City Manager
        William W. Wynder, Esq.

01203.0033/752507.1

**EXHIBIT 6**

**Invoice**

**Remit to:**
California Internet dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0006399 |
| **Customer PO:** | |
| **Invoice Date:** | 08-02-2021 |
| **Invoice Due Date:** | 09-01-2021 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:          Clink to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

**GEOLINKS**

## Invoice

| | |
|---|---|
| **Remit to:** | **Invoice No:** BD0020985 |
| California Internet dba | **Customer PO:** |
| GeoLinks | |
| 251 Camarillo Ranch Rd | **Invoice Date:** 09-01-2021 |
| Camarillo, CA 93012 | **Invoice Due Date:** 10-01-2021 |
| | **Invoice Amount** $50.00 |

One Time Payment Link:          Click to Pay Invoice

| **Customer** | **Shipping Address** |
|---|---|
| Indian Peak Properties, LLC | Indian Peak Properties, LLC |
| 26708 Indian Peak Rd | 26708 Indian Peak Rd |
| Rancho Palos Verdes CA  90275 | Rancho Palos Verdes CA  90275 |

### RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/



# Invoice

**Remit to:**
California Internet dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0030961 |
| **Customer PO:** | |
| **Invoice Date:** | 11-01-2021 |
| **Invoice Due Date:** | 11-01-2021 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:          Click to Pay Invoice

| **Customer** | **Shipping Address** |
|---|---|
| Indian Peak Properties, LLC | Indian Peak Properties, LLC |
| 26708 Indian Peak Rd | 26708 Indian Peak Rd |
| Rancho Palos Verdes CA  90275 | Rancho Palos Verdes CA  90275 |

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/



# Invoice

**Remit to:**
California Internet, L.P. dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0045972 |
| **Customer PO:** | |
| **Invoice Date:** | 12-01-2021 |
| **Invoice Due Date:** | 01-01-2022 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:          Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA 90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA 90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | Total Recurring Charges | $50.00 |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the change by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

**GEOLINKS**

# Invoice

| Remit to: | | Invoice No: | BD0050996 |
|---|---|---|---|
| California Internet, L.P. dba | | Customer PO: | |
| GeoLinks | | | |
| 251 Camarillo Ranch Rd | | Invoice Date: | 01-01-2022 |
| Camarillo, CA 93012 | | Invoice Due Date: | 02-01-2022 |
| | | Invoice Amount: | $50.00 |

One Time Payment Link:    Click to Pay Invoice

| Customer | Shipping Address |
|---|---|
| Indian Peak Properties, LLC | Indian Peak Properties, LLC |
| 26708 Indian Peak Rd | 26708 Indian Peak Rd |
| Rancho Palos Verdes CA  90275 | Rancho Palos Verdes CA  90275 |

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | Total Recurring Charges | $50.00 |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# Invoice

**Remit to:**
California Internet dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0006399 |
| **Customer PO:** | |
| **Invoice Date:** | 08-02-2021 |
| **Invoice Due Date:** | 09-01-2021 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:                    Clink to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any

credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# GEOLINKS

## Invoice

**Remit to:**
California Internet dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0020985 |
| **Customer PO:** | |
| **Invoice Date:** | 09-01-2021 |
| **Invoice Due Date:** | 10-01-2021 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:          Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

### RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

**GEOLINKS**

# Invoice

| | |
|---|---|
| **Remit to:** | |
| California Internet dba GeoLinks | |
| 251 Camarillo Ranch Rd | |
| Camarillo, CA 93012 | |

| | |
|---|---|
| **Invoice No:** | BD0030961 |
| **Customer PO:** | |
| **Invoice Date:** | 11-01-2021 |
| **Invoice Due Date:** | 11-01-2021 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:     [Click to Pay Invoice](#)

| **Customer** | **Shipping Address** |
|---|---|
| Indian Peak Properties, LLC | Indian Peak Properties, LLC |
| 26708 Indian Peak Rd | 26708 Indian Peak Rd |
| Rancho Palos Verdes CA 90275 | Rancho Palos Verdes CA 90275 |

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# Invoice



**Remit to:**
California Internet, L.P. dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0045972 |
| **Customer PO:** | |
| **Invoice Date:** | 12-01-2021 |
| **Invoice Due Date:** | 01-01-2022 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:      [Click to Pay Invoice]

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# Invoice

**GEOLINKS**

**Remit to:**
California Internet, L.P. dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0050996 |
| **Customer PO:** | |
| **Invoice Date:** | 01-01-2022 |
| **Invoice Due Date:** | 02-01-2022 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:    Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA 90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA 90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# Invoice

**Remit to:**
California Internet, L.P. dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0057881 |
| **Customer PO:** | |
| **Invoice Date:** | 02-01-2022 |
| **Invoice Due Date:** | 03-01-2022 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:     Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-09-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# Invoice

**Remit to:**
California Internet, L.P. dba
GeoLinks
251 Camarillo Ranch Rd
Camarillo, CA 93012

| | |
|---|---|
| **Invoice No:** | BD0062777 |
| **Customer PO:** | |
| **Invoice Date:** | 03-01-2022 |
| **Invoice Due Date:** | 04-01-2022 |
| **Invoice Amount** | $50.00 |

One Time Payment Link:    Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | Total Recurring Charges | $50.00 |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-09-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

# GEOLINKS

**Invoice**

| | |
|---|---|
| **Remit to:** | **Invoice No:** BD0062777 |
| California Internet, L.P. dba | **Customer PO:** |
| GeoLinks | |
| 251 Camarillo Ranch Rd | **Invoice Date:** 03-01-2022 |
| Camarillo, CA 93012 | **Invoice Due Date:** 04-01-2022 |
| | **Invoice Amount** $50.00 |

One Time Payment Link:          Click to Pay Invoice

**Customer**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

**Shipping Address**
Indian Peak Properties, LLC
26708 Indian Peak Rd
Rancho Palos Verdes CA  90275

## RECURRING CHARGES

| Charge | Qnty | Unit Price | Total |
|---|---|---|---|
| ClearFiber DIA 5/5Mbps | 1 | $50.00 | $50.00 |
| | | **Total Recurring Charges** | **$50.00** |



**Invoice**

# Terms and Conditions

When You subscribe to Services and provide us with a payment method, such as a valid credit card (including proper billing information), and, if applicable, authorize us to collect from Your payment method. Any authorization will remain valid until thirty (30) days after You terminate our authority to charge Your payment method. Upon termination, we will charge You any fees and any other outstanding charges and disconnect Your service. You agree to advise and notify us of any changes to Your payment method, such as credit card account number or expiration date changes. If the credit card or other payment method on Your Account is declined or fails for any reason, California Internet, L.P. DBA GeoLinks will use reasonable efforts to contact You and advise You of the failed billing attempts. Notwithstanding the foregoing, GeoLinks reserves the right to disconnect Your Service and terminate Your Account if Your credit card on file is declined or fails for any reason, and GeoLinks reserves the right to continue to attempt charging Your credit card for any outstanding Service charges and additional fees and pursue any other legal remedies available to DBA GeoLinks. Time is of the essence for payment. Failure to pay in full by the due date will result in a $10 late fee. Acceptance of late or partial payments (even if marked 'Paid in Full') shall not waive any of GeoLinks' rights to collect the full amount due. We may assess an additional fee of the lesser of (a) fifty dollars ($50) or (b) the highest amount allowed by law for any credit card chargeback or check returned for nonpayment. Billing cycle end dates may change from time to time. When a billing cycle covers less than or more than a full month, we may make reasonable adjustments and prorate the charges to Your Account. You must dispute any charges for the Services in writing to GeoLinks within thirty (30) days of the date of the charge by GeoLinks. If You fail to provide a written statement explaining in reasonable detail Your reasons for disputing the charge within such time period, You hereby irrevocably waive any objection and further recourse with regard to such charges. If you believe there is an error on your bill or have a question about your service, please call GeoLinks customer support at (888) 225-1571. If you are not satisfied with GeoLinks' response, submit a complaint to the California Public Utilities Commission (CPUC) by visiting http://www.cpuc.ca.gov/complaints/. Billing and service complaints are handled by the CPUC's Consumer Affairs Branch (CAB), which can be reached by the following means if you prefer not to submit your complaint online: Telephone 1-800-649-7570 (8:30 AM to 4:30 PM, Monday through Friday)
Mail California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Avenue, Room 2003, San Francisco, CA 94102

If you have limitations hearing or speaking, dial 711 to reach the California Relay Service, which is for those needing direct assistance relaying telephone conversations, as well their friends, family, and business contacts. If you prefer having your calls immediately answered in your mode of communication, dial one of the toll-free language-specific numbers below to be routed to the California Relay Service provider.

Type of Call Language Toll-free 800 Number TTY/VCO/HCO to Voice
English 1-800-735-2929
Spanish 1-800-855-3000
Voice to TTY/VCO/HCO
English 1-800-735-2922
Spanish 1-800-855-3000
From or to Speech-to-Speech English and 1-800-854-7784 Spanish

To avoid having service turned off while you wait for the outcome of a complaint to the CPUC specifically regarding the accuracy of your bill, please contact CAB for assistance. If your case meets the eligibility criteria, CAB will provide you with instructions on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is under review to keep your service turned on.

Loss of Electric Power - Unless you have a backup system to power your wired broadband Internet connection andany equipment (PC with softphone, IP phone, ATA with traditional phone) that you use to access your VoIP Service, you will not have phone service or 911 service during any power outage. An optional battery back-up feature is available for your GeoLinks VoIP Service. With a fully-charged battery (or batteries), the battery back-up feature willpower the basic calling functions of GeoLinks VoIP service for up to twenty-four (24) hours, depending on the type of battery backup device installed, in the event of a power outage. The battery back-up feature will not power phones that are not plugged into the battery back-up unit, TV service, non-GeoLinks services, or alarm system equipment. A power failure or service disruption may require you to reset or reconfigure equipment prior to using the Service. For price and availability information or to purchase a battery backup system, please contact GeoLinks customer service at (888) 225-1571 or customerservice@geolinks.com. You should refer to the manufacturer's specifications for any battery backup system for information regarding proper usage, storage, testing and monitoring instructions, warranties, and possible limitations. California Consumer Disaster Protections - Pursuant to California Public Utilities Commission (CPUC) Decisions 18-08-004 and 19-08-025, emergency disaster relief customer protections shall become effective when a disaster has caused a loss/disruption or degradation to a utility's service and the Governor of California or the President of the United States declares a State of Emergency. These protections must be made available to any impacted customer for one year or until the utility has full restoration of its services. The following Emergency Customer Protections will be provided to impacted GeoLinks residential and small business telephone customers:
1. Waiver of one-time activation fee for establishing remote call forwarding, remote access to call forwarding, call forwarding features and messaging services;
2. Waiver of the monthly rate for one month for remote call forwarding, remote access to call forwarding, call forwarding features, and messaging services;
3. Waiver of the service charge for installation of service at the temporary or new permanent location of the customer and again when the customer moves back to the premises;
4. Waiver of the fee for one jack and associated wiring at the temporary location regardless of whether the customer has an Inside Wire Plan;
5. Waiver of the fee for up to five free jacks and associated wiring for Inside Wiring Plan customers upon their return to their permanent location; and
6. Waiver of the fee for one jack and associated wiring for non-Inside Wiring Plan customers upon their return to their permanent location.
This information is also available at https://geolinks.com/california-consumer-disaster-protections/

**Indian Peak Properties, LLC**
**Complete Check Register**
**Current and History Files, After 01/01/20**
**All Accounts, Sessions 000000 to 001635**
**Vendor = CAL2**

| Vendor | Vendor Name | Check # | Ck Date | Prity | Invoices | Reference | Amount |
|--------|-------------|---------|---------|-------|----------|-----------|--------|
| **Checking Account:** | 10200-000 | | **Session:** | 001284 | | | |
| CAL2 | Cal Internet LP DBA Ge | 1211 | 05/26/20 | 2 | 2020001 | JUNE | 50.00 |
| | | 1213 | 05/26/20 | 2 | 05/26/20 | 05/18 | 22.54 |
| | | 1235 | 08/10/20 | 2 | 1258633 | SEPTEMBER | 50.00 |
| | | 1243 | 09/15/20 | 2 | 2020094 | OCTOBER | 50.00 |
| | | 1251 | 10/09/20 | 2 | 2020095 | NOVEMBER | 50.00 |
| | | 1260 | 11/13/20 | 2 | 2020096 | DECEMBER | 50.00 |
| | | 1273 | 01/12/21 | 2 | 2021001 | FEBRUARY | 50.00 |
| | | 1280 | 02/16/21 | 2 | 2021002 | MARCH | 50.00 |
| | | 1287 | 03/15/21 | 2 | 2021003 | APRIL | 50.00 |
| | | 1297 | 04/09/21 | 2 | 2021004 | MAY | 50.00 |
| | | 1305 | 05/11/21 | 2 | 2021005 | JUNE | 50.00 |
| | | 1312 | 06/11/21 | 2 | 2021006 | JULY | 50.00 |
| | | 1318 | 07/09/21 | 2 | 2021007 | AUGUST | 50.00 |
| | | 1325 | 08/13/21 | 2 | 2021008 | SEPTEMBER | 50.00 |
| | | 1333 | 09/10/21 | 2 | 2021009 | OCTOBER | 50.00 |
| | | 1342 | 10/08/21 | 2 | 2021010 | NOVEMBER | 50.00 |
| | | 1356 | 11/15/21 | 2 | 2021011 | DECEMBER | 50.00 |
| | | 1363 | 12/13/21 | 2 | 2022001 | JANUARY | 50.00 |
| | | 1370 | 01/17/22 | 2 | 2022002 | FEBRUARY | 50.00 |
| | | | | | | **CAL2 Subtotal :** | 922.54 |
| | | | | | | **Check Register Total :** | 922.54 |

**Indian Peak Properties, LLC**
**Computer & Manual Check Register**
**Current and History Files, After 12/01/21**
**All Accounts, Sessions 000000 to 001666**
**Vendor = CAL2**

| Vendor | Vendor Name | Check # | Ck Date | Prity | Invoices | Reference | Amount |
|--------|-------------|---------|---------|-------|----------|-----------|--------|
| **Checking Account:** | 10200-000 | | **Session:** | 001615 | | | |
| CAL2 | Cal Internet LP DBA Ge | 1363 | 12/13/21 | 2 | 2022001 | JANUARY | 50.00 |
| | | 1370 | 01/17/22 | 2 | 2022002 | FEBRUARY | 50.00 |
| | | 1376 | 02/11/22 | 2 | 2022003 | MARCH | 50.00 |
| | | 1376 | 02/11/22 | 2 | AUG2020 | 02/10 | 33.91 |
| | | 1384 | 03/11/22 | 2 | 2022004 | APRIL | 50.00 |
| | | 1390 | 04/11/22 | 2 | 2022005 | MAY | 50.00 |
| | | | | | | **CAL2 Subtotal :** | 283.91 |
| | | | | | | **Check Register Total :** | 283.91 |

INDIAN PEAK PROPERTIES, LLC

1363

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 21001 | JANUARY | 01/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Amt: 10260-605)            Check Date 12/13/21            Total            50.00

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

1363

◇ BANC OF CALIFORNIA

1363
NUMBER

90-4377/1222

···Fifty & No/100 Dollars

| DATE | AMOUNT |
|------|--------|
| 12/13/21 | $50.00 |

PAY
TO THE
ORDER
OF

Cal Internet LP DBA Geolinks
Camarillo, CA  93012

⑈00⑈363⑈ ⑆⑈2224377⑆⑈ 20700068835⑈

INDIAN PEAK PROPERTIES, LLC

1363

Vendor ID : CALL    Name: Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 21001 | JANUARY | 01/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Amt: 10260-605)            Check Date 12/13/21            Total            50.00

119 897515 AVXRX2 02/27/2014 13:18

INDIAN PEAK PROPERTIES, LLC

1376

Vendor ... Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022003 | MARCH | 03/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |
| AUG2020 | 02/10 | 02/10/22 | 33.91 | 0.00 | 0.00 | 33.91 |

(Acct: 10200-0001)          Check Date 02/11/22          Total          83.91

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

◯ BANC OF CALIFORNIA
877.770.BANC(2262)   www.bancofcal.com

90-4377/1222

1376
1376
NUMBER

····Eighty-Three & 91/100 Dollars

| DATE | AMOUNT |
|------|--------|
| 02/11/22 | $83.91 |

PAY
TO THE     Cal Internet LP DBA Geolinks
ORDER      251 Camarillo Ranch Road
OF         Camarillo, CA  93012

⑈⑈001376⑈⑈ ⑆122243774⑆ 2070006835⑈⑈

---

INDIAN PEAK PROPERTIES, LLC

1376
1376

Vendor No: CAL2   / Name: Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022003 | MARCH | 03/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |
| AUG2020 | 02/10 | 02/10/22 | 33.91 | 0.00 | 0.00 | 33.91 |

(Acct: 10200-0001)          Check Date 02/11/22          Total          83.91

132 B97515 AVXRX2 02/27/2014 13:18

INDIAN PEAK PROPERTIES, LLC

**1384**

Vendor ID:

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2022004 | APRIL | 04/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Acct: 10230-0001)                Check Date 03/11/22                Total                50.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

**1384**
1384
NUMBER

◇ BANC OF CALIFORNIA

877.785.BANC(2262)   www.BancOfCal.com

90-4377/1222

···Fifty & No/100 Dollars

| DATE | **AMOUNT** |
|---|---|
| 03/11/22 | $50.00 |

**PAY**
TO THE
ORDER
OF

Cal Internet LP DBA Geolinks

⑈⑈OO1384⑈⑈ ⑆12224377⑆⑆2070006835⑈⑈

---

INDIAN PEAK PROPERTIES, LLC

**1384**
1384

Vendor ID: VX12    / Name: Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2022004 | APRIL | 04/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Acct: 10230-0001)                Check Date 03/11/22                Total                50.00

140 B97515 AVXRX2 02/27/2014 13:18

INDIAN PEAK PROPERTIES, LLC

**1390**

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2022005 | MAY | 05-01-22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Acct: 1020 -000)      Check Date 04/11/22      Total      50.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

**1390**

○ BANC OF CALIFORNIA
877-770-BANK (2265)   www.bancofcal.com

NUMBER

90-4377/1222

| | DATE | **AMOUNT** |
|---|---|---|
| | 04/11/22 | **$50.00** |

**PAY
TO THE
ORDER
OF**

Cal Internet LP DBA Geolinks

⑈⑈001390⑈⑈ ⑆122243774⑆ 2070006835⑈⑈

---

INDIAN PEAK PROPERTIES, LLC

**1390**

Vendor No:    V Name: Cal Internet LP DBA Geolinks      1390

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2022005 | MAY | 05-01-22 | 50.00 | 0.00 | 0.00 | 50.00 |

(Acct: 1020 -000)      Check Date 04/11/22      Total      50.00

INDIAN PEAK PROPERTIES, LLC

**1370**

Vendor No: CAL2 / Name: Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2021 02 | FEBRUARY | 02/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

Acct: 18200-000,    Check Date 01/17/22    Total    50.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

**1370**

◇ BANC OF CALIFORNIA

NUMBER

90-4377/1222

***Fifty & No/100 Dollars**

| DATE | **AMOUNT** |
|---|---|
| 01/17/22 | $50.00 |

PAY
TO THE
ORDER
OF

Cal Internet LP DBA Geolinks
141 Camarillo Ranch Road
Camarillo, CA  93012

⑈⑈001370⑈⑈ ⑆122243774⑆ 2070006835⑈⑈

---

INDIAN PEAK PROPERTIES, LLC

**1370**

Vendor No: CAL2 / Name: Cal Internet LP DBA Geolinks

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---|---|---|---|---|---|---|
| 2021 02 | FEBRUARY | 02/01/22 | 50.00 | 0.00 | 0.00 | 50.00 |

Acct: 18200-000,    Check Date 01/17/22    Total    50.00

# EXHIBIT 7

# MUST BE DISPLAYED IN PLACE OF BUSINESS – NON TRANSFERABLE



City of Rancho Palos Verdes
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

CALIFORNIA INTERNET, L.P. dba GEOLINKS
251 CAMARILLO RANCH RD
CAMARILLO, CA 93012

**Number:**      **BLOC-0365**
**Issue Date:**      **1/1/2020**
**Expiration Date:**      **12/31/2020**
ISSUING OFFICER:

**Business Name:**    **CALIFORNIA INTERNET, L.P. dba GEOLINKS**
**Business Address:**    **OUT OF CITY BUSINESS**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

CALIFORNIA INTERNET, L.P. dba GEOLINKS
251 CAMARILLO RANCH RD
CAMARILLO, CA 93012

USCA Case #23-1223    Document #2013313    Filed: 08/18/2023    Page 225 of 336



City of Rancho Palos Verdes
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

# BUSINESS TAX REGISTRATION CERTIFICATE

CALIFORNIA INTERNET, L.P. dba GEOLINKS

251 CAMARILLO RANCH RD

CAMARILLO, CA 93012

**Number:** **BLOC-0365**
**Issue Date:** 1/1/2021
**Expiration Date:** 12/31/2021
**ISSUING OFFICER:**

**Business Name:** **CALIFORNIA INTERNET, L.P. dba GEOLINKS**
**Business Address:** **OUT OF CITY BUSINESS**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

CALIFORNIA INTERNET, L.P. dba GEOLINKS
251 CAMARILLO RANCH RD
CAMARILLO, CA 93012

# MUST BE DISPLAYED IN PLACE OF BUSINESS – NON TRANSFERABLE



**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

CALIFORNIA INTERNET, L.P. dba GEOLINKS
251 CAMARILLO RANCH RD
CAMARILLO, CA 93012

**Number:**           **BLOC-0365**
**Issue Date:**        4/25/2022
**Expiration Date:**   12/31/2022
**ISSUING OFFICER:**

**Business Name:**   **CALIFORNIA INTERNET, L.P. dba GEOLINKS**
**Business Address:**   **OUT OF CITY BUSINESS**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

CALIFORNIA INTERNET, L.P. dba GEOLINKS
251 CAMARILLO RANCH RD
CAMARILLO, CA 93012

# RANCHO PALOS VERDES

## Business License Application
### For Home Occupancy Businesses
Expires December 31, 2022

| COMPLETE ALL APPLICABLE INFORMATION ON THE FRONT AND BACK OF THIS FORM. |
|---|

(Check One):  ☐ Renewal

☒ **New License & Date** (Business Began Operating In the City):  04/18/2022

**Business Name**  INDIAN PEAK PROPERTIES, LLC

**Home Address**  26708 INDIAN PEAK RD

RANCHO PALOS VERDES, CA 90275
City                                    Zip

**Mailing Address**
(If Different From Above)

City                                    Zip

**Business Phone**  818-997-7700     **Email**  Maxi.Silver@buddycorp.com

**Business Classification** (Check One):  ☐ Sole Proprietor  ☐ Corporation  ☐ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**  20-3813254

**Business Owner Name**  KAY, JAMES
Last                          First

**Description of Business**  RENTAL
(Indicate if visitors will be
coming to the residence)

**Regulated Businesses**  Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐    Escort Service ☐    Peddling Service ☐    Massage Service ☐

*I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.*

Signature              James Kay, Jr          PRESIDENT OF MANAGER     04/18/2022
                       Print Name              Title                    Date

**Please Note:**  Business license applications are due prior to commencing operations and expire each December 31st. Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for violation of the Business Tax Ordinance. Penalties will be assessed @ 5% for each month delinquent up to 50% of the total license fee. No extensions or waivers of the penalty amount will be granted.

| Tax | Penalty | State Fee $4.00 | Total Amount Due | Initials | Check # |
|---|---|---|---|---|---|
| *Planning, Building & Safety, & Code Enforcement Use Only* | | | | | |
| Zone | Moratorium | | Approved | | |
| Type | Planner | | Date | | |
| Comments | | | | | |

**30940 Hawthorne Boulevard, Rancho Palos Verdes, CA 90275**
**Business License Office (310) 544-5301  www.rpvca.gov**



# Rancho Palos Verdes

## Business License Application

### For Businesses Located Outside the City

Expires December 31, 2022

For 2020

---

**COMPLETE ALL APPLICABLE INFORMATION.  TAX SCHEDULE IS ON THE BACK OF THIS FORM.**

(Check One):

☐ **Renewal**

☒ **New License & Date** (Business Began Operating In the City): June 29, 2020

**Business Name**  California Internet, L.P. DBA GeoLinks

**Business Address**  251 Camarillo Ranch Rd

Camarillo, CA                          93012
City                                    Zip

**Mailing Address**
(If Different From Above)

_____

City                                    Zip

**Business Phone**  ( 888 ) 225-1571 ext 8152        **Email**  mslawson@geolink.com

**Business Classification** (Check One):   ☐ Sole Proprietor   ☐ Corporation   ☒ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**  47-1025458

**Business Owner Name**  California Internet Holdings, L.P.
Last                                    First

**Home Address**  251 Camarillo Ranch Rd

Camarillo                          93012
City                                    Zip

**Description of Business**  Internet service provider

**Regulated Businesses**  Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐     Escort Service ☐     Peddling Service ☐     Massage Service ☐

---

*I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.*

*R Adams*                Ryan Adams              President            04/25/22
Signature                Print Name              Title                Date

**Please Note:**   Business license applications are due prior to commencing operations and expire each December 31st.  Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for  violation of the Business Tax Ordinance.  Penalties will be assessed @ 5% for each month delinquent up to 50%  of the total license fee.  No extensions or waivers of the penalty amount will be granted.

---

*Finance Department Use Only*

| Tax | Penalty | Total Tax | Initials | Check # |
|-----|---------|-----------|----------|---------|

*Planning, Building & Safety, & Code Enforcement Use Only*

Zone _____   Moratorium _____        Approved _____
Type _____   Planner _____           Date _____
Comments _____

**30940 Hawthorne Boulevard, Rancho Palos Verdes, CA  90275**
**Business License Office (310) 544-5301   www.rpvca.gov**

**Please use this Tax Schedule for**
**Businesses located outside the City:**

**K1**   Wholesale Sales and Auto Sales
**K1**   Retail Sales, General Services & Other
**K1**   Professions & Specified Services

| Report Gross Receipts |
|---|
| 2019 |
| **Gross Receipts Generated in the City of Rancho Palos Verdes**  $ 0 |
| (Gross receipts must be provided for the City to process the business license) |

| Tax Calculation | | |
|---|---|---|
| **Minimum Tax** (includes first $50,000 of gross receipts) | $ | 152.00 |
| **Add:** $2 for each $1,000 of gross receipts over $50,000 | $ | |
| **Add:** State fee for Certified Disability Access Specialist Program | $ | 4.00 |
| **Add:** Late Penalty (5% per month, 50% maximum) | $ | $78.00 |
| **Total Annual Tax to Remit** | $ | $234.00 |

USCA Case #23-1223    Document #2027819    Filed 08/16/2023    Page 230 of 336



# Rancho Palos Verdes
## Business License Application
### For Businesses Located Outside the City
Expires December 31, 2022

For 2021

| COMPLETE ALL APPLICABLE INFORMATION.  TAX SCHEDULE IS ON THE BACK OF THIS FORM. |
|---|

(Check One):    ☐ **Renewal**

☒ **New License & Date** (Business Began Operating In the City):  June 29, 2020

**Business Name**  California Internet, L.P. DBA GeoLinks

**Business Address**  251 Camarillo Ranch Rd

Camarillo, CA                                    93012
City                                                     Zip

**Mailing Address**
(If Different From Above)

_____
City                                                     Zip

**Business Phone**  ( 888 ) 225-1571 ext 8152      **Email**  mslawson@geolink.com

**Business Classification** (Check One):   ☐ Sole Proprietor   ☐ Corporation   ☒ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**  47-1025458

**Business Owner Name**  California Internet Holdings, L.P.
Last                                                     First

**Home Address**  251 Camarillo Ranch Rd

Camarillo                                    93012
City                                            Zip

**Description of Business**  Internet service provider

**Regulated Businesses**  Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐    Escort Service ☐    Peddling Service ☐    Massage Service ☐

*I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.*

*R Adams*                Ryan Adams                President                04/25/2022
Signature                 Print Name                  Title                        Date

**Please Note:**    Business license applications are due prior to commencing operations and expire each December 31st.  Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for  violation of the Business Tax Ordinance.  Penalties will be assessed @ 5% for each month delinquent up to 50%  of the total license fee.  No extensions or waivers of the penalty amount will be granted.

*Finance Department Use Only*

| Tax | Penalty | Total Tax | Initials | Check # |
|---|---|---|---|---|
| | | | | |

*Planning, Building & Safety, & Code Enforcement Use Only*

Zone _____    Moratorium _____    Approved _____
Type _____    Planner _____    Date _____
Comments _____

**30940 Hawthorne Boulevard, Rancho Palos Verdes, CA  90275**
**Business License Office (310) 544-5301   www.rpvca.gov**

**Please use this Tax Schedule for**
**Businesses located outside the City:**

**K1**  Wholesale Sales and Auto Sales
**K1**  Retail Sales, General Services & Other
**K1**  Professions & Specified Services

## Report Gross Receipts

2020
**Gross Receipts Generated in the City of Rancho Palos Verdes**        $    $3,030.38
(Gross receipts must be provided for the City to process the business license)

## Tax Calculation

| | |
|---|---|
| **Minimum Tax** (includes first $50,000 of gross receipts) | $        152.00 |
| **Add:** $2 for each $1,000 of gross receipts over $50,000 | $ |
| **Add:** State fee for Certified Disability Access Specialist Program | $        4.00 |
| **Add:** Late Penalty (5% per month, 50% maximum) | $        $78.00 |
| **Total Annual Tax to Remit** | $        $234.00 |

USCA Case #23-1223    Document #2021013    Filed: 08/18/2023    Page 232 of 336



# Rancho Palos Verdes

## Business License Application

### For Businesses Located Outside the City

Expires December 31, 2022

| COMPLETE ALL APPLICABLE INFORMATION.  TAX SCHEDULE IS ON THE BACK OF THIS FORM. |
|---|

(Check One):

☐ **Renewal**

☒ **New License & Date** (Business Began Operating In the City):  June 29, 2020

**Business Name**  California Internet, L.P. DBA GeoLinks

**Business Address**  251 Camarillo Ranch Rd

Camarillo, CA                              93012
City                                              Zip

**Mailing Address**
(If Different From Above)

City                                              Zip

**Business Phone**  ( 888 ) 225-1571 ext 8152        **Email**  mslawson@geolink.com

**Business Classification** (Check One):   ☐ Sole Proprietor   ☐ Corporation   ☒ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**  47-1025458

**Business Owner Name**   California Internet Holdings, L.P.
                                        Last                                      First

**Home Address**  251 Camarillo Ranch Rd

Camarillo                              93012
City                                              Zip

**Description of Business**   Internet service provider

**Regulated Businesses**  Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐      Escort Service ☐      Peddling Service ☐      Massage Service ☐

*I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.*

*R Adams*                    Ryan Adams                    President                    04/25/2022
Signature                        Print Name                        Title                            Date

**Please Note:**   Business license applications are due prior to commencing operations and expire each December 31st.  Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for  violation of the Business Tax Ordinance.  Penalties will be assessed @ 5% for each month delinquent up to 50%  of the total license fee.  No extensions or waivers of the penalty amount will be granted.

*Finance Department Use Only*

| Tax | Penalty | Total Tax | Initials | Check # |
|---|---|---|---|---|

*Planning, Building & Safety, & Code Enforcement Use Only*

Zone _____  Moratorium _____  Approved _____
Type _____  Planner _____  Date _____
Comments _____

***Please use this Tax Schedule for
Businesses located outside the City:***

**K1**  Wholesale Sales and Auto Sales
**K1**  Retail Sales, General Services & Other
**K1**  Professions & Specified Services

| Report Gross Receipts | |
|---|---|
| **Gross Receipts Generated in the City of Rancho Palos Verdes** | $ 5,988 |
| (Gross receipts must be provided for the City to process the business license) | |

| Tax Calculation | |
|---|---|
| **Minimum Tax** (includes first $50,000 of gross receipts) | $ 152.00 |
| **Add:** $2 for each $1,000 of gross receipts over $50,000 | $ |
| **Add:** State fee for Certified Disability Access Specialist Program | $ 4.00 |
| **Add:** Late Penalty (5% per month, 50% maximum) | $ |
| **Total Annual Tax to Remit** | $ $156.00 |



CITY OF RANCHO PALOS VERDES

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBUS-4921** |
| **Issue Date:** | **4/18/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:  INDIAN PEAK PROPERTIES LLC**
**Business Address:  26708 INDIAN PEAK RD**
**RANCHO PALOS VERDES   CA  90275-0000**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409



# City of Rancho Palos Verdes
# Home Occupation Standards
### (effective May 15, 1997)

<u>17.08.030  Review of applications</u>.  Home Occupations shall be permitted only if they comply with the following standards, and such other conditions, which are imposed by the director:

A.    All structures must comply with general appearance, setbacks, and landscaping standards and regulations applicable to all zoning districts of the area in which they are located.

B.    No displays, signs, and/or advertisements associated with the Home Occupation shall be permitted.

C.    The permitted activity shall not be injurious to the use of neighboring property by reason of noise, vibration, odor, fumes, smoke, dust or similar adverse impacts on adjacent properties.

D.    There shall be no radio or television interference created by said Home Occupation.

E.    A Home Occupation shall not create vehicular or pedestrian traffic which changes the residential character of the neighborhood and dwelling unit where the business is being conducted, or create a greater demand for parking than can be accommodated on site or on the street frontage abutting the property where the Home Occupation is being conducted.

F.    There shall be no deliveries to and from the residence of bulk materials which are used in conjunction with the Home Occupation and no deliveries of materials, goods or retail merchandise associated with a Home Occupation, if such deliveries change the residential character of the neighborhood and dwelling unit where the business is being conducted.

G.    The person conducting the profession or business must reside within the dwelling unit in which the activity is located.

H.    With the exception of one "home occupation employee," as defined in chapter 17.96, there shall be no employment of help other than individuals residing at the subject residence.  An on site parking area of no less than nine (9) feet in width by twenty (20) feet in length shall be provided for the one home occupation employee.

I.    There shall be no use or storage of dangerous chemicals, acids, caustics, explosives, or other such hazardous equipment or materials, other than those materials that are used in typical household activities as classified in the county household hazardous materials list.

J.    There shall be no storage of materials and/or supplies, associated with the Home Occupation, outside of the residence, which may be visible from adjoining properties and/or the public right-of-way.  If the garage is used to store Home Occupation associated materials, the minimum interior parking dimensions specified in Section 17.02.030 (Single Family Residential Districts) shall be maintained.

K.    There shall be no use of utilities or community facilities, which change the residential character of the neighborhood and dwelling unit where the business is being conducted beyond the level, which is normal for the use of the property for residential purposes.

L.    The establishment and conduct of a Home Occupation shall not change the principal residential character of the use of the dwelling unit, nor shall there be any exterior evidence of the Home Occupation being conducted.  The home occupation use shall be clearly incidental to the residential use.

**I HAVE READ AND I UNDERSTAND THE STANDARDS REGULATING HOME OCCUPATIONS IN THE CITY OF RANCHO PALOS VERDES.**

**COMM ENTERPRISES, LLC DBA**
**SOUTHLAND COMMUNICAITONS**

Business Name                                    Business Owner Signature

**26708 INDIAN PEAK RD.**

JAMES A. KAY, JR
**RANCHO PALOS VERDES CA  90275**        Business Owner Name (printed)
Street Address
**04/20/2022**

Date

MUST BE DISPLAYED IN PLACE OF BUSINESS — NON TRANSFERABLE



CITY OF RANCHO PALOS VERDES

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

# BUSINESS TAX REGISTRATION CERTIFICATE

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0601** |
| **Issue Date:** | **4/20/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name: COMMUNICATIONS RELAY, LLC**
**Business Address: 26708 Indian Peak Rd**
**Rancho Palos Verdes  CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

MUST BE DISPLAYED IN PLACE OF BUSINESS – NON TRANSFERABLE



CITY OF RANCHO PALOS VERDES

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0563** |
| **Issue Date:** | **1/19/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:  LT-WR, LLC**
**Business Address:  26708 Indian Peak Rd**
**Rancho Palos Verdes   CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409



# NEVADA STATE BUSINESS LICENSE

## INDIAN PEAK PROPERTIES, LLC

**Nevada Business Identification # NV20051707408**
**Expiration Date: 11/30/2022**

In accordance with Title 7 of Nevada Revised Statutes, pursuant to proper application duly filed and payment of appropriate prescribed fees, the above named is hereby granted a Nevada State Business License for business activities conducted within the State of Nevada.

Valid until the expiration date listed unless suspended, revoked or cancelled in accordance with the provisions in Nevada Revised Statutes. License is not transferable and is not in lieu of any local business license, permit or registration.

**License must be cancelled on or before its expiration date if business activity ceases. Failure to do so will result in late fees or penalties which, by law, cannot be waived**.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on 12/06/2021.

*Barbara K. Cegavske*

**BARBARA K. CEGAVSKE**
Secretary of State

Certificate Number: B202112062207212
You may verify this certificate
online at http://www.nvsos.gov

# EXHIBIT 8

# STATE OF NEVADA

**BARBARA K. CEGAVSKE**
*Secretary of State*



**KIMBERLEY PERONDI**
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings & Notary Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA

**Work Order #:** W2021120602375
December 6, 2021
Receipt Version: 1

**Special Handling Instructions:**

**Submitter ID:** 12452

**Charges**

| Description | Fee Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|---|
| Annual List | Fees | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $150.00 | $150.00 |
| Annual List | Business License Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $200.00 | $200.00 |
| Annual List | Business License Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $100.00 | $100.00 |
| Annual List | Annual List Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $75.00 | $75.00 |
| Total | | | | | | | $525.00 |

**Payments**

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 6388355341036878903086 | Success | $525.00 |
| Total | | | $525.00 |

**Credit Balance:** $0.00

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA



**STATE OF NEVADA**

*BARBARA K. CEGAVSKE*
*Secretary of State*

*KIMBERLEY PERONDI*
*Deputy Secretary for*
*Commercial Recordings*

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

**OFFICE OF THE**
**SECRETARY OF STATE**

## Business Entity - Filing Acknowledgement

12/06/2021

| | |
|---|---|
| **Work Order Item Number:** | W2021120602375 - 1761038 |
| **Filing Number:** | 20211938896 |
| **Filing Type:** | Annual List |
| **Filing Date/Time:** | 12/06/2021 16:05:48 PM |
| **Filing Page(s):** | 2 |

**Indexed Entity Information:**

**Entity ID:** E0766652005-1

**Entity Name:** INDIAN PEAK PROPERTIES, LLC

**Entity Status:** Active

**Expiration Date:** None

Commercial Registered Agent

CORPORATION SERVICE COMPANY

112 NORTH CURRY STREET, Carson City, NV 89703, USA

The attached document(s) were filed with the Nevada Secretary of State, Commercial Recording Division. The filing date and time have been affixed to each document, indicating the date and time of filing. A filing number is also affixed and can be used to reference this document in the future.

Respectfully,

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

Page 1 of 1

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
          **www.nvsilverflume.gov**

## Annual or Amended List and State Business License Application

☑ **ANNUAL**    ☐ **AMENDED** (check one)

**List of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:**

| | |
|---|---|
| **INDIAN PEAK PROPERTIES, LLC** | **NV20051707408** |
| NAME OF ENTITY | Entity or Nevada Business Identification Number (NVID) |

## TYPE OR PRINT ONLY - USE DARK INK ONLY - DO NOT HIGHLIGHT

_**IMPORTANT:**_ _Read instructions before completing and returning this form._

Please indicate the entity type (check only one):

☐ Corporation

    ☐ This corporation is publicly traded, the Central Index Key number is:

☐ Nonprofit Corporation (see nonprofit sections below)

☑ Limited-Liability Company

☐ Limited Partnership

☐ Limited-Liability Partnership

☐ Limited-Liability Limited Partnership

☐ Business Trust

☐ Corporation Sole

| Filed in the Office of | Business Number E0766652005-1 |
|---|---|
| _Barbara K. Cegavske_ | Filing Number 20211938896 |
| Secretary of State State Of Nevada | Filed On 12/06/2021 16:05:48 PM |
| | Number of Pages 2 |

Additional Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers, may be listed on a supplemental page.

| **CHECK ONLY IF APPLICABLE** |
|---|
| Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. |
| ☐ 001 - Governmental Entity |
| ☐ 006 - NRS 680B.020 Insurance Co, provide license or certificate of authority number |
| **For nonprofit entities formed under NRS chapter 80:** entities without 501(c) nonprofit designation are required to maintain a state business license, the fee is $200.00. Those  claiming an exemption under 501(c) designation must indicate by checking box below. |
| ☐ Pursuant to NRS Chapter 76, this entity is a 501(c) nonprofit entity and is exempt from the business license fee. Exemption Code 002 |
| **For nonprofit entities formed under NRS Chapter 81:** entities which are Unit-owners' association or Religious, Charitable, fraternal or other organization that qualifies as a  tax-exempt organization pursuant to 26 U.S.C $ 501(c) are excluded from the  requirement to obtain a state business license.  Please indicate below if this entity falls under one of these categories by marking the appropriate box.  If the entity does not fall under either of these categories please submit $200.00 for the state business license. |
| ☐ Unit-owners' Association      ☐ Religious, charitable, fraternal or other organization that qualifies as a tax-exempt organization pursuant to 26 U.S.C. $501(c) |
| **For nonprofit entities formed under NRS Chapter 82 and 80:Charitable Solicitation Information - check applicable box** |
| Does the Organization intend to solicit charitable or tax deductible contributions? |
| ☐ No - no additional form is required |
| ☐ Yes - the "Charitable Solicitation Registration Statement" is required. |
| ☐ The Organization claims exemption pursuant to NRS 82A 210 - the "Exemption From Charitable Solicitation Registration Statement" is required |
| **\*\*Failure to include the required statement form will result in rejection of the filing and could result in late fees.\*\*** |



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website: www.nvsos.gov**
**        www.nvsilverflume.gov**

# Annual or Amended List and State Business License Application - Continued

---

**Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:**

CORPORATION, INDICATE THE <u>MANAGER</u>:

| **LUCKY'S TWO-WAY RADIOS INC** | **USA** |
|---|---|
| Name | Country |

| **1350 E FLAMINGO RD STE 13B BOX 346** | **LAS VEGAS** | **NV** | **89119** |
|---|---|---|---|
| Address | City | State | Zip/Postal Code |

None of the officers and directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X**  **James A Kay Jr**

**Signature of Officer, Manager, Managing Member, General Partner, Managing Partner, Trustee, Subscriber, Member, Owner of Business, Partner or Authorized Signer** *FORM WILL BE RETURNED IF UNSIGNED*

| **President of the Manager** | **12/06/2021** |
|---|---|
| Title | Date |



**DEAN HELLER**
Secretary of State
206 North Carson Street
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

Entity #
**E0766652005-1**
Document Number
**20050547765-41**

Date Filed:
**11/14/2005 2:17:36 PM**
**In the office of**

*Dean Heller*

**Dean Heller**
**Secretary of State**

## Articles of Organization
## Limited-Liability Company
### (PURSUANT TO NRS 86)

**Important:** *Read attached instructions before completing form.*          ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| 1. Name of Limited-Liability Company: | INDIAN PEAK PROPERTIES, LLC |
| 2. Resident Agent Name and Street Address: *(must be a Nevada address where process may be served)* | GKL RESIDENT AGENTS/FILINGS, INC.<br>Name<br>1000 EAST WILLIAM ST., STE 204    CARSON CITY , NEVADA 89701<br>Physical Street Address          City          Zip Code<br><br>Additional Mailing Address          City    State    Zip Code |
| 3. Dissolution Date: *(OPTIONAL—see instructions)* | Latest date upon which the company is to dissolve (if existence is not perpetual): _____ |
| 4. Management: *(check one)* | Company shall be managed by ___**X**___ Manager(s) OR _____ Members |
| 5. Names Addresses of Manager(s) or Members: *(attach additional pages as necessary)* | LUCKY'S TWO-WAY RADIOS, INC<br>Name<br>1350 E. FLAMINGO RD, STE 13B #348    LAS VEGAS    NEVADA 89119<br>Address          City    State    Zip Code<br><br>Name<br>Address          City    State    Zip Code<br><br>Name<br>Address          City    State    Zip Code |
| 6. Names, Addresses and Signatures of Organizers: *(if more than one organizer, please attach additional page)* | LUCKY'S TWO-WAY RADIOS, INC<br>BY: JAMES A. KAY, JR., PRESIDENT<br>Name          Signature<br>1350 E. FLAMINGO RD, STE 13B #348 LAS VEGAS    NEVADA 89119<br>Address          City    State    Zip Code |
| 7. Certificate of Acceptance of Appointment of Resident Agent: | I hereby accept appointment as Resident Agent for the above named limited-liability company.<br><br>          NOVEMBER 10, 2005<br>Authorized Signature of R.A. or On Behalf of R.A. Company    Date |

*This form must be accompanied by appropriate fees.*          Nevada Secretary of State Form LLC Art. 2003
Revised on: 10/03/05

# Exhibit F

To Indian Peak Properties LLC
Application for Review
January 12, 2023

# Petition for Declaratory Ruling Antenna 4
Of Indian Peak Properties LLC
May 1, 2022

**Before the**

**FEDERAL COMMUNICATIONS COMMISSION**

**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| Indian Peak Properties and One Internet America | ) | CSR _____-0 |
| Petition for Declaratory Ruling Under 47 C.F.R. §1.4000 | ) | |
| To:     Office of the Secretary | ) | |
| Attn:   Chief, Media Bureau | ) | |

**PETITION FOR DECLARATORY RULING**

Indian Peak Properties, LLC ("Petitioner"), by its attorney and pursuant to Sections 1.2 and 1.4000 (e) if the Commission´s Rules,[1] respectfully requests a declaratory ruling that: (a) certain antennas described more fully herein are within the scope of protection from state and local restrictions provided by the OTARD rule;[2] (b) restrictions asserted by the City of Rancho Palos Verdes, California (the "City") impair the installation, maintenance or use of such antennas; and (c) the City´s actions are unlawful, preempted by federal authority under the OTARD rule, and therefore unenforceable.

I.      **BACKGROUND**

1.   The subject of this petition is property (the "Property") located at 26708 Indian Peak Road, Rancho Palos Verdes, California 90275, which is owned by Petitioner.[3] The Property is a single-family home, which is used by the owner, James Kay and his company Indian Peak Properties,

---

[1] 47 C.F.R. §§ 1.2 and 1.4000 (e).

[2] 47 C.F.R. § 1.4000.

[3] The property was previously owned by James A. Kay, Jr., an individual who owns and controls Petitioner. The term "Petitioner" includes Mr. Kay and Indian Peak Properties, LLC, except where the context requires otherwise.

LLC, and from time to time by individuals or business entities that rent the Property from the owner for a fixed term. There are a total of five (5) antenna structures, each of them installed on the rooftop of the Property and described in Section 2 of this Petition. All factual assertions in this Petition are supported by the following Exhibits, which are attached to this Petition:

Exhibit 1 – Declaration of Daniel W. Redmond, Senior Wireless Network Design Engineer;

Exhibit 2 – Property Detail Report and Deed to 26708 Indian Peak Road, Rancho Palos Verdes, CA 90275;

Exhibit 3 – Photograph of Antenna 4;

Exhibit 4 – Specifications for Antenna 4;

Exhibit 5 – City Resolution 2018-61 and City attorney letter demanding removal of antennas;

Exhibit 6 – One Internet America, LLC Internet Service Contract for Internet Access Service to Indian Peak Properties, LLC, invoices and check register showing monthly service payments to One Internet America, LLC;

Exhibit 7 – Business Licenses for Indian Peak Properties, LLC; and

Exhibit 8 – Indian Peak Properties, LLC's Articles and Information.

2.   The antenna structures installed on the rooftop of the Property are the subject of past and present ongoing regulatory disputes and civil litigation between Petitioner and the City. On December 21, 2004, the Rancho Palos Verdes City Council adopted Resolution No. 2004-109, approving Conditional Use Permit No. 230 ("CUP 230") approving the placement of five UHF antennas, each a Sinclair model SD314-HF2PSNM measuring 9.5 feet (3.9 meters) in height with four co-linear radiating elements. In subsequent years, some antennas were removed and other antennas were installed on the rooftop of the Property on the good faith assumption that the additional antennas did not require prior zoning approvals because they did not involve the erection of additional support structure and were mounted on the same Building as the UHF antennas that had been approved under CUP 230 and were smaller and lower in profile than the UHF antennas.

2

Petitioner also believes that most if not all of the additional antennas were within the scope of the OTARD rule and therefore would not have required prior zoning approval even in the absence of CUP 230.

3. On August 21, 2018, the City Council adopted Resolution No. 2018-61, purporting to revoke in its entirety CUP 230. Without conceding the validity of that Resolution, the revocation affects only installations that legitimately require zoning approval. Nonetheless, the City insists that Petitioner remove virtually all antennas from the Building, even those that are protected under the OTARD rule. The Petitioner has removed the UHF antennas from the roof and made other related modifications.

4. On April 17, 2020, the Petitioner filed a Petition for Declaratory Ruling under 47 C.F.R. § 1.4000. By letter dated April 22, 2022, the Commission dismissed the Petition without prejudice on the ground that it did not provide sufficient information to show that each of the antennas meet all of the criteria for protection under the OTARD rule. In particular, the Commission found that Petitioner had failed to provide sufficient information to demonstrate that each antenna meets all of the criteria required for preemption under the OTARD rule.

5. There are currently five antennas placed on the rooftop of the Property, as follows:

| Antenna # | Owner | Type | Service | Customer Location | Antenna Users On-Site | Located on Property Within Exclusive Control of User |
|---|---|---|---|---|---|---|
| Antenna 1 | Indian Peak Properties, LLC (Petitioner) | DIRECTV | DIRECTV | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Yes, for tenants when Building is rented | User James Kay owns rooftop antenna site |
| Antenna 2 | LT-WR, LLC | Parabolic Dish Commscope VHLP3-11WH/A | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 3 | GeoLinks | Ubiquiti AirFiber 24, Unlicensed | Fixed Wireless Broadband | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

| | | 2x2 MIMO 24 GHz | Internet Access | | | |
|---|---|---|---|---|---|---|
| Antenna 4 | One Internet America | Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna | Fixed Wireless Broadband Internet Access | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |
| Antenna 5 | Fisher Wireless | Two (2) Wilson Electronics Model 314411 | Cellular Telephone | 26708 Indian Peak Rd., Rancho Palos Verdes, CA | Owner of Building (James Kay – Petitioner), and various businesses | User James Kay owns rooftop antenna site |

This Petition concerns only Antenna 4, the Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna "Frequency Diversity" Fixed Wireless Broadband Internet Antenna owned by One Internet America and used to distribute fixed wireless signals at the Property. Antenna 4 meets all of the criteria required for protection under the OTARD rule as described in Section III below.

## II.     THE OTARD RULE

The rules promulgated by the FCC pursuant to Section 207 of the 1996 Telecommunications Act, known as the over-the-air-reception device or OTARD rule, are found at 47 C.F.R. § 1.4000. The OTARD rule prohibits any state or local law or regulation or any private contract or other restriction of any kind that impairs the ability of an antenna user to install, operate and maintain certain antenna devices (one meter or less in diameter) on property over which the antenna user has exclusive control and a direct or indirect ownership or leasehold interest.

The phrases "exclusive control" and "direct or indirect ownership or leasehold interest" are explained as follows: "For purposes of our Section 207 rules, a renter, tenant or any other person residing on a property owner´s property with the property owner´s permission (´tenant viewer´), who has the property owner´s permission to install, maintain and use a Section 207 reception device on the property, shall be treated as a covered viewer with regard to third party restrictions under

our Section 207 rules. In this connection, the tenant viewer shall have the same rights under Section 207 as would the owner vis-à-vis restrictions enacted by a … government and/or any other third party. Thus, if an owner residing on the property were entitled to install a Section 207 device on the property under our rules, then a tenant occupying the property is also entitled to a Section 207 device on the property provided the property owner consents."[4]

As originally issued, the OTARD rule was intended to facilitate the use of dish antennas used to receive direct broadcast satellite television signals. The rule did not apply to antennas carrying telecommunications traffic. In year 2000, however, in response to concerns expressed by CLECs and Commercial Mobile Wireless Radio (CMRS) operators, the FCC revised the OTARD rule to include "all customer-end antennas and supporting structures of the physical type currently covered by the rule, regardless of the nature of the services provided through the antenna."[5] Then in 2021, the Commission in effect deleted the requirement that OTARD applies only to "customer-end" antennas and concluded that the OTARD rule encompasses all hub and relay antennas[6] that are used for the distribution of fixed wireless signals[7] to multiple customer locations, regardless of whether they are "primarily" used for this purpose, as long as (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only.[8] The

---

[4] *Implementation of Section 207 of the Telecommunications Act of 1996,* Order on Reconsideration, 13 FCC Rcd 18962, 18995 ¶ 77 (1998).

[5] *Promotion of Competitive Networks in Local Telecommunications Markets*, First Report and Order and Further Notice of Proposed Rulemaking, 15 F.C.C. Rcd 22983 ¶ 99 (2000).

[6] The Rule defines a "hub or relay antenna" as "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations — as long as the antenna serves a customer on whose premises it is located. The rule excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services." Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

[7] The OTARD Rule defines "fixed wireless signal" as "any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location." 47 C.F.R. § 1.4000 (a) (2).

[8] *In the Matter of: Updating the Commission′s Rule for Over-the-Air Reception Devices*, Report and Order, WT Docket 19-71, rel. Jan. 1, 2021, ¶ 9.

OTARD rule also generally prohibits any governmental or private restrictions on any mast or support for an antenna covered by the rule, other than restrictions based on legitimate safety considerations, as long as the height of the support does not exceed 12 feet above the roofline.[9]

### III.    ARGUMENT

This Petition concerns only Antenna 4, Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna "Frequency Diversity" Fixed Wireless Broadband Internet Antenna owned by One Internet America. Like the other antennas at the Property, Antenna 4 is connected by Ethernet cable to routers and switches inside the house that comprises the Property. Antenna 4 is designed to and does provide fixed wireless high-speed Internet access anywhere within the house and the surrounding yards. The Property owner, James A. Kay, together with his several companies, including Indian Peak Properties, LLC, are the customers and primary users of the broadband service provided by Antenna 4. In addition, Antenna 4 provides connectivity for a number of vendors and contractors who visit the Property on a regular basis, and for any residential tenants who lease rooms in the house from time to time.  As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), Antenna 4 meets each of the requirements that entitle the antenna to protection from regulation by the City as follows:

### a.  Antenna 4 is placed on property within the exclusive use or control of the antenna user.

Antenna 4 is placed on the rooftop of the Property – which is a single-family home owned by James A. Kay's company, Petitioner Indian Peak Properties, LLC. As the owner of the Property, Mr. Kay and Indian Peak Properties, LLC have the exclusive right to access and use the entirety of

---

[9] Questions and Answers Concerning the OTARD Rule, https://www.fcc.gov/media/over-air-reception-devices-rule#QA.

the building´s rooftop, except where rooftop space is leased to others. Antenna 4 is placed entirely on rooftop space under the exclusive control of Mr. Kay and Indian Peak Properties, LLC. Further, Mr. Kay and his company Indian Peak Properties, LLC, are the primary users and customers of the service provided by means of Antenna 4. The service is not currently used by any remote customer not located at the Property. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 4 meets the requirements stated in 47 C.F.R. § 1.4000 (a) (1).

**b. Antenna 4 is used to receive or transmit fixed wireless signals**.

As indicated above, Antenna 4 is used to receive or transmit broadband-only fixed wireless signals providing high-speed Internet access to compatible devices throughout the Property. The service provided by means of Antenna is within the parameters of OTARD protection as required under 47 C.F.R. § 1.4000 (a) (1) (i) (A). *See* Declaration of Daniel W. Redmond (Exhibit 1).

**c. Antenna 4 is less than one meter in diameter or diagonal measurement and is installed on a mast less than twelve (12) feet above the roofline of the building.**

Antenna 4 is less than one meter in diameter, i.e., diagonal measurement. Therefore, Antenna 4 meets the requirements of 47 C.F.R. 1.4000 (a) (1) (i) (B). In addition, the mast on which Antenna 4 is installed does not exceed twelve (12) feet in height above the building´s roofline. *See* Declaration of Daniel W. Redmond (Exhibit 1). Therefore, Antenna 4 meets the height criteria stated in 47 C.F.R. § 1.4000 (a) (1) (iv).

**d. No safety or historic preservation concerns have been raised with respect to Antenna 4.**

As affirmed in the Declaration of Daniel W. Redmond (Exhibit 1), no safety or historic preservation concerns have been raised by the City with respect to Antenna 4 and no General Exposure limitations are exceeded.

e.  **Antenna 4 is a hub or relay antenna used for the distribution of broadband-only fixed wireless services to Indian Peak Properties, LLC.**

The revised OTARD rule, effective March 29, 2021, applies to all hub and relay antennas that are used for the distribution of fixed wireless services to multiple customer locations, regardless of whether they are "primarily" used for this purpose, as long as: (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only. 47 CFR § 1.4000 (a)(1) and (a)(5). Antenna 4 meets these criteria: 1) it is designed as a hub and relay antenna that serves a customer (Mr. Kay and Indian Peak Properties, LLC) on the premises where it is located (the Property); and 2) Antenna 4 is used for the distribution of broadband-only fixed wireless services to Mr. Kay and Indian Peak Properties, LLC. Declaration of Daniel W. Redmond (Exhibit 1). The use of Antenna 4 is compliant with OTARD because Antenna 4 is the Frequency Diversity fixed wireless service for broadband internet service. Declaration of Daniel W. Redmond (Exhibit 1).

For the reasons stated in paragraphs (a) through (e) above, Antenna 4 meets each of the criteria stated in the OTARD Rule and is entitled to protection from local regulation by the City.

## IV.    RELIEF SOUGHT

The Petitioner seeks a declaratory ruling from the Commission that Antenna 4 constitutes a protected Section 207 device under the OTARD rule such that enforcement of Resolution 2018-61, revoking CUP 230 and every other action taken or contemplated by the City to force Petitioner to remove Antenna 4 from the Property, is preempted.

Furthermore, Petitioner seeks an immediate declaration from the Commission that any action taken by the City to enforce Resolution 2018-61 during the pendency of this Petition is suspended. Except in circumstances not relevant here, "if a proceeding is initiated" challenging a restriction

under the OTARD rule, "the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review," and "[n]o attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction."[10] Thus, Resolution 2018-61 "may not be enforced until the Commission … issues a ruling that [Resolution 2018-61] is not preempted," and "a viewer may install, use and maintain an antenna while [this] proceeding is pending."[11]The only exceptions are for restrictions "pertaining to safety and historic preservation."[12]

The Commission has consistently taken an expansive view of the automatic suspension of restrictions and penalties during the pendency of an OTARD challenge.[13] An immediate suspension is especially justified in this case given the severe consequences of enforcement of Resolution 2018-61. For one thing, the City is threatening the forcibly remove Antenna 4, along with the other four antennas, from the rooftop of the building. It is likely that such forcible removal would damage the equipment and perhaps the rooftop as well, potentially costing the Petitioner a significant amount of money to repair or replace.

More importantly, however, is the fact that the five antennas – apart from allowing Petitioner´s business operations to function – are necessary to individually and collectively provide

---

[10] 47 C.F.R. § 1.4000 (a) (4). The only exceptions are for restrictions "pertaining to safety and historic preservation." *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration, 19 FCC Rcd 5637, 5643-44 ¶¶ 13-18 (2004), ¶ 16.

[11]47 C.F.R. § 1.4000 (a) (4).

[12] *Id.*

[13] See, for example, *Petition for Declaratory Ruling Regarding the Application of the Over-the-Air Reception Devices Rule to Certain Provisions of the Philadelphia, Pennsylvania Code*, CSR-8541-O (filed Nov. 8, 2011); James Sadler; *Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 13 FCC Rcd 12559, 12572 ¶ 41 (CSB 1998); *Michael and Alexandra Pinter; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000, Memorandum Opinion and Order, 19 FCC Rcd 17385, 17386 ¶ 4 (MB 2004); Otto and Ida M. Trabue; Petition for Declaratory Ruling under 47 C.F.R. § 1.4000*, Memorandum Opinion and Order, 14 FCC Rcd 8602, 8603 ¶ 2 (CSB 1999).

back-up redundancy for performance of an array of vital functions at the property, including, but not limited to providing television and telephone service, security alarm and camera operations, temperature control, and other monitoring functions. Loss of the antennas, including Antenna 4, would put at risk not only the competitive viability of Petitioner's various businesses, but also the safety of Petitioner and its employees, contractors and guests.

Respectfully submitted,

By: _____

Toneata Martocchio, J.D., Attorney at Law
15525 Cabrito Road, Van Nuys, CA 91406
Tel: 818-540-8031
Email: Toni@BuddyCorp.com

10

## CERTIFICATE OF SERVICE

I, Toneata Martocchio, counsel for Petitioners in this matter, hereby certify that on this 1st day of May, 2022, I have caused copies of the foregoing pleading to be served, via first class USPS, certified mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder, LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Rancho Palos Verdes
30940 Hawthorne Boulevard
Rancho Palos Verdes, CA 90275

Toneata Martocchio, J.D.
Attorney at Law
15525 Cabrito Road
Van Nuys, CA 91406
Tel: 818-540-8031
Email: Toni@BuddyCorp.com

# EXHIBIT 1

Expert Witness Statement/Affidavit

In support of: Indian Peak Properties, LLC – Single Family Home

26708 Indian Peak Road, Rancho Palos Verdes, CA

Author:

Daniel W. Redmond, Senior Wireless Network Design Engineer

Ph: 916.296.0282, Email: dredmo77@att.net

Qualifications:

A.S. Aviation, CCAF; B.S. Information Systems, UoP

FCC Licensed, PG-GB-062835

23 Years of Licensed and Unlicensed Microwave Operations, Management, and Engineering Experience.  30 Years' experience in general electronics. 10+ of these years as the lead Microwave Engineer for over 900 Licensed and 50 Unlicensed Point to Point Commercial Microwave Paths.

Statement of facts for the modified/renewed Petition for Declaratory Ruling to the FCC Commission.

1. Mr. James A Kay Jr. owns Indian Peak Properties, LLC, which owns the Single-Family home located at 26708 Indian Peak Road in Rancho Palos Verdes, CA.
2. Indian Peak Properties, LLC is both the customer and exclusive rights holder to the property.
3. Concerning Antenna #4: Cambium ePMP 2000 Unlicensed 2x2 MIMO 5.8 GHz Panel Antenna "Frequency Diversity" Fixed Wireless Broadband Internet Antenna which we identify as Antenna #4.
   a. Antenna # 4 is as follows:
      i. Internet Service Provider: One Internet America
      ii. Less than one meter in diameter.
      iii. Designed as a hub and relay antenna that is used for the distribution of broadband-only fixed wireless services to Indian Peak Properties, LLC.
      iv. Is in service being used by customer: Indian Peak Properties, LLC
      v. Is located on the property belonging to Indian Peak Properties, LLC.

Considerations:

First, Indian Peak Properties, LLC is owned by Mr. Kay.  Indian Peak Properties is the customer of this single-family home. While Indian Peak Properties, LLC may contract out for assistance during routine maintenance of his radio network as well as home maintenance, they maintain exclusive use of the home and property.

Second, the use of this antenna deemed Antenna #4 is compliant with OTARD due to the following facts.

Antenna #4 is the Frequency Diversity fixed wireless service for broadband internet service.

Third, Indian Peak Properties, LLC is the customer to which this service is being provided.

OTARD Rules apply to this antenna under the Rules that state:

"hub and relay antennas that are used for the distribution of broadband-only fixed wireless services to multiple customer locations, regardless of whether they are primarily used for this purpose, as long as: (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only."

"Antennas designed to receive and/or transmit data services, including Internet access, are included in the rule. Additionally, the most recent amendment clarifies that hub or relay antennas used to access the Internet must provide broadband-only service to qualify under the rule."

"The Commission's rule covers the antennas necessary to receive or transmit service. Therefore, a local rule may not, for example, allow only one antenna if more than one antenna is necessary to receive or transmit the desired service."

Fourth, having read the history of this case with the city and the FCC Commission, I believe some simple clarifications are necessary to resolve this matter. In Summary and as stated above.

1. Antenna #4 is used to provide OTARD covered services: Broadband Internet Services over Fixed Wireless.
2. Indian Peak Properties, LLC is the customer and is located on the Property at 26708 Indian Peak Road, Rancho Palos Verdes, CA
3. Indian Peak Properties, LLC has exclusive usage rights to the installations located on the single-family home.
4. No safety concerns have been brought into question and no General Exposure limitations have been exceeded.
5. Antenna #4 does not exceed 12' above the roofline height to tip.
6. No historical preservation concerns have been raised.

Sources:

- Network Design and Topology Discussion with Mr. Kay, owner of Indian Peak Properties, LLC.
- 2022 04 22_FCC Dismissal OTARD Petition Document
- Indian Peak OTARD Petition (2020-04-17) Document
- Indian Peak Urgent Request (OTARD 19-Apr-2022) Document
- Indian Peak OTARD Supplement (10-Dec-2021) Document
- (17) Pictures and Notes Supplied by Mr. Kay
- https://www.fcc.gov/media/over-air-reception-devices-rule

Notes:

I can confirm that, Indian Peak Properties, LLC's Antenna #4 is in fact in compliance with OTARD Rules.


Daniel W. Redmond, Senior Wireless Network Design Engineer, 916.296.0282

Date: 04/24/2022  _____

**EXHIBIT 2**


NETR**Online**

 **PROPERTY DETAIL REPORT**   created **2022-04-26**   Prepared exclusively for **TONEATA MARTOCCHIO**

**TARGET PROPERTY**

## 26708 INDIAN PEAK RD RANCHO PALOS VERDES, CA 90275-2333 C031

### Owner Information

| | |
|---|---|
| **Owner Name:** | INDIAN PEAK PROPERTIES LLC |
| **Mailing Address:** | 1350 E FLAMINGO RD #13B34 LAS VEGAS NV 89119-5263 C037 |
| **Phone Number:** | **Vesting Codes:** |
| **Owner Occupied Indicator:** N | **Pending Record Indicator:** |
| **Corporate Owner:** | |

### Location Information

| | | | |
|---|---|---|---|
| **Legal Description:** | TR=21350 LOT 80 | | |
| **County:** | LOS ANGELES | **APN:** | 7577-013-030 |
| **Census Tract / Block:** | 6704.18 | **Alternate APN:** | |
| **Township-Range-Sect:** | | **Subdivision:** | 21350 |
| **Legal Book - Page:** | 599-90 | **Map Reference:** | 72-E4 / |
| **Legal Lot:** | 80 | **Tract #:** | 21350 |
| **Legal Block:** | | **School District:** | PALOS VERDES PENINSU |
| **Market Area:** | 176 | **Munic / Township:** | |
| **Neighbor Code:** | | | |

### Owner Transfer Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 11/29/2005 | **Sale Price:** | |
| **Document #:** | | **Deed Type:** | GRANT DEED |
| **Instrument #:** | 000002980048 | **1st Mtg Document #:** | |
| **Book - Page:** | | | |

### Last Market Sale Information

| | | | |
|---|---|---|---|
| **Recording / Sale Date:** | 04/28/1994 / | **1st Mtg Amount / Type:** | $292,000.00 / CONV |
| **Sale Price:** | $365,000.00 | **1st Mtg Int. Rate / Type:** | / ADJUSTABLE INT RATE LOAN |
| **Sale Type:** | FULL | **1st Mtg Term:** | |
| **Document #:** | 821070 | **1st Mtg Document #:** | |
| **Instrument #:** | 000000821070 | **1st Mtg Instrument #:** | |
| **Book - Page:** | | **1st Mtg Book - Page:** | |
| **Deed Type:** | GRANT DEED | **2nd Mtg Amount / Type:** | / |
| **Transfer Document #:** | | **2nd Mtg Int. Rate / Type:** | / |
| **New Construction:** | | **2nd Mtg Term:** | |
| **Multi / Split Sale:** | | **Price per SqFt:** | $141.14 |
| **Cash Down Payment:** | | **Stamps Amount:** | $401.50 |
| **Title Company:** | SOUTH COAST TITLE | | |
| **Lender:** | WELLS FARGO BK | | |
| **Seller Name:** | UGAS ARMINDA | | |

### Prior Sale Information

| | | | |
|---|---|---|---|
| **Prior Rec / Sale Date:** | 06/09/1987 / 06/00/1987 | **Prior Deed Type:** | GRANT DEED |
| **Prior Sale Price:** | $350,000.00 | **Prior Lender:** | |
| **Prior Sale Type:** | FULL | **Prior 1stMtg Amount/Type:** | $255,000.00 / PRIVATE PARTY |
| **Prior Doc #:** | 909071 | **Prior 1stMtg Int. Rate/Type:** | / ADJUSTABLE INT RATE LOAN |
| **Prior Instrument #:** | 000000909071 | **Prior Stamps Amount:** | $385.00 |
| **Prior Book - Page:** | | | |

### Site Information

| Land Use: | SFR | Acres: | .1727 | County Use: | SINGLE FAMILY RESID |
|---|---|---|---|---|---|
| Flood Zone: | | Lot Area: | 7521 | State Use: | |
| Flood Zone Map: | | Lot Width / Depth: | / | Site Influence: | |
| Flood Panel Date: | | Usable Lot: | | Sewer Type: | |
| Res / Comm Units: | | Lot Shape: | | Topography: | |
| # of Buildings: | 1 | Bldg Width / Depth: | / | Water Type: | |
| Zoning: | RPRS8000* | Building Class: | | Water District: | CENTRAL AND W BASIN |

## Tax Information

| Total Value: | $573,122.00 | Assessed Year: | 2021 | Property Tax: | $7,217.68 |
|---|---|---|---|---|---|
| Land Value: | $354,867.00 | Improve %: | | Tax Area: | 7097 |
| Improvement Value: | $218,255.00 | Dist: | | Tax Year: | 2021 |
| Total Taxable Value: | $573,122.00 | Fire Dist: | CONSOLIDATED CO | Tax Exemption: | |
| Market Value: | | Garbage Dist: | | Equal Rate: | |
| | | Delinquent Date: | | Equal Year: | |

## Property Characteristics

| Gross Area: | | Parking Type: | | Construction: | |
|---|---|---|---|---|---|
| Living Area: | 2586 | Garage Area: | | Heat Type: | CENTRAL |
| Tot Adj Area: | | Garage 2 Area: | | Heat Fuel: | |
| Above Grade: | | Garage Capacity: | | Parcel Fuel: | |
| Ground Floor Area: | | Parking Spaces: | | Exterior Wall: | |
| Base / Main Area: | / | Carport: | | Interior Wall: | |
| Upper Area: | | Basement Area: | | Foundation: | |
| 2nd Floor Area: | | Finish Bsmnt Area: | | Air Cond: | |
| 3rd Floor Area: | | Basement Type: | | Roof Type: | |
| Rentable Area: | | Attic Type: | | Roof Shape: | |
| Additional Area: | | Porch Type: | | Roof Frame: | |
| Total Rooms: | | Porch 1 Area: | | Roof Material: | |
| Bedrooms: | 4 | Porch 2 Area: | | Floor Type: | |
| Bath (F/H): | 3 / | Patio Type: | | Floor Cover: | |
| Total Baths / Fixtures: | 3 / | Patio 1 Area: | | Style: | |
| Year Built / Eff: | 1958 / 1966 | Pool: | | Quality: | |
| Fireplace: | | Pool Area: | | Condition: | |
| Fireplace Description: | | | | # of Stories: | |
| Basement Description: | | | | Other Rooms: | |
| Other Improvements: | | | | | |
| Bldg Comments: | | | | | |
| Parcel Comments: | | | | | |

## Extra Features

| Description: | Unit: | Size / Qty: | Width: | Depth: | Year Built: | Improvement Value: |
|---|---|---|---|---|---|---|
| | | | | | | |

NETRonline and its data supplier(s) do not guarantee nor include any warranty of any kind
whether expressed or implied, about the validity of all information in this report since this information
is retrieved as it is recorded from the various agencies that make it available.

Copyright 2007 Nationwide Environmental Title Research, LLC



▲ **This page is part of your document - DO NOT DISCARD** ▲ 

05 2980048

```
RECORDED/FILED IN OFFICIAL RECORDS
          RECORDER'S OFFICE
         LOS ANGELES COUNTY
              CALIFORNIA

   8:21 AM    DEC  06  2005
```

## TITLE(S) :

### DEED

▲ ▲



L E A D   S H E E T

**FEE**

| FEE $10 | TT |
|---------|-----|
| 2 | |

**D.T.T:**

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**____

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**

7577 · 013 · 030          001

 ▲ **THIS FORM IS NOT TO BE DUPLICATED** ▲

**05 2980048**

RECORDING REQUESTED BY
RICHARD K. SEMETA, ESQ.

AND WHEN RECORDED MAIL TO

RICHARD K. SEMETA,
A PROFESSIONAL LAW CORPORATION
4695 MACARTHUR COURT, SUITE 310
P.O. BOX 10367
NEWPORT BEACH, CA 92658-0367

APN: 7577-13-030

| Space above line for Recorder's Use
| NO TAX DUE.

## GRANT DEED

Documentary transfer tax is **NONE. \*\***

___ Unincorporated area  _X_ Rancho Palos Verdes

Mail tax statements to: Lucky's Two-Way Radios, Inc., 1350 E. Flamingo Road, Suite 13B/346, Las Vegas, Nevada 89119

    **FOR NO CONSIDERATION, GRANTOR** Idyll Properties, LLC, a Nevada limited liability company, hereby **GRANTS TO** Indian Peak Properties, LLC, a Nevada limited liability company that real property in the City of Rancho Palos Verdes, County of Los Angeles, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Dated: _**11/29/**_____, 2005

                                 **Idyll Properties, LLC**
                                 By: Lucky's Two Way Radios, Inc.,
                                 its manager

                                 By: _____
                                     James Allan Kay Jr., President

\*\* The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11923(d).

State of Nevada      )
                   ) ss
County of Clark     )

On __11-29-05__, 2005, before me, _C. Noriega_, a notary public in and for the State of California, personally appeared James Allan Kay Jr., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (SEAL)



CLAUDIA NORIEGA
Notary Public, State of Nevada
Appointment No. 05-95368-1
My Appt. Expires Feb 2, 2009

05 2980048

3

EXHIBIT A

Lot 80 of Tract No. 21350, in the City of Rancho Palos Verdes, County of Los Angeles, State of California, as per map recorded in Book 599, Page(s) 90 to 95 of Maps, in the office of the County Recorder of said County.

**EXHIBIT 3**



One Internet America Antenna # 4

**EXHIBIT 4**



**Cambium Networks**™

# ePMP Sector Antenna

Cambium Networks has deployed more than five million radios around the world achieving unparalleled degrees of scalability. Based on this vast experience, Cambium Networks has designed an antenna solution that enables network operators to increase the spectral efficiency and scale of their *e*PMP™ point-to-multipoint (PMP) distribution access networks. Wireless Service Providers deploying networks in 5 GHz spectrum will find this sector antenna for 90° and 120° applications especially well-suited for high-density networks requiring frequency re-use and wide-band spectrum coverage.



## KEY DEPLOYMENT ADVANTAGES:

- **Frequency Reuse:** Designed for ABAB channel re-use (two channels covering four sectors), the sector antenna has 35 dB front to back ratio including a wide aperture in the rear-facing direction.

- **Channel Flexibility:** Consistent gain from 4.9 to 6.0 GHz allows the operator to select a channel anywhere in the band and achieve the expected performance.

- **Consistent Coverage:** Excellent **null fill** capabilities of the antenna allow for broad geographical coverage within a sector even near the base of the tower and the edges of the sector.

- **Designed for the Installer:** Small compact design, integrated *e*PMP radio mount and GPS antenna integration.

- **Predictable Performance:** The sector antenna is integrated into Cambium Networks LINKPlanner. The 3D model shows coverage at all elevations and across the azimuth.

## KEY SPECIFICATIONS:

- 18 dBi gain

- 4.9 to 5.97 GHz spectrum

- 35 dB front to back ratio

- IP 65 ruggedization

© 2016 Cambium Networks Ltd. All rights reserved.  phn-4293 000v004
SPEC-ePMP-GLOC-SVSP-ACCS-0406-2016

ePMP Sector Antenna SPECIFICATION SHEET

# Specifications

## PRODUCT

| | |
|---|---|
| Model # | C050900D021A |
| Frequency Range | 4.9 GHz to 5.97 GHz |
| Gain | 18 dBi |
| 3 dB Beamwidth – Azimuth | 90 degrees |
| 6 dB Beamwidth – Azimuth | 120 degrees |
| 3 dB Beamwidth - Elevation | 6 degrees |
| Electrical Downtilt | -2 degrees |
| Polarization | Horizontal and Vertical |
| Port-to-Port Isolation | > - 30 dB |
| Front-to-Back Ratio | 35 dB |
| Maximum Input Power | 5 W |
| Input Impedance | 50 ohms |
| Mounting Connectors | 2 x RP SMA |
| Mounting Hardware | Included for mounting to mast diameters 2" to 4" (5 cm to 10 cm)<br>-10 to +5 degree tilt<br>Hardware included to connect ePMP access point to back of antenna body |
| Physical Dimensions | Antenna Body:  23.4" (H) x 6.2" (W) x 4.3" (D) (594 mm x 157 mm x 110 mm)<br>w/ ePMP 1000 Access Point: 23.4" (H) x 6.2" (W) x 5.9" (D) (594 mm x 157 mm x 150 mm) |
| Weight | Antenna Body: 8.8 lbs. (4.0 kg)<br>w/ ePMP 1000 Access Point and Mounting Brackets:  14.6 lbs. (6.6 kg) |
| Environmental | IP65 |
| Radome Material | UV Protected ABS |
| Operating Temp | -40°C to 60°C  (-40°F to 140°F) |




© 2016 Cambium Networks Ltd. All rights reserved.  phn-4293 000v004
SPEC-ePMP-GLOC-SVSP-ACCS-0406-2016

# EXHIBIT 5

**RESOLUTION NO. 2018-61**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES REVOKING IN ITS ENTIRETY AND EFFECTIVE IMMEDIATELY CONDITIONAL USE PERMIT NO. 230 FOR THE INSTALLATION OF COMMERCIAL ANTENNAS AND RELATED SUPPORT STRUCTURES AT 26708 INDIAN PEAK ROAD.**

WHEREAS, on June 21, 2001, the Applicant/Appellant, Mr. James A. Kay, Jr., submitted applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 for after-the-fact approval to establish the then-existing 5-masted, roof-mounted antennae and related support structures and equipment on the site for commercial use; and,

WHEREAS, on September 19, 2001, the applications for Conditional Use Permit No. 230 and Environmental Assessment No. 744 were deemed complete by Staff; and,

WHEREAS, pursuant to the provisions of the California Environmental Quality Act, Public Resources Code Sections 21000 *et seq.* ("CEQA"), the State's CEQA Guidelines, California Code of Regulations, Title 14, Section 15000 *et. seq.*, the City's Local CEQA Guidelines, and Government Code Section 65962.5(f) (Hazardous Waste and Substances Statement), Staff found no evidence that Conditional Use Permit No. 230 and Environmental Assessment No. 744 would not have a significant effect on the environment and, therefore, the proposed project was determined by Staff to be categorically exempt (Class 1, Section 15301); and,

WHEREAS, after the submittal of these applications on June 21, 2001, and while the Planning Commission was conducting the public hearings on this application, the Applicant installed at least twelve (12) additional vertical antenna masts with attached antennae onto the previously existing roof-mounted antenna support structure and array, including additional cables and conduits for the additional antennae; and on November 8, 2001, the Applicant submitted revised plans to the City depicting a total of twenty (20) vertical antenna masts with attached antennae on the roof-mounted antenna support structure and array; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the Planning Commission held a duly noticed public hearing on October 23, 2001, November 13, 2001, and November 15, 2001, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the Planning Commission, on November 15, 2001, adopted P.C. Resolution No. 2001-43 conditionally approving the project; and,

AR000001

WHEREAS, Mr. Kay timely appealed conditional approval by letter dated November 28, 2001, based on disagreement with "all conditions regulating the location, number and placement of antennas on the project site...."; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, the City Council held a duly noticed public hearing on February 19, 2002, March 19, 2002, March 25, 2002 and April 16, 2002, at which time all interested parties were given an opportunity to be heard and present evidence; and,

WHEREAS, the City Council, on April 16, 2002, adopted Resolution No. 2002-27, thereby denying the appeal, modifying certain conditions of approval and conditionally approving the project; and,

WHEREAS, on May 15, 2002, Mr. Kay filed suit against the City in Federal District Court in order to overturn the City's decision on the grounds, among other things, that it violated the Telecommunications Act of 1996; and,

WHEREAS, on July 14, 2004, the United States District Court for the Central District of California ruled in the case of *Kay v. Rancho Palos Verdes* and ordered the "City Council of the City of Rancho Palos Verdes to issue a new resolution allowing James A. Kay, Jr. to use his five (5) mast antenna structure for commercial purposes, subject to reasonable conditions"; and,

WHEREAS, the City revised the conditions of approval for Conditional Use Permit No. 230 to allow the commercial use of Mr. Kay's 5-mast, roof-mounted, antenna array, which existed at the time and was depicted on plans provided to the City of Rancho Palos Verdes with the original submittal of the application for Conditional Use Permit No. 230 on June 21, 2001; and,

WHEREAS, this matter was agendized for the City Council's review and consideration on October 5, 2004, and November 16, 2004, but on both occasions the matter was continued to a subsequent City Council meeting at Mr. Kay's request in order to allow his legal counsel to discuss additional proposed revisions to the conditions of approval for Conditional Use Permit No. 230 with the City Attorney; and,

WHEREAS, the City Council, on December 21, 2004, adopted Resolution No. 2004-109, thereby revising eight (8) conditions of approval for Conditional Use Permit No. 230 pursuant to the July 14, 2004, order of the United States District Court; and,

WHEREAS, Mr. Kay subsequently petitioned the United States District Court to vacate the conditions of approval imposed by Resolution No. 2004-109; and,

WHEREAS, on April 4, 2005, the United States District Court issued an order in response to Mr. Kay's petition, finding that the provisions of Condition No. 19 of Conditional Use Permit No. 230 requiring "that Mr. Kay maintain the property as his

AR000002

primary residence [were] not reasonable," but also finding that all other conditions of approval imposed by Resolution No. 2004-109 were reasonable; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Development Code, on July 5, 2005, the City Council adopted Resolution No. 2005-75 revising the language for Condition No. 19 of Conditional Use Permit No. 230 thereby requiring that Mr. Kay complete necessary improvements to make the house habitable, including but not limited to, a functional kitchen and bathroom, and connections to utilities, along with weekly landscape and maintenance services; and,

WHEREAS, on November 28, 2014, the City issued Mr. Kay a Notice of Violation for the installation of unpermitted roof-mounted antennas resulting in a total of thirteen (13) roof-mounted antennae and support pole masts, well in excess of the five (5) City Council-approved, roof-mounted antennae and support pole masts. The City ordered the removal of all but the five (5) City Council-approved roof-mounted antennae and support pole masts from the roof, and requiring that the remaining five (5) City Council-approved, roof-mounted antennae and support pole masts comply with the City Council-adopted Conditions of Approval for Conditional Use Permit No. 230; and,

WHEREAS, on July 26, 2016, the City set a thirty (30) day period for compliance with the November 28, 2014, Notice of Violation. At the request of Mr. Kay, the City, in good faith, granted a time extension to this compliance deadline to October 28, 2016; and,

WHEREAS, on October 28, 2016, a Conditional Use Permit revision application (Planning Case No. ZON2016-00517) was submitted to the City requesting to legalize the unpermitted roof-mounted antennas; and,

WHEREAS, on November 23, 2016, the application was deemed incomplete for processing, and because the application originated from code enforcement action, the Applicant was given thirty (30) days, or until December 21, 2016, to submit the requested additional information in order continue processing the application; and,

WHEREAS, on March 21, 2017, the City received a letter from Mr. Kay's legal counsel, Mr. Nakasu, asserting that the application to revise Conditional Use Permit No. 230 with an after-the-fact amendment should be granted pursuant to RPVMC §17.76.020(A)(12)(b); and,

WHEREAS, on April 14, 2017, the City Attorney responded by outlining the City's position that, pursuant to Resolutions 2002-27, 2004-109, and 2005-75, the five (5) City Council-approved, roof-mounted antennae and support pole masts "refer only to the antennae and antenna array depicted in the plans submitted to the City on June 21, 2001, in photographs accompanying the application to revise CUP No. 230, and Environmental Assessment No. 744." Further, the City Attorney stated that any suggestion that additional antennae, support pole masts, and other structures were mere modifications not requiring City Council approval directly contravened the binding resolutions; and,

WHEREAS, on June 28, 2017, City Staff, the City Prosecutor, Mr. Nakasu, and Mr. Kay met to discuss this matter, at which time, Mr. Nakasu indicated that the antennae and support structures were "outdated" and "obsolete" and that they could be replaced with an alternative structure that would both address the telecommunications capacity needs, as well as the City's safety and aesthetic concerns with the current structures. Four months elapsed from the June 28, 2017, meeting, during this time, Mr. Kay did not make any further attempts to cure the application deficiencies in order to proceed with processing a revision to CUP No. 230, or to rectify the technological obsolescence of the existing structures; and,

WHEREAS, on October 19, 2017, Staff granted, in good faith, Mr. Kay additional time to submit the requested information in order for Mr. Kay to acquire a new permit expediter company; and,

WHEREAS, on October 23, 2017, the City Prosecutor sent a letter to Mr. Kay and Mr. Nakasu, the purpose of which was to summarize events subsequent to the June 28, 2017, meeting, to reiterate the deficiencies in the CUP No. 230 revision application, to discuss potential replacement of current, "obsolete," structures, and to discuss the potential for reinstating the Code Enforcement case, should the City's demands not be met; and,

WHEREAS, on December 13, 2017, City Staff, City Prosecutor, Mr. Nakasu, and Mr. Kay met, and at this meeting, Mr. Kay proposed alternative designs to replace the existing antennae, such as a faux monopole tree or new roof antennae on the rear yard-facing roof pitch, that would address the City's concerns and meet the needs of the commercial antennas. As a result, it was agreed that Mr. Kay would submit, by mid-January 2018, a concept drawing regarding a proposed alternative design for the City's initial review, followed by an application for the CUP on or before February 28, 2018. To date, the City has not received any information from Mr. Kay or his legal counsel; and,

WHEREAS, in accordance to RPVMC §17.60.080, if any of the conditions to the use or development are not maintained, then the Conditional Use Permit shall be null and void. Furthermore, the continued operation of a use requiring a Conditional Use Permit which is found to be noncompliant with any condition of a Conditional Use Permit shall constitute a violation of the Municipal Code; and,

WHEREAS, after notice issued pursuant to the requirements of the Rancho Palos Verdes Municipal Code, the City Council held a duly-noticed public hearing on August 21, 2018 to consider revoking Conditional Use Permit No. 230, at which time all interested parties were given an opportunity to be heard and present evidence.

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF RANCHO PALOS VERDES DOES HEREBY FIND, DETERMINE, AND RESOLVE AS FOLLOWS:

AR000004

**Section 1:**    Having heard and considered the oral, written, and documentary evidence presented at the duly-noticed public hearing conducted by the City Council on August 21, 2018, the City Council makes the following findings:

A.     The property located at 26708 Indian Peak Road, Rancho Palos Verdes, California, (the "Subject Property") is the subject of Conditional Use Permit No. 230 ("CUP No. 230"), as granted by the City Council in Resolution No. 2004-109, and as amended by Resolution No. 2005-75. The Applicant, Mr. James A. Kay, Jr., did not successfully challenge, within the time provided by law, Resolution No. 2005-75, and has from and after the adoption of Resolution No. 2005-75 (the "CUP Date") accepted the benefits of CUP No. 230.

B.     CUP No. 230 required removal of all but five (5) of the existing eight-and-on-half-foot long masts and two of the television antennae from the roof, authorized a maximum of five (5) vertical masts, each with a height of eight and one-half (8 ½) feet, and not more than four (4) radiating per each mast.

C.     Condition of Approval No. 2.d states in part, "Any additional exterior antennae, masts or other antenna and support structure(s) shall require further approval or modification of this conditional use permit."

D.     Further, Condition of Approval No. 2 goes on to state that the Director is authorized to make only minor modifications to the approved plans and conditions of approval.  "Otherwise, any substantive change, such as the enlargement, expansion or addition to, the exterior masts and antennae that this approval allows outside of the exiting residential structure shall require approval of a revision to Conditional Use Permit No. 230 by the City Council and shall require a new and separate environmental review."

E.     The Subject Property has at various times from after the CUP Date had installed antennae and/or vertical masts on the roof as testified to by staff and depicted in photographic evidenced submitted into the Administrative Record.  Such evidence discloses installation of as many as twelve (12) additional vertical masts (the "Additional Masts") over and above the five (5) permitted by CUP No. 230.

F.     Mr. Kay has failed to provide any evidence that any permits of any kind (zoning, building, etc.) were obtained by him, directly or by an agent acting on his behalf, authorizing the construction of the Additional Masts. Written correspondence from his attorney admits such construction has occurred, does not contest to permits were obtained in advance, and has confirmed such by submitting an incomplete application for an "after-the-fact" permit for the Additional Masts.

G.     City records fail to show any action by the City Council subsequent to Resolution No. 2005-75 modifying, amending, or otherwise affecting CUP No. 230 to allow installation of more than five (5) vertical masts on the Subject Property.  Further, although the City Council finds it would not properly be the subject of a minor modification, staff has indicated that no application for a minor modification was approved by the Director to that effect.

H.     The City staff has made various efforts to resolve these issues short of a revocation beginning in 2014.  Despite numerous meetings, exchanges of correspondence, and opportunities to come into compliance with CUP No. 230 or, in the alternative, apply for a modification to CUP No. 230 to retroactively permit the Additional Masts, Mr. Kay has not diligently pursued any remedial opportunity and has continued to operate the unpermitted facilities while essentially "stringing along" the City.

I.      Based upon all the evidence presented, and after hearing the arguments and testimony on behalf of Mr. Kay, the public, and City staff, the City Council finds the evidence of construction of the unpermitted Additional Masts to be essentially uncontested in that Mr. Kay has admitted they exist.  The City Council finds that no permits of any kind (zoning or building) were obtained by Mr. Kay and therefore the construction of the Additional Masts was in violation of the Rancho Palos Verdes Municipal Code and the specific provisions of the Conditions of Approval relating to modification or expansion of the use of the antennae structure by the increase in the number of masts above the five (5) permitted by CUP No. 230.

J.      The City Council further finds that the violation directly impacts surrounding properties due to the increased visual impact of commercial antennae which the limitation on the number of vertical masts was narrowly tailored to address, and that the Subject Property owner has repeatedly and knowingly violated the Conditions of Approval by the installation of the Additional Masts without any permits or other legally-required approvals, and subsequently has availed himself of numerous opportunities to come into compliance with the terms of CUP No. 230 such that revocation is the appropriate action and is necessary to protect the legitimate interests of the community.

**Section 2:**     Based on the information included in the Staff Report, the testimony and evidence presented at the public hearings in the past before the Planning Commission and the City Council, the administrative records related to those prior proceedings, the Minutes and the other records of this proceeding on file with the City, the City Council of the City of Rancho Palos Verdes hereby revokes Conditional Use Permit No. 230, as amended, in its entirety.

PASSED, APPROVED, AND ADOPTED this 21st day of August 2018.

_____
Mayor

Attest:

_____
City Clerk

State of California            )
County of Los Angeles          )  ss
City of Rancho Palos Verdes     )

I, Emily Colborn, City Clerk of the City of Rancho Palos Verdes, hereby certify that the above Resolution No. 2018-61 was duly and regularly passed and adopted by the said City Council at a regular meeting thereof held on August 21, 2018.

_____
City Clerk

Resolution No. 2018-61
Page 7 of 7

AR000007



ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

ORANGE COUNTY | LOS ANGELES | RIVERSIDE | CENTRAL VALLEY

**June S. Ailin**
jailin@awattorneys.com
(310) 527-6665

2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245
P (310) 527-6660
F (310) 532-7395

AWATTORNEYS.COM

November 19, 2021

**VIA ELECTRONIC MAIL ONLY**

Dawn Cushman
Angela M. Rossi
Bradley, Gmelich & Wellerstein, LLP
700 N. Brand Boulevard, 10th Floor
Glendale, CA 91203

   Re:  26708 Indian Peak Road/Removal of Antennas

Dear Ms. Cushman and Ms. Rossi:

   By now, I am sure you have had an opportunity to review the court of appeal's opinions affirming the judgment in the writ of mandate case and all but affirming the judgment in the nuisance abatement case. While there remains some work for a court to do on the nuisance abatement case, the ultimate outcome is clear. The City has prevailed on the first and second causes of action, making whatever happens to the third cause of action irrelevant.

   In light of this outcome, the City hereby again demands, and expects, that all of the antennas at 26708 Indian Peak Road (except for the television satellite dish) and all related support structures, equipment and equipment housing will be removed expeditiously. If the removal have not been completed by December 22, 2021, we will proceed with obtaining a court order allowing the City to enter the property, remove the antennas and all related support structures, equipment and equipment housing, and recover the costs from Indian Peak Properties, LLC.

           Very truly yours,

           ALESHIRE & WYNDER, LLP

           *June Ailin*

           June S. Ailin
           Partner

cc:  Honorable Mayor & Councilmembers,
    City of Rancho Palos Verdes
   Ara Mihranian, AICP,
    City Manager
   William W. Wynder, Esq.

01203.0033/752507.1

# EXHIBIT 6

# Internet Service Contract

**Customer Name: Indian Peak Properties, LLC**

**Date: May 18, 2020**

**Project: Indian Peak Properties, LLC**

**Service Address: 26708 Indian Peak Rd**

**Rancho Palos Verdes, CA 90275**

**Terms: <u>1 Year</u>**

**Monthly Fee: <u>50.00</u>**

**Install Fee: <u> Waived</u>**

**Service: 50 Mb download / 50 Mb Upload**

**Notes: Customer will provide roof access for equipment**

## Terms of Use Agreement & Privacy Policy

As a user of One Internet America. (herein after referred to as One Internet America) you agree that you are at least 18 years of age (or have permission from a parent or guardian to use this service) and will abide by the policies of One Internet America. It is understood that information on the Internet may be unedited, uncensored, and offensive to you. You access such information at your own risk. One Internet America does not censor the Internet and has no control over what data is transmitted to you. One Internet America reserves the right to refuse service to anyone. As a user of One Internet America, you agree not to use the service in a manner that violates any local, state or federal law. You also agree not to use the Internet for abusive, profane, libelous, slanderous, threatening or otherwise harassing posts.

**INVOICES & PAYMENT:** One Internet America will invoice you once a month for Services (on the 1st of each month), one (1) month in advance. You understand that all PAYMENTS ARE DUE ON THE 5th of the calendar month and over extended "Grace Period" until the 15Th of the month.

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com



After the 15Th day of the month, our billing system will issue a "Soft Disconnect" and will prevent the customer from accessing to the internet, soft disconnect will allow the customer to access to the billing portal system for immediate payment and automatic account restoration.

Payments received after the grace period will be assessed a Late Fee of $25.00. If payment is not received by the close of business day on the 15Thof the month, One Internet America may, without notice, terminate a past due account and at it's  sole discretion charge a re-connection fee of $50 or terminate the account completely.

If your account is terminated due to nonpayment, you or your company will be liable for any applicable cancellation fee which is normally the remaining balance of your contract and all expenses incurred by One Internet America to collect the unpaid debt and/or termination fee, including, but not limited to, attorney fees/expenses, court filing fees, process server fees, collection agency fees/expenses, travel expenses for One Internet America or its agency.  All invoices that include a past due balance are due and payable immediately. One Internet America reserves the right to terminate or cancel the contract and services at any time at its sole discretion.

NET30 terms can be requested by Corporate Customers via support ticked from inside your account. Customer with NET 30 agreements will have extended 30 days for payment.

If you have agreed to a Contract term of 12 months or greater and choose to terminate your contract not related to the "Right of Termination" before the end of your agreed upon term, the cancellation fee is equal to the remaining number of monthly service charges in your contract plus any unpaid service charges. All cancellation requests must be made in writing with a 30 Day Notice delivered by Mail to One Internet America 3833 Ebony Street, Ontario, CA, 91761 or by creating a new ticket from the customer portal.

For a new customer setup One Internet America's invoice will reflect all applicable Installation and CPE charges and prorated monthly Services charges for such month and the advance monthly Service charges, however all Installation and Equipment charges must be paid at the time of installation for installation to commence.  One Internet America will commence billing for Services upon completion of its installation.

**SERVICES:**  One Internet America shall provide Subscriber with internet connection services of 50 Mb download / 50 Mb Upload capabilities.

**SERVICE DATE AND TERM:** This agreement will commence on May 18, 2020, and will continue for a one (1) year period ending at midnight May 17, 2021. This agreement will automatically be extended and renewed on the same terms and conditions, unless Customer provides at least sixty (60) days written notice to One Internet America prior to the end of the applicable term, of its intent to terminate, whereupon the terms shall terminate.

**RIGHT OF TERMINATION:** Customer can request services termination without any penalty or other charges only if the services are not delivered as requested or if One Internet America is not able to maintain a substantial service level agreement (SLA) for the service (s) at the customer location.

Customer can request a copy of the SLA for current services by opening a new support ticket from the customer portal at any time.

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, **CA**, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com



One Internet America will retrieve the equipment installed at the customer premises after the services termination; Installation fees will not be reimbursed. If the services are terminated before the end of the contact date due One Internet America failure to maintain standard SLA, customer will not be charged for the remaining time of the contract.

In case of customer relocation if One Internet America and its agents are unable to provide service to Customer's new location, the Agreement shall terminate and no early termination fees shall apply.

**SERVICE RELOCATION:** If the Customer moves during the term of this Agreement and would like to relocate the Service, Customer must place a relocation request with One Internet America. as soon as possible. This request must contain the requested date of service termination, plus the address and phone number of the new location if possible and the prospective move-in date. Upon receiving a written or email relocation request from Customer, One Internet America. will place a "relocation order" for the new location.

The Service may be maintained at the old address until the Service has been delivered to the new address. All applicable installation fees will be charged at the new address. After the Service has been delivered to Customer's new address, Customer may choose to keep the Service up at the old address for up to 30 days for a smooth transition. Customer will be billed for both services during any period when both are in service simultaneously. If the old Service has not been cancelled within 30 days after delivery of the new Service, they will be considered separate orders.

**BANDWIDTH:** One Internet America's service commitment is to provide an average of eighty-percent (80%) of the rated bandwidth as tested by the One Internet America network bandwidth-monitoring device and burstable to a maximum of the rated bandwidth.

The One Internet America commitment extends from the subscriber premises to our network node at the One Internet America Network Interconnect Facility (NIF). For example, for One Internet America's 10 Mbps access service, the eighty-percent (80%) commitment level would result in an average bandwidth of 8 Mbps burstable to 10 Mbps.

**NETWORK AVAILABILITY**: Due to One Internet America's high standards, we are committed to network availability for any link of 99.9%

**NETWORK OUTAGE CREDITS:** One Internet America will provide credits for One Internet America documented network outages resulting in subscriber loss of use of the network for requesting subscribers in the following instances: For subscriber outages of More Than 30 Minutes or greater within a 24 hour period in which a subscriber requests a credit One Internet America will provide a credit to you for one (1) day of One Internet America's access service fee: Pre-announced network maintenance windows; Subscriber induced outages including: loss of power at the CPE; LAN issues resulting in Loss of connectivity to One Internet America; movement of CPE; moves and changes in cabling at the Subscriber Premise; changes in IP addresses or Internet issues beyond One Internet America's immediate control, including but not limited to Force Majure clause included in this contract. Your service is deemed active and in service if an One Internet America technician can ping the CPE or your router.

**ILLEGAL USE**: Any services on an One Internet America Internet Connection must conform to local, state and federal ordinances. One Internet America does not allow the access of Pornographic or P2P File Sharing, or any other type of File Sharing on our systems.

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com



Subscriber assumes all risks associated with copyright restrictions, trademark restrictions, confidentiality limitations, trade secrets, patent restrictions or any other intellectual property, tangible or intangible rights associated with all electronic content which is downloaded or uploaded using One Internet America's Services. One Internet America reserves the right to exclude video over ip and voice over ip services for its own use and may or may not grant exclusive licenses for an additional fee to any user wishing to use or provide live or recorded video or voice over ip telephone services over its network. Any activity that violates the above items, degrades, or impacts One Internet America's network is grounds for immediate suspension or termination of One Internet America services at One Internet America's sole discretion. This will also be deemed breach of contract and subscriber will be charged remaining months of the service agreement.

**TECHNICAL SUPPORT**:  One Internet America assumes that the user has a basic understanding of their computer. One Internet America will not train users in basic computer skills such as, but not limited to deleting files or creating directories. Technical support is intended to facilitate the setup of your properly functioning computer system for access to our services. Our technical support staff is not trained to and will not assist you in installing and/or troubleshooting software, printers, drivers, modems or telephone lines.

**RESALE:** Subscriber is expressly prohibited from reselling any Services provided hereunder. Subscriber is prohibited from hosting any website dedicated to the sale or dissemination of any unlawful goods or services. The use of these Services in connection with any matter or thing, which violates any municipal, state, county, or federal law or ordinance is prohibited, and subscriber shall indemnify and hold harmless One Internet America, its officers, directors, shareholders, agents and employees from any and all claims, liabilities, damages or expenses, including attorney's fees, arising out of or resulting from the use by Subscriber of the Services provided herein.

**SPAMMING:** The distribution of un-solicited e-mails is against federal and state laws and may result in the termination of your account without notice.

**PRIVACY POLICY:** One Internet America respects your privacy and will not knowingly distribute, or cause to be distributed your personal information to any entity for any reason, except in the case of a legal subpoena from a branch of the United States legal system or its affiliates.

**EQUIPMENT:**  Subscriber acknowledges that all equipment including any equipment that is or may be deemed to be a fixture within the meaning of the applicable Uniform Commercial Code, will at all times remain the property of One Internet America. Subscriber may not sell, transfer, lease, encumber, or assign any or all of the Equipment to any third party. Subscriber shall pay for the full retail cost of the equipment, or the repair or replacement cost of any lost, stolen, un-returned, damaged by customer, sold, transferred, leased, encumbered or assigned Equipment. Subscriber is responsible for any changes to the One Internet America equipment, software and configuration after One Internet America completes its service set up.  However, if One Internet America determines that no such abuse or misuse of One Internet America's CPE Equipment has occurred, One Internet America will repair or replace such Equipment as required to resume Services. Should Subscriber cancel service with One Internet America, the Subscriber is responsible to return the equipment to One Internet America in good working condition within 10 days.  Should Subscriber not return equipment as stated above, Subscriber will be liable for cost of equipment and will be billed at retail value.

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com

Should Subscriber wish to have One Internet America remove equipment, Subscriber may request removal by One Internet America at which time an additional fee will apply for One Internet America to remove equipment.

**MAINTENANCE:** Maintenance, repair or replacement of parts damaged or lost through catastrophe, accident, lightning, neglect, misuse, transportation, theft, fault or negligence of Subscriber or causes external to the wireless system, such as, but not limited to failure of, or faulty, electrical power, operator error, or malfunction of Subscriber's computer and/or peripheral equipment not installed by One Internet America., or from any cause related to or other than the intended and ordinary use, will be billed to the Subscriber at standard hourly rates.

Antenna re-aiming or relocation of antennas due to obstructions such as trees, vegetation or buildings, or storm related damage, or reconstruction of tower/mast assemblies, will be billed to the Subscriber at standard hourly rates.

**FORCE MAJURE:** IN NO EVENT SHALL One Internet America or it's Officers, or 3rd PARTY CONTRACTED PROVIDERS (COLLECTIVELY, "PROVIDER") BE LIABLE TO CUSTOMER FOR ANY DELAYS IN THE PERFORMANCE OF SERVICES HEREUNDER OR FOR ANY FAILURE TO PERFORM HEREUNDER IF SUCH DELAYS OR FAILURES ARE DUE TO STRIKES, INCLEMENT WEATHER, ACTS OF GOD, OR OTHER CAUSES BEYOND PROVIDERS REASONABLE CONTROL.

PROVIDER WILL NOT BE RESPONSIBLE FOR PERFORMANCE OF ITS OBLIGATIONS HEREUNDER WHERE DELAYED OR HINDERED DUE TO WAR, RIOTS, EMBARGOS, STRIKES, OR OTHER ACTS OF ITS VENDORS AND SUPPLIERS, CONCEALED ACTS OF WORKMEN (WHETHER OF PROVIDER OR OTHERS), OR ACCIDENTS. SHOULD SUCH OCCURRENCE CONTINUE FOR MORE THAN 30 DAYS, PROVIDER OR CUSTOMER MAY CANCEL SERVICE FOR THE AFFECTED SERVICES AND/OR PRODUCTS WITH NO FURTHER LIABILITY. IN NO EVENT SHALL PROVIDER BE LIABLE FOR ANY SPECIFIC, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES BASED UPON BREACH OF WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT TORT OR ANY OTHER LEGAL THEORY. SUCH DAMAGES INCLUDE, BUT ARE NOT LIMITED TO, LOSS OF PROFITS, INDEMNITY, LOSS OF SAVINGS OR REVENUE, COST OF ANY SUBSTITUTE EQUIPMENT, FACILITIES OR SERVICES, DOWNTIME, THE CLAIMS OF THIRD PARTIES, AND INJURY TO PROPERTY.

ANY CLAIM OR LEGAL ACTION ARISING OUT OF FAILURE, MALFUNCTION OR DEFECT IN PROVIDER'S SERVICES OR GOODS, OR ARISING FROM THIS CONTRACT IN ANY RESPECT, SHALL BE BROUGHT WITHIN A PERIOD OF ONE YEAR FOLLOWING THE OCCURRENCE OF SAID CLAIM OR SAID CLAIM SHALL BE DEEMED WAIVED. PROVIDER'S LIABILITY TO SUBSCRIBER HEREUNDER, IF ANY, SHALL IN NO EVENT, EXCEED THE TOTAL AMOUNT CUSTOMER HAS PAID TO PROVIDER HERUNDER. PROVIDER DOES NOT MAKE, AND HEREBY DISCLAIMS, ANY AND ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTIBILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT AND TITLE, AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE.

PROVIDER DOES NOT WARRANT THAT ITS SERVICE WILL PERFORM AT A PARTICULAR SPEED, WILL BE UNINTERRUPTED, ERROR FREE, OR COMPLETELY SECURE.

**CHOICE OF LAW:** You and One Internet America agree that the law of the State of California, U.S.A. will apply to all matters relating to this Agreement and to One Internet America. In addition, You and One Internet America agree and consent that the Courts of San Bernardino, California, U.S.A. will have exclusive jurisdiction and be the exclusive venue

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com



for any legal actions relating to this Agreement or to the services provided hereunder. User agrees to defend, indemnify and hold harmless One Internet America, its officers, directors, employees, agents and licensees, from any claims and expenses, including reasonable attorney's fees, arising out of or relating to member's use of One Internet America's service.

In the event that the User is in breach of contract, the User agrees to pay all collection costs, court costs and any other applicable attorney fees incurred in order to collect any unpaid outstanding balance on User's account and/or breach of contract by User. The User understands that this agreement is assignable by One Internet America. If any part of this agreement is unacceptable to you, you must immediately terminate your membership with One Internet America. This agreement shall automatically renew on the stated periodic basis unless terminated by either party giving the other thirty days written notice.

**NO WAIVER:** The failure of One Internet America to enforce the rules and guidelines set out in this Agreement, for whatever reason, shall not be construed as a waiver of any right to do so at any later time.

**CONSISTENT WITH APPLICABLE LAW:** If any term or provision of this Agreement is held to be invalid or unenforceable, that term or provision shall be interpreted and enforced in any way that is consistent with applicable law as nearly as possible, and the remaining terms and provisions shall remain in full force and effect.

**RIGHT TO MONITOR:** One Internet America shall operate the service properly, to protect itself and its customers. For that purpose, each customer must acknowledges and agree that One Internet America has the right (but not the obligation) to monitor the service content and the use of the service by each customer. One Internet America has the further right to disclose any information as necessary to satisfy any law, regulation, or other governmental requirement. One Internet America may refuse to post, and may remove, any information or materials, in whole or in part, that in its sole discretion considers to be inappropriate, unnecessary or in violation of this agreement.

**LANDLORD RIGHTS OF ACCESS:** It is the Subscriber's responsibility to arrange all necessary rights of access for One Internet America within Subscriber's premises, including space for cables, conduits, equipment, and roof rights as necessary for One Internet America's authorized personnel to install, repair, inspect, maintain, replace or remove any and all facilities and equipment provided by One Internet America and to obtain landlord approval for the placement of the antenna on the Subscriber's building. Landlord/Owner consents to the installation, maintenance, and removal of the equipment described herein and required by Subscriber to receiver One Internet America services.

It is understood that if a CPE and Dish is to be mounted on the exterior of the building that subscriber ordering such services is the authorized landlord or owner of said property and approves, permits and consents to the installation, maintenance, and removal of the One Internet America's CPE and Dish, and other equipment required to receive Services.

IF THE ABOVE STATEMENT IS NOT TRUE THEN PLEASE FOLLOW THE DIRECTIONS THAT FOLLOW:
If the CPE and Dish is to be mounted on the exterior of the building your order will not be serviced until landlord permission is obtained and a **Rooftop Release Form** has been signed. It is the subscriber's responsibility to obtain any required approvals or permits to gain landlords approval as disclosed for the placement of the CPE and Dish on the Subscribers building or residence.

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com

**BY SIGNING UP FOR THE SERVICES CREATES A CONTRACT BETWEEN CUSTOMER AND ONE INTERNET AMERICA, CONSISTING OF THE ORDER, THE APPLICABLE SERVICE DESCRIPTION AND THIS USER AGREEMENT AND YOU ARE AGREEING TO BE BOUND BY THE TERMS OF THIS AGREEMENT AND ALL TERMS AND CONDITIONS INCORPORATED BY REFERENCE IN THIS AGREEMENT, INCLUDING COMPANY'S USAGE POLICY. YOUR USE OF THE SERVICES CONSTITUTES ACCEPTANCE OF THIS AGREEMENT.**

I authorize that I am an authorized officer or representative of the company and I have read and fully understand the **Terms & Conditions and agree to abide by its terms.**

Customer/Subscriber Name:     INDIAN PEAK PROPERTIES, LLC, 26708 Indian Peak Road, Rancho Palos Verdes, CA 90275-2333

Internet Company Name:     ONE INTERNET AMERICA, LLC, 3833 Ebony Street, Ontario, CA, 91761, Tel: 909-457-0906 Fax: 909-457-0908

Indian Peak Properties, LLC

By: _____     Dated: May __19__ 2020
     James Kay, Jr.

One Internet America, LLC:

By: LEISSER BARRERA_____     Dated: May __18__ 2020
     Leisser Barerra

**ONE INTERNET AMERICA, LLC**
3833 Ebony Street, Ontario, CA, 91761
Tel: 909-457-0906 Fax: 909-457-0908
E-Mail: info@oneinternetamerica.com
Web: www.oneinternetamerica.com



1365

| Vendor | Inv Date | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|--------|----------|----------|---------|----------|---------|----------|
| | | | 38.00 | .00 | 0.00 | 38.00 |

(Acct: 10200-0001)                    Check Date 12/13/21                    Total                    38.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

1365
1365
NUMBER

◇ BANC OF CALIFORNIA

90-4377/1222

| | DATE | **AMOUNT** |
|---|------|-----------|
| | 12/13/21 | $38.00 |

**PAY**
TO THE
ORDER
OF

One Internet America
3623 Ebony Street
Ontario, CA  91761

⑈"001365"⑈ ⑈:122243774⑈:2070006835"⑈

---

INDIAN PEAK PROPERTIES, LLC

1365

Vendor No: 635.    Name: One Internet America

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| | JANUARY | 01/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 10200-0001)                    Check Date 12/13/21                    Total

INDIAN PEAK PROPERTIES, LLC

1372

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| | FEBRUARY | | | 0.00 | 0.00 | 38.00 |

(Acct# 10200-000)               Check Date 01/17/22               Total          38.00

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

1372

◇ BANC OF CALIFORNIA

1372
NUMBER

90-4377/1222

Thirty-Eight and 00/100 Dollars

| DATE | AMOUNT |
|------|--------|
| 01/17/22 | $38.00 |

PAY
TO THE      One Internet America
ORDER       3437 Ebony Street
OF          Ontario, CA 91761

⑈001372⑈ ⑈122243774⑈ 20700068 35⑈

INDIAN PEAK PROPERTIES, LLC

1372

Vendor No: IED      Name: One Internet America

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| | FEBRUARY | | | 0.00 | 0.00 | 38.00 |

(Acct# 10200-000)               Check Date 01/17/22               Total          38.00

128 B97515 AVXRX2 02/27/2014 13.18

INDIAN PEAK PROPERTIES, LLC

**1378**

Vendor No: ONE1      Name: One Internet America

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022003 | MARCH | 03/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 10200-000)             Check Date 02/11/22                 Total             38.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA, 91409
(818) 997-7700

◇ BANC OF CALIFORNIA

**1378**
1378
NUMBER

90-4377/1222

***Thirty-Eight & No/100 Dollars

| DATE | **AMOUNT** |
|------|-----------|
| 02/11/22 | $38.00 |

**PAY**
**TO THE**      One Internet America
**ORDER**      3435 Ebony Street
**OF**      Ontario, CA  91761

Memo:Acct# 112311 & 112577

⑈"00‡378⑈' ⑆:‡22243774⑆:2070006835⑈'

---

INDIAN PEAK PROPERTIES, LLC

**1378**

Vendor No: ONE1      Name: One Internet America

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022003 | MARCH | 03/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 10200-000)             Check Date 02/11/22                 Total             38.00

INDIAN PEAK PROPERTIES, LLC

**1386**

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022004 | APRIL | 04/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 10700-030)          Check Date 03/11/22          Total          38.00

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

◇ BANC OF CALIFORNIA

**1386**
1386
NUMBER

90-4377/1222

\*\*\*Thirty-Eight & No/100 Dollars

| DATE | AMOUNT |
|------|--------|
| 03/11/22 | $38.00 |

**PAY**
TO THE
ORDER
OF

One Internet America

Memo Acct# 712411 & 112077

⑈001386⑈ ⑆122243774⑆ 207000683 5⑈

INDIAN PEAK PROPERTIES, LLC

**1386**
1386

Vendor No: 711      / Name: One Internet America

| Invoice | Ref | Inv Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022004 | APRIL | 04/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 10700-030)          Check Date 03/11/22          Total          38.00

INDIAN PEAK PROPERTIES, LLC

**1392**

| Invoice | Amt | Due Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022005 | MAY | 05/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 1024-0600)                Check Date 04/11/22                Total                38.00

---

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA. 91409
(818) 997-7700

BANC OF CALIFORNIA

90-4377/1222

**1392**

NUMBER

| DATE | AMOUNT |
|------|--------|
| 04/11/22 | $38.00 |

**PAY**
TO THE
ORDER
OF

One Internet America
3833 Ebony Street
Ontario, CA 91761

Memo: Acct #

⑈001392⑈ ⑆122243774⑈ 2070006835⑈

---

INDIAN PEAK PROPERTIES, LLC

**1392**

| Invoice | Amt | Due Date | Inv Amt | Discount | Adj Amt | Amt Paid |
|---------|-----|----------|---------|----------|---------|----------|
| 2022005 | MAY | 05/01/22 | 38.00 | 0.00 | 0.00 | 38.00 |

(Acct: 1024-0600)                Check Date 04/11/22                Total                38.00

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**747958**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Jul 1 2020 to Jul 31 2020**

Invoice Date
**Jul 1 2020**

Due Date
**Jul 22 2020**

Account Number
**112577**

| | |
|---|---|
| Charges | $109.01 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($109.01) |
| **Total due by Jul 22 2020** | **$0.00** |

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

| | |
|---|---|
| AIRFIBER DEDICATED PTP 50 x 1 | $50.00 |
| AIRFIBER DEDICATED PTP 50 x 1 | $59.01 |

**Payments Applied**

| | |
|---|---|
| Check payment applied on Oct 6 2020 | ($36.47) |
| Check payment applied on Jun 9 2020 | ($50.00) |
| Check payment applied on Jun 9 2020 | ($22.54) |

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #

**749230**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period

**Feb 1 2021 to Feb 28 2021**

Invoice Date

**Feb 1 2021**

Due Date

**Feb 22 2021**

Account Number

**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($50.00) |
| **Total due by Feb 22 2021** | **$0.00** |

Please make checks payable to ONE INTERNET AMERICA

| Amount Due | |
|---|---|
| | **$0.00** |

| Amount Enclosed | |
|---|---|

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

USCA Case #23-1223     Document #2013313     Filed: 08/18/2023     Page 296 of 336

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                          $50.00

**Payments Applied**

Check payment applied on Apr 21 2021                                          ($36.47)

Check payment applied on Mar 29 2021                                         ($13.53)

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**749787**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**May 1 2021 to May 31 2021**

Invoice Date
**May 1 2021**

Past Due As Of
**May 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by May 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                                    $50.00

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**749986**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Jun 1 2021 to Jun 30 2021**

Invoice Date
**Jun 1 2021**

Due Date
**Jun 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by Jun 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

USCA Case #23-1223     Document #2013313     Filed: 08/18/2023     Page 300 of 336

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                           $50.00



**ONE INTERNET AMERICA**

3833 EBONY ST

ONTARIO, CA 91761

Invoice #

**750115**

**INDIAN PEAK PROPERTIES, LLC**

P.O. BOX 7835

VAN NUYS, CA 91409

Service Period

**Jul 1 2021 to Jul 31 2021**

Invoice Date

**Jul 1 2021**

Past Due As Of

**Jul 22 2021**

Account Number

**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by Jul 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |



112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**

3833 EBONY ST

ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                                                 $50.00

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**750358**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Aug 1 2021 to Aug 31 2021**

Invoice Date
**Aug 1 2021**

Due Date
**Aug 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by Aug 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                    $50.00

**Unapplied Payments**

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**750526**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Sep 1 2021 to Sep 30 2021**

Invoice Date
**Sep 1 2021**

Due Date
**Sep 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by Sep 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

USCA Case #23-1223    Document #2013313    Filed: 08/18/2023    Page 306 of 336

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                           $50.00

**Unapplied Payments**

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**750754**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Oct 1 2021 to Oct 31 2021**

Invoice Date
**Oct 1 2021**

Due Date
**Oct 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $50.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($0.00) |
| **Total due by Oct 22 2021** | **$50.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$50.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

USCA Case #23-1223      Document #2013313      Filed: 08/18/2023      Page 308 of 336

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                                    $50.00

**Unapplied Payments**

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**751055**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Nov 1 2021 to Nov 30 2021**

Invoice Date
**Nov 1 2021**

Due Date
**Nov 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Nov 22 2021** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                                    $19.00

**Payments Applied**

Check payment applied on Oct 26 2021                                            ($19.00)

**Unapplied Payments**

Check payment applied on Oct 26 2021                                             $31.00



**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

Invoice #
**751200**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Dec 1 2021 to Dec 31 2021**

Invoice Date
**Dec 1 2021**

Due Date
**Dec 22 2021**

Account Number
**112577**

| | |
|---|---|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Dec 22 2021** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409



**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

## Charges

AIRFIBER DEDICATED PTP 50 x 1                                    $19.00

## Payments Applied

Check payment applied on Oct 26 2021                            ($19.00)

## Unapplied Payments

Check payment applied on Oct 26 2021                             $12.00
Check payment applied on Nov 29 2021                            $38.00

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**751497**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Jan 1 2022 to Jan 31 2022**

Invoice Date
**Jan 1 2022**

Due Date
**Jan 22 2022**

Account Number
**112577**

| | |
|---|---|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Jan 22 2022** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

### Charges

| | |
|---|---|
| AIRFIBER DEDICATED PTP 50 x 1 | $19.00 |

### Payments Applied

| | |
|---|---|
| Check payment applied on Nov 29 2021 | ($7.00) |
| Check payment applied on Oct 26 2021 | ($12.00) |

### Unapplied Payments

| | |
|---|---|
| Check payment applied on Nov 29 2021 | $31.00 |
| Check payment applied on Dec 22 2021 | $38.00 |

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**751655**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Feb 1 2022 to Feb 28 2022**

Invoice Date
**Feb 1 2022**

Due Date
**Feb 22 2022**

Account Number
**112577**

| | |
|---|---|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Feb 22 2022** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

### Charges

AIRFIBER DEDICATED PTP 50 x 1                                                                $19.00

### Payments Applied

Check payment applied on Nov 29 2021                                                        ($19.00)

### Unapplied Payments

Check payment applied on Nov 29 2021                                                         $12.00
Check payment applied on Dec 22 2021                                                         $38.00

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761



Invoice #
**751890**

**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

Service Period
**Mar 1 2022 to Mar 31 2022**

Invoice Date
**Mar 1 2022**

Due Date
**Mar 22 2022**

Account Number
**112577**

| | |
|---|---:|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Mar 22 2022** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---:|
| **$0.00** |

| Amount Enclosed |
|---|

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**
3833 EBONY ST
ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

### Charges

AIRFIBER DEDICATED PTP 50 x 1                                    $19.00

### Payments Applied

Check payment applied on Dec 22 2021                          ($7.00)

Check payment applied on Nov 29 2021                         ($12.00)

### Unapplied Payments

Check payment applied on Dec 22 2021                          $31.00



**ONE INTERNET AMERICA**

3833 EBONY ST

ONTARIO, CA 91761

Invoice #

**752124**

**INDIAN PEAK PROPERTIES, LLC**

P.O. BOX 7835

VAN NUYS, CA 91409

Service Period

**Apr 1 2022 to Apr 30 2022**

Invoice Date

**Apr 1 2022**

Due Date

**Apr 22 2022**

Account Number

**112577**

| | |
|---|---|
| Charges | $19.00 |
| Taxes / Fees | $0.00 |
| Credits | ($0.00) |
| Payments Applied | ($19.00) |
| **Total due by Apr 22 2022** | **$0.00** |

PLEASE UPDATE MAILING ADDRESS TO:
ONE INTERNET AMERICA
3833 EBONY STREET
ONTARIO, CALIFORNIA, 91761

✂

Please make checks payable to ONE INTERNET AMERICA

| Amount Due |
|---|
| **$0.00** |

| Amount Enclosed |
|---|
| |

112577
**INDIAN PEAK PROPERTIES, LLC**
P.O. BOX 7835
VAN NUYS, CA 91409

**ONE INTERNET AMERICA**

3833 EBONY ST

ONTARIO, CA 91761

(909) 457-0906
http://www.oneinternetamerica.com

Indian Peak Properties, LLC (112577) *26708 Indian Peak Road, Rancho Palos Verdes, CA 90275*

**Charges**

AIRFIBER DEDICATED PTP 50 x 1                                        $19.00

**Payments Applied**

Check payment applied on Dec 22 2021                              ($19.00)

**Unapplied Payments**

Check payment applied on Dec 22 2021                               $12.00

**Indian Peak Properties, LLC**
**Computer & Manual Check Register**
**Current and History Files, After 12/01/21**
**All Accounts, Sessions 000000 to 001666**
**Vendor = ONE1**

| Vendor | Vendor Name | Check # | Ck Date | Prity | Invoices | Reference | Amount |
|--------|-------------|---------|---------|-------|----------|-----------|--------|
| **Checking Account:** | 10200-000 | | **Session:** | 001615 | | | |
| ONE1 | One Internet America | 1365 | 12/13/21 | 2 | 2022001 | JANUARY | 38.00 |
| | | 1372 | 01/17/22 | 2 | 2022002 | FEBRUARY | 38.00 |
| | | 1378 | 02/11/22 | 2 | 2022003 | MARCH | 38.00 |
| | | 1386 | 03/11/22 | 2 | 2022004 | APRIL | 38.00 |
| | | 1392 | 04/11/22 | 2 | 2022005 | MAY | 38.00 |
| | | | | | | **ONE1 Subtotal :** | 190.00 |
| | | | | | | **Check Register Total :** | 190.00 |

**EXHIBIT 7**

# RANCHO PALOS VERDES

## Business License Application
### For Home Occupancy Businesses
Expires December 31, 2022

| COMPLETE ALL APPLICABLE INFORMATION ON THE FRONT AND BACK OF THIS FORM. |
|---|

(Check One):  ☐ Renewal

☒ **New License & Date** (Business Began Operating In the City):    04/18/2022

**Business Name**    INDIAN PEAK PROPERTIES, LLC

**Home Address**    26708 INDIAN PEAK RD

RANCHO PALOS VERDES, CA 90275
City                              Zip

**Mailing Address**
(If Different From Above)
_____
City                              Zip

**Business Phone**  818-997-7700    **Email**  Maxi.Silver@buddycorp.com

**Business Classification** (Check One):   ☐ Sole Proprietor   ☐ Corporation   ☐ Partnership

Other (Specify) _____

**Tax ID (FEIN, SSN)**    20-3813254

**Business Owner Name**    KAY, JAMES
Last                              First

**Description of Business**    RENTAL
(Indicate if visitors will be
coming to the residence)

**Regulated Businesses**    Please check one of the boxes below if your business is or you are an independent contractor for any of the following types of businesses:

Medical Marijuana Dispensary ☐    Escort Service ☐    Peddling Service ☐    Massage Service ☐

***I CERTIFY UNDER PERJURY THAT ALL INFORMATION PROVIDED ON THIS APPLICATION IS CORRECT AND THAT THE AFOREMENTIONED BUSINESS IS OBEYING ALL FEDERAL, STATE AND LOCAL LAWS.***

_James Kay, Jr_ (Signature)    James Kay, Jr    PRESIDENT OF MANAGER    04/18/2022
Signature                Print Name                Title                Date

**Please Note:**    Business license applications are due prior to commencing operations and expire each December 31st. Section 5.04.490 of the Rancho Palos Verdes Municipal Code imposes fines and criminal remedies for violation of the Business Tax Ordinance. Penalties will be assessed @ 5% for each month delinquent up to 50% of the total license fee. No extensions or waivers of the penalty amount will be granted.

| Tax | Penalty | State Fee $4.00 | Total Amount Due | Initials | Check # |
|---|---|---|---|---|---|
| *Planning, Building & Safety, & Code Enforcement Use Only* | | | | | |
| Zone | | Moratorium | | Approved | |
| Type | | Planner | | Date | |
| Comments | | | | | |

**30940 Hawthorne Boulevard, Rancho Palos Verdes, CA 90275**
**Business License Office (310) 544-5301  www.rpvca.gov**



# *City of Rancho Palos Verdes*
# *Home Occupation Standards*
### (effective May 15, 1997)

17.08.030  Review of applications.  Home Occupations shall be permitted only if they comply with the following standards, and such other conditions, which are imposed by the director:

A.     All structures must comply with general appearance, setbacks, and landscaping standards and regulations applicable to all zoning districts of the area in which they are located.

B.     No displays, signs, and/or advertisements associated with the Home Occupation shall be permitted.

C.     The permitted activity shall not be injurious to the use of neighboring property by reason of noise, vibration, odor, fumes, smoke, dust or similar adverse impacts on adjacent properties.

D.     There shall be no radio or television interference created by said Home Occupation.

E.     A Home Occupation shall not create vehicular or pedestrian traffic which changes the residential character of the neighborhood and dwelling unit where the business is being conducted, or create a greater demand for parking than can be accommodated on site or on the street frontage abutting the property where the Home Occupation is being conducted.

F.     There shall be no deliveries to and from the residence of bulk materials which are used in conjunction with the Home Occupation and no deliveries of materials, goods or retail merchandise associated with a Home Occupation, if such deliveries change the residential character of the neighborhood and dwelling unit where the business is being conducted.

G.     The person conducting the profession or business must reside within the dwelling unit in which the activity is located.

H.     With the exception of one "home occupation employee," as defined in chapter 17.96, there shall be no employment of help other than individuals residing at the subject residence.  An on site parking area of no less than nine (9) feet in width by twenty (20) feet in length shall be provided for the one home occupation employee.

I.     There shall be no use or storage of dangerous chemicals, acids, caustics, explosives, or other such hazardous equipment or materials, other than those materials that are used in typical household activities as classified in the county household hazardous materials list.

J.     There shall be no storage of materials and/or supplies, associated with the Home Occupation, outside of the residence, which may be visible from adjoining properties and/or the public right-of-way.  If the garage is used to store Home Occupation associated materials, the minimum interior parking dimensions specified in Section 17.02.030 (Single Family Residential Districts) shall be maintained.

K.     There shall be no use of utilities or community facilities, which change the residential character of the neighborhood and dwelling unit where the business is being conducted beyond the level, which is normal for the use of the property for residential purposes.

L.     The establishment and conduct of a Home Occupation shall not change the principal residential character of the use of the dwelling unit, nor shall there be any exterior evidence of the Home Occupation being conducted.  The home occupation use shall be clearly incidental to the residential use.

**I HAVE READ AND I UNDERSTAND THE STANDARDS REGULATING HOME OCCUPATIONS IN THE CITY OF RANCHO PALOS VERDES.**

**INDIAN PEAK PROPERTIES, LLC**
Business Name

**26708 INDIAN PEAK RD.**

**RANCHO PALOS VERDES CA**
**90275**  Street Address

 **04/18/2022**
Date

Business Owner Signature

JAMES A. KAY, JR

Business Owner Name (printed)



CITY OF **RANCHO PALOS VERDES**

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

# BUSINESS TAX REGISTRATION CERTIFICATE

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409

**Number:**     **BLBUS-4921**
**Issue Date:**     **4/18/2022**
**Expiration Date:**     **12/31/2022**
**ISSUING OFFICER:**

**Business Name:**   **INDIAN PEAK PROPERTIES LLC**
**Business Address:**   **26708 INDIAN PEAK RD**
               **RANCHO PALOS VERDES   CA  90275-0000**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

INDIAN PEAK PROPERTIES LLC
P.O. BOX 7890
VAN NUYS, CA 91409



# City of Rancho Palos Verdes
# Home Occupation Standards
### (effective May 15, 1997)

<u>17.08.030  Review of applications</u>.  Home Occupations shall be permitted only if they comply with the following standards, and such other conditions, which are imposed by the director:

A.  All structures must comply with general appearance, setbacks, and landscaping standards and regulations applicable to all zoning districts of the area in which they are located.

B.  No displays, signs, and/or advertisements associated with the Home Occupation shall be permitted.

C.  The permitted activity shall not be injurious to the use of neighboring property by reason of noise, vibration, odor, fumes, smoke, dust or similar adverse impacts on adjacent properties.

D.  There shall be no radio or television interference created by said Home Occupation.

E.  A Home Occupation shall not create vehicular or pedestrian traffic which changes the residential character of the neighborhood and dwelling unit where the business is being conducted, or create a greater demand for parking than can be accommodated on site or on the street frontage abutting the property where the Home Occupation is being conducted.

F.  There shall be no deliveries to and from the residence of bulk materials which are used in conjunction with the Home Occupation and no deliveries of materials, goods or retail merchandise associated with a Home Occupation, if such deliveries change the residential character of the neighborhood and dwelling unit where the business is being conducted.

G.  The person conducting the profession or business must reside within the dwelling unit in which the activity is located.

H.  With the exception of one "home occupation employee," as defined in chapter 17.96, there shall be no employment of help other than individuals residing at the subject residence.  An on site parking area of no less than nine (9) feet in width by twenty (20) feet in length shall be provided for the one home occupation employee.

I.  There shall be no use or storage of dangerous chemicals, acids, caustics, explosives, or other such hazardous equipment or materials, other than those materials that are used in typical household activities as classified in the county household hazardous materials list.

J.  There shall be no storage of materials and/or supplies, associated with the Home Occupation, outside of the residence, which may be visible from adjoining properties and/or the public right-of-way.  If the garage is used to store Home Occupation associated materials, the minimum interior parking dimensions specified in Section 17.02.030 (Single Family Residential Districts) shall be maintained.

K.  There shall be no use of utilities or community facilities, which change the residential character of the neighborhood and dwelling unit where the business is being conducted beyond the level, which is normal for the use of the property for residential purposes.

L.  The establishment and conduct of a Home Occupation shall not change the principal residential character of the use of the dwelling unit, nor shall there be any exterior evidence of the Home Occupation being conducted.  The home occupation use shall be clearly incidental to the residential use.

**I HAVE READ AND I UNDERSTAND THE STANDARDS REGULATING HOME OCCUPATIONS IN THE CITY OF RANCHO PALOS VERDES.**

**COMM ENTERPRISES, LLC DBA
SOUTHLAND COMMUNICAITONS**

Business Name

**26708 INDIAN PEAK RD.**

**RANCHO PALOS VERDES CA  90275**
Street Address
**04/20/2022**

Date

Business Owner Signature

JAMES A. KAY, JR
Business Owner Name (printed)

W:\FORMS\BUSINESS LICENSE\2008\BL FORMS\HOME OC STANDARDS FORM.DOC



**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

# BUSINESS TAX REGISTRATION CERTIFICATE

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0601** |
| **Issue Date:** | **4/20/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:  COMMUNICATIONS RELAY, LLC**
**Business Address:  26708 Indian Peak Rd**
**Rancho Palos Verdes  CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

COMMUNICATIONS RELAY, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

**MUST BE DISPLAYED IN PLACE OF BUSINESS – NON TRANSFERABLE**



CITY OF  RANCHO PALOS VERDES

**City of Rancho Palos Verdes**
30940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275
310-544-5301

## BUSINESS TAX REGISTRATION CERTIFICATE

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409

| | |
|---|---|
| **Number:** | **BLBU-0563** |
| **Issue Date:** | **1/19/2022** |
| **Expiration Date:** | **12/31/2022** |
| **ISSUING OFFICER:** | |

**Business Name:   LT-WR, LLC**
**Business Address:   26708 Indian Peak Rd**
 **Rancho Palos Verdes   CA  90275**

This certificate is evidence that the person or firm named has paid a tax to conduct and operate a business
as indicated hereon pursuant to the provisions of Chapter 5.04 of the Rancho Palos Verdes Municipal Code.

LT-WR, LLC
P.O. BOX 7890
VAN NUYS, CA 91409



# NEVADA STATE BUSINESS LICENSE

## INDIAN PEAK PROPERTIES, LLC

### Nevada Business Identification # NV20051707408
### Expiration Date: 11/30/2022

In  accordance with Title 7 of Nevada Revised Statutes, pursuant to proper  application duly filed and payment of appropriate prescribed  fees, the above named is hereby granted a Nevada State Business License  for business activities conducted within the State of Nevada.

Valid until the expiration date listed unless suspended, revoked or cancelled in accordance with the provisions in Nevada Revised Statutes.  License is not transferable and is not in lieu of any local business license, permit or registration.

**License must be cancelled on or before its expiration date if business activity ceases. Failure to do so will result in late fees or penalties which, by law, cannot be waived**.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on 12/06/2021.



Certificate Number: B202112062207212
You may verify this certificate
online at http://www.nvsos.gov

BARBARA K. CEGAVSKE
Secretary of State

**EXHIBIT 8**

USCA Case #23-1223    Document #2013913    Filed: 08/18/2023    Page 331 of 336

# STATE OF NEVADA

*BARBARA K. CEGAVSKE*
*Secretary of State*



*KIMBERLEY PERONDI*
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings & Notary Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA

**Work Order #:** W2021120602375
December 6, 2021
Receipt Version: 1

**Special Handling Instructions:**

**Submitter ID:** 12452

**Charges**

| Description | Fee Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|---|
| Annual List | Fees | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $150.00 | $150.00 |
| Annual List | Business License Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $200.00 | $200.00 |
| Annual List | Business License Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $100.00 | $100.00 |
| Annual List | Annual List Late Fee | 20211938896 | 12/6/2021 4:05:48 PM | Approved | 1 | $75.00 | $75.00 |
| Total | | | | | | | $525.00 |

**Payments**

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 6388355341036878903086 | Success | $525.00 |
| Total | | | $525.00 |

**Credit Balance:** $0.00

Alina Franco
15525 Cabrito Road
Van Nuys, CA 91406, USA

# STATE OF NEVADA

**BARBARA K. CEGAVSKE**
*Secretary of State*



Commercial Recordings Division
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

**KIMBERLEY PERONDI**
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

## Business Entity - Filing Acknowledgement

12/06/2021

| | |
|---|---|
| **Work Order Item Number:** | W2021120602375 - 1761038 |
| **Filing Number:** | 20211938896 |
| **Filing Type:** | Annual List |
| **Filing Date/Time:** | 12/06/2021 16:05:48 PM |
| **Filing Page(s):** | 2 |

**Indexed Entity Information:**

**Entity ID:** E0766652005-1

**Entity Name:** INDIAN PEAK PROPERTIES, LLC

**Entity Status:** Active

**Expiration Date:** None

Commercial Registered Agent

CORPORATION SERVICE COMPANY

112 NORTH CURRY STREET, Carson City, NV 89703, USA

The attached document(s) were filed with the Nevada Secretary of State, Commercial Recording Division. The filing date and time have been affixed to each document, indicating the date and time of filing. A filing number is also affixed and can be used to reference this document in the future.

Respectfully,

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

Page 1 of 1

**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
**www.nvsilverflume.gov**

# Annual or Amended List and State Business License Application

☒ **ANNUAL**    ☐ **AMENDED** (check one)

## List of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:

| | |
|---|---|
| **INDIAN PEAK PROPERTIES, LLC** | **NV20051707408** |
| NAME OF ENTITY | Entity or Nevada Business Identification Number (NVID) |

## TYPE OR PRINT ONLY - USE DARK INK ONLY - DO NOT HIGHLIGHT

_**IMPORTANT:**_ _Read instructions before completing and returning this form._

Please indicate the entity type (check only one):

☐ Corporation
   ☐ This corporation is publicly traded, the Central Index Key number is: _____

☐ Nonprofit Corporation (see nonprofit sections below)

☒ Limited-Liability Company

☐ Limited Partnership

☐ Limited-Liability Partnership

☐ Limited-Liability Limited Partnership

☐ Business Trust

☐ Corporation Sole

| Filed in the Office of | Business Number<br>E0766652005-1 |
|---|---|
| _Barbara K. Cegavske_ | Filing Number<br>20211938896 |
| Secretary of State<br>State Of Nevada | Filed On<br>12/06/2021 16:05:48 PM |
| | Number of Pages<br>2 |

Additional Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers, may be listed on a supplemental page.

---

**CHECK ONLY IF APPLICABLE**

Pursuant to NRS Chapter 76, this entity is exempt from the business license fee.
☐ 001 - Governmental Entity
☐ 006 - NRS 680B.020 Insurance Co, provide license or certificate of authority number _____

**For nonprofit entities formed under NRS chapter 80:** entities without 501(c) nonprofit designation are required to maintain a state business license, the fee is $200.00. Those  claiming an exemption under 501(c) designation must indicate by checking box below.

☐ Pursuant to NRS Chapter 76, this entity is a 501(c) nonprofit entity and is exempt from the business license fee.
Exemption Code 002

**For nonprofit entities formed under NRS Chapter 81:** entities which are Unit-owners' association or Religious, Charitable, fraternal or other organization that qualifies as a  tax-exempt organization pursuant to 26 U.S.C $ 501(c) are excluded from the  requirement to obtain a state business license.  Please indicate below if this entity falls under one of these categories by marking the appropriate box.  If the entity does not fall under either of these categories please submit $200.00 for the state business license.

☐ Unit-owners' Association    ☐ Religious, charitable, fraternal or other organization that qualifies as a tax-exempt organization pursuant to 26 U.S.C. $501(c)

**For nonprofit entities formed under NRS Chapter 82 and 80:Charitable Solicitation Information - check applicable box**

Does the Organization intend to solicit charitable or tax deductible contributions?
☐ No - no additional form is required
☐ Yes - the "Charitable Solicitation Registration Statement" is required.
☐ The Organization claims exemption pursuant to NRS 82A 210 - the "Exemption From Charitable Solicitation Registration Statement" is required

**\*\*Failure to include the required statement form will result in rejection of the filing and could result in late fees.\*\***



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov
        www.nvsilverflume.gov

# Annual or Amended List and State Business License Application - Continued

## Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers:

CORPORATION, INDICATE THE <u>MANAGER</u>:

| LUCKY'S TWO-WAY RADIOS INC | | USA |
|---|---|---|
| Name | | Country |

| 1350 E FLAMINGO RD STE 13B BOX 346 | LAS VEGAS | NV | 89119 |
|---|---|---|---|
| Address | City | State | Zip/Postal Code |

None of the officers and directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X**  **James A Kay Jr**

**Signature of Officer, Manager, Managing Member, General Partner, Managing Partner, Trustee, Subscriber, Member, Owner of Business, Partner or Authorized Signer** *FORM WILL BE RETURNED IF UNSIGNED*

| President of the Manager | 12/06/2021 |
|---|---|
| Title | Date |



**DEAN HELLER**
Secretary of State
206 North Carson Street
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

Entity #
**E0766652005-1**
Document Number:
**20050547765-41**

Date Filed:
**11/14/2005 2:17:36 PM**
In the office of

*[signature]*

**Dean Heller**
**Secretary of State**

## Articles of Organization
## Limited-Liability Company
### (PURSUANT TO NRS 86)

Important: Read attached instructions before completing form.                ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| 1. Name of Limited-Liability Company: | INDIAN PEAK PROPERTIES, LLC |
| 2. Resident Agent Name and Street Address: (must be a Nevada address where process may be served) | GKL RESIDENT AGENTS/FILINGS, INC. <br> Name <br> 1000 EAST WILLIAM ST., STE 204     CARSON CITY  , NEVADA  89701 <br> Physical Street Address                    City                      Zip Code <br> <br> Additional Mailing Address                City          State        Zip Code |
| 3. Dissolution Date: (OPTIONAL-see instructions) | Latest date upon which the company is to dissolve (if existence is not perpetual): _____ |
| 4. Management: (check one) | Company shall be managed by ___X___ Manager(s) OR _____ Members |
| 5. Names Addresses, of Manager(s) or Members: (attach additional pages as necessary) | LUCKY'S TWO-WAY RADIOS, INC <br> Name <br> 1350 E. FLAMINGO RD, STE 13B #348   LAS VEGAS   NEVADA  89119 <br> Address                          City        State     Zip Code <br><br> Name <br> Address                          City        State     Zip Code <br><br> Name <br> Address                          City        State     Zip Code |
| 6. Names, Addresses and Signatures of Organizers: (if more than one organizer, please attach additional page) | LUCKY'S TWO-WAY RADIOS, INC <br> BY: JAMES A. KAY, JR., PRESIDENT <br> Name                        Signature <br> 1350 E. FLAMINGO RD, STE 13B #348  LAS VEGAS         NEVADA  89119 <br> Address                          City        State     Zip Code |
| 7. Certificate of Acceptance of Appointment of Resident Agent: | I hereby accept appointment as Resident Agent for the above named limited-liability company. <br><br> *[signature]*                       NOVEMBER 10, 2005 <br> Authorized Signature of R.A. or On Behalf of R.A. Company    Date |

This form must be accompanied by appropriate fees.                    Nevada Secretary of State LLC Art. 2003
                                                                       Revised on: 10/03/05

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**LLC-12**

20-C95464

**FILED**

In the office of the Secretary of State
of the State of California

**JUL 27, 2020**

**This Space For Office Use Only**

**IMPORTANT** — Read instructions before completing this form.

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

INDIAN PEAK PROPERTIES, LLC

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 200532310077 | NEVADA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>1350 E Flamingo Rd. STE 13B Box 346 | Las Vegas | NV | 89119 |
| b. Mailing Address of LLC, **if different than item 4a**<br>PO BOX 7890 | Van Nuys | CA | 91409 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | | CA | |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Entity Name - Do not complete Item 5a |
|---|
| Lucky's Two-Way Radios, INC |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1350 E. Flamingo RD. STE 13B Box 346 | Las Vegas | NV | 89119 |

**6. Service of Process** (Must provide either Individual **OR** Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| BUSINESS FILINGS INCORPORATED (C2113485) |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Real Estate Holdings |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 07/27/2020 | James A Kay JR | President of the Manager | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name: ⌐          ¬

Company:

Address:

City/State/Zip: ⌐          ┘